# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| THE CLINCH COALITION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:21-cv-0003-JPJ-PMS |
| UNITED STATES FOREST SERVICE, *et al.*, | ) | |
| | ) | |
| Federal Defendants, | ) | PLAINTIFFS' BRIEF IN SUPPORT OF |
| | ) | MOTION TO COMPEL COMPLETION |
| and | ) | OF THE ADMINISTRATIVE RECORD |
| | ) | AND STRIKE NONRECORD |
| AMERICAN LOGGERS COUNCIL, *et al.* | ) | MATERIAL |
| | ) | |
| Intervenor Defendants. | ) | |
| | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND STRIKE NONRECORD MATERIAL

# TABLE OF CONTENTS

I.  Background ........................................................................................................... 1

    A.  Nature of the Case ....................................................................................... 1

    B.  Procedural History ...................................................................................... 3

    C.  Applicable Legal Standards ........................................................................ 8

        1.  The Administrative Record must be broad and inclusive. ................ 8

        2.  The deliberative process privilege is qualified. ............................. 10

        3.  The Court has the authority to compel completion of the record. ................ 16

        4.  Post hoc, post-decisional documents are not part of the record..................... 17

II.  Argument ........................................................................................................... 18

    A.  The Forest Service excluded documents relied on as the basis of its decision, confirming the AR is incomplete. ........................................................... 18

    B.  Documentation of input from key agency experts and CEQ must be included in the record. ............................................................................................... 23

    C.  The agency must produce a privilege log. ................................................ 25

    D.  Post hoc, post-decisional documents should be struck from the AR ................... 29

III.  Conclusion ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amfac Resorts, L.L.C. v. U.S. Dep't of Interior,*
    143 F. Supp. 2d 7 (D.D.C. 2001) ...........................................................9

*Appalachian Power Co. v. EPA,*
    477 F.2d 495 (4th Cir.1973), ...........................................................9, 23

*Bar MK Ranches v. Yuetter,*
    994 F.2d 735 (10th Cir. 1993) ...................................................9, 12, 24

*Batalla Vidal v. Duke,*
    No. 16CV4756NGGJO, 2017 WL 4737280 (E.D.N.Y. Oct. 19, 2017) ..........................14

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of L. v. U.S. Dep't of Justice,*
    697 F.3d 184 (2d Cir. 2012)...........................................................13

*Carter v. U.S. Dep't of Commerce,*
    307 F.3d 1084 (9th Cir. 2002) .........................................................10

*Church of Scientology Int'l v. U.S. Dep't of Justice,*
    30 F.3d 224 (1st Cir. 1994)...........................................................11

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971)....................................................................8

*City of Virginia Beach v. U.S. Dep't of Commerce,*
    995 F.2d 1247 (4th Cir. 1993) ........................................................11

*Ctr. for Biological Diversity v. Bernhardt,*
    No. CV 19-109-M-DLC, 2020 WL 1130365 (D. Mont. Mar. 9, 2020) .................25

*Ctr. for Food Safety v. Vilsack,*
    No. 15-cv-01590, 2017 WL 1709318 (N.D. Cal. May 3, 2017).......................14, 25

*Ctr. for Native Ecosystems v. Salazar,*
    711 F. Supp. 2d 1267 (D. Colo. 2010).................................................14

*Dairyland Power Co-op. v. United States,*
    77 Fed. Cl. 330 (2007) ...............................................................13

*Defs. of Wildlife v U.S. Dep't of Interior,*
    931 F.3d 339 (4th Cir. 2019) .........................................................12

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ................................................................................12

*Dist. Hosp. Partners v. Sebelius*,
   971 F. Supp. 2d 15 (D.D.C. 2013) ...............................................................9, 14, 24

*Dopico v. Goldschmidt*,
   687 F.2d 644 (2d Cir. 1982) .........................................................................16

*Earth Island Inst. v. Hogarth*,
   484 F.3d 1123 (9th Cir. 2007) .....................................................................12

*Envtl. Def. Fund, Inc. v. Costle*,
   657 F.2d 275 (D.C. Cir. 1981) .....................................................................17

*EPA v. Mink*,
   410 U.S. 73 (1973) .......................................................................................10

*Exxon Mobil Corp. v. Mnuchin*,
   No. 3:17-CV-1930-B, 2018 WL 4103724 (N.D. Tex. Aug. 29, 2018) ..................14

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) .....................................................................................17

*Friends of the Clearwater v. Higgins*,
   No. 2:20-CV-00243-BLW, 2021 WL 827015 (D. Idaho Mar. 4, 2021) ................11

*FTC v. Warner Commc'ns Inc.*,
   742 F.2d 1156 (9th Cir. 1984) .....................................................................13

*Goffney v. Becerra*,
   995 F.3d 737 (9th Cir. 2021) .......................................................................18

*Greenpeace v. Nat'l Marine Fisheries Serv.*,
   No. C98-492Z, 2000 WL 343906 (W.D. Wash. Feb. 24, 2000) .........................14

*Heartwood, Inc. v. U.S. Forest Serv.*,
   73 F. Supp. 2d 962 (S.D. Ill. 1999) ..............................................................24

*Hugler v. Bat Masonry Co.*,
   No. 6:15-CV-28, 2017 WL 1207847 (W.D. Va. Mar. 31, 2017) .........................11

*Hugler v. Bat Masonry Co.*,
   No. 6:15-CV-28, 2017 WL 722069 (W.D. Va. Feb. 22, 2017) ...................10, 11, 16

*Indigenous Envtl. Network v. U.S. Dep't of State*,
   No. CV-17-29-GF-BMM, 2018 WL 1796217 (D. Mont. Apr. 16, 2018) ...............14

*Inst. for Fisheries Res. v. Burwell*,
No. 16-CV-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ..................................12, 28

*Kent Cty., Del. Levy Ct. v. EPA*,
963 F.2d 391 (D.C. Cir. 1992) ...............................................................................................12

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ............................................................................................................17

*Kowack v. U.S. Forest Serv.*,
766 F.3d 1130 (9th Cir. 2014) ...............................................................................................11

*Luminant Generation Co. v. EPA*,
675 F.3d 917 (5th Cir. 2012) .................................................................................................17

*Miami Nation of Indians of Ind. v. Babbitt*,
979 F. Supp. 771 (N.D. Ind. 1996) ........................................................................................14

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ..................................................................................................................10

*Murray Energy Corp. v. McCarthy*,
No. 5:14-CV-39, 2015 WL 7017009 (N.D. W. Va. Nov. 12, 2015) ......................................14

*Nat. Res. Def. Council, Inc. v. Train*,
519 F.2d 287 (D.C. Cir. 1975) ...............................................................................................22

*Nat'l Council of La Raza v. Dep't of Justice*,
411 F.3d 350 (2d Cir. 2005) ...................................................................................................13

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*,
516 F.2d 1229 (D.C. Cir. 1975) .............................................................................................13

*Native Vill. of Point Hope v. Jewell*,
740 F.3d 489 (9th Cir. 2014) .................................................................................................12

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ...........................................................................................................13, 24

*Nw. Envtl. Advocates v. EPA*,
No. 05-1876-HA, 2008 WL 111054 (D. Or. Jan. 7, 2008) ....................................................14

*Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018) ................................................................................9, 19, 27

*Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) ...............................................................................16, 25, 27

