# EXHIBIT 2

E.D.N.Y.-Bklyn
16-cv-4756
17-cv-5228
Garaufis, J.
Orenstein, M.J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of December, two thousand seventeen.

Present:

> Barrington D. Parker,
> Gerard E. Lynch,
> Christopher F. Droney,
> > *Circuit Judges*.

| | |
|---|---|
| In re Kirstjen M. Nielsen, Secretary of Homeland Security, | 17-3345 |
| *Petitioner*.* | |

Petitioner Kirstjen M. Nielsen, the Secretary of the Department of Homeland Security, seeks a writ of mandamus to stay discovery orders entered by the District Court that required the Government (1) to supplement the administrative record it filed with the District Court and (2) to file a privilege log, in litigation challenging the decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program.

Upon due consideration, it is hereby ORDERED that the mandamus petition is DENIED, and the stay of the District Court's discovery orders is LIFTED. Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). To be entitled to mandamus relief, a petitioner must show (1) that it has "no other adequate means to obtain the relief [it] desires," (2) that "the writ is appropriate under the circumstances," and (3) that the "right to issuance of the writ is clear and indisputable." *In re Roman Catholic Diocese of Albany, Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (quoting *Cheney*, 542 U.S. at 380–81). We have "expressed reluctance to issue writs of mandamus to overturn discovery rulings," and will do so only "when a discovery question is of extraordinary significance or there is an extreme need for reversal of the district court's mandate before the case goes to judgment." *In re City of New York*, 607 F.3d 923, 939 (2d Cir. 2010) (internal quotation marks omitted). "Because the writ of mandamus is such an extraordinary remedy, our analysis of whether the petitioning party has a

---

* In accordance with Fed. R. App. P. 43(c)(2), the Clerk of Court is directed to amend the caption as set forth above.

clear and indisputable right to the writ is necessarily more deferential to the district court than our review on direct appeal," *Linde v. Arab Bank, PLC*, 706 F.3d 92, 108–09 (2d Cir. 2013) (internal quotation marks omitted), and the writ will not issue absent a showing of "a judicial usurpation of power or a clear abuse of discretion," *In re City of New York*, 607 F.3d at 943 (emphasis omitted) (internal quotation marks omitted).

The Government argues that it cannot be ordered (1) to supplement its administrative record or (2) to produce a privilege log for materials withheld from the record. With respect to the Government's first argument, the Government's position appears to be that in evaluating agency action, a court may only consider materials that the Government unilaterally decides to present to the court, rather than the record upon which the agency made its decision. To the contrary, judicial review of administrative action is to be based upon "the full administrative record that was before the Secretary at the time [s]he made [her] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The [Administrative Procedure Act ("APA")] specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) Allowing the Government to determine which portions of the administrative record the reviewing court may consider would impede the court from conducting the "thorough, probing, in-depth review" of the agency action with which it is tasked. *Overton Park*, 401 U.S. at 415.[1]

We have previously held that whether the complete record is before the reviewing court "may itself present a disputed issue of fact when there has been no formal administrative proceeding." *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982). This is particularly true in a case like the one before us "where there is a strong suggestion that the record before the Court was not complete." *Id.* In such a situation, a court must "permit[] plaintiffs some limited discovery to explore whether some portions of the full record were not supplied to the Court." *Id.*

Plaintiffs in the District Court have identified specific materials that appear to be missing from the record. For example, in her memorandum terminating DACA, then-Acting Secretary Elaine C. Duke indicated that "[United States Citizenship and Immigration Services] has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the [original DACA] memorandum, but still had his or her application denied based solely upon discretion." Elaine C. Duke, *Memorandum on Rescission of Deferred Action for Childhood Arrivals (DACA)*, Dep't of Homeland Security (Sept. 5, 2017), https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca. Presumably, then-Acting Secretary Duke based this factual assertion upon evidence, yet that evidence is not in the record filed in the District Court. Additionally, in parallel litigation challenging the repeal of DACA in

---

[1] In arguing for a different rule, the Government cites language from *Florida Power* indicating that the "task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." 470 U.S. at 743–44 (citation omitted). However, the Government takes this language out of context. The *Florida Power* Court used this language in explaining that, ordinarily, additional factfinding in the District Court is inappropriate; the Court did not suggest that the Government may prevent a reviewing court from considering evidence that the agency considered by not filing that evidence as part of the administrative record in the reviewing court. *Id.* at 743–45.

the Northern District of California in which the Government filed the same administrative record, the District Court—following *in camera* review of documents considered during the repeal of DACA but not included in the record filed with the court—concluded that 48 of those documents were not subject to privilege. *See* Statement of District Court in Response to Application for a Stay at 3, *In re United States*, 583 U.S. ___, 2017 WL 6505860 (Dec. 20, 2017) (No. 17-801); *see also Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, Nos. C 17-05211, C 17-05235, C 17-05329, C 17-05380, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017). Also, as the Supreme Court pointed out, nearly 200 pages of the 256 page record submitted to the District Court consist of published opinions from various federal courts. *In re United States*, 2017 WL 6505860, at *1. It is difficult to imagine that a decision as important as whether to repeal DACA would be made based upon a factual record of little more than 56 pages, even accepting that litigation risk was the reason for repeal. Accordingly, "there is a strong suggestion that the record before the [District Court] was not complete," entitling the plaintiffs to discovery regarding the completeness of the record. *Dopico*, 687 F.2d at 654.

