# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

THE CLINCH COALITION, *et al.*,               )
                                       )
    Plaintiffs,                                )
                                       )
v.                                            )
                                       )   Case No. 2:21-cv-0003-JPJ-PMS
THE UNITED STATES FOREST                      )
SERVICE, *et al.*,                            )
                                       )   **MEMORANDUM OPINION**
    Federal Defendants,                        )
                                       )
    and                                        )
                                       )
AMERICAN LOGGERS COUNCIL, *et al.*            )
                                       )
    Intervenor Defendants.                     )

## I.    Background

The plaintiffs[1] bring this action pursuant to the judicial review provisions of the Administrative Procedure Act, ("APA"), 5 U.S.C. §§ 701-706, against the defendants. The plaintiffs seek certain declaratory and injunctive relief in connection with a final rule implemented by the United States Forest Service,[2] ("Forest Service"

---

[1] The plaintiffs in this case are various conservation groups, including The Clinch Coalition; Alliance for the Shenandoah Valley; Chattooga Conservancy; Cherokee Forest Voices; Defenders of Wildlife; Georgia ForestWatch; Mountaintrue; Virginia Wilderness Committee; and Wild Virginia, Inc.

[2] The Forest Service is a federal agency within the United States Department of Agriculture, which is charged with stewarding nearly 193 million acres of publicly owned forests and grasslands throughout the country, including 4.3 million acres in six national forests in the Southern Appalachians. It is required to manage national forests for their "multiple use" including outdoor recreation, range, timber, watershed, wildlife and fish and wilderness. *See* 16 U.S.C. §§

-1-

or "Agency"), as well as portions of the Council on Environmental Quality's, ("CEQ"),[3] National Environmental Policy Act, ("NEPA"),[4] regulations.

This matter is before the undersigned magistrate judge on the plaintiffs' Motion To Compel Completion Of The Administrative Record And Strike Nonrecord Material, (Docket Item No. 47) ("Motion"), on referral pursuant to 28 U.S.C. § 636(b)(1)(A). The defendants[5] have filed a response to the Motion, to which the plaintiffs have replied.  None of the parties has sought a hearing on the Motion. Therefore, the Motion is ripe for disposition. According to the plaintiffs, defendant Forest Service failed to provide the complete administrative record, ("AR"), it considered in issuing the final rule at issue and included some materials that should be stricken from the record.  The defendants oppose the Motion, arguing that the AR is complete. Based on the arguments and representations of counsel, and the evidence provided to the court, the Motion is granted in part and denied in part.

On November 19, 2020, the Forest Service finalized a rule for NEPA compliance, ("Final Rule"), with the stated goal of "increas[ing] the pace and scale of forest and grassland management operations on the ground," 84 Fed. Reg. 27,544, 27,550 (June 13, 2019), by "reduc[ing] costs and time spent on environmental

528, 529, 1604(e).

[3] The CEQ is the federal agency responsible for overseeing the implementation of the National Environmental Policy Act. *See* 42 U.S.C. § 4344(4).

[4] NEPA is a federal environmental law that promotes the enhancement of the environment. *See* 42 U.S.C. §§ 4321 *et seq.*

[5] The defendants are the Forest Service; James E. Hubbard, Under Secretary for Natural Resources & Environment of the United States Department of Agriculture; CEQ; and Mary Neumayr, Chair of the CEQ. The intervenor defendants are American Loggers Council; American Forest Resource Council; and Federal Forest Resource Coalition.

analysis," 85 Fed. Reg. 73,620, 73,629 (Nov. 19, 2020). NEPA requires every federal agency action with significant environmental impacts to first be analyzed in an Environmental Impact Statement, ("EIS"), describing the project's impacts in detail and comparing them to the impacts of alternatives. *See* 42 U.S.C. § 4332(C). If the significance of the impacts is uncertain or if there are unresolved conflicts over alternative uses of agency resources, the agency may first prepare an abbreviated document known as an Environmental Assessment, ("EA"), which also describes impacts and alternatives. *See* 40 C.F.R. § 1501.5 (2020). The EA is used to determine whether preparation of a full EIS is necessary. Otherwise, an agency may issue a Finding of No Significant Impact, ("FONSI"). *See* 40 C.F.R. § 1501.6 (2020). As part of the EA process, agencies often make changes to projects or commit to mitigation to avoid significant impacts and thereby avoid the need to prepare an EIS and enable them to justify their FONSI. An EIS or EA must be vetted by the public before a decision is made. Even for projects that ultimately are deemed to have no significant impact, and are authorized with an EA and FONSI, NEPA requires agencies to "study, develop, and describe appropriate alternatives" for "any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(E); 40 C.F.R. § 1501.5(c)(2) (requiring consideration of alternatives in EAs).

