CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/19/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **THE CLINCH COALITION, ET AL.,** | )<br>) |
| Plaintiffs, | )<br>) Case No. 2:21CV00003<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **THE UNITED STATES FOREST SERVICE, ET AL.,** | ) JUDGE JAMES P. JONES<br>)<br>) |
| Federal Defendants, | )<br>) |
| and | )<br>) |
| **AMERICAN LOGGERS COUNCIL, ET AL.,** | )<br>)<br>) |
| Intervenor Defendants. | ) |

*Sam Evans,* SOUTHERN ENVIRONMENTAL LAW CENTER, Asheville, North Carolina, and *Kristin Davis,* SOUTHERN ENVIRONMENTAL LAW CENTER, Charlottesville, Virginia, for Plaintiffs; *John P. Tustin,* Senior Attorney, ENVIRONMENT AND NATURAL RESOURCES DIVISION, UNITED STATES DEPARTMENT OF JUSTICE, *Washington, D.C.,* for Federal Defendants.

The plaintiffs, various environmental and conservation groups, suing under the Administrative Procedures Act (APA), challenge a Final Rule of the United States Forest Service (Forest Service or Agency). The matter presently before the court is the plaintiffs' Second Motion to Compel Completion of the Administrative Record. For the reasons that follow, I will grant the motion in part, but deny certain of the remedies sought therein.

I.

The facts of this case are recounted in detail in my opinion addressing the plaintiffs' first motion to compel. *Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916 (W.D. Va. 2022). The current dispute is centered on the Forest Service's cited bases for its creation and modification of certain categorical exclusions (CEs).[1] The Agency's Supporting Statement indicates that it used "information from professional staffs, expert opinions, and scientific analysis," as well as "benchmarking other agencies' experiences" in developing and modifying the CEs. Defs.' Notice of Suppl. to Record, Ex. 2 at 9, ECF No. 44-2. It specifically references lists of staff and experts that helped develop particular CEs. *Id.* at 34, 40, 48, 57, 67 (citing to Appendices B3, B5, B7, B9, and C2). The Supporting Statement then indicates that after "working with [these] subject matter experts and scientists," the Agency "has concluded that it is appropriate to establish the new CEs." *Id.* at 72.

---

[1] Site specific Forest Service actions are subject to the National Environmental Policy Act (NEPA) and the Agency may avoid preparing an Environmental Impact Statement or Environmental Assessment only if its proposals fall within CEs. CEs were intended for "small, insignificant and routine actions that categorically do not have significant impacts no matter where they occur." *Clinch Coal. v. U.S. Forest Serv.*, No. 2:21-CV-0003-JPJ-PMS, 2021 WL 5768473, at *2 (W.D. Va. Dec. 6, 2021), *vacated in part,* 597 F. Supp. 3d 916 (W.D. Va. 2022). In 2020, the Council on Environmental Quality (CEQ) revised the NEPA regulations "to allow development of CEs for actions that do not 'normally' cause significant impacts." *Id.* (quoting 40 C.F.R. § 1508.1(d)). The Forest Service then published a Final Rule involving the disputed CEs, and in doing so, it relied on CEQ's new standard in concluding that the CEs would not normally cause significant impacts. *Id.* at *3.

In the first motion to compel, the plaintiffs sought all records of input from Agency scientists and the CEQ based on the Agency's representations in the Supporting Statement.  I previously held that the plaintiffs had met their burden in showing that the administrative record was incomplete because the Agency had failed to produce documents it, by its own words, expressly considered and relied upon to reach its conclusion that the new CEs were appropriate. *Clinch Coal.*, 597 F. Supp. 3d at 922, 925.  However, I did not decide whether or not the Forest Service could withhold documents pursuant to the so-called deliberative process privilege and instead gave the Agency an opportunity to assert the privilege and file a privilege log. *Id.* at 925.

The Agency subsequently added 81 documents to the administrative record and provided a privilege log for others, asserting the deliberative process privilege over 457 documents.  The cited basis for the privilege was the same for all the documents.  The agency stated that the documents amounted to deliberative thought processes and workflow.  Defs.' Notice of Third Suppl. to Record, Ex. 3, ECF No. 81-3.

After the parties conferred, the Agency filed another supplement to the administrative record. The Agency added an additional 313 documents to the record, but it heavily redacted those documents.  It continued to withhold 139 documents entirely.  The Agency also provided a revised privilege log for these 452 redacted

and withheld documents,[2] listing the author(s), recipient(s), file name, and a brief description for each document. Defs.' Notice of Fourth Suppl. to Record, Ex. 3, Revised Privilege Log, ECF No. 88-3. Moreover, it submitted a declaration from Christopher B. French, Deputy Chief of the Forest Service, who asserted the deliberative process privilege over the documents listed in the privilege log. *Id.* at Ex. 4, French Decl. ¶ 4, ECF. No. 88-4. The cited basis for the privilege provided by French, as applicable to all documents, is that the documents involve "candid deliberative discussions, reviews of draft substantiation materials, and recommendations to project leaders and reviewing officials." *Id.* ¶ 6.

