**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | |
|---|---|
| THE CLINCH COALITION, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) Case No. 2:21-cv-0003-JPJ-PMS |
| UNITED STATES FOREST SERVICE, *et al.*, | ) |
| | ) |
|     Federal Defendants, | ) PLAINTIFFS' RESPONSE TO |
| | ) FEDERAL DEFENDANTS' MOTION |
|     and | ) FOR RECONSIDERATION AND |
| | ) BRIEF IN SUPPORT OF MOTION TO |
| AMERICAN LOGGERS COUNCIL, *et al.*, | ) COMPEL COMPLETION OF THE |
| | ) ADMINISTRATIVE RECORD |
|     Intervenor Defendants. | ) |
| | ) |

<u>**PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' MOTION FOR
RECONSIDERATION AND BRIEF IN SUPPORT OF MOTION TO COMPEL
COMPLETION OF THE ADMINISTRATIVE RECORD**</u>

## TABLE OF CONTENTS

I.    Introduction ..................................................................................................... 1

II.   Background ...................................................................................................... 1

III.  Argument ......................................................................................................... 5

     A.    The Court Should Deny the Forest Service's Motion For Reconsideration. .......... 5

          1.    The Forest Service Cannot Use a Motion for Reconsideration to Ask This Court to "Redo" Its Earlier Rulings. ........................................................ 5

          2.    The Forest Service Has Not Met Its Burden to Show That This Court Should Depart From the Law of the Case. ................................................... 9

               a)    The Court Did Not Err, Much Less Clearly Err ........................... 10

               b)    Disclosure Would Not Cause a Manifest Injustice. ...................... 14

          3.    Even If This Court Decides to Reconsider Its Earlier Ruling on Privilege, It Should Come to the Same Conclusion. .................................................. 14

     B.    The Court Should Grant Conservation Groups' Motion to Compel Completion of the Administrative Record. .................................................................................. 16

IV.  Conclusion ..................................................................................................... 18

## I.    <u>Introduction</u>

For more than two years, the Forest Service has sought to withhold from the administrative record documents it indisputably relied on when developing the Final Rule, first arguing they were not part of the record and then arguing that they were protected by the deliberative process privilege. Despite the Court's recent opinion ruling that the deliberative process does not protect these documents, the government is still withholding twenty-nine documents it was ordered to produce—twenty-six documents containing communications with the Council on Environmental Quality ("CEQ") and three more internal documents for which it now, for the first time, claims attorney-client and work-product privileges. With respect to the CEQ documents, the Forest Service cannot use a motion for reconsideration to renew arguments it already made in a dispute it already lost. For the other three documents, the Forest Service has waived the attorney-client and work-product privileges by failing to assert them before a Court-imposed deadline, which passed more than fifteen months ago. Conservation Groups ask the Court to again order the Forest Service to complete the record with these twenty-nine documents.

## II.   <u>Background</u>

Conservation Groups challenge the Forest Service's Final Rule under the Administrative Procedure Act ("APA"). ECF No. 1. Under bedrock principles of APA review, the Forest Service was required to designate the "full administrative record that was before [the agency] at the time [it] made [the] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). This includes "all documents and materials, directly or indirectly, considered by the agency, including evidence contrary to the agency's position, as well as 'expert views and opinions.'" ECF No. 77-2 at 7 (citation omitted). Access to the "whole record" is essential for the Court to evaluate,

1

among other things, whether the evidence before the agency supported its stated reasons for the final decision. *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

At issue in this case, still, are internal Forest Service documents containing the input of listed agency experts and interagency documents containing direction from CEQ, all of which the Forest Service expressly relied on to support its Final Rule, ECF No. 44-2, and which are "indisputably relevant" to judicial review of the Final Rule, ECF No. 77-2 at 14. When the Forest Service filed its first administrative record on July 1, 2021, it took the position that these documents were not part of the record. ECF Nos. 42, 69. This Court held otherwise on April 5, 2022, and ordered the Forest Service to "complete the administrative record, or assert an applicable privilege," accompanied by a privilege log, "within 21 days." ECF No. 77-2 at 15.