*Ohio Valley Envtl. Coal. v. Hurst*,
        604 F. Supp. 2d 860 (S.D. W. Va. 2009) .................................................................18

*Ohio Valley Envtl. Coal. v. Whitman*,
        No. CIV.A. 3:02-0059, 2003 WL 43377 (S.D. W. Va. Jan. 6, 2003).....................12

*Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*,
        No. CV ELH-16-1015, 2017 WL 3189446 (D. Md. July 27, 2017).......................16

*Pitman v. U.S. Citizenship & Immigration Servs.*,
        No. 2:17-CV-00166-CW-EJF, 2018 WL 3232355 (D. Utah July 2, 2018)............14

*Portland Audubon Soc. v. Endangered Species Comm.*,
        984 F.2d 1534 (9th Cir.1993) .................................................................8, 10, 16

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
        No. C 17-05211 WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) ...................26

*S.C. Coastal Conservation League*, 431 F. Supp. 3d 719 (D.S.C. 2020) ..............................15, 25

*S. Envtl. L. Ctr. v. Council on Envtl. Quality*,
        507 F. Supp. 3d 694 (W.D. Va. 2020) .................................................................28

*S. Envtl. L. Ctr. v. Mulvaney*,
        No. 3:18CV00037, 2019 WL 4674497 (W.D. Va. Sept. 25, 2019)........................13

*Sanitary Bd. of Charleston v. Wheeler*,
        918 F.3d 324 (4th Cir. 2019) .................................................................16

*In re Sealed Case*,
        121 F.3d 729 (D.C. Cir. 1997) .................................................................10, 11, 13

*Securities & Exchange Comm'n v. Chenery Corp.*,
        332 U.S. 194 (1947).................................................................17

*Tafas v. Dudas*,
        530 F. Supp. 2d 786 (E.D. Va. 2008) .................................................................9, 17, 27

*Thompson v. U.S. Dep't of Labor*,
        885 F.2d 551 (9th Cir. 1989) .................................................................9, 29

*In re U.S. Dep't of Def. & U.S. EPA Final Rule*,
        No. 15-3751, 2016 WL 5845712 (6th Cir. Oct. 4, 2016) .......................................16

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
        141 S. Ct. 777 (2021).................................................................25, 26, 27

*In re United States*,
        875 F.3d 1200 (9th Cir) .................................................................15

*W&T Offshore, Inc. v. Jewell*,
    No. 2:14-CV-02449, 2016 WL 8260549 (W.D. La. Feb. 23, 2016).......................................14

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984) ...........................................................................................9

*WEG v. Salazar*,
    880 F. Supp. 2d 77 (D.D.C. 2012) ...................................................................................17

**Statutes**

5 U.S.C. § 706.....................................................................................................8, 17, 26

Pub. L. No. 93-502, 88 Stat. 1561 (1974).................................................................10

**Regulations**

36 C.F.R. § 220.5(e)(3), (24), and (26) ........................................................................3

36 C.F.R. § 251.50 (2004) .............................................................................................3

40 C.F.R. § 1506.6(b)(2)...............................................................................................17

40 C.F.R. § 1507.3(b)(2)...........................................................................................5, 29

Pursuant to the Court's Scheduling Order issued on May 14, 2021, Plaintiffs (collectively, "Conservation Groups") hereby challenge the sufficiency of the administrative record ("AR") lodged by Defendant U.S. Forest Service.

When compiling the AR, the Forest Service failed to include all documents it considered directly or indirectly, as required by law. The agency also improperly included post-decisional explanations prepared in defense of the decision after it was made, contrary to law. The record thus includes both more and less information than was before the agency when it made its decision. Because Conservation Groups' claims are reviewed on the administrative record pursuant to the Administrative Procedure Act ("APA"), the Forest Service's incomplete administrative record impedes the Court's meaningful review.

Conservation Groups therefore respectfully move the Court for an order (1) compelling Defendant U.S. Forest Service to complete the AR with materials specifically described herein, (2) requiring a privilege log for "deliberative" and other privileged materials withheld from the AR, and (3) striking post hoc rationales from the AR.

## I.     <u>Background</u>

### A.  <u>Nature of the Case</u>

In November 2020, the Forest Service ignored relevant and well-supported public input and pressed forward with a rule finalizing new categorical exclusions ("CEs") from the National Environmental Policy Act ("NEPA"), allowing the agency to dodge inconvenient environmental risks and public concerns in the development of future projects.

NEPA requires agencies to take a hard look at the effects of their actions and to involve the public in their decision-making. These objectives are fulfilled through preparation of Environmental Assessments or Environmental Impact Statements. Conservation Groups have for

decades relied on NEPA's procedural safeguards to learn about Forest Service proposed actions, alert the agency to environmental harms, and suggest less harmful alternatives. These safeguards have been remarkably effective, resulting in the protection of thousands of acres. In the ecologically complex Southern Appalachian National Forests, in particular, NEPA analysis and public input has saved old-growth forests from logging, unroaded areas from road construction, and trout streams from sedimentation, among many other protections.

Despite this track record, the Forest Service stripped away NEPA's procedural safeguards for a host of harmful projects through the promulgation of new CEs. Because CEs may only be used for actions which categorically lack significant impacts, CEs can be used to authorize projects with minimal public involvement and environmental analysis. To promulgate its new CEs, the agency ignored information submitted by Conservation Groups showing that the existing NEPA process was responsible for reducing environmental impacts below the threshold of "significance," especially in the Southern Appalachians, and that without that process the Forest Service could not guarantee the same for future projects. The Forest Service also cut procedural corners, declining to give the public any opportunity to comment on new additions to its proposed rule or the effects of the Council on Environmental Quality's ("CEQ's") related rulemaking, and failing to assess the rule's inevitable and significant environmental impacts.

Now the Forest Service has compiled an AR that attempts to hide the serious defects in its rulemaking process and substantive flaws in the final product. Where the AR excludes materials that were before the agency, it obscures information that cuts against the decision and contradicts the rationale. Where the AR includes post-decisional materials, it offers novel rationales to defend the rule against legal challenge. The Forest Service should not be permitted

to offer an incomplete, inaccurate, and self-serving record that would limit and misdirect the Court's review.

B.  Procedural History

In June 2019, the Forest Service proposed to categorically exclude from NEPA a laundry list of actions that had previously been subject to environmental analysis, informed public input, and consideration of alternatives under NEPA. AR 030806–09. Among others, three of these new CEs created loopholes for commercial logging projects, road construction, and permits for private "special uses,"[1] which cover everything from weddings and mountain bike races to natural gas pipeline rights-of-way, construction of dams, and wind farms. *Id.* (proposed 36 C.F.R. § 220.5(e)(3), (24), and (26)). The rule's stated purpose was to "increase the pace and scale of forest and grassland management operations on the ground" by "reduc[ing] cost and time spent on environmental analysis." AR 030802.