The Government also argues that it should not be required to produce a privilege log of documents that it withheld from the record on the basis of privilege because disclosure would "'probe the mental processes' of the agency." Full Pet. For Mandamus 22 (quoting *United States v. Morgan*, 304 U.S 1, 18 (1938)). First, while it is true that "review of deliberative memoranda reflecting an agency's mental process . . . is usually frowned upon, in the absence of formal administrative findings"—*e.g.*, in the case of "[a] nonadjudicatory, nonrulemaking agency decision"—"they may be considered by the court to determine the reasons for the decision-maker's choice." *Suffolk v. Sec'y of the Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977) (citations omitted). Thus, the possibility that some documents not included in the record may be deliberative does not necessarily mean that they were properly excluded. Second, without a privilege log, the District Court would be unable to evaluate the Government's assertions of privilege. *See Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 333 (2d Cir. 1977) (finding no abuse of discretion in District Court refusal to compel disclosure *after* it reviewed documents *in camera* and concluded they were protected by deliberative privilege).[2]

We are unpersuaded by the Government's argument that compliance with the orders would be overly burdensome due to the scope of the documents that it must review to comply with the District Court's order and the protracted timeline allowed for compliance. Administrative records, particularly those involving an agency action as significant as the repeal of DACA, are often quite voluminous. *See, e.g.*, *Georgia ex. rel. Olens v. McCarthy*, 833 F.3d 1317, 1320 (11th

---

[2] We express no opinion at this juncture as to whether discovery is appropriate in connection with plaintiffs' non-APA claims. We note, however, that even if the Government were correct that a deliberative privilege prevents discovery with respect to the APA claims, the Government could not rely on such privilege to avoid all discovery with respect to plaintiffs' constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 604 (1988) (holding that in the context of a suit against the Central Intelligence Agency, "the District Court has the latitude to control any discovery process which may be instituted so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission."); *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the [deliberative process] privilege as a shield.").

Cir. 2016) (noting that the administrative record "is more than a million pages long"); *Chem. Mfrs. Ass'n v. U.S. EPA*, 870 F.2d 177, 184 (5th Cir. 1989) (noting that the administrative record was 600,000 pages). Moreover, in order to accommodate the Government's concerns, the District Court three times modified the magistrate judge's discovery order, the first time by extending the deadline, the second time by limiting the order's scope to documents before the Department of Justice and the Department of Homeland Security, and the third time by limiting it to documents considered by then-Acting Secretary Duke or Attorney General Jefferson B. Sessions or their "first-tier subordinates—i.e., anyone who advised them on the decision to terminate the DACA program." *Batalla Vidal v. Duke***,** Nos. 16 CV 4756, 17 CV 5228, 2017 WL 4737280, at \*5 (E.D.N.Y. Oct. 19, 2017). At oral argument, the Government conceded that the number of documents covered by the order, as modified, is approximately 20,000, a far smaller number than the Government's papers led this Court to believe. We are satisfied that under the circumstances, compliance with the District Court's order would not be an undue burden on the Government.

We have been particularly attentive to the Supreme Court's recent opinion granting certiorari and remanding to the District Court in parallel litigation in the Northern District of California. *See In re United States*, 2017 WL 6505860. Contrary to the Government's argument, however, we conclude that that decision does not strengthen the Government's position in the matter before this Court, because the posture of this case in the District Court here, and the orders issued by the District Court in this matter, are significantly distinguishable from those in the California case. Further, the Supreme Court did not decide the merits of the discovery dispute, instead remanding to the District Court to first resolve the Government's threshold arguments "that the Acting Secretary's determination to rescind DACA is unreviewable because it is 'committed to agency discretion,' 5 U.S.C. § 701(a)(2), and that the Immigration and Nationality Act deprives the District Court of jurisdiction." *Id.* at \*2. In the case before this court, the District Court has already considered and rejected these threshold arguments. *Batalla Vidal v. Duke*, No. 16 CV 4756, 2017 WL 5201116, at \*9, 13 (E.D.N.Y. Nov. 9, 2017). Of course, as the Supreme Court pointed out, the Government has the right to ask the District Court to certify its ruling for interlocutory appeal under 28 U.S.C. § 1292(b), and has announced its intention to do so. While we decline to reserve decision on this petition while the Government pursues an interlocutory appeal, it may be prudent for the District Court to stay discovery pending the resolution of such proceedings. *See In re United States*, 2017 WL 6505860, at \*2.

We acknowledge that the Supreme Court noted that "[t]he Government makes serious arguments that at least some portions of the District Court's order are overly broad." *Id*. However, in the case pending in the Northern District of California, the District Court's discovery order applied to documents considered by persons "anywhere in the government," *id.*, which appears to include White House documents, creating possible separation of powers issues not at issue in this case, *see Cheney*, 542 U.S. at 382 ("[S]eparation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the President or the Vice President.") The California order also appears to cover a far larger universe of documents than the contested orders before this Court. In contrast, here, the District Court's order covers only documents considered by then-Acting Secretary Duke and Attorney General Sessions, as well as their first-tier subordinates. The order thus does not encompass White House documents, and, as noted above,

4

the number of officials whose files would be reviewed, and the number of documents that would be involved in that review, would be dramatically fewer than in the case before the Supreme Court.

The Supreme Court also indicated that "the District Court may not compel the Government to disclose any document that the Government believes is privileged without first providing the Government with the opportunity to argue the issue." *In re United States*, 2017 WL 6505860, at *2. The District Court here has required only a privilege log, and has not ordered the production of any documents over which the Government asserts privilege. The order thus plainly contemplates an orderly resolution of any claims of privilege, and we are confident that the District Court will provide the Government with an opportunity to be heard on any claims of privilege it may assert.

We have considered Petitioner's additional arguments and find no basis for the extraordinary remedy of mandamus relief. Accordingly, the petition is DENIED, and the stay of the District Court's discovery orders is LIFTED.

                                                FOR THE COURT:
                                                Catherine O'Hagan Wolfe, Clerk of Court