Site-specific Forest Service actions are subject to NEPA. *See* 36 C.F.R. § 220.4(a) (2020). The Forest Service may avoid preparing an EIS or EA only if its proposal falls within a categorical exclusion, ("CE"). *See* 36 C.F.R. § 220.7(a) (2020). CEs are intended for small, insignificant and routine actions that categorically do not have significant impacts no matter where they occur. Unlike projects authorized using an EIS or EA, CEs do not require that site-specific analysis

of impacts be made available to the public for comment or that the agency consider alternatives. By creating or expanding CEs, an agency removes procedural safeguards from entire classes of action.

For decades, CEQ's NEPA regulations prohibited development of new CEs unless the CE-developing agency showed that covered actions would not "individually or cumulatively" cause significant impacts. 40 C.F.R. § 1508.4 (1978). Accordingly, CEs were limited to small, insignificant and routine actions. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1027 (9th Cir. 2007) (enjoining Forest Service from using CE). However, CEQ's 2020 revisions to its NEPA regulations, challenged in relevant part in this suit, purport to allow development of CEs for actions that do not "normally" cause significant impacts. 40 C.F.R. § 1508.1(d) (2020). CEQ's NEPA implementing regulations prohibit other agencies from adopting final procedures under NEPA without first offering both CEQ and the public an opportunity to review the draft procedures for conformity with CEQ's regulations. *See* 40 C.F.R. § 1507.3(b)(2) (2020). The plaintiffs claim that the Forest Service is entitled to no deference in its interpretation of NEPA. *See United Keetoowah Band of Cherokee Indians in Okla. v. FCC*, 933 F.3d 728, 738 (D.C. Cir. 2019) (finding no deference owed to FCC's interpretations of NEPA, which primarily was administered by CEQ).

On January 3, 2018, the Forest Service published an advance notice of proposed rulemaking related to its NEPA procedures, seeking, among other things, comment related to the development of new CEs. The Agency's stated goal was to "complete more projects" by "increasing efficiency of environmental analysis." 83 Fed. Reg. 302 at 302 (Jan. 3, 2018). The plaintiffs offered two separate sets of

comments on the notice.  On December 21, 2018, the President ordered the Secretary of Agriculture to "develop[] and us[e] new categorical exclusions to implement active management of forests…."  Executive Order 13855, 84 Fed. Reg. 45 at 47 (Dec. 21, 2018). On June 13, 2019, the Forest Service published its notice of proposed rulemaking, including several changes to its NEPA procedures, such as the creation or expansion of a number of CEs. *See* 84 Fed. Reg. 27,544 (June 13, 2019). The Proposed Rule included a CE that would have allowed up to 4,200 acres of logging, and, although it was styled as a "restoration" CE, *see* 84 Fed. Reg. at 27,549, it would have allowed timber harvesting for any purpose, including commercial timber production. The CE also would have covered up to a half-mile of permanent road construction and 2.5 miles of temporary road construction to access timber. Another proposed CE would have authorized up to five miles of road construction for any purpose. *See* 84 Fed. Reg. at 27, 548. An existing CE for special-use permits was proposed to be expanded. The previous special-use CE allowed only "minor" special uses affecting up to five acres, but the proposed CE would have allowed any special use up to 20 acres. *See* 84 Fed. Reg. at 27, 547-48. The bulk of the Forest Service's analysis was based on past projects completed using an EA and FONSI. The Agency sampled 68 projects it considered relevant to the "restoration" CE, 55 projects related to the road management CE and 62 projects related to expansion of the special-use CE. The plaintiffs responded to the Proposed Rule during the allotted 60-day public comment period.

On January 10, 2020, five months after the opportunity for public comment on the Forest Service's Proposed Rule closed, CEQ issued its own proposed rule, overhauling the framework of NEPA regulations applicable to all agencies.  *See* 85 Fed. Reg. 1,684 (Jan. 10, 2020).  CEQ's new rule was published on July 16, 2020,

with an effective date of September 14, 2020. *See* 85 Fed. Reg. at 43,304 (July 16, 2020).  In addition to other changes, the CEQ rule changed the standard applicable to developing new CEs.  Specifically, under prior law, a CE was defined as "a category of actions which do not *individually or cumulatively* have a significant effect on the human environment." 40 C.F.R. § 1508.4 (1978) (emphasis added). Under CEQ's new rule, a CE is defined as "a category of actions that … *normally* do not have a significant effect on the human environment." 40 C.F.R. § 1508.1(d) (2020) (emphasis added).

Thereafter, the Forest Service offered CEQ, but not the public, an opportunity to review its Proposed Rule for conformity with the applicable regulations under 40 C.F.R. § 1507.3(b)(2) (2020). The Final Rule was published on November 19, 2020, without further opportunity for public review. While this Final Rule finalized new and expanded CEs for logging, road construction and special uses, *see Nat'l Envt'l Policy Act Compliance*, 85 Fed. Reg. 73,620 (Nov. 19, 2020), it abandoned some of the changes in the Proposed Rule "[i]n light of CEQ's revised regulations." 85 Fed. Reg. at 73,621. Relying on CEQ's new standard for creating new CEs, the Forest Service concluded that its new CEs would not "normally" cause significant impacts.