The plaintiffs have moved again to compel completion of the administrative record. At issue now are the 313 redacted documents listed in the revised privilege log, the 139 withheld documents listed in the log, as well as documents the plaintiffs suspect might be absent. The plaintiffs contend that the administrative record remains incomplete because the Forest Service continues to withhold and redact substantive content related to Agency-cited bases for its final rule reflecting input from referenced Agency experts and the CEQ.

The plaintiffs further argue that the Agency's revised privilege log fails to articulate rationale for shielding materials and that the Agency's assertion of

---

[2] The parties represent that five of the original 457 documents were removed from the record and the privilege log because they were determined to be nongermane.

privilege absent an independent determination by counsel is "highly irregular" and "troubling," especially considering "the apparent omission" of documents from the log. Pls.' Br. Supp. 2, ECF No. 94. The plaintiffs' assert that: (1) they "cannot be forced to litigate this case on anything less than the 'whole record[,]' . . . [which] must include evidence the agency expressly relied on in its final rule," Pls.' Reply 1, ECF No. 96, and (2) the Forest Service has acted in a way that "is prejudicial to [the plaintiffs'] interests because [the Agency] seeks to create a self-serving, fictional account of its decisionmaking process." Pls.' Br. Supp. 2, ECF No. 94. The plaintiffs now seek three remedies: (1) an order compelling the Agency to complete the record with unredacted copies of all documents in the revised privilege log; (2) an order compelling the Forest Service to detail its processes for maintaining and collecting documents, reviewing those documents, and preparing the privilege log; and (3) an order authorizing limited discovery, including depositions of named experts who provided unwritten input upon which the Forest Service purportedly relied.

The Forest Service opposes the motion, arguing that it has complied with the court's order related to the first motion to compel in that it has adequately identified and included additional documents in the administrative record and revised the privilege log to include information to support its asserted privilege. The Agency also contends that the plaintiffs have failed to show that the Agency waived the

privilege.  To the extent the court finds otherwise, the Agency proposes that the appropriate remedy is to allow it to revise the privilege log or that the court conduct an *in camera* review of the documents at issue to determine whether disclosure is warranted.

The issues have been briefed, argued, and the matter is now ripe for decision.

II.

I begin with an overview of APA review and the deliberative process privilege.

The APA requires courts to review an agency's decision based on the whole record.  5 U.S.C. § 706; *Appalachian Power Co. v. EPA*, 477 F.2d 495, 507 (4th Cir. 1973), *overruled on other grounds by Union Elec. Co. v. EPA*, 427 U.S. 246 (1976). This includes all materials considered directly or indirectly by the agency, including evidence contrary to the agency's position.  *S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 722 (D.S.C. 2020).  "As explained by multiple courts, including district courts in the Fourth Circuit, the whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision."  *Id.*[3]

---

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

The deliberative process privilege is a long-recognized common law privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). It is a form of executive privilege, which shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 785. In other words, it protects documents that reflect the agency's "preliminary thinking." *Id.*

The purposes of the privilege are to (1) "protect agencies from being forced to operate in a fishbowl," *id.*, (2) "prevent injury to the quality of agency decisions," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), and (3) "encourage[] free-ranging discussion of alternatives; prevent[] public confusion that might result from the premature release of such nonbinding deliberations; and insulate[] against the chilling effect likely were officials to be judged not on the basis of their final decisions, but for matters they considered before making up their minds." *City of Va. Beach v. U.S. Dept. of Com.*, 995 F.2d 1247, 1252–53 (4th Cir. 1993).

The privilege applies to materials that an agency can show are both pre-decisional and deliberative "in the context in which the materials are used." *Id.* at 1253. Pre-decisional materials are those that are generated before the agency's final decision on the matter at issue. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. Materials are deliberative if they "were prepared to help the agency formulate its position," *id.*, and "reflect[] the give-and-take of the consultative process." *City of*

*Va. Beach*, 995 F.2d at 1253. Drafts are often protected by the privilege. *Id.* However, the label draft is not determinative, and courts must evaluate whether the material constitutes preliminary material reflecting opinions that were subject to change. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. Material that reflects an agency's settled position or final view is not protected by the privilege. *Id.*

Moreover, in assessing whether material is subject to the privilege, the focus is on the information itself, and not documents as a whole. *City of Va. Beach*, 995 F.2d at 1253. Therefore, purely factual information that is reasonably segregable must be provided. *Id.* Only non-exempt material that is "inextricably intertwined with policymaking processes" is protected. *Id.*

The privilege is often analyzed in the context of the Freedom of Information Act (FOIA), but it has been addressed in the APA review cases. *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008). The whole record up for review in APA cases typically does not include deliberative materials for two reasons. First, review "should be based on an agency's stated justification, and not the predecisional process that led up to the final, articulated decision." *Id.* at 794. Second, as is often explained in the FOIA context, it prevents injury to agency decision making and promotes candid discussion. *Id.* Thus, the general rule is that predecisional and deliberative materials are not part of the administrative record.