After a two-week extension of time, ECF No. 80, the Forest Service submitted a privilege log on May 9, 2022, identifying 457 documents with input from its key experts and direction from CEQ. ECF No. 81-4 at ¶ 4. When Conservation Groups noted that the agency's privilege log was conclusory and inadequate to substantiate the asserted privileges, the Forest Service sought an additional six weeks to file a revised log. ECF No. 83. In granting that request, the Court emphasized that it did "not anticipate extending th[e] deadline" for further revisions. ECF No. 84. The Forest Service provided its updated administrative record and privilege log on July 7, 2022. ECF No. 88-3. For the documents still at issue, the Forest Service asserted only a single basis for privilege—deliberative process privilege. ECF Nos. 81-3, 88-3. As Conservation Groups previously explained, these documents were either withheld in full[1] or were "so heavily redacted that they are effectively still withheld in full." ECF No. 94 at 7.

---

[1] *See* ECF No. 88-3 (rows 219, 274, 275, 276, 277, 280, 309, and 432).

On July 21, 2022, the Parties informed the Court that they had reached an impasse. The Forest Service took the position that Conservation Groups should be precluded from filing a motion challenging the government's assertion of privilege. ECF No. 90. Conservation Groups pointed out that the entire purpose of the privilege log was to allow them to challenge the assertion of privilege, if appropriate. ECF No. 91; *see also* ECF No. 77-2 at 16 (reserving ruling on adding documents to the record "until the defendant has an opportunity to assert an applicable privilege"); ECF No. 84 at 1 (noting that "further record briefing" might be necessary). The Court adopted the Conservation Groups' position and ordered briefing on the applicability of the claimed privileges. ECF No. 92.

On July 29, 2022, Conservation Groups duly filed their second motion to compel completion of the record with unredacted copies of the experts' input and direction from CEQ for which the Forest Service claimed deliberative process privilege. ECF Nos. 93, 94. The Forest Service defended the applicability of the deliberative process privilege. ECF No. 95 at 1. The Parties also disagreed over the remedy; the Forest Service requested that if the Court should find that the agency had failed to justify that claim of privilege, the Court give the agency another chance to revise its privilege log, review the disputed documents *in camera*, or both. *Id.* at 1–2. Conservation Groups argued, however, that such steps were neither necessary nor appropriate. ECF No. 96 at 9–11.

On September 19, 2023, this Court concluded that the deliberative process privilege was inapplicable. ECF No. 101 at 13 n.4. Specifically, the Court found that the need for Conservation Groups and the Court to review the agency's express justifications for its rulemaking outweighed the government's interest in nondisclosure. *Id.* at 11–16. Specifically, the Court found the need for disclosure outweighed the risk of "stifl[ing] frank discussions" between the Forest Service

and CEQ, noting that the Forest Service "itself made the decision to bolster its conclusions by citing to the input as a justification for its rulemaking." *Id.* at 12–13. Since the Court found that the deliberative process privilege "is inapplicable," it also dismissed the necessity of assessing "whether the Agency sufficiently asserted it within the privilege log." *Id.* at 13 n.4. The Court recognized the Forest Service's alternative request for *in camera* review, *id.* at 6, but did not further address this remedy. Accordingly, the Court ordered the Forest Service to "disclose and add to the record all the disputed documents"—i.e., the documents relied on by the Forest Service in its supporting statement and for which the agency was asserting deliberative process privilege—including "documents containing opinions, advice, or discussions from the [listed experts] and any opinion, advice, or discussion from the CEQ applying the CEQ's regulations to the Forest Service rulemaking." *Id.* at 13, 16.