At the time the Forest Service's rule was proposed, a CE was defined as a category of actions that did not have "individually or cumulatively" significant impacts. NEPA_00000186. Attempting to clear that bar, the Forest Service relied heavily on analysis of "previously implemented" actions. AR 030611, 030624, 030665. The agency looked only at actions for which it had made a predictive "finding of no significant impact" ("FONSI"). AR 091519, 091539, 091529. A small subset of its sample of projects with FONSIs was also the basis for questionnaires sent by the Forest Service to regional officers with questions about project implementation. For example, in substantiating its proposed logging CE (CE 25), the Forest Service identified 718 projects completed with a FONSI, selected a random sample of 68 of those projects to focus its analysis, and obtained questionnaire responses for 19 of those

---

[1] 36 C.F.R. § 251.50 (2004) (defining "special uses").

projects—roughly 0.03% of the 718 projects. AR 091529; AR 091612–13. As discussed more below, the AR includes questionnaire responses for only two of those 19 projects. Based on this miniscule sample, the Forest Service concluded that future projects at similar scales would have no significant impacts.

Conservation Groups submitted detailed comments on the proposed rule, AR 087041–259, 086491–800,[2] with a thorough analysis of the Forest Service's sample of past projects, AR 86711–36. As relevant to this motion, those comments explained why the Forest Service's reliance on the sample of past actions and questionnaire responses was arbitrary and irrational. Conservation Groups showed that the proposed CEs were overbroad because they did not incorporate limiting conditions (known as "mitigation measures") essential to justify previous FONSIs. AR 086573–74. Conservation Groups also pointed out that the sample set did not include data from the ecologically complex Southern Appalachians, where virtually all logging projects are smaller than the proposed threshold but nevertheless require analysis and mitigation to avoid significant impacts. AR 086654–55, 086636–49, 086658–61.

---

[2] The body of Conservation Groups' proposed rule comments is found both at AR 087041 to 087259 and 086491 to 086710. Appendices to the comments are found at AR 086711 to 086800. Two other categories of information submitted by Plaintiffs—attachments and cited materials—do not appear anywhere in the AR, but Conservation Groups do not seek relief with respect to either category in this motion. We raise the issues here only to preserve them. *See* ECF No. 34 at ¶ 8. First, Conservation Groups provided a number of materials as attachments (in addition to the appendices, which are in the AR). Based on communications with opposing counsel, we believe that these materials were excluded inadvertently and will be added to the AR by agreement. Second, Conservation Groups cited other readily accessible materials in footnotes, often with hyperlinks. Defendants have communicated that while they believe materials cited by the Forest Service are "incorporated by reference" into the AR, the same is not true for Conservation Groups' citations. Evans Decl., Exhibit 1. Conservation Groups believe that all materials cited in comments, including linked materials, should similarly be part of the record. However, the Court may not have occasion to reach the question unless Conservation Groups rely on a particular document cited in their comments and Defendants do not stipulate to its status as part of the AR.

Additionally, Conservation Groups demonstrated that the Forest Service did not have adequate monitoring data to validate its findings that past projects did not in fact cause significant impacts, individually or cumulatively. AR 086576–80, 086590–91, 086610–11, 086650–52. While the agency relies on its questionnaires about the effects of a fraction of projects, the responses to many of those questionnaires were not and still have not been disclosed, as discussed below.

After the Forest Service closed the comment period for its proposed rule, Defendant CEQ announced a separate proposed rule overhauling the NEPA regulations applicable to all agencies, NEPA_00003197, which was finalized in July 2020, NEPA_00000001. That rule lowered the bar for categorical exclusions. Under the new definition, a CE is a category of actions that "normally" does not have significant impacts. NEPA_00000186. The Forest Service consulted with CEQ regarding the effect of CEQ's changes and reshaped its rulemaking in response to CEQ's feedback. AR 091550, 091769, 093267.

The Forest Service finalized its own rule in late 2020. On November 10, 2020, CEQ informed the Forest Service of its position that the final rule was in conformity with CEQ's revised NEPA regulations, and thanked the Forest Service for its "responsiveness to [CEQ's] comments and recommendations." AR 091549–50. The following morning, the Office of Management and Budget gave the rule final clearance, authorizing the Forest Service to "proceed with publication." AR 091551.

That same afternoon, counsel for Conservation Groups sent a letter to the Forest Service noting that the agency had not yet offered the public an opportunity to review its rule for conformity with CEQ's new regulations and that the Forest Service was accordingly required to re-notice the rule for further comment under 40 C.F.R. § 1507.3(b)(2). AR 091555–58. The letter

explained that public conformity review, in addition to being unambiguously required by law, was important to allow public feedback on whether changes to the Forest Service rule were consistent with the overhauled CEQ rule and, further, whether the Forest Service rule CEs were so overbroad that they "would stretch the CEQ rule beyond any reasonable interpretation of [NEPA]." AR 091557.

The Forest Service did not pause its process or make any further changes to its already-finalized rule, and instead sent the rule to queue for publication at the Office of the Federal Register. On November 18, 2020, a customary pre-publication copy of the final rule, along with some supporting documents, was made available in a public reading room. *E.g.*, AR 091700. The Federal Register published the rule the following day. AR 091768.

The final rule was more limited in scope than the proposed rule, but it retained CEs for up to 2,800 acres of logging (CE 25), road construction (CE 24), and special use permits (CE 3). AR 091779–80. The CE for special use permits did not change between the proposed and final rule, but the Forest Service adjusted the size of the logging and road construction CEs to correct for mathematical and statistical mistakes that Conservation Groups pointed out in their comments. *See* AR 091774, 091776. In addition, the Forest Service added two vaguely defined requirements to the logging CE—that the "primary purpose" of the project be "restoration," and that the process somehow involve a "collaborative" group. AR 091776.

Like the proposed rule, the final rule relied heavily on the sample of previously implemented actions to justify the creation of broad new CEs. AR 093285–86, 093312–14, 093321–22. The Forest Service maintained its justification that, based on questionnaires sent to local officials, past projects had generally not caused negative effects more substantial than

predicted. *E.g.*, AR 093332.[3] The agency did not respond to Conservation Groups' data and arguments showing that the CEs would authorize actions with individually and cumulatively significant harms. Instead, the Forest Service argued that its review of past actions, among other things, justified a conclusion that categorically excluded actions would not "normally" cause significant impacts under CEQ's new definition. AR 093263.

The Forest Service also explicitly relied in the final rule on the expertise of "[k]ey agency experts" who were listed as having provided input on the development of the CEs. AR 093271, 093289, 091565, 093316, 091589, 093326, 091602. For example, in connection with the CE applicable to logging projects, the agency stated that these "subject matter experts provided input that informed changes to the CE in the final rule." AR 093326.

After thoroughly reviewing the rule and available supporting materials, Conservation Groups determined that the Forest Service had not considered or made changes in response to the information and analysis they had submitted. Conservation Groups filed suit in this Court on January 8, 2021.

The Forest Service lodged the AR with the Court on July 1, 2021. ECF No. 42. While lengthy, the AR overwhelmingly consists of public comments submitted on the agency's proposed rule. The AR confirms that the agency did not consider the important issues and supporting data submitted by Conservation Groups. Astonishingly, however, the AR also did not include the questionnaire responses, the input from "key agency experts," or the input of CEQ, all of which the Forest Service relied on to finalize the rule. Further, the AR omitted many "deliberative" records without providing a log of withholdings, on the theory that such records

---

[3] As discussed below, however, at least some of the past projects (including projects that the Forest Service characterized as not having unexpected effects) notably did have unexpectedly serious effects. *See, e.g.*, AR 029931–33, 093313.

are categorically not part of an administrative record. Evans Decl., Exhibit 1 at 2. However, the AR does include a number of cherry-picked deliberative documents. *E.g.*, AR 091480, 091481–501, 091529–35.