The new and expanded CEs in the Final Rule included: (1) a CE for commercial logging projects up to 2,800 acres and construction of up to two and one-half miles of temporary logging roads, ("CE 25");[6] (2) a CE covering up to two miles of permanent road construction for any purpose, ("CE 24");[7] and (3) an

---

[6] CE 25 is codified at 36 C.F.R. § 220.6(e)(25) (2020).

[7] CE 24 is codified at 36 C.F.R. § 220.6(e)(24) (2020).

expanded CE that allows "special use" authorization for private uses affecting up to 20 acres of national forest lands, including permanent impacts such as a four-mile right-of-way for a pipeline or other utility, ("CE 3").[8] In a 72-page document dated October 23, 2020, prepared by the Forest Service in support of its Final Rule, it stated its conclusion was based on: (1) experience with past projects; (2) professional judgment; and (3) benchmarking to other agencies' CEs. (Docket Item No. 44-2, ("Supporting Statement"), at 9, 26-27, 30-31.)[9] The Forest Service also stated it relied on consultation with a panel of Agency scientists, but the AR provided no description of the questions the Agency posed to this panel or the answers thereto. The Forest Service did not prepare an analysis of the effects of its rulemaking under NEPA, stating that the Final Rule "does not have any reasonably foreseeable impact on the environment." 85 Fed. Reg. at 73,629. The Final Rule made the new CEs effective immediately.

In its Complaint, the plaintiffs allege that the Forest Service failed to allow the public to comment on elements of the Final Rule as required by law, and it failed to conduct an analysis under NEPA to disclose the negative impacts of, and consider alternatives to, the rulemaking itself. Additionally, they allege the Final Rule is inconsistent with the NEPA statute and was promulgated in reliance on illegal provisions of CEQ's newly adopted framework for NEPA regulations. Specifically, by categorically excluding actions with individually and cumulatively significant impacts from site-specific analysis, informed public input and consideration of alternatives, the plaintiffs allege the Forest Service's new CEs are arbitrary and

---

[8] CE 3 is codified at 36 C.F.R. § 220.6(e)(3) (2020).

[9] The Supporting Statement states its purpose is to summarize the AR and the rationale for the substantiation and establishment of the new CEs.  (Supporting Statement at 5.)

capricious, contrary to law and must be vacated.  The plaintiffs seek the following declaratory and injunctive relief: (1) a declaration that the Final Rule is arbitrary, capricious and not in accordance with law; (2) a declaration that CEQ's NEPA regulations, to the extent they purport to allow categorical exclusion of actions that "normally" do not have significant impacts, are arbitrary, capricious and not in accordance with law; (3) that the court vacate and set aside the challenged regulations; and (4) to enjoin the defendants from implementing, enforcing or relying on the challenged regulations.

The Forest Service lodged its AR with the court in July 2020, and, thereafter voluntarily supplemented it twice after consultations with plaintiffs' counsel. (Docket Item Nos. 42, 44, 57.) However, in the Motion, the plaintiffs ask the court to order the Forest Service[10] to complete the AR as follows: (1) include all records of questionnaires, surveys and responses related to past projects; (2) include all records of input from Agency scientists or experts; (3) include all records of input from CEQ applying CEQ's regulations to the Forest Service rulemaking and records of how that input shaped the Final Rule; (4) file with the court a privilege log of records that were considered, directly or indirectly, by the Forest Service, but excluded from the record, describing the basis for the asserted privilege with respect to each document; and (5) strike post-decisional documents from the record.

## II.    Legal Standard

As stated above, the underlying case is brought under the APA, which provides for judicial review of a final agency action. *See Roland v. U.S. Citizenship*

---

[10] The plaintiffs do not challenge the sufficiency of CEQ's AR.

& *Immigr. Servs.*, 850 F.3d 625, 629 n.3 (4th Cir. 2017). Under the APA, a reviewing court shall set aside an agency action if, based on the "whole record," the action is arbitrary or capricious, contrary to law or procedurally infirm. 5 U.S.C. § 706. Although review under this standard is "highly deferential, with a presumption in favor of finding the agency action valid," the court must engage in a "'searching and careful' inquiry of the record." *S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 722 (D. S.C. 2020), ("*Ross*"), (quoting *Ohio Valley Envt'l Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). An agency's action is arbitrary and capricious when:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), ("*State Farm*").