The deliberative process privilege is not absolute, however, because there may be instances where "the need for accurate fact-finding override[s] the government's interest in non-disclosure." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Moreover, exceptions to the privilege exist. There may be documents that are predecisional and deliberative but constitute "working law" in that they embody the agency's final view and have an operative effect. *Brennan Ctr. for Just. v. U.S. Dept. of Just.*, 697 F.3d 184, 195, 198 (2d Cir. 2012). In addition, there may also be predecisional, deliberative documents that an agency expressly adopts or incorporates by reference within non-privileged materials. *Sears, Roebuck & Co.*, 421 U.S. at 151. This exception applies when an agency holds out that it agrees with the reasoning contained within a deliberative and predecisional document. *Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 359 (2d Cir. 2005).

I turn now to the 452 documents still at issue in this case. I first find that neither of the privilege's exceptions apply. The back-and-forth deliberative discussions from agency experts, even from those experts explicitly cited in the Agency's Supporting Statement, would not be the Agency's working law because the input does not have an operative effect, but rather, "reflect[s] the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears, Roebuck & Co.*, 421 U.S. at 151. A distinction exists between an

Agency's reliance on particular reasons — such as particular opinions or interpretations — versus its reliance and weighing of a broad swath of input, including input contrary to the final rule. The former may constitute the Agency's working law because those documents might represent recommendations that were "effectively binding on the agency" or "left it with no decision to make." *Brennan Ctr. for Just.*, 697 F.3d at 203. The latter, the stated reliance on a broad category or information, which is what is at issue here, represents "the voluntary suggestion [or] evaluation," of those experts, and in some cases, perhaps the "rejection" of proposed CE language, "not the agency's final, unappealable decision." *Id.* at 203 n.14; *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 783 ("In other words, once cited as the agency's final view, the document reflects the consummation of the agency's decisionmaking process and not a merely tentative position."). As such, I do not find that the working law exception applies here.

    The Forest Service's consideration of a broad array of input from certain experts and staff also highlights why the express adoption or incorporation by reference exception is inapplicable. When a particular document and information contained therein is expressly relied upon or incorporated by reference, "the reasoning becomes that of the agency and becomes its responsibility to defend." *Sears, Roebuck & Co.*, 421 U.S. at 161. In other words, when an agency references "a protected document as authoritative, it cannot then shield the authority upon

which it relies from disclosure." *Brennan Ctr. for Just.*, 697 F.3d at 205.  Here, there is no evidence that the Agency adopted the reasoning of a particular expert or particular CEQ input, and the Support Statement does not hold out to the public that any particular reasoning was authoritative.  Accordingly, I disagree with the plaintiffs' contention that the documents at issue lost any protection of the deliberative process privilege based on the language within the Supporting Statement and instead find the privilege's exceptions to be inapplicable in this case.

      I nonetheless conclude that the documents in dispute must be disclosed, at least to the extent that they come from the experts cited in the appendices referenced in the Supporting Statement or constitute CEQ input, for a more fundamental reason. Aside from the privilege's exceptions, I turn to the more general notion that the asserted privilege is a qualified one.

      The reasons for the application of the deliberative process privilege — for example, to protect the Agency from being required to operate in a fishbowl, to prevent a chilling of free-ranging discussion — was undercut by the Agency itself when it cited lists of experts and input from other agencies which it weighed in developing the CEs.  The Supporting Statement does not indicate that the particular information contained in the disputed documents was not pre-decisional or deliberative, and again, the Supporting Statement's general reference to broad categories of information considered by the Agency does not fit within the contours

-11-

of the privilege's exceptions. However, by citing to multiple lists of staff, engineers, and scientists in the Supporting Statement as providing input based on their expertise, as well as referencing other agencies' experience as the bases for "substantiating" and "support[ing]" its rulemaking, Defs.' Notice of Suppl. to R., Ex. 2 at 9, ECF No. 44-2, the Agency is in effect bolstering its justifications and attempting to do so without consequence. I agree with the plaintiffs that the Agency is using the deliberative process privilege as both a shield and a sword. Judicial review will be frustrated if I were to find that the Agency could assert that its rulemaking was not arbitrary and capricious because of certain cited substantiating input, albeit deliberative and predecisional input, without having the opportunity to review that input.