On October 17, the Forest Service filed another supplemental administrative record containing the majority of the withheld documents. ECF No. 106. Despite the Court's express rejection of the Forest Service's claims of deliberative process privilege, the agency continued to withhold in part twenty-six "predecisional, deliberative documents" from CEQ. *Id.* at 2. It also withheld portions of fourteen documents it claimed were protected by attorney-client and attorney-work-product privileges. ECF No. 106-1 at 5, 7. The Forest Service had previously asserted attorney-client and/or work-product privileges for eleven of these documents in its 2022 privilege logs, and Conservation Groups had declined to challenge those specific assertions. However, before October 17, 2023, it had never asserted any privilege except deliberative process privilege over three withheld documents—numbered 166, 167, and 219. *Compare* ECF No. 106-1, *with* ECF Nos. 81-3, 88-3. When alerted to the issue, the government asserted it was entitled to make further revisions to its privilege log even after the applicability of privilege had

4

already been adjudicated. Exhibit 1. The government further represented that it had identified

these documents as subject to the attorney-client privilege in a "prior version of the log" but

removed the assertion in the final version because of a "custody error." *Id.*

On October 20, the agency filed the instant motion for reconsideration with respect to the

CEQ documents. ECF No. 107. After discussing the three newly claimed assertions of attorney-

client and work-product privileges, Conservation Groups and the Forest Service reached another

impasse and Conservation Groups indicated their intent to seek further relief at the same time

they filed their response.

### III.   <u>Argument</u>

The Forest Service's motion for reconsideration should be denied, and Conservation

Groups' motion to compel completion of the administrative record should be granted.

#### A.   <u>The Court Should Deny the Forest Service's Motion For Reconsideration.</u>

The Forest Service's motion for reconsideration should be denied because, first, a motion

for reconsideration cannot be used to relitigate legal and factual questions already decided and,

second, because the agency fails to show the Court clearly erred. Even if the Court entertains the

agency's request and reconsiders its prior decision, moreover, it should reach the same

conclusion as it did previously.

##### 1.   *The Forest Service Cannot Use a Motion for Reconsideration to Ask This Court to "Redo" Its Earlier Rulings.*

The Forest Service asks this Court for a do-over regarding: (1) whether CEQ's input is so

different from internal agency discussions that it should not be treated similarly; (2) whether

review of the agency's privilege log or *in camera* review was necessary to reject the agency's

claim of privilege; (3) whether requiring disclosure would stifle interagency discussions; and

(4) whether an inapt balancing test from an unpublished Fourth Circuit table decision favors

disclosure. The Forest Service made these same arguments on the last go-around. Nothing has changed since, and the agency's attempt to relitigate these issues is beyond the scope of a motion for reconsideration.

A motion for reconsideration is not a mechanism for "rehash[ing] the same arguments [already] considered and rejected by the court." *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 481 (D. Md. 2013). Nor is it a tool to "raise arguments or present evidence that could have been raised" earlier. *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 490 (W.D.N.C. 2017) (citation omitted); *see also Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (holding a motion for reconsideration is not meant to "provide a party the chance to craft new or improved legal positions, [or] highlight previously-available facts"). Motions for reconsideration also cannot be used as a vehicle for "blanket de novo review of factual determinations." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018). The Forest Service's motion for reconsideration improperly endeavors to do all of the above.

To start, the agency tries to relitigate whether input and discussion from CEQ is somehow different from internal agency input and discussion as a factual matter. ECF No. 107 at 4–6. But that ship has already sailed. In April 2022, this Court found "[i]t is *undisputed* that the Forest Service considered input from agency experts *and CEQ*" while promulgating its Final Rule. ECF No. 77-2 at 9–10 (emphases added); *see also id.* at 3 ("[T]he agency explained that it relied upon . . . direction from CEQ."). For more than eighteen months, the Forest Service failed to contest this factual determination—in briefing, at argument, or via a motion for reconsideration. Instead, the Forest Service *confirmed* that "documents containing input from . . . CEQ . . . were considered and relied upon by the [agency's] decision makers." ECF No.

95 at 9. Now faced with an order to disclose that input, the Forest Service has cobbled together a new factual argument that input from CEQ is "distinct" from input from other experts and agencies, and therefore cannot be disclosed. ECF No. 107 at 6. But the time to raise this fact-intensive argument has long since passed; the Forest Service cannot raise it now in a motion for reconsideration. *See U.S. Tobacco Coop.*, 899 F.3d at 258.