Even more curiously, the AR includes records prepared after the Forest Service finalized the rule. After receiving Conservation Groups' November 11, 2020 letter, and while the rule was queued for publication at the Office of the Federal Register, the agency drafted several additional explanatory documents. AR 091635–66. The documents attempt (inadequately) to show that the final Forest Service CEs would be consistent with either the old (1978) or new (2020) version of the CEQ regulations. This argument, which appears nowhere else in the AR, is an apparent effort to downplay the legal requirement for public conformity review under the 2020 regulations. The documents also attempt to show, through examples, that the addition of the "restoration" requirement in the final rule will limit the use of CE 25 to beneficial, noncommercial actions. AR 091662. This illustration of the restoration requirement is found nowhere else in the record, and it is in fact inconsistent with CE 25's plain text, which still allows for commercial logging. AR 091780.

    C.  <u>Applicable Legal Standards</u>

        *1.  The Administrative Record must be broad and inclusive.*

This Court's evaluation of agency decisions is based on the "whole record." 5 U.S.C. § 706; *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The 'whole record' includes everything that was before the agency pertaining to the merits of its decision." *B&B P'ship v. United States*, 133 F.3d 913 (4th. Cir. 1997) (citing *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir.1993)). The whole record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record," but

includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations omitted); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency."); *see also Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008) (finding a complete record includes "all of the documents, memoranda, and other evidence that was considered directly or indirectly by the agency"). Ultimately, to satisfy the requirements of the APA, the Court "should have before it neither more nor less information than did the agency when it made its decisions." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

The whole record must include all materials expressly relied on by the agency to support its decision. *See Appalachian Power Co. v. EPA*, 477 F.2d 495, 507 (4th Cir. 1973), *overruled on other grounds by Union Electric Co. v. EPA*, 427 U.S. 246 (1976); *see also Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79 (D.D.C. 2018) (requiring an agency to include in the record documents "that were cited substantively, *i.e.*, to justify a factual statement or assertion" in the agency's decision document). But the record is not complete without "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (quoting *Bethlehem Steel Corp. v. EPA*, 638 F.2d 994, 1000 (7th Cir. 1980)). "[A]n agency may not skew the record by excluding unfavorable information. . . . Nor may an agency exclude information simply because it did not rely on it for its final decision." *Dist. Hosp. Partners v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013) (citations omitted), *aff'd in relevant part sub nom. Dist. Hosp. Partners v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).

9

This broad, inclusive approach is necessary because an incomplete administrative record is a "fictional account of the actual decisionmaking process." *Portland Audubon,* 984 F.2d at 1548 (internal quotation omitted). With an incomplete record, "the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Id.* It destroys a court's ability to determine whether the agency "failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency"—and thereby acted in an arbitrary and capricious fashion. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### 2. *The deliberative process privilege is qualified.*

Though agencies are generally required to provide the "whole record," they may withhold privileged documents, such as attorney–client communications. Federal agencies also enjoy a narrow, qualified privilege for some materials that reflect internal deliberative processes. "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see Hugler v. Bat Masonry Co.*, No. 6:15-CV-28, 2017 WL 722069, at *2 (W.D. Va. Feb. 22, 2017) ("To successfully invoke the deliberative process privilege, the government must show that the documents are both (1) predecisional and (2) deliberative.").

This narrow privilege "clearly has finite limits." *U.S. EPA v. Mink*, 410 U.S. 73, 87 (1973), *superseded on unrelated grounds by statute*, Pub. L. No. 93-502, 88 Stat. 1561 (1974). First, it only applies to a limited set of materials that, if disclosed, would chill the frank discussion necessary for agency policymaking; it does not allow an agency to exclude whole categories of material from the record. *See id.* at 87–89; *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1090–92 (9th Cir. 2002). Second, the "privilege does not shield documents that

simply state or explain a decision the government has already made or protect material that is purely factual." *In re Sealed Case*, 121 F.3d at 737; *see also City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993). Purely factual material that is severable from otherwise deliberative documents must be produced in redacted copies. *See Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014) (rejecting a claim of privilege where the government did not try to "segregate" factual information).

The Western District of Virginia has recognized that "[t]here are three procedural requirements for assertion of the [deliberative process] privilege: 1) the agency head must assert the privilege after personal consideration; 2) the agency head must state with particularity the information subject to the privilege; and 3) the agency must aver precise and certain reasons for preserving the confidentiality of the requested documents." *Hugler v. Bat Masonry Co.*, No. 6:15-CV-28, 2017 WL 1207847, at *3 (W.D. Va. Mar. 31, 2017) (citation omitted).[4] This process is necessary, in part, to afford "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 231 (1st Cir. 1994) (evaluating an assertion of deliberative process privilege in the Freedom of Information Act context) (quotations omitted); *see also Friends of the Clearwater v. Higgins*, No. 2:20-CV-00243-BLW, 2021 WL 827015, at *8–9 (D. Idaho Mar. 4, 2021) (noting that "judicial review would be severely undermined if agencies could keep information from the court merely by classifying them as deliberative" (citation omitted)). Allowing agencies to withhold purportedly deliberative documents without disclosing those withholdings allows agencies to unilaterally—and wholly in secret—determine what

---

[4] Though *Hugler* is not an APA case, this Court's process still applies because the Forest Service is invoking the same civil law privilege.

constitutes the administrative record, frustrating judicial review of agency actions under the APA. *See Bar MK Ranches*, 994 F.2d at 739 ("An agency may not unilaterally determine what constitutes the Administrative Record.").

This is not a hypothetical concern. For example, in recent litigation over the Secretary of Commerce's decision to include a citizenship question on the 2020 census questionnaire, the district court granted a motion to complete the administrative record, which led "to the inclusion of more than 12,000 pages of internal deliberative materials as part of the administrative record." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019). The district court's role in ensuring the "whole record" was available for judicial review made a material difference in the case—the Supreme Court ultimately found that the agency's action was "incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Id.* at 2575. This is one of many examples of courts relying on internal documents when reviewing agency decisions,[5] including draft decisions, emails, memoranda, and meeting notes because of "a strong interest in fully knowing the basis and circumstances of an agency's decision"; "[t]he process by which the decision has been reached is often mysterious enough without the agency's

---

[5] *See*, *e.g.*, *Defs. of Wildlife v U.S. Dep't of Interior*, 931 F.3d 339, 351–53 (4th Cir. 2019) (analyzing draft guidance and internal email correspondence in the course of APA review); *Native Vill. of Point Hope v. Jewell*, 740 F.3d 489, 499–505 (9th Cir. 2014) (relying on "internal [agency] emails" and "draft scenario[s]"); *Earth Island Inst. v. Hogarth*, 484 F.3d 1123, 1134–35 (9th Cir. 2007) (citing agency "internal memoranda," including "briefing packet" and "talking points"), *aff'd as modified*, 494 F.3d 757 (9th Cir. 2007); *Kent Cty., Del. Levy Ct. v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (ordering the agency to supplement the AR with documents that "relate to the position of the agency's own experts on the question central to this case"); *Inst. for Fisheries Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) ("It is obvious that in many cases internal comments, draft reports, inter– or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision."); *Ohio Valley Envtl. Coal. v. Whitman*, No. CIV.A. 3:02-0059, 2003 WL 43377, at *5 (S.D. W. Va. Jan. 6, 2003) (holding the administrative process "is precisely one of initial proposals, comments, compromise, revisions and final drafts . . . [which] are typically part of the administrative record").

maintaining unnecessary secrecy." *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975).