The "whole record" includes "the full administrative record that was before the [responsible agency official] at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Multiple courts, including district courts in the Fourth Circuit, have held that "[th]e whole [AR] includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision." *Ross*, 431 F. Supp. 3d at 722 (quoting *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 2017 WL 3189446, at *7 (D. Md. July 27, 2017) (citing *Tafas v.*

*Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008)). This means the agency must include in the AR all materials that "were directly or indirectly" considered by the agency decision makers. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993); *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D. D.C. 2006). The full record is needed to make the "substantial inquiry" required of reviewing courts, *Volpe*, 401 U.S. at 403, as the court cannot determine whether an agency's decision "runs counter to the evidence" without the benefit of reviewing the whole record. *State Farm*, 463 U.S. at 43.

If an agency fails to produce a complete AR, a party may request supplementation. *See Ross*, 431 F. Supp. 3d at 723 (citing *Outdoor Amusement*, 2017 WL 3189446, at *12; *Otsuka Pharm. Co., Ltd. v. Burwell*, 2015 WL 1579127 (D. Md. Apr. 8, 2015)). However, because an agency is "entitled to a strong presumption of regularity that it properly designated the [AR]," such supplementation of the record is "the exception not the rule." *Ross*, 431 F. Supp. 3d at 723 (quoting *Outdoor Amusement*, 2017 WL 3189446, at *12-13). Nonetheless, a plaintiff can overcome the presumption by:

> [first] "identify[ing] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and [secondly] "identify[ing] the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are "likely" to exist as a result of other documents that are included in the [AR].

*Ross*, 431 F. Supp. 3d at 723 (quoting *Outdoor Amusement*, 2017 WL 3189446, at *13). Where, as here, a party is seeking inclusion of documents the agency considered, a plaintiff must present "clear evidence," which means a "strong, substantial or prima facie showing that the record is incomplete." *Ross*, 431 F. Supp.

3d at 723 (quoting *Outdoor Amusement*, 2017 WL 3189446, at *13). Additionally, because "a NEPA suit is inherently a challenge to the adequacy of the [AR], … courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary." *N.C. Wildlife Fed'n v. N.C. Dep't of Transp.*, 2020 WL 5044465, at *2 (E.D. N.C. Aug. 26, 2020) (quoting *Ohio Valley Envt'l Coal*, 556 F.3d at 201) (quotation omitted); *see also Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993) (certain circumstances may justify expanding review beyond the record, such as in NEPA cases alleging the insufficiency of an EIS); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (recognizing consideration of extra-record evidence appropriate in cases "arising under [NEPA]"). Nonetheless, deviation from the record rule, even in the review of NEPA decisions, is limited" to those instances where "the [AR] is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed actions." *N.C. Wildlife Fed'n*, 2020 WL 5044465, at *2 (quoting *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018) (quotation omitted); *see also Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). With these basic legal standards in mind, I now will discuss, in turn, each category of documents the plaintiffs seek to include in or exclude from the AR.

### A. Survey Responses Cited and Relied Upon in Support of the Final Rule

To justify its new and expanded CEs, the Forest Service explained in its Supporting Statement to the Final Rule that it relied on a sample of previously implemented projects for which it had found there would be no significant impacts. In order to rely on previously implemented actions, the agency must show that the actions, as implemented, did not, in fact, have significant impacts. Here, for each

CE, the Forest Service took a sample of qualifying projects and solicited feedback on a smaller subset of projects. Among other things, this survey asked whether the project had been implemented and whether it had caused impacts greater than predicted.  In Appendices to the Supporting Statement for the Final Rule, the Forest Service listed the projects for which it claims it received survey responses. The parties agree that, here, the AR includes the survey itself and *some* of the responses identified in these Appendices. When asked to provide the missing survey responses, Forest Service counsel directed the plaintiffs to a specific document in the AR, as well as "throughout the record with headings under the description column as 'Supporting documents to questionnaire by Region.'" (Docket Item No. 47-1 at 5). The specific document identified by Forest Service counsel, plaintiffs state, is a spreadsheet containing only some of the information pulled from survey responses, but only for projects in the special use category, and it does not provide the context that the full responses do. For instance, they claim a project reported as partially implemented would appear in the spreadsheet as implemented. However, the portion of the project that has been implemented is relevant to the question of whether the Forest Service appropriately relied on the project in substantiating its conclusion that similar projects would not have significant effects. Thus, according to the plaintiffs, the actual responses are necessary to accurately assess their relevance and whether they support the Agency's decision. Additionally, the plaintiffs allege that these surveys were both before the Agency when it made its decision, and they were expressly relied on by the Forest Service.