In other words, under the facts of this particular case, the deliberative process privilege cannot be reconciled with the principles of APA review. The Supporting Statement indicates that this is one of those instances when "the need for accurate fact-finding override[s] the government's interest in non-disclosure." *FTC.*, 742 F.2d at 1161. The input is certainly relevant because it was cited as an evidentiary basis for the rulemaking. There is no indication that the input is available in previously disclosed documents. As stated previously, the input will not injure the quality of agency decisions and stifle frank discussions when the Agency itself made the decision to bolster its conclusions by citing to the input as a justification for its

rulemaking. *Id.* at 1161–62; *Cipollone v. Liggett Grp. Inc.*, Nos. 86–1198, 86–1223, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987) (unpublished).

If the Agency had wanted to protect these deliberative discussions, it could have crafted its Supporting Statement in a way that made it clear that the CEs were substantiated only by particular expert input or other agencies' particular experiences. It could have indicated that although it considered some of the input, it did not rely on it all, meaning that not all the cited experts' input actually substantiated or supported the CEs. It did not do that, however, and instead represented that the input supported its CEs. Accordingly, I find that the Agency must disclose and add to the record all the disputed documents that involve discussions and input from any of the experts listed in the appendices referenced in the Supporting Statement, as well as input from the CEQ.[4]

The plaintiffs also argue that there are documents that appear to be missing entirely. For example, they contend that there is no input in the record from a handful of experts named in the appendices. Pls.' Br. Supp. 18, ECF No. 94; Pls.' Reply 13, ECF No. 96. They also argue that the Agency may have used other electronic platforms, such as Skype Chat, but that the Agency only searched through its email when it created the privilege log. The plaintiffs request that they be allowed

---

[4] Because I find that the privilege is inapplicable, I will not address whether the Agency sufficiently asserted it within the privilege log.

to conduct additional discovery and also request an order compelling the Forest Service to explain how it collected documents and reviewed the privilege log.

The Forest Service argues in response that some of the named experts may not have provided written input and that some may have been knowledgeable and participated in the rulemaking but might not have provided expert opinions relied upon because they were merely group leaders or managers. Defs.' Resp. Opp'n 10, ECF No. 95. The Agency also contends that the plaintiffs' have provided no authority to support their requested remedy compelling the Agency to explain the process it used to collect document and review for privilege.

There is a strong presumption that the record is full and accurate. *Sanitary Bd. of City of Charleston v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019). That presumption may be overcome with clear evidence that the record is incomplete, that is, non-speculative grounds that "the *documents* were considered by the agency and not included in the record" or "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents." *S.C. Coastal Conservation League*, 431 F. Supp. 3d at 723 (emphasis added).

As discussed in my earlier opinion on the first motion to compel, the plaintiffs put forth clear evidence that the record was incomplete when the Forest Service failed to produce any input from the experts listed as having knowledge of the CE

development process or input from CEQ. But, at this juncture, where the Agency has produced or listed documents on the privilege log fitting within the broad category of documents cited in the Supporting Statement, I do not find that the plaintiffs have provided non-speculative grounds that specific documents are missing from the record merely because the record is missing references to a handful of the named experts from the cross-referenced appendices. The Supporting Statement does not refer to particular types and forms of input considered, and it is possible that some of the named experts, such as managers, merely reviewed the CEs without providing any input specifically relied upon by the Agency and that certain discussions were not documented in writing. Given the presumption of completeness, I do not find additional discovery would be appropriate, which would essentially allow the plaintiffs to conduct a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist.

I also find that it would not be appropriate to require the Forest Service to explain its process in collecting the documents. There is no indication that the stated reasons for the CE's was contrived. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019). There is also no evidence of bad faith, improper behavior, or any indication, after the production of the documents listed in the privilege log discussed *supra*, that effective judicial review will not be able to occur. *Citizens to Pres.*

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). To the extent that the Agency's reasons end up being deficient, the proper remedy will be to later argue that the record does not support the Agency's decision. At this juncture, I will deny the plaintiffs request that I compel the Agency to explain its process for collecting documents and reviewing the privilege log.

### III.

For the foregoing reasons, it is **ORDERED** as follows:

1. Plaintiffs' Second Motion to Compel Completion of the Administrative Record, ECF No. 93, is GRANTED in part and DENIED in part;

2. The motion is granted to the extent that within 28 days of entry of this Opinion and Order, the Forest Service must supplement the administrative record with any documents containing opinions, advice, or discussions from the individuals listed in the appendices referenced in the Supporting Statement and any opinion, advice, or discussion from the CEQ applying the CEQ's regulations to the Forest Service rulemaking; and

3. The motion is otherwise denied.

ENTER: September 19, 2023

/s/ JAMES P. JONES
Senior United States District Judge