Next, the Forest Service attempts to reargue that this Court must review the agency's privilege log or conduct *in camera* review of the CEQ documents before disclosing them. The Forest Service made the exact same argument in prior briefing. *See* ECF No. 95 at 12–17. It even cited the very same cases, and used the same quotes and pincites. *Compare id.* (citing and quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1250 (4th Cir. 1994), and *Rein v. U.S. Patent & Trademark Off.*, 553 F.3d 353, 377 n.34 (4th Cir. 2009)), *with* ECF No. 107 at 6–8 (citing the same cases, page numbers, and quotes). The Forest Service does not add anything new to its argument in its motion for reconsideration—apart from a few quotes from this Court's latest opinion rejecting the agency's argument. *See* ECF No. 107 at 7–8. The agency cannot use a motion for reconsideration to redeploy the same recycled arguments, cases, and quotes that failed to convince this Court previously. *Wooten*, 168 F. Supp. 3d at 893.

The Forest Service also rehashes its argument that forcing disclosure of documents could injure the quality of agency decisions by chilling free-ranging discussions between federal agencies. ECF No. 107 at 11–12. To support this argument, the agency provides "additional" evidence in the form of CEQ Chair Brenda Mallory's declaration as well as a "revised privilege log that contains additional bases for asserting the deliberative process privilege over the twenty-six CEQ documents." *Id.* at 9. The agency does not explain why it failed to present this previously available evidence earlier. Yet it uses this new evidence to resurrect a nearly identical

7

chilling-effect argument it made in prior briefing. *See* ECF No. 95 at 16–17. However, a party cannot use a motion for reconsideration to "highlight previously-available facts" or "craft new or improved legal positions" regarding "issues already decided." *Wooten*, 168 F. Supp. 3d at 893. This Court should decline to award the agency a "second bite at the apple" on this already-decided matter. *Id.*

Finally, the Forest Service again trots out an argument that this Court should shield the CEQ documents from disclosure under an inapt balancing test[2] from *Cipollone v. Liggett Group, Inc.*, 812 F.2d 1400, 1987 WL 36515 (4th Cir. Feb. 13, 1987) (unpublished table decision). Aside from referencing the belatedly presented Mallory declaration, the agency does not make any new arguments regarding *Cipollone*. In fact, large sections of its motion are simply word-for-word copies of its prior briefing. *Compare, e.g.*, ECF No. 107 at 9 ("The first and second factors, relevance of the evidence and availability of other evidence, weigh heavily against disclosure because it is long-settled that agency action should be judged based on the agency's stated reasons for its decision."), *with* ECF No. 95 at 15 (identical). But the Forest Service cannot use a motion for reconsideration to "seek a mulligan" on arguments it already made or "bolster those arguments with supplemental facts." *Wooten*, 168 F. Supp. 3d at 894, 897.

In sum, because the Forest Service's motion solely seeks to repeat old arguments or "refurbish" said arguments with "previously-available evidence," its motion for reconsideration is procedurally improper. *Id.* at 895. This Court need proceed no further.

---

[2] For the reasons explained in Conservation Groups' prior brief, ECF No. 96 at 8, *Cipollone*'s (unpublished and therefore nonbinding) reasoning only applies "[w]hen a party to *a separate lawsuit* seeks agency materials," not in APA review of an agency decision, *id.* at *2 (emphasis added).

> 2.   *The Forest Service Has Not Met Its Burden to Show That This Court Should Depart From the Law of the Case.*

Even if a motion for reconsideration were a procedurally appropriate vehicle to relitigate the above issues, the Forest Service has not shown that this Court should depart from the law of the case as a substantive matter.

Though a district court typically enjoys broad discretion to modify interlocutory orders prior to final judgment, the Fourth Circuit has "cabined" this discretion "by treating interlocutory rulings as law of the case." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). "The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Id.* (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). This includes issues "actually decided as well as . . . those decided by 'necessary implication.'" *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988).