"[E]ven if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *S. Envtl. L. Ctr. v. Mulvaney*, No. 3:18CV00037, 2019 WL 4674497, at *8 (W.D. Va. Sept. 25, 2019) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *see also Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 359 (2d Cir. 2005) (finding documents may lose deliberative process protection based on "evidence that an agency has *actually* adopted or incorporated by reference the document at issue"). Likewise, when an agency holds out "a protected document as authoritative, it cannot then shield the authority upon which it relies from disclosure." *Brennan Ctr. for Justice at N.Y. Univ. Sch. of L. v. U.S. Dep't of Justice,* 697 F.3d 184, 205 (2d Cir. 2012). Nor may an agency shield "the reasons which . . . supply the basis for an agency policy actually adopted" because "[t]hese reasons, if expressed within the agency, constitute the 'working law' of the agency." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 152–53 (1975) (finding certain memoranda were not privileged because they represented the final opinion or interpretation adopted by the agency).

Furthermore, the deliberative process privilege may be overcome by a showing that the opposing party's interest in the information outweighs the agency's interest in confidentiality. *E.g.*, *In re Sealed Case*, 121 F.3d at 737; *Dairyland Power Co-op. v. United States*, 77 Fed. Cl. 330, 338 (2007); *FTC v. Warner Commc'ns Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (providing factors to consider when evaluating whether the "need for the [deliberative process] materials and the need for accurate fact-finding override the government's interest in non-disclosure").

Thus, the deliberative process privilege is "(1) qualified, (2) not absolute, and (3) discretionary." *Murray Energy Corp. v. McCarthy*, No. 5:14-CV-39, 2015 WL 7017009, at *2 (N.D. W. Va. Nov. 12, 2015) (internal citations omitted). Determining whether the privilege applies therefore requires a document-specific determination.

Courts have taken divergent approaches on when withholding deliberative documents requires the preparation of a privilege log during APA review. Many courts require agencies to submit privilege logs to assert the privilege for any documents withheld from the AR.[6] Others require agencies to prepare privilege logs after the party seeking review demonstrates that the agency failed to include pertinent materials in the AR.[7]

The Fourth Circuit recently followed the latter approach. After determining that documents relied on by the agency were missing from the record, the court granted a motion to complete the administrative record and required the agency to "submit a privilege log in the

---

[6] *See, e.g.*, *Exxon Mobil Corp. v. Mnuchin*, No. 3:17-CV-1930-B, 2018 WL 4103724, at *3 (N.D. Tex. Aug. 29, 2018) (ordering supplementation where the "AR does not account for the privileged materials" withheld); *Pitman v. U.S. Citizenship & Immigration Servs.*, No. 2:17-CV-00166-CW-EJF, 2018 WL 3232355, at *3 (D. Utah July 2, 2018) (requiring a privilege log identifying documents withheld from the AR); *Indigenous Envtl. Network v. U.S. Dep't of State*, No. CV-17-29-GF-BMM, 2018 WL 1796217, at *3 (D. Mont. Apr. 16, 2018) (same); *Batalla Vidal v. Duke*, No. 16CV4756NGGJO, 2017 WL 4737280, at *5 (E.D.N.Y. Oct. 19, 2017) (same); *Ctr. for Food Safety v. Vilsack*, No. 15-cv-01590, 2017 WL 1709318, at *5 (N.D. Cal. May 3, 2017) (same); *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1276 n.10 (D. Colo. 2010) (same); *Nw. Envtl. Advocates v. EPA*, No. 05-1876-HA, 2008 WL 111054, at *4 (D. Or. Jan. 7, 2008) (same); *Greenpeace v. Nat'l Marine Fisheries Serv.*, No. C98-492Z, 2000 WL 343906, at *1–2 (W.D. Wash. Feb. 24, 2000) (same); *Miami Nation of Indians of Ind. v. Babbitt,* 979 F. Supp. 771, 778 (N.D. Ind. 1996) (finding that submitting a record without making "objection with respect to specific documents . . . could be construed as a waiver" of claim to privilege).

[7] *See, e.g.*, *Dist. Hosp. Partners,* 971 F. Supp. 2d at 33 (deferring to an agency's record compilation and not requiring a privilege log where plaintiffs did not rebut presumption of regularity); *W&T Offshore, Inc. v. Jewell*, No. 2:14-CV-02449, 2016 WL 8260549, at *3 (W.D. La. Feb. 23, 2016) (ordering a privilege log after the plaintiff "met its burden of showing that the administrative record is incomplete").

event the Government withholds any documents under the guise of the deliberative process privilege (or any other privilege)." Attached as Exhibit 1. The District of South Carolina followed suit, requiring a federal agency to prepare "a privilege log listing all documents withheld based on a claim of the deliberative process privilege." *S.C. Coastal Conservation League*, 431 F. Supp. 3d 719, 725 (D.S.C. 2020) (noting that "without a privilege log, the Court would have no way to evaluate assertions of privilege and whether documents were improperly excluded from the administrative record").

Other courts have required privilege logs without crafting a general rule on when one must be prepared. The Ninth Circuit has acknowledged that "many district courts within this circuit have required a privilege log and *in camera* analysis of assertedly deliberative materials in APA cases." *In re United States*, 875 F.3d 1200, 1210 (9th Cir.), *rev'd on other grounds*, 138 S. Ct. 443 (2017). The Second Circuit also recently upheld a district court's order compelling a federal agency to produce a privilege log. Attached as Exhibit 2. The court paraphrased the Government as arguing that "in evaluating agency action, a court may only consider materials that the Government unilaterally decides to present to the court, rather than the record upon which the agency made its decision," and rejected that argument because "[a]llowing the Government to determine which portions of the administrative record the reviewing court may consider would impede the court from conducting the 'thorough, probing, in-depth review' of the agency action with which it is tasked." *Id*. (citation omitted). The court also rejected the Government's argument that it need not log documents withheld on deliberative process grounds because "without a privilege log, the District Court would be unable to evaluate the Government's assertions of privilege." *Id*.

15

Conversely, the D.C. and Sixth Circuits have found that deliberative and predecisional documents are not part of the administrative record and do not need to be logged. *See Oceana*, 920 F.3d at 865; *In re U.S. Dep't of Def. & U.S. EPA Final Rule*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016). Some district courts outside of those circuits have also reached that conclusion. *See, e.g.*, *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *21 (D. Md. July 27, 2017).

This Court has not specifically addressed the question, but has recognized that there are instances where "a privilege log might be necessary" to assess agency assertions of deliberative process privilege. *Hugler*, 2017 WL 722069, at *4 n.8 (citing *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, No. 12-MC-100, 2016 WL 7383723, at *3 (D.D.C. Dec. 20, 2016) ("A common practice of agencies seeking to invoke the deliberative process privilege is to establish the privilege through a combination of privilege logs, which identify specific documents, and declarations from agency officials explaining what the documents are and how they relate to the agency decision.")).