The Forest Service states that the missing survey data inadvertently was omitted, and now has been added to the AR. (Docket Item No. 57). In explaining this omission, the Agency stated that it made the survey available online, and while

most respondents completed the survey online, some emailed their responses to the Agency.  (Docket Item No. 57-1, Third Declaration of Samuel F. Gaugush, ("Third Gaugush Declaration"), at 3-4.) To compile all of the survey data, the Forest Service exported the online responses into an Excel spreadsheet and entered the data from the emailed responses into the spreadsheet. (Third Gaugush Declaration at 4.) When the Agency converted the spreadsheet to a PDF for inclusion in the AR, the spreadsheet inadvertently had a filter applied, resulting in the exclusion of 93 survey responses. (Third Gaugush Declaration at 4.) However, according to the Forest Service, it was only upon review of the plaintiffs' brief that this precise problem, as well as the cause, became apparent to it, at which time, it supplemented the AR with the missing data from the spreadsheet. According to the Agency, the supplementation it already made resolves the plaintiffs' contention that the AR is incomplete on this ground.

The Forest Service further argues that it is not required to provide all of the physical survey responses, themselves, for two reasons. First, the AR need not include "every scrap of paper," or in this case, every digital image.  *See TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D. D.C. 2002) (noting the record is neither required, nor intended, to contain "every scrap of paper" in the agency's file on a particular topic), *aff'd* 433 F.3d 852 (D.C. Cir. 2006); *Pac. Shores*, 448 F. Supp. 2d at 7 (the Corps is not obligated to include every potentially relevant document existing within its agency, and only those documents that were directly or indirectly considered by the Corps' decision makers should be included in the AR.) Second, the Forest Service argues that the spreadsheet and the individual survey responses available in the AR are the documents that were directly or indirectly considered by the decision maker and that the plaintiffs have failed to present any concrete

-13-

evidence that the individual survey responses were actually before the decision makers. *See The Cape Hatteras Access Pres. All. v. U.S. Dep't of the Interior*, 667 F. Supp. 2d 111, 114 (D. D.C. 2009) (holding plaintiff must put forth concrete evidence the documents it seeks to add to the AR were actually before the decision makers). Moreover, it argues that the plaintiffs fail to cite any other specific documents to show that the AR is incomplete.

For the following reasons, I find that the plaintiffs have demonstrated clear evidence of specific missing documents showing the AR is incomplete.  The Agency correctly contends that, in order to overcome the presumption of regularity to which ARs are entitled, the plaintiffs must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the [AR]." *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D. D.C. 2015), *on reconsideration*, 164 F. Supp. 3d 56 (D. D.C. 2016); *Pac. Shores*, 448 F. Supp. 2d at 6 (plaintiffs must identify reasonable, non-speculative grounds for the belief that documents were considered by the agency and not included in the record). However, I find that the plaintiffs have made such a sufficient showing that these surveys were before the Agency when it made its decision, and they were expressly relied on by the Forest Service. For instance, in the Supporting Statement with regard to CE 25, the Forest Service explained as follows:

> [23] … projects were subject to additional review through the [survey.]
> … Two forests stated their projects had not been implemented and two
> forests did not respond.  For the 19 projects identified in Appendix A1
> that provided survey responses, respondents indicated that the effects
> were not more substantial than predicted in the EA, DN, and FONSI.

-14-

(Docket Item No. 44-2 at 63.) Thus, based on the responses received for the 19 projects classified as having surveys, the Forest Service claimed that the projects had been implemented and that their effects were not more significant than predicted. That being the case, the Agency itself admits to the existence of these survey responses and that it used such responses in formulating its Final Rule.  Under such circumstances, I find that the responses cannot reasonably be classified as a broad category of documents that is merely likely to exist.  Instead, I find that the plaintiffs have identified the materials omitted with the requisite sufficient specificity. The same can be said for the survey responses related to CE 3 and CE 24, as the Agency identified the relevant responses it received in the Appendices to the Supporting Statement, just as it had for CE 25. The court also agrees with the plaintiffs that, in its decision, the Forest Service relied on the survey responses themselves, not the summary of responses with which it has now supplemented the AR.  A document need not literally have passed before the eyes of the final agency decision maker(s) to have been "directly or indirectly" considered. *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010) (quoting *Clairton Sportsmen's Club v. Pa. Turnpike Comm'n*, 882 F. Supp. 455, 465 (W.D. Pa. 1995)).  Instead, the record must include "any document that might have influenced the agency's decision." *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975). For the reasons already stated, I find the survey responses were directly or indirectly considered by the decision makers, and I further find that the spreadsheet is an insufficient substitute therefor, contrary to the Agency's argument. In particular, the plaintiffs have demonstrated that the survey responses contained relevant information that is omitted from the spreadsheet.  (Docket Item No. 48 at 27-29.)  For instance, although respondents were asked to identify sensitive resource conditions in existence for each project, no such information is included in

the spreadsheet. Likewise, while respondents indicated whether the effects from a project could be "considered potentially significant, either individually or cumulatively," the spreadsheet only allowed for an answer of yes, no or maybe, thereby neglecting to include any of the respondents' narrative information. Lastly, there are several projects cited by the Agency in the Appendices to the Supporting Statement as having responses that were considered by the Agency as evidence supporting the Final Rule, but for which no information was provided in the spreadsheet, and no actual response was provided.