"[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson*, 856 F.3d at 325 (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)). The Forest Service hangs its hat on the third prong, identifying two purportedly "clear errors of law": (1) that the Court did not adequately distinguish between CEQ's input and internal input and (2) that the Court should have reviewed the agency's privilege log or conducted *in camera* review. ECF No. 107 at 4–8. Yet the Forest Service has not shown that the

Court's prior decisions were clear errors, nor has it shown how those decisions lead to manifest injustice. The Court may deny the agency's motion on either basis.[3]

> a) The Court Did Not Err, Much Less Clearly Err.

A party cannot satisfy the "clear error" exception by demonstrating that a court's decisions were "just maybe or probably wrong; [rather, the decisions] must strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish. [They] must be dead wrong." *U.S. Tobacco Coop.*, 899 F.3d at 258 (quoting *Franchot*, 572 F.3d at 194). The Forest Service falls far short of this showing.

First, the agency erroneously argues that this Court made a "clear error of law" by failing to explain *in its latest order* "why input from CEQ must be disclosed along with input from the Forest Service or other agencies." ECF No. 107 at 4. But this Court already explained why this input must be disclosed in its April 5, 2022 opinion. In that opinion—which the Forest Service declined to challenge, and which it barely references in its motion for reconsideration—the Court explained that it is "undisputed that the Forest Service considered input from . . . CEQ." ECF No. 77-2 at 9–10. As support, it pointed to "clear evidence" in the agency's "lengthy supporting-statement report that explained precisely what evidence the agency relied upon to reach its conclusions." *Id.* at 10; *see also* AR 093267 (explaining that the Forest Service relied on "consult[ation] with CEQ while developing" the categorical exclusions that were the focus of the

---

[3] The Forest Service suggests that the law of the case must yield to correct a "clear error of law *or* to prevent manifest injustice." ECF No. 107 at 3 (emphasis added) (citing *Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016)). That is not the test. According to binding Fourth Circuit precedent, the agency must show a "clear error *causing* manifest injustice" to overcome the law-of-the-case doctrine. *Carlson*, 856 F.3d at 325 (emphasis added); *see also Am. Canoe Ass'n*, 326 F.3d at 515 (party must show "the prior decision was clearly erroneous *and* would work manifest injustice" (emphasis added) (quoting *Sejman*, 845 F.2d at 69)). In other words, it must show both; not one or the other.

Final Rule). Since the agency used CEQ's input to justify its rulemaking, the Court concluded it must be disclosed absent an applicable privilege. ECF No. 77-2 at 15–16. So, the Forest Service's quibble with the Court—that its latest order does not do enough to explain why CEQ's input specifically must be disclosed—can be traced to the agency's own failure to read this Court's orders together.[4]

Second, the agency mistakenly argues that this Court erred by neglecting to review its privilege log or conduct *in camera* review of the CEQ documents. According to the agency, "binding Fourth Circuit precedent" compelled the Court to do one or the other before requiring disclosure. ECF No. 107 at 8. But the two cases it cites for this proposition (which it also relied on primarily in its last attempt to make this argument) say no such thing. *Ethyl Corp. v. U.S. E.P.A.* explains that a court assessing claims of privilege can use a privilege log, *in camera* review, or "*some other means of review*" to decide the privilege question. 25 F.3d at 1250 (emphasis added). It did not confine courts to the first two options only. The same is true in *Rein v. U.S. Patent & Trademark Office*, 553 F.3d at 377 n.34. That decision emphasized (in a footnote) that district courts reviewing privilege determinations enjoy wide discretion to require a privilege log, conduct *in camera* review, or engage in a "combination of methods." *Id.* It does not categorically limit district courts to two options either.