### 3. The Court has the authority to compel completion of the record.

When the administrative record submitted by an agency omits documents that were before the agency at the time of its decision, a court may order the agency to refile a complete record. *See, e.g.*, *Portland Audubon*, 984 F.2d at 1548; *Dopico v. Goldschmidt,* 687 F.2d 644, 654 (2d Cir. 1982) (granting discovery as to the completeness of the administrative record). While courts typically afford a presumption of regularity to agency records, *see, e.g.*, *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 334–35 (4th Cir. 2019), this presumption is overcome where movants present "clear evidence . . . demonstrated by a 'strong,' 'substantial,'

or 'prima facie' showing that the record is incomplete," *Tafas*, 530 F. Supp. 2d at 795 (citation omitted).

### 4. Post hoc, post-decisional documents are not part of the record.

For the same reason that the "whole record" must include predecisional nonprivileged records that were before the agency, it must exclude post-decisional records. The APA limits a court's review of agency action to the administrative record before the agency *at the time of its decision*. 5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). Documents postdating the decision are post hoc rationalizations, which cannot justify agency decisions. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) (excluding documents that were not before the agency at the time of its decision from the record).

Courts look to two fact-specific characteristics to determine if a document is a post hoc rationalization: the timing of the document and its substance. First, post hoc documents postdate, and are not contemporaneously provided with, the agency decision. *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a court's inquiry is limited to materials created contemporaneously with an agency's decision-making process); *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012) (disregarding post hoc rationalizations and evaluating EPA's action solely on the agency's stated rationale at the time of decision). The agency reaches its final decision when the responsible decisionmaker has concluded his or her decision-making process. For example, final action for NEPA purposes occurs when a Record of Decision is signed, *WEG v. Salazar*, 880 F. Supp. 2d 77, 90 (D.D.C. 2012), not when it is published in the Federal Register, *cf.* 40 C.F.R. § 1506.6(b)(2).

17

Second, post hoc rationalizations generally reflect new positions taken by agencies not previously included in the contemporaneous decision-making documents, such as a stance taken to defend the decision from expected legal action. *Ohio Valley Envtl. Coal. v. Hurst*, 604 F. Supp. 2d 860, 886 (S.D. W. Va. 2009) (refusing to accept post hoc rationalizations when the same stance was not previously taken in final agency decision documents).

## II.   Argument

### A.   The Forest Service excluded documents relied on as the basis of its decision, confirming the AR is incomplete.

The Forest Service failed to provide a complete AR because it did not include questionnaire responses that it cited and relied upon in support of the final rule. Courts have recognized this precise circumstance as sufficient to overcome the presumption of regularity in an administrative record. *See Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021) (noting that the presumption of regularity is overcome when "the agency has relied on documents not in the record"). This oversight indicates at least a less-than-thorough record compilation.

As noted above, the Forest Service relied heavily on a sample of "previously implemented" decisions to purportedly show that projects of a certain scale routinely are completed without significant adverse impacts. As the Forest Service recognized, however, an agency cannot substantiate a new CE merely by relying on predictive findings, but must also "validate[] the environmental effects (or lack thereof) predicted in the [Environmental Assessment]." AR 000811.

In other words, to rely on "previously implemented" actions, the agency must show that the actions, *as implemented*, did not have significant impacts. As described above, the Forest Service took a sample of its sample of qualifying projects and solicited feedback on that smaller

subset of projects. The questionnaire asked, among other things, whether the project had in fact

been implemented and whether it had caused impacts greater than predicted:

> To obtain information related to implementation and monitoring of the projects . . . USFS personnel on national forests across the U.S., who were familiar with the projects, responded to a questionnaire intended to verify whether observed effects of these implemented projects were consistent with the NEPA analysis.

AR 091612.

These survey responses were at the heart of the Forest Service's conclusion that the

activities covered by the CEs will not have significant environmental impacts. In appendices to

its Supporting Statement, the Forest Service listed the projects for which it claims it received

questionnaire (or "survey") responses. *See, e.g.*, AR 091559 (Table 2, listing Projects Relevant to

CE(d)(12)).

Materials actually discussed or cited by the agency are, perhaps, the most obvious to

include in the AR. *See, e.g.*, *Oceana*, 290 F. Supp. 3d at 79. The AR includes the questionnaire

itself, AR 029849–50, as well as *some* of the survey responses identified in the Supporting Statement appendices. But most of these questionnaire responses are missing:

| CE | Number of Projects with Survey Responses Listed in Supporting Statement Appendices | Number of Corresponding Questionnaire Responses Actually Provided in AR |
|---|---|---|
| (d)(12) | 2 | 0 |
| (e)(3) | 9 | 0 |
| (e)(20) | 9 | 3 |
| (e)(21) | 12 | 3 |
| (e)(22) | 17 | 4 |
| (e)(23) and (24) | 14 | 3 |
| (e)(25) | 19 | 2[8] |

The AR further includes a small number of project or monitoring documents, labeled as questionnaire responses in the index, which were likely attached to questionnaires,[9] but it does not include the corresponding questionnaire response for the large majority of these projects.

When asked to provide the missing questionnaire responses, counsel for the Forest Service responded that they could be found at "[AR 0]30173 and throughout the record with headings under the description column as 'Supporting documents to questionnaire by Region.'" Evans Decl., Exhibit 1 at 2. As reported above, however, most of the questionnaires are in fact missing, even after screening the AR using these and other search terms. The document identified by counsel, AR 030173, is a spreadsheet containing some information pulled from

---

[8] One of the two CE 25 project responses counted here was *not* the actual questionnaire response, but rather an email response stating that the project in question was only partially implemented as of January 2020. AR 090725.

[9] Question 5 of the questionnaire requested that respondents upload or attach any documentation of effects. AR 029849. This batch of documents varies broadly. Some are merely pictures or other documents that lack any identifying information to link to a project, *e.g.*, AR 091819, some are EAs/FONSIs that do not relate to project implementation, and some are documentation of monitoring for projects.

questionnaire responses, but only for projects in the special use category,[10] and it does not provide the context that the full responses do. For example, a project reported as partially implemented would appear in the spreadsheet without qualification as a "y" (presumably meaning "yes") in the "implemented?" column. But partial implementation is not full implementation, and which portion of the project has been implemented is relevant to the question of whether the Forest Service appropriately relied on that project in substantiating its decision that similar projects would not have significant effects. *See* discussion of AR 029931–33, *infra*. That is to say, context matters for these projects, and the responses themselves are necessary to accurately assess their relevance and whether they support the agency's decision.

Conservation Groups and this Court must be able to view *all* questionnaires relied on in developing the rule to assess whether they support the Forest Service's conclusions. These questionnaires were not only before the agency when it made its decision—they were expressly relied on by the Forest Service. Indeed, to support the agency's conclusion, these survey results were (very charitably) characterized by the Forest Service. For example, for CE 25, which allows commercial logging projects, the Forest Service reported:

> Twenty-three . . . projects were subject to additional review through the questionnaire. . . . Two forests stated their projects had not been implemented and two forests did not respond. For the 19 projects identified in Appendix C1 that provided survey responses, respondents indicated that the effects were not more intense or substantial than predicted in the EA, DN, and FONSI.

---

[10] It is not at all clear that the spreadsheet corresponds to questionnaire responses. The spreadsheet lists 8 of the 9 projects with survey responses purportedly used to substantiate CE 3 but none of those responses are provided in the AR. The spreadsheet also lists one project that has a survey response used to substantiate CE 22. The remaining responses summarized in the spreadsheet are either not listed in the Appendices at all or are listed as "other projects" for which the survey response was not expressly relied on to substantiate the CE.