For these reasons, I find that an incomplete record has been provided, and without the benefit of reviewing the "whole record," the court cannot determine whether the Forest Service's conclusions were justified by that record. Therefore, I will grant the Motion to the extent that the Forest Service will be ordered to supplement the AR to include these actual survey responses.

### B. Pre-Decisional, Deliberative Documents

The plaintiffs next ask the court to order the Forest Service to provide documentation from key agency experts, as well as CEQ, upon which it expressly relied. Specifically, the plaintiffs assert these key agency experts were listed in various appendices, and the Agency attributed changes in the Final Rule to their input. Likewise, the Agency relied on input from CEQ in determining the scope and contents of the Final Rule. However, the AR does not include any record of such input, how it influenced the Agency's decision or how it was used to develop the Final Rule. When asked about the records of key agency experts, Forest Service counsel pointed to a summary of input from four other agency staff, (Docket Item No. 47-1 at 5), in which those four staff persons addressed a limited set of comments

related to narrow issues specific to CE 25. (Docket Item No. 44-2 at 67.) When asked again about the rest of the supposedly expert input on which the Forest Service relied, counsel for the Agency explained that these additional documents "are not included because they are not part of the administrative record" because they are predecisional, deliberative documents. (Docket Item No. 47-1 at 7.) When asked about CEQ's input, Forest Service counsel stated it was excluded because it was deliberative. (Docket Item No. 47-1 at 5.) The Forest Service argues that predecisional, deliberative documents simply are not part of the AR in the first instance, and the plaintiffs fail to make the requisite strong showing of bad faith or improper behavior that would compel their inclusion. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). According to the Forest Service, because such deliberative documents are not part of the AR in the first instance, it also is not obligated to provide the privilege log for them that the plaintiffs seek. For the following reasons, I agree with the Agency on this issue.

The Forest Service is correct that an agency's action must be judged on the basis articulated in the order by the agency itself. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962). In other words, when a party challenges an agency's action as arbitrary and capricious, the reasonableness of this action is judged in accordance with its stated reasons. *See In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998). The Fourth Circuit has recognized that APA review does not encompass the mental processes of the agency or its members, *see Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 212 (4th Cir. 1991), (citing *Feller v. Bd. of Educ. of Conn.*, 583 F. Supp. 1526, 1528 (D. Conn. 1984)), and the predecisional process that led up to the final, articulated decision falls outside the scope of APA review. *See Tafas*, 530 F. Supp. 2d at 794. In other words, judicial review of agency

action typically does not consider the "actual subjective motivation of agency decisionmakers," but is focused on the agency's stated justification. *Tafas*, 530 F. Supp. 2d at 794 (quoting *In re Subpoena Duces Tecum*, 156 F.3d at 1279). The AR typically is restricted to evidence, not "briefs [] and memoranda made by the [agency] or its staff. ..." *Hampton Univ. v. Accreditation Council for Pharm. Educ.*, 2021 WL 3166380, at *12 (E.D. Va. July 27, 2021) (quoting *Tafas*, 530 F. Supp. 2d at 794). "Only if internal agency documents themselves introduce 'factual information not otherwise in the record' must those portions of the documents be included in the [AR]." *Hampton Univ.*, 2021 WL 3166380, at *12 (quoting *Tafas*, 530 F. Supp. 2d at 794).

The Agency concedes that the only appellate court to squarely address this issue is the Sixth Circuit in *In re U.S. Dep't of Def. & U.S. Envt'l Prot. Agency Final Rule*, which held that predecisional, deliberative documents generally are not part of the AR. *See* 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016). In that case, the court reasoned that this is the case to "protect the quality of agency decisions by ensuring open and candid communications." *In re U.S. Dep't of Def.*, 2016 WL 5845712, at *2 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989)). Additionally, some district courts outside the Sixth Circuit, including in the Fourth Circuit, have reached the same conclusion. *See Outdoor Amusement*, 2017 WL 3189446, at *21 (finding that predecisional, deliberative documents generally are excluded from the AR); *N.C. Wildlife Fed'n,* 2020 WL 5044465, at *4 (finding that, absent a strong showing of bad faith or improper behavior, predecisional, deliberative materials are irrelevant and need not be produced or included in a privilege log); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,

2020 WL 858599, at *2 (D. S.C. Feb. 21, 2020) (finding predecisional, deliberative documents are not part of the AR, absent a showing of bad faith or improper behavior, and need not be included on a privilege log).