In fact, courts regularly determine whether privileges apply using affidavits, accompanying declarations, deposition testimony, ex parte proceedings, and principles of waiver and forfeiture, among many other options. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250

---

[4] The Court clearly intended its opinions to be read in tandem. *See* ECF No. 101 at 3 ("I previously held . . . ."), 14–15 ("As discussed in my prior opinion . . . ."). There was nothing unusual in declining to reprise the prior opinion, because the sole question reserved for the latest opinion was whether, in light of the Court's prior findings, the Forest Service could substantiate the deliberative process privilege. *Id.* at 3.

F.R.D. 251, 264–67 (D. Md. 2008). Thus, a privilege log or *in camera* review may be *sufficient* to make a privilege determination, but they are not *necessary*. That is especially true here. The Forest Service did not make a legal argument requiring document-by-document review of the privilege log, choosing instead to make blanket arguments about the importance of the privilege. The Court's opinion decides the issue on the grounds that the Forest Service, which bore the burden of proof, presented. And, as Conservation Groups previously pointed out, the Forest Service failed to provide any explanation why *in camera* review would aid the Court's determination. ECF No. 96 at 10–11. This Court did not err by choosing to rely on the facts before it, including the agency's declarations, ECF No. 101 at 4, and the documents in the administrative record showing the importance of the documents at issue to APA review, *id.* at 12. Those materials gave the Court ample basis to weigh the relevant considerations without further fact-finding or *in camera* review. *See In re Grand Jury Proc., Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 351 (4th Cir. 1994) (holding that once a court determines that a privilege does not apply using other means, "actual *in camera* review of the allegedly privileged documents [becomes] unnecessary").

The Forest Service makes no attempt to show why the Court's legal analysis—opting to weigh the government's interest in privacy against the need for the documents under APA review—was clearly wrong. *See* ECF No. 107 (only describing two purported errors, neither of which involved the Court's weighing of the equities). Therefore, it forfeited any argument that this Court clearly erred in weighing these factors. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (citation omitted)).

To the extent the Forest Service's motion can be read as a *factual* argument rather than a legal one (as it is styled), *compare* ECF No. 107 at 1 ("two clear errors of law"), *with id.* at 11–12 (presenting "additional" evidence in support of the government's interest in nondisclosure), this Court did not clearly err in weighing the equities and concluding disclosure is warranted. The Court correctly observed that the Forest Service held out deliberative documents "as the bases for 'substantiating' and 'support[ing]' its rulemaking." ECF No. 101 at 12. This Court then logically concluded that "[j]udicial review w[ould] be frustrated if . . . the Agency could assert that its rulemaking was not arbitrary and capricious because of certain cited substantiating input, albeit deliberative and predecisional input, without having the opportunity to review that input." *Id.* It also sensibly found that the need for review outweighed the government's interest in nondisclosure—an interest which the government "undercut" by citing to the CEQ documents in the first place. *Id.* at 11.

The Forest Service's motion belatedly attempts to tip the scales with the Mallory declaration, which decries the potential for document disclosure to "chill[]" "interagency deliberations." ECF No. 107-1 at 6. But as explained above, the Forest Service cannot use a motion for reconsideration to bolster arguments with previously available evidence. Even if it could, the result should not change. The Court did not lack evidence of the risk to interagency deliberations. ECF No. 101 at 4 (describing the French declaration). Rather, the Court recognized the government's interest in secrecy and nevertheless found it outweighed by the need for accurate APA review. ECF No. 101 at 11–13. The Mallory declaration adds nothing new to this equation.

b)      Disclosure Would Not Cause a Manifest Injustice.

The Forest Service has also failed to show that requiring it to disclose the CEQ documents would result in a "manifest injustice." The agency reiterates—using the belatedly presented Mallory declaration—that forced disclosure could injure the quality of its decisions by chilling free-ranging discussions between federal agencies. ECF No. 107 at 11–12. But the Mallory declaration does not give the Court a basis to revisit its prior reasoning. The Court reasoned that the government's interest was undercut by its own decision to rely on the evidence as a "sword" while hiding behind the deliberative process privilege as a "shield." ECF No. 101 at 12. In other words, any hypothetical "chill" on interagency deliberations is entirely self-inflicted. *See id.* at 13. The Forest Service cannot legitimately argue that it is manifestly unjust to require the agency to lie in the bed that it made. Indeed, the Court's opinion acknowledges and accounts for the supposed chilling effect: agencies can avoid losing the privilege simply by refraining from using deliberative materials to bolster their decisions. *See id.* at 12–13.