AR 091612–13. To be clear, the agency claimed, based on the responses received for the 19 projects marked as having surveys in Appendix C1, AR 091592–99, that the projects had in fact been implemented and that their effects were not more significant than predicted in the project decision documents.

For the only two of those 19 projects for which some kind of response was provided in the AR, however, the actual responses show that the Forest Service did not tally its results accurately. One project was not fully implemented, and the respondent did not provide information of actual versus predicted effects based on monitoring. *See* AR 090725 (email discussing the Mower Tract Project). The other project was only partially implemented, and it *did* show more significant impacts than predicted. AR 029931–33. Based on the available information, furthermore, it does not appear that the relevant portion of the project (the actual timber harvest) had been implemented when the questionnaire was returned. *Id.* Neither of these survey responses, therefore, establish what the Forest Service claimed—that projects were completed, monitored, and showed actual effects consistent with predicted effects.

This example illustrates why it is necessary that Conservation Groups and this Court have access to the "whole record" on which the decision was made, in accordance with the APA, not just parts of it. Further, the omission of these documents from the AR as originally filed confirms that the Forest Service failed to conduct an effective search. Counsel has already had to supplement the record with a key document that was left out, ECF No. 44-2, and is likely to have to provide further supplementation.[11] *See Nat. Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 291–92 (D.C. Cir. 1975) (ordering completion of record where plaintiffs "made a substantial showing . . . that the Administrator had not filed the entire administrative record with the court").

---

[11] *See* n.2, *supra*.

Plaintiffs request that the Court order the Forest Service to complete the AR and direct the agency to include all information relied on in the Supporting Statement, including the missing questionnaires.

   B. <u>Documentation of input from key agency experts and CEQ must be included in the record.</u>

As noted above, the Forest Service expressly relied on the participation of the "key agency experts" listed in various appendices, claiming that changes in the final rule were attributable to their input. AR 093271, 093289, 091565, 093316, 091589, 093326, 091602. The AR does not include any record of such input or how it influenced the agency's decision. When asked about these records, counsel for the Forest Service pointed to a summary of input from four *other* agency staff, Evans Decl., Exhibit 1 at 2, in which those four staff persons addressed a limited set of "assigned comments" related to narrow issues. AR 090986–1010. This document appears to be the "group of scientists from the Rocky Mountain Research Station" convened after the public comment period "to analyze the body of literature submitted in public comments" specific to CE 25. AR 091604. When asked again about the rest of the supposedly substantial input of the experts on which the Forest Service has expressly relied, counsel explained that these "additional documents are not included because they are not part of the administrative record." Evans Decl., Exhibit 1 at 4.

The input of the "key agency experts" must be provided because it is expressly relied on by the Forest Service. *Appalachian Power Co.*, 477 F.2d at 507 (requiring record to include expert opinions on which EPA relied at the time of the decision). Again, the Forest Service stated, among other things, that these experts "provided input that informed changes to the CE in the final rule." AR 093326. Furthermore, if the input of the specialists listed as "key agency experts" in the appendices is deliberative, certainly the input of the other four agency staff is just

as deliberative. The Forest Service cannot be allowed to cherry-pick which scientists' input it will let the Court see. The AR must include *all* the evidence before the agency—both the information that the agency believes substantiates its choices and the evidence that cuts against them. *Dist. Hosp. Partners*, 971 F. Supp. 2d at 20. The failure to include these materials also underscores the importance of requiring a privilege log in this case, as discussed below. The Forest Service may not unilaterally determine which deliberative records it wants the Court to see, and which ones it does not. *See Bar MK Ranches*, 994 F.2d at 739 ("An agency may not unilaterally determine what constitutes the Administrative Record.").

Without inclusion of these key agency experts' input, the Court can give no weight to the agency's reliance on such input. *See Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 975 (S.D. Ill. 1999) (finding a CE was arbitrary and capricious because the Forest Service relied on a claim of "expertise and prior experience with timber sales having 'these characteristics'" without more evidence). Substantiation of a CE requires something more than merely stating that smart people were involved in an undisclosed manner.

Similarly, the Forest Service relied on input from CEQ to determine the scope and the contents of the final rule. AR 091550, 091769, 093267. Yet no records of CEQ's input or how it was used to develop the final rule appear in the AR. When asked about this omission, opposing counsel indicated his position that these records were excluded because they are deliberative. Evans Decl., Exhibit 1 at 2. Like the key agency experts' input, however, the input from CEQ was in fact relied on by the Forest Service—which should not be surprising. This rulemaking was CEQ's first opportunity to apply its overhauled regulations to another agency's procedures. The application of those rules through consultation between the agencies constitutes the development of "working law," which cannot be hidden away as deliberative. *NLRB*, 421 U.S. at

24

152–53. The public (and the Court) is "vitally concerned" with understanding how the new CEQ

regulations actually influenced the development of the Forest Service's procedures, especially

where Conservation Groups have claimed that the application of those regulations violated the

NEPA statute. *See id.*

    C.  <u>The agency must produce a privilege log.</u>

      To prevent the Forest Service from unilaterally curating its administrative record, the

Court must require the agency to prepare a privilege log of documents withheld under the

deliberative process and other privileges. Without such a log, the Court has "no way to evaluate

assertions of privilege and whether documents were improperly excluded from the administrative

record." *S.C. Coastal Conservation League*, 431 F. Supp. 3d at 725.

      Conservation Groups asked the Forest Service to include certain omitted materials in a

revised AR or to log the withheld materials in a privilege log. Evans Decl., Exhibit 1 at 2. The

Forest Service refused, stating: "We are not including deliberative documents in the

administrative record and are not providing a privilege log." Evans Decl., Exhibit 1 at 2.[12] The

agency then cited two cases it claimed supported its position: *Oceana, Inc. v. Ross*, 920 F.3d 855,

865 (D.C. Cir. 2019), and *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86

(2021). Evans Decl., Exhibit 1 at 2.

      Yet the Forest Service *did* include some deliberative documents in the AR—it just

cherry-picked which ones. For example, the agency included a "briefing paper document[ing] the

---

[12] This alone is sufficient to overcome any presumption of regularity. *See Ctr. for Biological Diversity v. Bernhardt,* No. CV 19-109-M-DLC, 2020 WL 1130365, at *3 (D. Mont. Mar. 9, 2020) (overcoming the presumption of completeness "is not a tall order where, as here, Federal Defendants . . . [acknowledge] that they have failed to include deliberative documents."); *Ctr. for Food Safety*, 2017 WL 1709318, at *3 (finding that "the presumption of completeness is rebutted" by Defendants' concession that deliberative and other allegedly privileged documents were excluded from the record).

Agency's consideration of [a report submitted by the public] in relation to its ongoing NEPA rulemaking." AR 091481–501. The document includes internal agency notes and is labeled in bold, red letters: "DELIBERATIVE, PRE-DECISIONAL, FOR INTERNAL COORDINATION ONLY." AR 091481. The Forest Service also included an internal memorandum related to "receiv[ing] a determination from CEQ that the final rule is in conformity with NEPA and CEQ's regulations." AR 091480 (attached as Exhibit 3). The document is also labeled in bold, red letters: "DELIBERATIVE, PRE-DECISIONAL, FOR INTERNAL COORDINATION ONLY." *Id.* Yet another document clearly labeled as a deliberative and pre-decisional draft is found at AR 091529–35.