While the Fourth Circuit has not directly spoken on the issue of when predecisional, deliberative documents are part of the AR, I find that the reasoning offered by the Sixth Circuit and other courts, including courts in the Fourth Circuit, is sound and well-reasoned. Specifically, these courts have found that allowing judicial review of an agency's deliberative proceedings distorts the APA inquiry, which is focused on "an agency's stated justifications, not the predecisional process that led up to the final, articulated decision." *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 143 (D. D.C. 2002). Additionally, excluding deliberative materials maintains the quality of agency decisions by encouraging frank and uninhibited discussion of legal and policy matters without the possibility of judicial scrutiny in mind. Moreover, they reason that, because such materials are not part of the record in the first instance, and they are deemed immaterial, they are not "otherwise discoverable" under Federal Rules of Civil Procedure Rule 26(b)(5). That being the case, such materials also need not be included in a privilege log.

While the plaintiffs argue that the Forest Service, in fact, included some predecisional, deliberative documents in the AR, the Agency contends this is inaccurate, as the few documents cited by the plaintiffs were final versions of the documents considered by the decision maker which were inadvertently marked as deliberative with an automatic watermark. In support of this contention, the Forest Service notes that these documents were dated September 30 and October 21, 2020 – just a few weeks prior to the Agency's submission of the Final Rule for publication.

-19-

The court has no reason to doubt the Agency's explanation in this regard, especially given these documents' near contemporaneousness to the publication of the Final Rule.

As for the deliberative documents from CEQ, the plaintiffs argue that input from CEQ was relied on by the Forest Service, as the rulemaking at issue was CEQ's first opportunity to apply its overhauled regulations to another agency's procedures. According to the plaintiffs, the application of those rules through consultation between the agencies constitutes the development of "working law," which cannot be excluded as deliberative. *See NLRB*, 421 U.S. at 152-53. Moreover, the plaintiffs argue that the public is "vitally concerned" with understanding how the new CEQ regulations actually influenced the development of the Forest Service's procedures, especially where the plaintiffs have claimed that the application of those regulations violated the NEPA statute. *See NLRB*, 421 U.S. at 152-53. I am not persuaded by the plaintiffs' arguments in this regard. As the Agency notes in its response, while the plaintiffs cite *NLRB v. Sears, Roebuck & Co.* for the proposition that the Agency must include CEQ's deliberative comments, this case is distinguishable, as it concerned the deliberative process exemption under the Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552(b)(5), not the scope of the AR under the APA. *See* 421 U.S. at 137-38. Moreover, the AR already includes CEQ's final determination that the challenged CEs are in conformity with NEPA and CEQ's regulations. (Docket Item No. 44-2 at 8.) Thus, I agree with the Agency's argument that *NLRB* does not support the plaintiffs' argument that deliberative documents from CEQ belong in the AR.

For these reasons, I find that the plaintiffs have failed to overcome the

presumption of regularity with regard to documents classified as predecisional and deliberative. I further find that the Agency is not required to prepare and submit a privilege log for such documents.

### C. Post-decisional documents

Lastly, the plaintiffs ask the court to strike a group of six documents from the AR they describe as "post hoc" and "post-decisional." They argue that these documents post-date the Agency's final decision and are post hoc rationalizations therefor; thus, they do not constitute the record that was before the Agency at the time it made its decision. The plaintiffs are correct that such documents are not properly part of the AR. *See Dow AgriSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 468 (4th Cir. 2013) (citing *State Farm*, 463 U.S. at 50) ("[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action"); *see also Piedmont Envt'l Council v. U.S. Dep't of Transp.*, 159 F. Supp. 2d 260, 272 (W.D. Va. 2001) (an agency's post hoc rationalizations should play no part in a court's review of an agency's decision). The plaintiffs contend that these documents were prepared by the Agency in response to a letter sent by their counsel after the rule was finalized, indicating the plaintiffs' intent to, potentially, challenge the legal sufficiency of the Final Rule. The plaintiffs argue that these documents post-date the decision so they could not have been considered, either directly or indirectly, by the decision makers. They further argue that the documents contain "novel" rationales, in that they attempt to show that the "final rule would be consistent with either the 2020 revised regulations or the original 1978 regulations." The plaintiffs argue that this is an attempt to show that conformity review by the public was unnecessary. They claim this, however, is a defense prepared by the Agency after the decision and in anticipation of litigation. Finally, the plaintiffs argue the inclusion of such

documents is prejudicial to them. Specifically, they argue that if the Agency had considered the issue regarding the lack of public conformity review while the decision was still open, it might have changed the Agency's decision.

In response, the Agency notes that the six documents, dated November 16 and 17, 2020, are the final versions of its substantiation of the new CEs according to CEQ's standard of significance under both the 1978 and 2020 regulations. According to the Forest Service, because the rule became final for APA purposes after these dates, these documents cannot be deemed "post-decisional." For the reasons that follow, I agree.