3.      *Even If This Court Decides to Reconsider Its Earlier Ruling on Privilege, It Should Come to the Same Conclusion.*

This Court should not reconsider the merits of its privilege determination for the reasons explained above. If, however, the Court is inclined to entertain the Forest Service's motion, it should still come to the same conclusion—the CEQ documents must be disclosed.

Despite the Forest Service's repeated attempts to shift the burden onto Conservation Groups, the agency bears the burden of demonstrating whether the deliberative process privilege applies. *Cf. United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (proponent bears burden of demonstrating attorney-client privilege). And, as this Court recognized, the deliberative process privilege "is not absolute." ECF No. 101 at 9. Predecisional and deliberative documents must be disclosed if, among other things, "the need for accurate fact-finding override[s] the

14

government's interest in non-disclosure." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

The Court held that the government's interest in secrecy under the deliberative process privilege was outweighed by the need for accurate fact-finding during APA review. ECF No. 101 at 9–12. That remains true even if, as the Forest Service now argues, the CEQ documents do not actually provide evidentiary support for the Final Rule. ECF No. 107 at 10 ("CEQ's deliberative documents are not the Forest Service's reasons for its decision."). To the extent that is true, it only heightens the need for disclosure. In its contemporaneous statement of reasons for the Final Rule and up to this point in the litigation, the Forest Service has acknowledged its reliance on CEQ direction. *See supra* Part II.A.1. Further, CEQ's input and direction is central to Conservation Groups' claim that the Final Rule, in its application of CEQ regulations, violated the National Environmental Policy Act. *See* ECF No. 1. The Forest Service used the CEQ documents, "by its own words," to "justif[y]" its rulemaking, ECF No. 101 at 3, and to assure the public its policy was legally sound, AR 093267 (arguing CEQ's input showed the "the CEs included in the final rule are in conformance with NEPA and CEQ's updated regulations"). If the CEQ documents do not do the work that the agency has previously claimed, that itself would tend to support Conservation Groups' APA claim.

In summary, because the Forest Service's assertion of "the deliberative process privilege cannot be reconciled with the principles of APA review," ECF No. 101 at 12, this Court should reject the agency's claim of privilege for the CEQ documents.

B.       The Court Should Grant Conservation Groups' Motion to Compel
         Completion of the Administrative Record.

The Forest Service cannot withhold documents 166, 167, and 219 as attorney-client and

work-product privileged because it failed to assert said privileges for more than fifteen months

after its deadline to do so. By failing to timely assert those privileges, the agency waived them.

Under binding Fourth Circuit precedent, the Forest Service "carries the burden of

demonstrating" that a privilege applies, which includes showing that "the privilege was not

waived." *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996). An agency waives a

privilege by failing to timely assert it. *United States v. Bolander*, 722 F.3d 199, 223 (4th Cir.

2013); *see also United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008) (party that waited six

weeks to assert attorney-client privilege following discovery conference waived privilege). An

assertion of privilege is untimely if it fails to meet a court-imposed deadline. *See S.E.C. v.

Yorkville Advisors, LLC*, 300 F.R.D. 152, 166 (S.D.N.Y. 2014) (agency waived privileges it

raised for the first time in a revised privilege log because a "party asserting a privilege must

expressly make its claim at the time the [initial privilege log] is due").

The Forest Service failed to assert attorney-client or attorney-work-product privilege over

documents 166, 167, and 219 in a timely fashion. After two extensions of time, the second of

which was accompanied by a warning that it would be the last, this Court ordered the Forest

Service to assert any applicable privileges by July 7, 2022. ECF No. 84. In neither the original

nor the revised privilege log did the Forest Service assert attorney-client or attorney-work-

product privilege for these documents. Instead, it asserted only deliberative process privilege.

ECF Nos. 81-3, 88-3. Now that this Court has rejected the agency's claim of deliberative process

privilege, the Forest Service seeks to go back to the well and add new privileges to the mix. But

it is too late; by failing to assert those privileges by the Court-imposed deadline, the agency

16

waived them. *See E.E.O.C. v. Parker Drilling Co.*, No. 3:13-CV-00181-SLG, 2014 WL 5410661, at *5 (D. Alaska Oct. 22, 2014) (agency waived two privileges it first raised two months after its initial privilege log was due). Even if that July 7 date had not been a hard-and-fast deadline—which it was—the Forest Service still waived the privileges by waiting until the parties were finally at the cusp of merits briefing to assert them, despite having ample opportunity to do so over the previous fifteen months. *See Bolander*, 722 F.3d at 223 (party cannot wait "until the eleventh hour" to assert privilege).

The Forest Service takes the position that this Court did not expressly forbid the Forest Service from revising its privilege log more than once. Exhibit 1. That is true, as far as it goes; the Forest Service was free to file as many revised privilege logs as it wished before the July 7, 2022 deadline. But the Forest Service cannot pretend that this deadline had no legal effect, and that it was free to make new assertions of privilege ad infinitum. The agency also appears to take the position that the attorney-client and work-product privileges were inadvertently omitted from the privilege log filed with this Court. *Id.* That is neither here nor there. If the Forest Service believed it had good cause to make a new assertion of privilege more than a year after its July 7, 2022 deadline, it should have conferred with Conservation Groups and sought leave of the Court to modify that deadline. *See* Fed. R. Civ. P. 16(b)(4). It did not. Instead, it unilaterally added new privileges without notifying the Parties or the Court, which would have gone unnoticed but for Conservation Groups' painstaking efforts to double-check the new privilege log against the earlier ones. The Forest Service waived the attorney-client and work-product privileges by failing to seek leave to assert them and by neglecting to justify its extensive delay.

17

IV.     **Conclusion**

For the foregoing reasons, this Court should deny the Forest Service's motion for reconsideration and grant Conservation Groups' motion to compel completion of the record. The Court correctly found that the documents at issue—expressly relied on by the Forest Service and held out as substantiating the Final Rule factually and supporting it legally—were not protected by the deliberative process privilege because they were too important to judicial review. The agency should not now be allowed, through foot-dragging or undisclosed new assertions of privilege, to continue to withhold them. Conservation Groups ask that the record be completed forthwith so that the Parties can proceed to the merits.

Respectfully submitted this the 3rd day of November, 2023.

/s/ Sam Evans
Sam Evans
N.C. Bar No. 44992
J. Patrick Hunter
N.C. Bar No. 44485
Spencer Scheidt (*pro hac vice pending*)
N.C. Bar No. 57078
SOUTHERN ENVIRONMENTAL LAW CENTER
48 Patton Avenue, Suite 304
Asheville, NC 28801-3321
Telephone: 828-258-2023
Facsimile: 828-258-2024
sevans@selcnc.org; phunter@selcnc.org;
sscheidt@selcnc.org

Kristin Davis
VA Bar No. 85076
SOUTHERN ENVIRONMENTAL LAW CENTER
120 Garrett Street, Suite 400
Charlottesville, VA 22902-5613
Telephone: 434-977-4090
Facsimile: 434-977-1483
kdavis@selcva.org;

*Counsel for Conservation Groups*

18

**CERTIFCATE OF SERVICE**

I certify that on November 3, 2023, I electronically filed the foregoing PLAINTIFFS'

RESPONSE TO FEDERAL DEFENDANTS' MOTION FOR RECONSIDERATION AND

BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLETION OF THE

ADMINISTRATIVE RECORD with the Court using the CM/ECF system, which will notify all

counsel of record.


*/s/ Sam Evans*
Sam Evans
Southern Environmental Law Center