Evidently the agency gathered deliberative materials in its search and unilaterally elected to include some documents in the AR while excluding others. If agencies were allowed to prune the record in this way—by selectively relaxing the deliberative process privilege when it suits them and stonewalling any attempt to investigate other withheld documents—it "would invite all manner of mischief." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2018 WL 1210551, at *6 (N.D. Cal. Mar. 8, 2018) ("As a practical matter, if agencies were permitted to withhold materials from the administrative record on the basis of privilege, but were not required to submit a privilege log, their withholding based on privilege would never surface and would wholly evade review."). Such cherry-picking results in a skewed record that does not reflect the "whole record" as required by the APA. 5 U.S.C. § 706.

Additionally, the cases cited by the Forest Service do not support its position. To the contrary, *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, explains why a privilege log is necessary in this instance. 141 S. Ct. 777, 783 (2021). In *Sierra Club*, the Supreme Court evaluated whether a specific draft Fish and Wildlife Service document qualified for the

deliberative process privilege and could be withheld from production in response to a Freedom of Information Act request. *Id.* at 785. The court's analysis turned on application of the privilege *to the specific document. Id.* at 786–88. That is precisely the opportunity the Forest Service is denying this Court by refusing to tell the Court or Conservation Groups what documents it is withholding under the deliberative process privilege. *Sierra Club* stands for the proposition that the courts are the ultimate arbiter of what qualifies for deliberative process withholdings—not agencies—which necessitates production of a privilege log when agencies withhold documents under the deliberative process privilege.

*Oceana, Inc. v. Ross* is a nonbinding, out-of-circuit decision. While the D.C. Circuit Court of Appeals upheld the district court's denial of a motion to compel under the abuse of discretion standard, the proceedings before the district court notably included the filing of "an administrative record . . . [including] an index of withheld privileged documents, classifying the documents as withheld because of Attorney-Client Privilege, Attorney Work Product, [or] Deliberative Process Privilege." 920 F.3d at 860. Moreover, the court noted multiple instances where the district court would be justified in requiring further explanation of the administrative record, including where "redactions may have obscured 'factual information not otherwise in the record,' . . . or where the agency improperly supplemented the record with 'post hoc rationalizations' supporting its actions . . . or where a 'substantial showing' was made that the record was incomplete." *Id.* at 865 (citations omitted). Conservation Groups clear that threshold.

Provision of a privilege log is also necessary because the deliberative process privilege "is a qualified one." *Tafas*, 530 F. Supp. 2d at 800. Conservation Groups have no opportunity to overcome the privilege if they are not informed as to what is being withheld. The Forest

Service's refusal to disclose what documents it is withholding converts the "qualified" privilege into a categorical one that cannot be questioned or reviewed by any group or court.

Litigation under the Freedom of Information Act ("FOIA") provides a useful parallel that underscores the need for a privilege log here. Like APA cases, agencies may sometimes withhold responsive documents under FOIA when those documents qualify for the deliberative process privilege. But agencies are not given unilateral authority to make those determinations. As this Court has recognized, withholding documents under the deliberative process privilege in the FOIA context requires provision of a "'Vaughn index' [which] identifies each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *S. Envtl. L. Ctr. v. Council on Envtl. Quality*, 507 F. Supp. 3d 694, 698 n.1 (W.D. Va. 2020) (citation omitted). There is no reason that an agency should have to justify its deliberative process withholdings via a Vaughn index in the FOIA context but be allowed to withhold those same documents from the administrative record in frequently higher-stakes APA litigation without telling *anyone*.

To be sure, some deliberative documents may have been properly withheld from the agency's AR here. But if that privilege applies, "the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege" so that it may be challenged by Plaintiffs and assessed by the Court. *Inst. for Fisheries Res*, 2017 WL 89003, at *1. To ensure judicial review occurs on the basis of the "whole record," Conservation Groups must have the right to challenge the agency's invocation of the deliberative process privilege, and thus request that the Forest Service be ordered to file a privilege log.

D. <u>Post hoc, post-decisional documents should be struck from the AR</u>

As explained above, *supra* pp 5–6, the Forest Service prepared several documents in an apparent response to a letter sent by Conservation Groups' counsel after the rule was finalized, which indicated Conservation Groups' intent potentially to challenge the Forest Service rule on the basis that it was not provided to the public for "conformity" review pursuant to the requirements of 40 C.F.R. § 1507.3(b)(2). AR 09551, 091552–54, 09555–58, 091635–66.

These documents should be struck from the AR as post hoc documents attempting to rationalize agency decisions already made. First, the documents could not have been considered "directly or indirectly" by the decisionmaker because they postdate the decision. *See Thompson*, 885 F.2d at 555. Second, the documents contain novel rationales. They attempt to show that the final rule would be consistent with either the 2020 revised regulations or the original 1978 regulations. This rationale therefore attempts to show that conformity review by the public would not have been necessary—a defense prepared after the decision and in anticipation of litigation. Third, inclusion of the documents is prejudicial to Conservation Groups because the Forest Service failed to consider the issue they raised while the decision was still open, at which time it might have changed the agency's decision. Had the agency offered the rule for public conformity review, Conservation Groups could have raised serious concerns with the revised rule's conformity with the CEQ rule and its implications for the CEQ rule's consistency with the NEPA statute. Instead, the agency now attempts to backfill its reasoning. These post hoc rationalizations attempting to gird a decision already made should be struck from the AR.

## III.   <u>Conclusion</u>

For the foregoing reasons, Conservation Groups ask the Court to order Defendant Forest Service to complete the AR as follows: (1) include all records of questionnaires, surveys, and responses related to past projects; (2) include all records of input from agency scientists or

experts; (3) include all records of input from CEQ applying CEQ's regulations to the Forest

Service rulemaking and records of how that input shaped the final rule; (4) file with the Court a

log of records that were considered, directly or indirectly, by the Forest Service but excluded

from the record, describing the basis for the asserted privilege with respect to each document;

and (5) strike post-decisional documents (AR 091635–66) from the record.

Respectfully submitted this the 22nd day of July, 2021

/s/ Sam Evans
Sam Evans
N.C. Bar No. 44992
Julie Reynolds-Engel
N.C. Bar No. 54596
J. Patrick Hunter
N.C. Bar No. 44485
SOUTHERN ENVIRONMENTAL LAW CENTER
48 Patton Ave, Suite 304
Asheville, NC 28801-3321
Telephone: 828-258-2023
Facsimile: 828-258-2024
sevans@selcnc.org; jreynolds-engel@selcnc.org;
phunter@selcnc.org

/s/ Kristin Davis
Kristin Davis
V.A. Bar No. 85076
Spencer Gall
V.A. Bar No. 95376
SOUTHERN ENVIRONMENTAL LAW CENTER
201 West Main Street, Suite 14
Charlottesville, VA 22902-5065
Telephone: 434-977-4090
Facsimile: 434-977-1483
kdavis@selcva.org; sgall@selcva.org

**CERTIFCATE OF SERVICE**

I certify that on July 22, 2021, I electronically filed the foregoing BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND STRIKE NONRECORD MATERIAL with the Court using the CM/ECF system, which will notify all counsel of record.

*/s/ Sam Evans*
Sam Evans
Southern Environmental Law Center