For an agency decision to be considered final, two conditions must be met. First, "the action must mark the consummation of the agency's decisionmaking process." *Hyatt v. U.S. Patent & Trademark Office*, 2020 WL 4820709, at *10 (E.D. Va. Aug. 19, 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  It must not be of a merely tentative or interlocutory nature. *See In re Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243, 249 (E.D. Va. 2012). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hyatt*, 2020 WL 4820709, at *10 (quoting *Bennett*, 520 U.S. at 177-78). Stated differently, the "core question" as to finality is whether an action marks the completion of "[the agency's] decision[-]making process, and whether the result of that process is one that will directly affect the parties." *In re Admin. Subpoena Walgreen Co.*, 913 F. Supp. 2d at 248-49 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).  The Fourth Circuit has explained the factors relevant to determining whether an agency action is final under the APA in the following analogous terms: "(1) whether the action is a

definitive statement of the agency's position; (2) whether the action had the status of law and immediate compliance with its terms was expected; [and] (3) whether the action had a direct impact on the day-to-day business of the plaintiff. …" *Trinity Indus., Inc. v. Herman*, 173 F.3d 527, 532 (4th Cir. 1999).

The APA requires that substantive rules of general applicability and statements of general policy be published in the Federal Register. *See* 5 U.S.C. § 552(a)(1)(D) (2020). Additionally, by statute, publication in the Federal Register creates a rebuttable presumption that the document was "made available for public inspection at the day and hour stated in the printed publication." 44 U.S.C. § 1507(2). Here, the Under Secretary of Agriculture filed the Final Rule with the Office of the Federal Register and made it available for public inspection on November 18, 2020, at 8:45 a.m. *See* 85 Fed. Reg. at 73,632.  The Final Rule was published on November 19, 2020, with an effective date also of November 19, 2020. Using the framework stated above for determining finality, I find that the agency action became final on November 19, 2020, as this was the earliest time at which the action can be deemed to be a definitive statement of the Forest Service's position, immediate compliance with its terms was expected, *and* it had a direct impact on the plaintiffs' daily business. While an argument could be made that a definitive statement of the Agency's position might have existed prior to that time, compliance with the rule could not have been expected until its effective date. This also would have been the time that the rule would begin to impact the plaintiffs' daily business, if at all, and since all three conditions are required for an agency's decision to be final for APA purposes, I find that November 19, 2020, is the earliest date at which that could have occurred. All of this being the case, I cannot find that these six documents at issue, dated November 16 and 17, 2020, were "post-decisional" documents.

Next, the Agency disputes the plaintiffs' claim that the six documents at issue include "novel rationales" or "post hoc rationales." Specifically, it states that these documents augment findings contained in other documents in the AR. For instance, the Forest Service draws the court's attention to the Supporting Statement it issued on March 5, 2020, in conjunction with its Proposed Rule, which confirms its finding that the CEs promulgated in the Final Rule are consistent with CEQ's 1978 regulations. The Agency further argues that, even if the court were to find that these six documents contain new information regarding consistency with CEQ's 1978 regulations, this new information does not constitute an impermissible post hoc rationalization, but a proper post hoc explanation. *See Roe v. Dep't of Def.*, 947 F.3d 207, 221 (4th Cir. 2020) ("post-hoc materials must only provide background information or evidence of whether all relevant factors were examined by an agency, or be merely explanatory of the original record and … contain no new rationalizations.") (citations and quotations omitted); *Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D. D.C. 1996) ("The rule against post-hoc rationalizations does not prevent a court from considering a more detailed explanation of an agency's action in response to a legal challenge.  As long as the agency does not present a new basis for its action, it may supply a clearer or more detailed explanation.") (citing *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1233 n.11 (D. D.C. 1994)), *aff'd in part and remanded sub nom. Troy Corp. v. Browner*, 120 F.3d 277 (D.C. Cir. 1997). It appears to the court that the information contained in the six documents at issues does not constitute a novel or post hoc rationalization for the Agency's conclusions, but is an extension of information already contained in the AR in the Supporting Statement for the Proposed Rule.

-24-

Lastly, I am not persuaded by the plaintiffs' argument that the inclusion of these documents prejudices them because they were denied an opportunity to comment on the Final Rule's conformity with CEQ's 1978 regulations during the public comment period. Specifically, as the Agency states in its brief, such an argument goes to the actual merits of the plaintiffs' challenge to the Final Rule itself, not to the scope of the AR and whether these six documents, in particular, should be stricken therefrom.

### III.    Conclusion

For all of the reasons stated herein, the Motion will be granted in part and denied in part. Specifically, the Motion will be granted to the extent that the defendant Forest Service will be ordered to supplement the AR to include the actual survey responses it received as a result of its inquiry for feedback related to CEs 3, 24 and 25. Otherwise, the Motion will be denied.

**ENTERED**:December 6, 2021.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE