# Exhibit 4

**Forest Service Handbook**
**Service Wide (WO)**
**Washington, DC**

**Forest Service Handbook 1909.15 – National Environmental Policy Act Handbook**

**Chapter 30 – Categorical Exclusion from Documentation**

**Amendment Number:** 1909.15-2023-2

**Effective date:**  March 3, 2023

**Duration:** This amendment is effective until superseded or removed.

**Previous Directive:**  1909.15-2020-1 to chapter 30, March 16, 2020, 44 pages

**Approved by:**  Jacqueline Emanuel, Associate Deputy Chief, NFS

**Date approved:**  February 23, 2023

**Responsible Staff:** Ecosystem Management Coordination (EMC)

**Explanation of changes:** Following is an explanation of the changes throughout the directive by section.

**Chapter 30:** Updates to 508 compliant format.

**Section 32.12:** Updates list of "Categories Established by the Chief" to incorporate categorical exclusions and modifications included in the 36 CFR 220 Final Rule on 11/19/2020 (73620 FR Vol. 85, No. 224). Removes Category 36 CFR 220.6(d)(10); this category was incorporated into 36 CFR 220.6(d)(11) when the regulations were updated. Adds 36 CFR 220.6(d)(11) and 36 CFR 220.6(d)(12).

**Section 32.2:** Changes title from "Categories of Actions for Which a Project or Case File and Decision Memo Are Required" to "Categories for Which a Project or Case File and Decision Memo Are Required" and sets forth direction.

**Section 32.2:** Updates list of "Categories for Which a Project or Case File and Decision Memo Are Required" to incorporate categorical exclusions and modifications included in the 36 CFR 220 Final Rule on 11/19/2020 (73620 FR Vol. 85, No. 224). Modifies 36 CFR 220.6(e)(3) to include the acres of National Forest System (NFS) lands. Makes clerical changes to 36 CFR 220.6(e)(10). Removes Category 36 CFR 220.6(e)(15); this category was incorporated into 36 CFR 220.6(d)(11) when the regulations were updated. Makes clarification to 36 CFR 220.6(e)(20). Adds 36 CFR 220.6(e)(21), 36 CFR 220.6(e)(22), 36 CFR 220.6(e)(23), 36 CFR 220.6(e)(24), and 36 CFR 220.6(e)(25).

**Section 32.3:** Updates list of "Categories and Exceptions Established by Statute" based on current regulatory requirements. Makes clerical change to category 4 to add year category enacted. Adds categorical exclusion established in section 40806 of the Infrastructure Investment and Jobs Act of 2021 (Pub. L. 117-58).

**Section 32.3:** Makes clerical changes to 4. "Oil and Gas Leases." Incorporates and corrects relevant guidance from exhibits into the section 4 and deletes the "Energy Policy Act of 2005" exhibits. Previous exhibits included: 2011 Letter from Deputy Chief to Regional Foresters entitled "Energy Policy Action of 2005, Adjusted Use of Section 390 Categorical Exclusions for Oil and Gas due to Western Energy Alliance v. Salazar;" and, 2010 Guidance memo from the Deputy Chief entitled "Energy Policy Act of 2005, Use of Section 390 Categorical Exclusions for Oil and Gas."

## Table of Contents

**31 – Factors to Consider** ................................................................................................................ **4**
    **31.1 – General** ................................................................................................................ **4**
    **31.2 – Extraordinary Circumstances** ......................................................................... **4**
    **31.3 – Scoping** ............................................................................................................... **5**
**32 –Categories of Actions Excluded From Documentation** ................................................. **6**
    **32.1 – Categories for Which a Project or Case File and Decision Memo Are Not Required** ........... **6**
        **32.11 – Categories Established by the Secretary** ......................................... **6**
        **32.12 – Categories Established by the Chief** ................................................. **7**
    **32.2 – Categories for Which a Project or Case File and Decision Memo Are Required** ................ **10**
    **32.3 – Categories and Exceptions Established by Statute** .......................................... **19**
**33 – Documentation** ...................................................................................................................... **41**
    **33.1 – Decision Memo Not Required** ........................................................................... **41**
    **33.2 – Decision Memo Required** ................................................................................... **41**
    **33.3 – Format and Content of a Decision Memo** ........................................................ **42**
**34 – Notice and Distribution Of Decision Memo** .................................................................... **43**

The Council of Environmental Quality (CEQ) regulations provide for categorical exclusions (CEs) to implement the National Environmental Policy Act (NEPA) for the purpose of reducing delay and paperwork. CEQ regulations allow Federal agencies to exclude from documentation in an environmental assessment (EA) or environmental impact statement (EIS) categories of actions that do not individually or cumulatively have a significant effect on the human environment. Based on the Agency's experience and knowledge, the responsible official can conclude that if the action fits within an identified category and analysis shows there are no extraordinary circumstances, then the action would not have significant effects. The following guidance on appropriate use of CE must be read in conjunction with applicable sections of this handbook, specifically chapter 10.

For ease of reference, Council on Environmental Quality (CEQ) regulations for implementing requirements of the NEPA are set out in boldface type and block-indented and Forest Service regulations, that supplement the CEQ regulations, are in boldface type and italicized and block-indented.

**31 – Factors to Consider**

**31.1 – General**

> **A proposed action may be categorically excluded from further analysis and documentation in an EIS or EA only if there are no extraordinary circumstances related to the proposed action and if:**
>
> > **(1) The proposed action is within one of the categories established by the Secretary at 7 CFR part 1b.3; or**
> > **(2) The proposed action is within a category listed in sections 220.6 (d) and (e).**
>
> (36 CFR 220.6(a))

**31.2 – Extraordinary Circumstances**

> **Resource conditions that should be considered in determining whether extraordinary circumstances related to a proposed action warrant further analysis and documentation in an EA or an EIS are:**
>
> > **(1) Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species;**
> > **(2) Flood plains, wetlands, or municipal watersheds;**
> > **(3) Congressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas;**
> > **(4) Inventoried roadless areas or potential wilderness areas;**

*(5) Research natural areas;*

*(6) American Indians and Alaska Native religious or cultural sites, and*

*(7) Archaeological sites, or historic properties or areas.*

***The mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion (CE). It is the existence of a cause-effect relationship between a proposed action and the potential effect on these resource conditions and if such a relationship exists, the degree of the potential effect of a proposed action on these resource conditions that determine whether extraordinary circumstances exist.***

(36 CFR 220.6(b))

In considering extraordinary circumstances, the responsible official should determine whether or not any of the listed resources are present, and if so, the degree of the potential effects on the listed resources. If the degree of potential effect raises uncertainty over its significance, then an extraordinary circumstance exists, precluding use of a categorical exclusion.

## 31.3 – Scoping

***If the responsible official determines, based on scoping, that it is uncertain whether the proposed action may have a significant effect on the environment, prepare an EA. If the responsible official determines, based on scoping, that the proposed action may have a significant environmental effect, prepare an EIS.***

(36 CFR 220.6(c))

Scoping is required for all Forest Service proposed actions, including those that would appear to be categorically excluded (section 11). Scoping is important to discover information that could point to the need for an EA or EIS versus a CE. Scoping is the means to identify the presence or absence of any extraordinary circumstances that would warrant further documentation in an EA or EIS. Scoping should also reveal any past, present, or reasonably foreseeable future actions with the potential to create uncertainty over the significance of cumulative effects. Scoping complexity should be commensurate with project complexity.

The flow chart at section 11.6, exhibit 01, shows how scoping can be applied in the CE process to help determine at an early point whether the use of a CE is appropriate.

**32 –Categories of Actions Excluded From Documentation**

**32.1 – Categories for Which a Project or Case File and Decision Memo Are Not Required**
At the discretion of the responsible official, a project or case file and a decision memo are not required but may be prepared for the categories of actions set forth in sections 32.11 and 32.12.

**32.11 – Categories Established by the Secretary**
The rules at 7 CFR 1b.3 exclude from documentation in an EIS or an EA the following categories. A supporting record and a decision memo are not required, but at the discretion of the responsible official, may be prepared.

1. Policy development, planning, and implementation that relate to routine activities, such as personnel, organizational changes, or similar administrative functions (cite this category as 7 CFR 1b.3(a)(1)).

2. Activities that deal solely with the funding of programs, such as program budget proposals, disbursements, and transfer or reprogramming of funds (cite this category as 7 CFR 1b.3(a)(2)).

3. Inventories, research activities, and studies, such as resource inventories and routine data collection when such actions are clearly limited in context and intensity (cite this category as 7 CFR 1b.3(a)(3)).

4. Educational and informational programs and activities (cite this category as 7 CFR 1b.3(a)(4)).

5. Civil and criminal law enforcement and investigative activities (cite this category as 7 CFR 1b.3(a)(5)).

6. Activities that are advisory and consultative to other agencies and public and private entities, such as legal counseling and representation (cite this category as 7 CFR 1b.3(a)(6)).

7. Activities related to trade representation and market development activities abroad (cite this category as 7 CFR 1b.3(a)(7)).

**32.12 – Categories Established by the Chief**
The following categorical exclusions are found at 36 CFR 220.6(d):

*Categories of Actions for Which a Project or Case File and Decision Memo Are Not Required.*

*A supporting record and a decision memo are not required, but at the discretion of the responsible official, may be prepared for the following categories:*

> *(1) Orders issued pursuant to 36 CFR part 261 - Prohibitions to provide short-term resource protection or to protect public health and safety. Examples include but are not limited to:*
> *(i) Closing a road to protect bighorn sheep during lambing season and*
> *(ii) Closing an area during a period of extreme fire danger.*

Cite this category as 36 CFR 220.6(d)(1)

> *(2) Rules, regulations, or policies to establish servicewide administrative procedures, program processes, or instructions. Examples include but are not limited to:*
> *(i) Adjusting special use or recreation fees using an existing formula;*
> *(ii) Proposing a technical or scientific method or procedure for screening effects of emissions on air quality related values in Class I wildernesses;*
> *(iii) Proposing a policy to defer payments on certain permits or contracts to reduce the risk of default;*
> *(iv) Proposing changes in contract terms and conditions or terms and conditions of special use authorizations;*
> *(v) Establishing a service-wide process for responding to offers to exchange land and for agreeing on land values; and*
> *(vi) Establishing procedures for amending or revising forest land and resource management plans.*

Cite this category as 36 CFR 220.6(d)(2)

> *(3) Repair and maintenance of administrative sites. Examples include but are not limited to:*
> *(i) Mowing lawns at a district office;*
> *(ii) Replacing a roof or storage shed;*
> *(iii) Painting a building; and*
> *(iv) Applying registered pesticides for rodent or vegetation control.*

Cite this category as 36 CFR 220.6(d)(3)

**(4)** *Repair and maintenance of roads, trails, and landline boundaries. Examples include but are not limited to:*
  **(i)** *Authorizing a user to grade, resurface, and clean the culverts of an established NFS road;*
  **(ii)** *Grading a road and clearing the roadside of brush without the use of herbicides;*
  **(iii)** *Resurfacing a road to its original condition;*
  **(iv)** *Pruning vegetation and cleaning culverts along a trail and grooming the surface of the trail; and*
  **(v)** *Surveying, painting, and posting landline boundaries.*

Cite this category as 36 CFR 220.6(d)(4)

**(5)** *Repair and maintenance of recreation sites and facilities. Examples include but are not limited to:*
  **(i)** *Applying registered herbicides to control poison ivy on infested sites in a campground;*
  **(ii)** *Applying registered insecticides by compressed air sprayer to control insects at a recreation site complex;*
  **(iii)** *Repaving a parking lot; and*
  **(iv)** *Applying registered pesticides for rodent or vegetation control.*

Cite this category as 36 CFR 220.6(d)(5)

**(6)** *Acquisition of land or interest in land. Examples include but are not limited to:*
  **(i)** *Accepting the donation of lands or interests in land to the NFS, and*
  **(ii)** *Purchasing fee, conservation easement, reserved interest deed, or other interests in lands.*

Cite this category as 36 CFR 220.6(d)(6)

**(7)** *Sale or exchange of land or interest in land and resources where resulting land uses remain essentially the same. Examples include but are not limited to:*
  **(i)** *Selling or exchanging land pursuant to the Small Tracts Act;*
  **(ii)** *Exchanging National Forest System lands or interests with a State agency, local government, or other non-Federal party (individual or organization) with similar resource management objectives and practices;*
  **(iii)** *Authorizing the Bureau of Land Management to issue leases on producing wells when mineral rights revert to the United States from private ownership and there is no change in activity; and*

*(iv) Exchange of administrative sites involving other than NFS lands.*

Cite this category as 36 CFR 220.6(d)(7)

*(8) Approval, modification, or continuation of minor, short-term (1 year or less) special uses of National Forest System lands. Examples include but are not limited to:*
*(i)  Approving, on an annual basis, the intermittent use and occupancy by a State-licensed outfitter or guide;*
*(ii)  Approving the use of National Forest System land for apiaries; and*
*(iii) Approving the gathering of forest products for personal use.*

Cite this category as 36 CFR 220.6(d)(8)

*(9) Issuance of a new permit for up to the maximum tenure allowable under the National Forest Ski Area Permit Act of 1986 (16 U.S.C. 497b) for an existing ski area when such issuance is a purely ministerial action to account for administrative changes, such as a change in ownership of ski area improvements, expiration of the current permit, or a change in the statutory authority applicable to the current permit. Examples include but are not limited to:*
*(i)  Issuing a permit to a new owner of ski area improvements within an existing ski area with no changes to the master development plan, including no changes to the facilities or activities for that ski area;*
*(ii)  Upon expiration of a ski area permit, issuing a new permit to the holder of the previous permit where the holder is not requesting any changes to the master development plan, including changes to the facilities or activities; and*
*(iii) Issuing a new permit under the National Forest Ski Area Permit Act of 1986 to the holder of a permit issued under the Term Permit and Organic Acts, where there are no changes in the type or scope of activities authorized and no other changes in the master development plan.*

Cite this category as 36 CFR 220.6(d)(9)

*(10) [Reserved]*

*(11) Issuance of a new special use authorization to replace an existing or expired special use authorization, when such issuance is to account only for administrative changes, such as a change in ownership of authorized improvements or expiration of the current authorization, and where there are no changes to the authorized facilities or increases in the*

*scope or magnitude of authorized activities. The applicant or holder must be in compliance with all the terms and conditions of the existing or expired special use authorization. Subject to the foregoing conditions, examples include but are not limited to:*

 *(i) Issuing a new authorization to replace a powerline facility authorization that is at the end of its term;*

 *(ii) Issuing a new permit to replace an expired permit for a road that continues to be used as access to non-NFS lands; and*

 *(iii) Converting a transitional priority use outfitting and guiding permit to a priority use outfitting and guiding permit.*

Cite this category as 36 CFR 220.6(d)(11)

 *(12) Issuance of a new authorization or amendment of an existing authorization for recreation special uses that occur on existing roads or trails, in existing facilities, in existing recreation sites, or in areas where such activities are allowed. Subject to the foregoing condition, examples include but are not limited to:*

  *(i) Issuance of an outfitting and guiding permit for mountain biking on NFS trails that are not closed to mountain biking;*

  *(ii) Issuance of a permit to host a competitive motorcycle event;*

  *(iii) Issuance of an outfitting and guiding permit for backcountry skiing;*

  *(iv) Issuance of a permit for a one-time use of existing facilities for other recreational events; and*

  *(v) Issuance of a campground concession permit for an existing campground that has previously been operated by the Forest Service.*

Cite this category as 36 CFR 220.6(d)(12)

**32.2 – Categories for Which a Project or Case File and Decision Memo Are Required**

*A supporting record is required and the decision to proceed must be documented in a decision memo for the categories of action in paragraphs (e)(1) through (e)20 of this section. As a minimum, the project or case file should include any records prepared, such as: the names of interested and affected people, groups, and agencies contacted; the determination that no extraordinary circumstances exist; a copy of the decision memo; and a list of the people notified of the decision.* (36 CFR 220.6(e))

The following categorical exclusions are at 36 CFR 220.6(e).

 *(1) Construction and reconstruction of trails. Examples include but are not limited to:*

> *(i) Constructing or reconstructing a trail to a scenic overlook and*
> *(ii) Reconstructing an existing trail to allow use by handicapped individuals.*

Cite this category as 36 CFR 220.6(e)(1)

> *(2) Additional construction or reconstruction of existing telephone or utility lines in a designated corridor. Examples include but are not limited to:*
>   *(i) Replacing an underground cable trunk and adding additional phone lines, and*
>   *(ii) Reconstructing a power line by replacing poles and wires.*

Cite this category as 36 CFR 220.6(e)(2)

> *(3) Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands. Subject to the preceding condition, examples include but are not limited to:*
>   *(i) Approving the construction of a meteorological sampling site;*
>   *(ii) Approving the use of land for a one-time group event;*
>   *(iii) Approving the construction of temporary facilities for filming of staged or natural events or studies of natural or cultural history;*
>   *(iv) Approving the use of land for a utility corridor that crosses a national forest;*
>   *(v) Approving the installation of a driveway or other facilities incidental to use of a private residence; and*
>   *(vi) Approving new or additional communication facilities, associated improvements, or communication uses at a site already identified as available for these purposes.*

Cite this category as 36 CFR 220.6(e)(3)

> *(4) [Reserved]*

> *(5) Regeneration of an area to native tree species, including site preparation that does not involve the use of herbicides or result in vegetation type conversion. Examples include but are not limited to:*
>   *(i) Planting seedlings of superior trees in a progeny test site to evaluate genetic worth, and*
>   *(ii) Planting trees or mechanical seed dispersal of native tree species following a fire, flood, or landslide.*

Cite this category as 36 CFR 220.6(e)(5)

*(6) Timber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction. Examples include but are not limited to:*
  *(i) Girdling trees to create snags;*
  *(ii) Thinning or brush control to improve growth or to reduce fire hazard including the opening of an existing road to a dense timber stand;*
  *(iii) Prescribed burning to control understory hardwoods in stands of southern pine; and*
  *(iv) Prescribed burning to reduce natural fuel build-up and improve plant vigor.*

Cite this category as 36 CFR 220.6(e)(6)

*(7) Modification or maintenance of stream or lake aquatic habitat improvement structures using native materials or normal practices. Examples include but are not limited to:*
  *(i) Reconstructing a gabion with stone from a nearby source;*
  *(ii) Adding brush to lake fish beds; and*
  *(iii) Cleaning and resurfacing a fish ladder at a hydroelectric dam.*

Cite this category as 36 CFR 220.6(e)(7)

*(8) Short-term (1 year or less) mineral, energy, or geophysical investigations and their incidental support activities that may require cross-country travel by vehicles and equipment, construction of less than 1 mile of low standard road, or use and minor repair of existing roads. Examples include but are not limited to:*
  *(i) Authorizing geophysical investigations which use existing roads that may require incidental repair to reach sites for drilling core holes, temperature gradient holes, or seismic shot holes;*
  *(ii) Gathering geophysical data using shot hole, vibroseis, or surface charge methods;*
  *(iii) Trenching to obtain evidence of mineralization;*
  *(iv) Clearing vegetation for sight paths or from areas used for investigation or support facilities;*
  *(v) Redesigning or rearranging surface facilities within an approved site;*
  *(vi) Approving interim and final site restoration measures; and*
  *(vii) Approving a plan for exploration which authorizes repair of an existing road and the construction of 1/3 mile of temporary road; clearing vegetation from an acre of land for trenches, drill pads, or support facilities.*

Cite this category as 36 CFR 220.6(e)(8)

> *(9) Implementation or modification of minor management practices to improve allotment condition or animal distribution when an allotment management plan is not yet in place. Examples include but are not limited to:*
> > *(i) Rebuilding a fence to improve animal distribution;*
> > *(ii) Adding a stock watering facility to an existing water line; and*
> > *(iii) Spot seeding native species of grass or applying lime to maintain forage condition.*

Cite this category as 36 CFR 220.6(e)(9)

> *(10) [Reserved]*

"[T]he Forest Service is enjoined from implementing the Fuels CE pending its issuance of a new decision that is consistent with the Court's opinion in *Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007) and that complies with 40 C.F.R. §1507.3 (including prior public notice and comment)." Sierra Club v. Bosworth, No. 04-2114 (E.D. Cal. November 25, 2008). Unless and until the Agency complies with these requirements, **this category is not to be used**. See also the Chief's 1570-1 memo dated December 1, 2008.

> *(11) Post-fire rehabilitation activities, not to exceed 4,200 acres (such as tree planting, fence replacement, habitat restoration, heritage site restoration, repair of roads and trails, and repair of damage to minor facilities such as campgrounds), to repair or improve lands unlikely to recover to a management approved condition from wildland fire damage, or to repair or replace minor facilities damaged by fire. Such activities:*
> > *(i) Shall be conducted consistent with Agency and Departmental procedures and applicable land and resource management plans;*
> > *(ii) Shall not include the use of herbicides or pesticides or the construction of new permanent roads or other new permanent infrastructure; and*
> > *(iii) Shall be completed within 3 years following a wildland fire.*

Cite this category as 36 CFR 220.6(e)(11)

> *(12) Harvest of live trees not to exceed 70 acres, requiring no more than ½ mile of temporary road construction. Do not use this category for even-aged regeneration harvest or vegetation type conversion. The proposed action may include incidental removal of trees for landings, skid trails, and road clearing. Examples include but are not limited to:*
> > *(i) Removal of individual trees for sawlogs, specialty products, or fuelwood, and*

> (ii) *Commercial thinning of overstocked stands to achieve the desired stocking level to increase health and vigor.*

Cite this category as 36 CFR 220.6(e)(12)

> **(13)** *Salvage of dead and/or dying trees not to exceed 250 acres, requiring no more than ½ mile of temporary road construction. The proposed action may include incidental removal of live or dead trees for landings, skid trails, and road clearing. Examples include but are not limited to:*
>> *(i) Harvest of a portion of a stand damaged by a wind or ice event and construction of a short temporary road to access the damaged trees and*
>> *(ii) Harvest of fire-damaged trees.*

Cite this category as 36 CFR 220.6(e)(13)

> **(14)** *Commercial and non-commercial sanitation harvest of trees to control insects or disease not to exceed 250 acres, requiring no more than ½ mile of temporary road construction, including removal of infested/infected trees and adjacent live uninfested/uninfected trees as determined necessary to control the spread of insects or disease. The proposed action may include incidental removal of live or dead trees for landings, skid trails, and road clearing. Examples include but are not limited to:*
>> *(i) Felling and harvest of trees infested with southern pine beetles and immediately adjacent uninfested trees to control expanding spot infestations, and*
>> *(ii) Removal and/or destruction of infested trees affected by a new exotic insect or disease, such as emerald ash borer, Asian long horned beetle, and sudden oak death pathogen.*

Cite this category as 36 CFR 220.6(e)(14)

> **(15)** *[Reserved]*

> **(16)** *Land management plans, plan amendments, and plan revisions developed in accordance with 36 CFR 219 et seq. that provide broad guidance and information for project and activity decisionmaking in a NFS unit. Proposals for actions that approve projects and activities, or that command anyone to refrain from undertaking projects and activities, or that grant, withhold or modify contracts, permits or other formal legal instruments, are outside the scope of this category and shall be considered separately under Forest Service NEPA procedures.*

Cite this category as 36 CFR 220.6(e)(16)

**(17) Approval of a Surface Use Plan of Operations for oil and natural gas exploration and initial development activities, associated with or adjacent to a new oil and/or gas field or area, so long as the approval will not authorize activities in excess of any of the following:**
    **(i) One mile of new road construction;**
    **(ii) One mile of road reconstruction;**
    **(iii) Three miles of individual or co-located pipelines and/or utilities disturbance; and**
    **(iv) Four drill sites.**

Cite this category as 36 CFR 220.6(e)(17)

**(18) Restoring wetlands, streams, riparian areas or other water bodies by removing, replacing, or modifying water control structures such as, but not limited to, dams, levees, dikes, ditches, culverts, pipes, drainage tiles, valves, gates, and fencing, to allow waters to flow into natural channels and floodplains and restore natural flow regimes to the extent practicable where valid existing rights or special use authorizations are not unilaterally altered or canceled. Examples include but are not limited to:**
    **(i) Repairing an existing water control structure that is no longer functioning properly with minimal dredging, excavation, or placement of fill , and does not involve releasing hazardous substances;**
    **(ii) Installing a newly-designed structure that replaces an existing culvert to improve aquatic organism passage and prevent resource and property damage where the road or trail maintenance level does not change;**
    **(iii) Removing a culvert and installing a bridge to improve aquatic and/or terrestrial organism passage or prevent resource or property damage where the road or trail maintenance level does not change; and.**
    **(iv) Removing a small earthen and rock fill dam with a low hazard potential classification that is no longer needed.**

Cite this category as 36 CFR 220.6(e)(18)

**(19) Removing and/or relocating debris and sediment following disturbance events (such as floods, hurricanes, tornados, mechanical/ engineering failures, etc.) to restore uplands, wetlands, or riparian systems to pre-disturbance conditions, to the extent practicable, such that site**

*conditions will not impede or negatively alter natural processes.*
*Examples include but are not limited to:*

    (i) *Removing an unstable debris jam on a river following a flood event and relocating it back in the floodplain and stream channel to restore water flow and local bank stability;*

    (ii) *Clean-up and removal of infrastructure flood debris, such as, benches, tables, outhouses, concrete, culverts, and asphalt following a hurricane from a stream reach and adjacent wetland area; and*

    (iii) *Stabilizing stream banks and associated stabilization structures to reduce erosion through bioengineering techniques following a flood event, including the use of living and nonliving plant materials in combination with natural and synthetic support materials, such as rocks, riprap, geo-textiles, for slope stabilization, erosion reduction, and vegetative establishment and establishment of appropriate plant communities (bank shaping and planting, brush mattresses, log, root wad, and boulder stabilization methods).*

Cite this category as 36 CFR 220.6(e)(19)

**(20)** *Activities that restore, rehabilitate, or stabilize lands occupied by roads and trails, including unauthorized roads and trails and National Forest System roads and National Forest System trails, to a more natural condition that may include removing, replacing, or modifying drainage structures and ditches, reestablishing vegetation, reshaping natural contours and slopes, reestablishing drainage-ways, or other activities that would restore site productivity and reduce environmental impacts. Examples include but are not limited to:*

    (i) *Decommissioning a road to a more natural state by restoring natural contours and removing construction fills, loosening compacted soils, revegetating the roadbed and removing ditches and culverts to reestablish natural drainage patterns;*

    (ii) *Restoring a trail to a natural state by reestablishing natural drainage patterns, stabilizing slopes, reestablishing vegetation, and installing water bars; and*

    (iii) *Installing boulders, logs, and berms on a road segment to promote naturally regenerated grass, shrub, and tree growth.*

Cite this category as 36 CFR 220.6(e)(20)

**(21)** *Construction, reconstruction, decommissioning, relocation, or disposal of buildings, infrastructure, or other improvements at an existing*

*administrative site, as that term is defined in section 502(1) of Public Law No. 109-54 (119 Stat. 559; 16 U.S.C. 580d note). Examples include but are not limited to:*

   *(i) Relocating an administrative facility to another existing administrative site;*

   *(ii) Construction, reconstruction, or expansion of an office, a warehouse, a lab, a greenhouse, or a fire-fighting facility;*

   *(iii) Surface or underground installation or decommissioning of water or waste disposal system infrastructure;*

   *(iv) Disposal of an administrative building; and*

   *(v) Construction or reconstruction of communications infrastructure.*

Cite this category as 36 CFR 220.6(e)(21)

*(22) Construction, reconstruction, decommissioning, or disposal of buildings, infrastructure, or improvements at an existing recreation site, including infrastructure or improvements that are adjacent or connected to an existing recreation site and provide access or utilities for that site. Recreation sites include but are not limited to campgrounds and camping areas, picnic areas, day use areas, fishing sites, interpretive sites, visitor centers, trailheads, ski areas, and observation sites. Activities within this category are intended to apply to facilities located at recreation sites managed by the Forest Service and those managed by concessioners under a special use authorization. Examples include but are not limited to:*

   *(i) Constructing, reconstructing, or expanding a toilet or shower facility;*

   *(ii) Constructing or reconstructing a fishing pier, wildlife viewing platform, dock, or other constructed feature at a recreation site;*

   *(iii) Installing or reconstructing a water or waste disposal system;*

   *(iv) Constructing or reconstructing campsites;*

   *(v) Disposal of facilities at a recreation site;*

   *(vi) Constructing or reconstructing a boat landing;*

   *(vii) Replacing a chair lift at a ski area;*

   *(viii) Constructing or reconstructing a parking area or trailhead; and*

   *(ix) Reconstructing or expanding a recreation rental cabin.*

Cite this category as 36 CFR 220.6(e)(22)

*(23) Road management activities on up to 8 miles of NFS roads and associated parking areas. Activities under this category cannot include construction or realignment. Examples include but are not limited to:*

> (i) *Rehabilitating an NFS road or parking area where management activities go beyond repair and maintenance;*
> (ii) *Shoulder-widening or other safety improvements within the right-of-way for an NFS road; and*
> (iii) *Replacing a bridge along an NFS road.*

Cite this category as 36 CFR 220.6(e)(23)

> **(24) Construction and realignment of up to 2 miles of NFS roads and associated parking areas. Examples include but are not limited to:**
> (i) **Constructing an NFS road to improve access to a trailhead or parking area;**
> (ii) **Rerouting an NFS road to minimize resource impacts; and**
> (iii) **Improving or upgrading the surface of an NFS road to expand its capacity.**

Cite this category as 36 CFR 220.6(e)(24)

> **(25) Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience. Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres.**
> (i) **Activities to meet restoration and resilience objectives may include, but are not limited to:**
> > (A) **Stream restoration, aquatic organism passage rehabilitation, or erosion control;**
> > (B) **Invasive species control and reestablishment of native species;**
> > (C) **Prescribed burning;**
> > (D) **Reforestation;**
> > (E) **Road and/or trail decommissioning (system and non-system);**
> > (F) **Pruning;**
> > (G) **Vegetation thinning; and**
> > (H) **Timber harvesting.**
> (ii) **The following requirements or limitations apply to this category:**
> > (A) **Projects shall be developed or refined through a collaborative process that includes multiple interested persons representing diverse interests;**
> > (B) **Vegetation thinning or timber harvesting activities shall be designed to achieve ecological restoration objectives, but shall not include salvage harvesting as defined in Agency policy; and**

***(C) Construction and reconstruction of permanent roads is
limited to 0.5 miles.***

***Construction of temporary roads is limited to 2.5 miles, and all temporary
roads shall be decommissioned no later than 3 years after the date the project
is completed. Projects may include repair and maintenance of NFS roads and
trails to prevent or address resource impacts; repair and maintenance of NFS
roads and trails is not subject to the above mileage limits.***

Cite this category as 36 CFR 220.6(e)(25)

**32.3 – Categories and Exceptions Established by Statute**

Congress has statutorily established the following CEs and exceptions from NEPA. Excluding the exception for organizational camp special use authorizations, all of the following items must be published to the Schedule of Proposed Actions and must be entered into PALS. Specific requirements on public input, collaboration, documentation, and extraordinary circumstances vary by each statute and are specified below. The responsible official should be familiar with each statute, as they have varying procedural requirements.

1. **Organizational camp special use authorizations**. The National Forest Organizational Camp Fee Improvement Act of 2003 (16 U.S.C. 6231 et seq.) established that the ministerial issuance or amendment of an organizational camp special use authorization is not subject to NEPA. Sections 502(c) and 507 (16 U.S.C. 6231, 6236) provide as follows:

   502 (c) Definitions. In this Act:

   (1) The term "organizational camp" means a public or semipublic camp that—
       (A) is developed on National Forest System lands by a nonprofit organization or governmental entity;
       (B) provides a valuable service to the public by using such lands as a setting to introduce young people or individuals with a disability to activities that they may not otherwise experience and to educate them on natural resource issues; and
       (C) does not have as its primary purpose raising revenue through commercial activities.

   507 (a) NEPA EXCEPTION.—The ministerial issuance or amendment of an organizational camp special use authorization shall not be subject to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).

   (b) RULE OF CONSTRUCTION.—For purposes of subsection (a), the ministerial issuance or amendment of an authorization occurs only when the issuance or amendment of the authorization would not change the physical

environment or the activities, facilities, or program of the operations governed by the authorization, and at least one of the following apply.

(1) The authorization is issued upon a change in control of the holder of an existing authorization.

(2) The holder, upon expiration of an authorization, is issued a new authorization.

(3) The authorization is amended—

(A) to effectuate administrative changes, such as modification of the land use fee or conversion to a new special use authorization form; or

(B) to include nondiscretionary environmental standards or to conform with current law.

Cite this authority as 16 U.S.C. 6236.

2. **Applied Silvicultural Assessments**. Section 404 of the Healthy Forests Restoration Act of 2003 categorically excludes applied silvicultural assessments for information gathering and research purposes. Section 404 (16 U.S.C 6554) provides as follows:

> *Applied silvicultural assessment and research treatments carried out under this section on not more than 1,000 acres for an assessment or treatment may be categorically excluded from documentation in an environmental impact statement and environmental assessment under the National Environmental Policy Act of 1969.*

Applied silvicultural assessments must be peer reviewed by scientific experts including non-Federal experts. This CE is subject to the extraordinary circumstances provisions (section 31.4). For guidance on use of this CE, see Title IV of the Healthy Forests Restoration Act 16 U.S.C 6551-6556.

Cite this authority as 16 U.S.C. 6554(d).

3. **Oil and Gas Leases**. Section 390 of the Energy Policy Act of 2005 directs that certain activities shall be subject to a rebuttable presumption that the use of a CE under NEPA would apply if the activity is conducted pursuant to the Mineral Leasing Act (30 U.S.C. et seq., as amended) for the purpose of exploration or development of oil or gas. Section 390 identifies five categories of actions that are subject to the statutory categorical exclusion.

The categorical exclusions apply exclusively to oil and gas exploration and development activities conducted pursuant to the Mineral Leasing Act on Federal oil and gas leases. They do not apply to geothermal leases.

Section 390 (42 U.S.C. 15942) provides as follows:

a. *NEPA REVIEW.—Action by the Secretary of the Interior in managing the public lands, or the Secretary of Agriculture in managing National Forest System Lands, with respect to any of the activities described in subsection (b) shall be subject to a rebuttable presumption that the use of a categorical exclusion under the National Environmental Policy Act of 1969 (NEPA) would apply if the activity is conducted pursuant to the Mineral Leasing Act for the purpose of exploration or development of oil or gas.*

b. *ACTIVITIES DESCRIBED.—The activities referred to in subsection (a) are the following:*

   (1) *Individual surface disturbances of less than 5 acres so long as the total surface disturbance on the lease is not greater than 150 acres and site-specific analysis in a document prepared pursuant to NEPA has been previously completed.*

   (2) *Drilling an oil or gas well at a location or well pad site at which drilling has occurred previously within 5 years prior to the date of spudding the well.*

   (3) *Drilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed such drilling as a reasonably foreseeable activity, so long as such plan or document was approved within 5 years prior to the date of spudding the well.*

   (4) *Placement of a pipeline in an approved right-of-way corridor, so long as the corridor was approved within 5 years prior to the date of placement of the pipeline.*

   (5) *Maintenance of a minor activity, other than any construction or major renovation or a building or facility."*

The following is the additional guidance for each of the five activities listed above.

**CATEGORY SPECIFIC GUIDANCE, CATEGORY 1:**

The factors for determining the availability of Section 390(b)(1) are the following three criteria: 1) individual five-acre disturbance threshold, 2) 150-acre unreclaimed disturbance limit, and 3) prior site-specific analysis of oil or gas exploration/ development in a NEPA document. Use of this category requires the Authorized Forest Officer to consider the following three things:

1) **Individual five-acre disturbance threshold** – The Authorized Forest Officer must determine and document that each individual action under consideration will disturb less than five acres on the site. If more than one activity is proposed for a lease (e.g., two individual wells or when reviewing a Master Development Plan (MDP) collectively adding several wells), each activity is counted separately and each must disturb less than five acres.

**The five-acre disturbance threshold is per Surface Use Plan of Operations (SUPO)** - It includes all surface disturbance associated with the proposed action on the lease and off the lease if the off-lease activities are authorized pursuant to the Mineral Leasing Act. For example in the case of an Application for Permit to Drill (APD), the five-acre threshold would include disturbances for construction of the well pad, roads, utilities, and production facilities.

Proposed impacts to existing unreclaimed disturbed areas do not count towards the individual five-acre surface disturbance constraint (e.g., maintenance of an existing road would not be counted since it represents an existing disturbance).

2) **150-acre unreclaimed disturbance limit** – The Authorized Forest Officer must determine and document that the current unreclaimed surface disturbance readily visible on the entire leasehold is not greater than 150 acres, including the action under consideration. This would include disturbance from previous rights-of-way issued in support of lease development. If one or more Federal leases are committed to a BLM approved unit or communitization agreement, the 150 acre threshold applies separately to each lease. For larger leases, the requirement for adequate documentation would be satisfied with a copy of the most recent aerial photograph in the file with an explanation of recent disturbance that may not be shown on the aerial photos. Maps, tally sheets, or other visuals may be substituted for aerial photographs.

The 150-acre unreclaimed disturbance threshold includes only disturbance associated with oil and gas activities and associated rights-of-ways on the leasehold regardless of surface ownership. It does not include disturbance from other activities.

Activities without surface disturbance or successfully reclaimed surface areas would not be included in the 150-acre constraint (e.g., an above ground pipeline).

3) **Site-specific analysis of oil or gas exploration/development in a prior NEPA document** – The Authorized Forest Officer must determine and document that a site-specific NEPA document exists that previously analyzed oil or gas exploration and/or development. For the purposes of this categorical exclusion, the site-specific NEPA document can be: an exploration and/or development EA/EIS, an EA/EIS for a specific Master Development Plan (MDP), a multi-well EA/EIS, or an individual permit approval EA/EIS. The NEPA document must have analyzed the exploration and/or development of oil and gas (not just leasing) and the proposed activity must be within the general boundaries of the area analyzed in the EA or EIS. The NEPA document need not have addressed the specific permit or application being considered.

This categorical exclusion may also be applied to geophysical exploration activities provided the above criteria are met. The same or better mitigating measures considered in the parent NEPA documents must be applied to all actions approved under this categorical exclusion.

**CATEGORY SPECIFIC GUIDANCE, CATEGORY 2:**

The factors for determining the availability of Section 390(b)(2) are the following two criteria: 1) drilling at a location or well pad previously drilled, and 2) five-year limitation from previous drilling. Use of this category requires the Authorized Forest Officer to consider the following two things:

1) **Drilling at a location or well pad previously drilled** – The Authorized Forest Officer must determine and document that the action under consideration (drilling) would occur on an oil and gas location or well pad that had previous drilling. A previous location or well pad will be recognized only where a previously disturbed or constructed well pad was used in support of drilling a well. Previous drilling refers to any drilled well including injection, water source, or any other service well. Additional disturbance or expansion of the existing well pad is not restricted as long as it is tied to the original location or well pad. This exclusion does not extend to new well sites merely in the general vicinity of the original location or well pad.

2) **Five-year limitation from previous drilling** – The Authorized Forest Officer must determine and document that the previous drilling has occurred within five years prior to the date of spudding the proposed well. The five-year constraint is based on when the most recent previous drilling occurred. This means that the most recent drilling activity resets the time period clock for determining the five year limit. Documentation for determining the five-year constraint must include the date when the last applicable previous drilling activity was completed.

If delays in spudding the new well and the time period between the previous well completion and spudding exceeds the five-year limitation, preparation for drilling operations must be suspended until appropriate NEPA compliance occurs for the proposed well and a new decision is issued. Therefore, a condition of approval (COA) must state that, "If the well has not been spudded by (**the date the categorical exclusion is no longer applicable**), this approval will expire and all operations related to preparing to drill the well must cease."

**CATEGORY SPECIFIC GUIDANCE, CATEGORY 3:**

The factors for determining the availability of Section 390(b)(3) are the following three criteria: 1) proposed drilling is within a developed oil or gas field, 2) analysis of drilling as a reasonably foreseeable activity in a NEPA document, and 3) five-year limitation

from when the aforementioned NEPA document was finalized or supplemented. Use of this category requires the Authorized Forest Officer to consider the following three things:

1) **Proposed drilling is within a developed oil or gas field** – The Authorized Forest Officer must determine and document that the action under consideration (drilling) is within a developed oil or gas field. A developed field will be recognized as: (a) defined by the BLM Field Office where activity is proposed, or (b) any field in which a confirmation well has been completed.

2) **Analysis of drilling as a reasonably foreseeable activity in a NEPA document** – The Authorized Forest Officer must determine and document that a NEPA document exists addressing reasonably foreseeable activity (see 36 CFR 228.102(c)(3-4)) that encompasses the action under consideration (drilling). For the purposes of this categorical exclusion, the site-specific NEPA document can be of any type that analyzed such drilling as reasonably foreseeable regardless of which agency prepared the analysis and may include land management plans when such an analysis was performed.

    **The statute identifies no particular requirement regarding the degree or specificity of detail required for use of Section 390(b)(3).** Ensure that the NEPA document provides an adequate consideration of effects of such drilling and the proposed activity is within the range of identified environmental effects for oil or gas development. It is adequate if the proposed well is in the general geographic vicinity of the predicted development disclosed in the prior NEPA document. The same or better mitigating measures considered in the parent NEPA documents must be applied to all actions approved under this categorical exclusion.

3) **Five-year limitation from when the aforementioned NEPA document was finalized or supplemented** – The Authorized Forest Officer must determine and document that the NEPA document, referred to in criteria 2 above, was completed within five years prior to the date of spudding the proposed well. The five-year constraint is based on when the most recent NEPA document was finalized or supplemented. This means that the most recent NEPA document resets the time period clock for determining the five year limit. Documentation must identify the date and title of the last applicable NEPA document.

If delays in spudding the new well and the time period between the previous well completion and spudding exceeds the five-year limitation, preparation for drilling operations must be suspended until appropriate NEPA compliance occurs for the proposed well and a new decision is issued.

Therefore, a condition of approval (COA) must state that, "If the well has not been spudded by (**the date the categorical exclusion is no longer applicable**), this approval will expire and all operations related to preparing to drill the well must cease."

**CATEGORY SPECIFIC GUIDANCE, CATEGORY 4:**

The factors for determining the availability of Section 390(b)(4) are the following two criteria: 1) an approved right-of-way corridor, and 2) five-year limitation from corridor approval (or amendment). Use of this category requires the Authorized Forest Officer to consider the following two things:

1) **Approved right-of-way corridor** – The Authorized Forest Officer must determine and document the action under consideration would occur within an approved right-of-way corridor. The term "right-of-way corridor" is a general term that includes any preexisting or approved corridor or right-of-way (whether on or off lease). The Authorized Forest Officer is not limited to any particular types of corridors or rights of way but should identify the date, location and underlying authority for the approval or authorization in the documentation. Approved right-of-way corridors of any type may be used for new pipeline placement, including those approved for the burial of a pipeline or pipeline conduit in an existing roadbed or along a power line right-of-way. Minor variations that allow additional disturbance or width needed to properly or safely install a new pipeline are permissible under this exclusion. Creation of a new right-of-way outside and not materially overlapping the existing corridor is not permissible. The extent of additional disturbance or width needed to properly or safely install the new pipeline is at the discretion of the Responsible Official who shall assure that any variation will minimize effects on surface resources and prevent unnecessary or unreasonable surface resource disturbance, including effects to cultural and historical resources and fisheries, wildlife and plant habitat. There is no requirement for the approved right-of-way to be currently in use or occupied.

   For purposes of Section 390(b)(4), the approved right-of-way corridor may be either on or off lease. *However, if off lease, then this categorical exclusion is only available where approval and placement of the pipeline is authorized pursuant to the Mineral Leasing Act and does not include instances where a pipeline is approved pursuant to other general authorities.*

2) **Five-year limitation from ROW corridor approval (or amendment)** – The Authorized Forest Officer must determine and document that use of the right-of-way or corridor, referred to in criteria 1 above, was approved or amended within 5 years prior to the date of the proposed pipeline placement. Determination of the five-year constraint is based on when the most recent decision (NEPA or permit authorization, as applicable) was approved to allow use of the corridor. The time period extends to the date placement

(installation) of any portion of the new pipeline is concluded, provided that placement activities began within the five-year constraint. Documentation for determining the five- year constraint must include the date of the last applicable corridor approval or amendment.

If the operator delays in beginning to place the pipeline and the time period between the approval of the corridor and placement exceed the five-year limitation, the Authorized Forest Officer must suspend the right-of-way authorization until the appropriate NEPA compliance occurs for the proposed right-of-way use and a new decision is issued. Therefore, the right-of-way approval must contain a condition of approval (COA) that provides for the suspension of the authorization if placement does not begin before the last date that the categorical exclusion is available, thus requiring the operator to obtain a new right-of-way if placement has not occurred. Therefore, a condition of approval (COA) must state that, "If the pipeline has not been installed by (**the date the categorical exclusion is no longer applicable**), this approval will expire and all operations related to installing the pipeline must cease."

**CATEGORY SPECIFIC GUIDANCE, CATEGORY 5:**

The factor in determining the availability of Section 390(b)(5) is: 1) Maintenance of a minor activity. Use of this category requires the Authorized Forest Officer to consider the following:

1) **Maintenance of a minor activity** – The Authorized Forest Officer must determine and document that the activity under consideration constitutes maintenance of a minor activity. Actions would include maintenance of a well, wellbore, road, wellpad, or production facility having surface disturbance. Actions would not include construction or major renovation of a building or facility.

   Road maintenance, as defined in Forest Service Transportation System procedures at FSM 7705, is considered a minor maintenance activity within the scope of Section 390(b)(5). Road reconstruction or construction is not considered a minor activity for use of this CE. For off-lease road maintenance, determine if 36 CFR 220.6(d)(4) applies.

Per Western Energy Alliance v. Salazar, No. 10-237 (D. Wyo. August 12, 2011), a review of extraordinary circumstances is not required for use of Section 390 CEs. A decision memo is required to document:

1) Identification of the applicable categories.

2) A brief narrative stating the rationale for making the determination that use of the categorical exclusion(s) applies to the activity under consideration, specifically addressing the applicable review criteria.

3) Any additional information required to demonstrate compliance with all applicable laws, regulations, and policies (e.g., Biological Assessment/Biological Evaluation, cultural/heritage resource clearance, etc.).

4) Copies or reference to materials used to support the determination.

Cite this authority as 42 U.S.C 15942

4. **Lake Tahoe Basin Hazardous Fuel Reduction Projects**. The 2009 Omnibus Appropriations Act (Public Law (Pub. L.) 111-8) established a CE for hazardous fuels reduction projects within the Lake Tahoe Basin Management Unit.

Within the Lake Tahoe Basin Management Unit, projects carried out under this authority are limited to the following size limitations:

*a proposal to authorize a hazardous fuel reduction project, not to exceed 5,000 acres, including no more than 1,500 acres of mechanical thinning. (Section 423 (a))*

This CE can be used if the project:

*is consistent with the Lake Tahoe Basin Multi-Jurisdictional Fuel Reduction and Wildfire Prevention Strategy published in December 2007 and any subsequent revision to the strategy;*

*is not conducted in any wilderness areas; and*

*does not involve any new permanent roads. (Section 423 (a))*

A proposal using this CE shall be subject to:

*the extraordinary circumstances procedures…; and*

*an opportunity for public input. (Section 423 (b))*

Document this category in a decision memo (FSH 1909.15, 33.2 – 33.3). The decision memo should include a description of the efforts taking by the Lake Tahoe Basin Management Unit provide an opportunity for public input.

Cite this authority as Pub. L. 111-8, Sec. 423

5. **Insect and Disease Infestation**. Section 8204 of the Agriculture Act of 2014 (Pub. L. 113-79) amended Title VI of the Healthy Forests Restoration Act of 2003 (HFRA) (16 U.S.C. 6591 et seq.) to add sections 602 and 603. Section 8407 of the Agriculture Improvement Act of 2018 (Pub. L. 115-334) later amended sections 602 and 603 to add hazardous fuels reduction projects to the types of projects that may be carried out under sections 602 and 603. Projects completed using the section 603 provisions are considered categorically

excluded from the requirements of NEPA and evaluation of extraordinary circumstances is not required.

Section 603 can be used for qualifying insect and disease or hazardous fuels reduction projects in areas designated by the Secretary under section 602 on National Forest System lands. Landscape scale areas may be designated by the Secretary if they meet at least one of the criteria found in HFRA, sections 602(c)(1)(2) & (3). An insect and disease or hazardous fuels project that may be carried out under this authority is a project that is designed to reduce the risk or extent of, or increase the resilience to, insect or disease infestation, or to reduce hazardous fuels in the areas (HFRA, Sections 602(d) and 603(a)).

Within designated landscape scale areas, projects carried out under this authority are limited to areas in:

> *the wildland-urban interface; or*

> *Condition Classes 2 or 3 in Fire Regime Groups I, II, or III, outside the wildland urban interface.*

> (HFRA, Sections 603(c)(2)(A) & (B))

Projects carried out under this authority may not be implemented in any of the following areas:

> *a component of the National Wilderness Preservation System;*

> *any Federal land on which, by Act of Congress or Presidential proclamation, the removal of vegetation is restricted or prohibited;*

> *a congressionally designated wilderness study area; or*

> *an area in which activities… would be inconsistent with the applicable land and resource management plan.*

> (HFRA, Sections 603(d)(1) - (4))

A project under this authority must either carry out a forest restoration treatment that:

> *complies with the eligibility requirements of the Collaborative Forest Landscape Restoration Program under section 4003(b) of the Omnibus Public Land Management Act of 2009 (16 U.S.C. 7303(b)).*

> (HFRA, Sections 603(b)(2))

Or a project under this authority must carry out a forest restoration treatment that:

*maximizes the retention of old-growth and large trees, as appropriate for the forest type, to the extent that the trees promote stands that are resilient to insects and disease;*

*considers the best available scientific information to maintain or restore the ecological integrity, including maintaining or restoring structure, function, composition, and connectivity; and*

*is developed and implemented through a collaborative process that—*

> *includes multiple interested persons representing diverse interests; and*

> *is transparent and nonexclusive; or*

> *meets the requirements for a resource advisory committee under subsections (c) through (f) of section 205 of the Secure Rural Schools and Community Self-Determination Act of 2000 (16 U.S.C. 7125).*

(HFRA, Sections 603(b)(1)(A) - (C)).

Projects carried out under this authority are subject to the following size limitation on the number of acres treated:

*may not exceed 3000 acres.*

(HFRA, Section 603(c)(1))

Projects carried out under this authority are subject to the following limitations relating to roads:

*A project shall not include the establishment of permanent roads.*

*The Secretary may carry out necessary maintenance and repairs on existing permanent roads for purposes of this section.*

*The Secretary shall decommission any temporary road constructed under a project under this section not later than 3 years after the date on which the project is completed.*

(HFRA, Section 603(c)(3))

All projects and activities carried out under this authority:

*shall be consistent with the land and resource management plans…"*

(HFRA, Section 603(e))

For projects and actions carried out under this authority:

*The Secretary shall conduct public notice and scoping for any project or action.*

(HFRA, Section 603(f))

Document this category in a decision memo (FSH 1909.15, 33.2 - 33.3). The decision memo should include a description of the efforts taken by the Agency to meet the collaborative process requirements in HFRA, Section 603(b)(1).

Cite this authority as Section 603 of HFRA (16 U.S.C.6591b)

6. **Grazing Permits and Leases**. The Carl Level and Howard P. 'Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 (Pub. L. 113-291) amended section 402 of the Federal Land Policy and Management Act (43 U.S.C. 1752) to add a grazing permit categorical exclusion (402(h)(1)).

   *(1) In general. – The issuance of a grazing permit or lease by the Secretary concerned may be categorically excluded from the requirement to prepare an environmental assessment or an environmental impact statement under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) if –*
   *(a) the issued permit or lease continues the current grazing management of the allotment; and*
   *(b) the Secretary concerned—*
   *(i) has assessed and evaluated the grazing allotment associated with the lease or permit; and*
   *(ii) based on the assessment and evaluation under clause (i), has determined that the allotment—*
   *(II) with respect to National Forest System land…*
   *(aa) is meeting objectives in the applicable land and resource management plan; or*
   *(bb) is not meeting the objectives in the applicable land and resource management plan due to factors other than existing livestock grazing.*

The category is subject to extraordinary circumstances review and should be documented in a decision memo (FSH 1909.15, 33.2 – 33.3).

Cite this authority as section 402(h)(1) of FLPMA (43 U.S.C. 1752)

7. **Trailing and Crossing of Livestock**. The Carl Level and Howard P. 'Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 (Pub. L. 113-291) amended section 402 of the Federal Land Policy and Management Act (U.S.C. 1752) to add a trailing and crossing categorical exclusion (402(h)(2)).

*(2) The trailing and crossing of livestock across public land and the
implementation of trailing and crossing practices by the Secretary
concerned may be categorically excluded from the requirement to prepare
an environmental assessment or an environmental impact statement under
the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.).*

This category is subject to extraordinary circumstances review and should be documented in a decision memo (FSH 1909.15, 33.2 – 33.3).

Cite this authority as section 402(h)(2) of FLPMA (43 U.S.C. 1752)

8. **Lake Tahoe Basin Forest Management Activities**. In 2016, the Water Infrastructure Improvements for the Nation Act (WIIN) (Pub. L. 114-322) amended the Lake Tahoe Restoration Act (Pub. L. 106-506; 114 Stat. 2353) by establishing a CE for forest management activities in the Lake Tahoe Basin Management Unit for the purpose of reducing forest fuels.

Within the Lake Tahoe Basin Management Unit, projects carried out under this authority can be carried out using the CE if the forest management activity:

*notwithstanding section 423 of the Department of the Interior,
Environment, and Related Agencies Appropriations Act, 2009 (division E of
Public Law 111–8; 123 Stat. 748), does not exceed 10,000 acres, including
not more than 3,000 acres of mechanical thinning;*

(Pub. L. 114-322, Sec. 3603(c))

Projects must be developed:

*in coordination with impacted parties, specifically including representatives
of local governments, such as county supervisors or county commissioners;
and in consultation with other interested parties*

(Pub. L. 114-322, Sec. 3603(c))

All projects and activities carried out under this authority must be:

*consistent with the Lake Tahoe Basin Management Unit land and resource
management plan.*

(Pub. L. 114-322, Sec. 3603(c))

Document this category in a decision memo (FSH 1989.15, 33.2 – 33.3). The decision memo should include a description of the efforts taking by the Lake Tahoe Basin Management Unit to meet the coordination and consultation requirements.

Cite this authority as Pub. L. 114-322, Sec. 3603

9. **Wildfire Resilience**. The Consolidated Appropriations Act of 2018 (Public Law 115-171) amended Title VI of the Healthy Forests Restoration Act of 2003 (HFRA) (16 U.S.C. 6591 et seq.) to add Section 605. Section 605 establishes a categorical exclusion for hazardous fuels reduction projects in designated areas on National Forest System lands. A hazardous fuels reduction project that may be categorically excluded under this authority is a project that is designed to maximize the retention of old-growth and large trees, to the extent that the trees promote stands that are resilient to insects and disease, and reduce the risk or extent of, or increase the resilience to, wildfires (HFRA, Sections 605(b)(1)(A)).

This categorical exclusion may be used to carry out a hazardous fuels project in an insect and disease treatment area that was designated by the Secretary under HFRA section 602(b) by March 23, 2018. (HFRA, Section 605(c)(2)(C)).

Within designated landscape scale areas, projects carried out under this authority are:

*Prioritized in the wildland-urban interface; or*

*If located outside the wildland-urban interface, limited to Condition Classes 2 or 3 in Fire Regime Groups I, II, or III that contain very high wildfire hazard potential.*

(HFRA, Sections 605(c)(2)(A) & (B))

Projects carried out under this authority may not be implemented in any of the following areas:

*a component of the National Wilderness Preservation System;*

*any Federal land on which, by Act of Congress or Presidential proclamation, the removal of vegetation is restricted or prohibited;*

*a congressionally designated wilderness study area; or*

*an area in which activities… would be inconsistent with the applicable land and resource management plan.*

(HFRA, Sections 605(d)(1) - (4))

A project under this authority must either carry out a forest restoration treatment that:

*complies with the eligibility requirements of the Collaborative Forest Landscape Restoration Program under section 4003(b) of the Omnibus Public Land Management Act of 2009 (16 U.S.C. 7303(b)).*

(HFRA, Sections 605(b)(2))

Or, a project under this authority must carry out a forest restoration treatment that:

*maximizes the retention of old-growth and large trees, as appropriate for the forest type, to the extent that the trees promote stands that are resilient to insects and disease, and reduce the risk or extent of, or increase the resilience to, wildfires;*

*considers the best available scientific information to maintain or restore the ecological integrity, including maintaining or restoring structure, function, composition, and connectivity; and*

*is developed and implemented through a collaborative process that—*

> *includes multiple interested persons representing diverse interests; and*

> *is transparent and nonexclusive; or*

> *meets the requirements for a resource advisory committee under subsections (c) through (f) of section 205 of the Secure Rural Schools and Community Self-Determination Act of 2000 (16 U.S.C. 7125).*

(HFRA, Sections 605(b)(1)(A) - (C)).

Projects carried out under this authority are subject to the following size limitation on the number of acres treated:

*may not exceed 3000 acres.*

(HFRA, Section 605(c)(1))

Projects carried out under this authority are subject to the following limitations relating to roads:

*A project shall not include the establishment of permanent roads.*

*The Secretary may carry out necessary maintenance and repairs on existing permanent roads for purposes of this section.*

*The Secretary shall decommission any temporary road constructed under a project under this section not later than 3 years after the date on which the project is completed.*

(HFRA, Section 605(c)(3))

All projects and activities carried out under this authority:

*shall apply the extraordinary circumstances procedures under section 220.6 or title 36, code of Federal regulations (or successor regulations) when using the categorical exclusion under this section.*

(HFRA, Section 605 (c)(4))

*shall be consistent with the land and resource management plans…"*

(HFRA, Section 605(e))

For projects and actions carried out under this authority:

*The Secretary shall conduct public notice and scoping for any project or
action.*

(HFRA, Section 605(f))

Document this category in a decision memo (FSH 1909.15, 33.2 - 33.3). The decision
memo should include a description of the efforts taken by the Agency to meet the
collaborative process requirements in HFRA, Section 605(b)(1).

Cite this authority as Section 605 of HFRA (16 U.S.C.6591d)

10. **Greater Sage-Grouse and Mule Deer Habitat**. The Agriculture Improvement Act of 2018
(Public Law 115-334) amended Title VI of the Healthy Forests Restoration Act of 2003
(HFRA) (16 U.S.C. 6591 et seq.) to add Section 606. Section 606 establishes a categorical
exclusion for covered vegetation management activities carried out to protect, restore, or
improve habitat for greater sage-grouse or mule deer. (HFRA, Section 606(b)(1))

This categorical exclusion may be used to carry out a covered vegetation management
activity on National Forest System land that was designated under HFRA section 602(b),
by December 20, 2018. (HFRA, Section 606(g)(2))

Projects carried out under this authority are subject to the following size limitation on the
number of acres treated:

*may not exceed 4,500 acres.*

(HFRA, Sections 606(g)(1))

Covered vegetation management activities under this authority include:

*manual cutting and removal of juniper trees, pinyon pine trees, other
associated conifers, or other nonnative or invasive vegetation;*

*mechanical mastication, cutting, or mowing, mechanical piling and burning,
chaining, broadcast burning, or yarding;*

*removal of cheat grass, medusa head rye, or other nonnative, invasive
vegetation;*

*collection and seeding or planting of native vegetation using a manual, mechanical, or aerial method;*

*seeding of nonnative, noninvasive, ruderal vegetation only for the purpose of emergency stabilization;*

*targeted use of an herbicide, subject to the condition that the use shall be in accordance with applicable legal requirements, Federal agency procedures, and land use plans;*

*targeted livestock grazing to mitigate hazardous fuels and control noxious and invasive weeds;*

*temporary removal of wild horses or burros in the area in which the activity is being carried out to ensure treatment objectives are met;*

*in coordination with the affected permit holder, modification or adjustment of permissible usage under an annual plan of use of a grazing permit issued by the Secretary… to achieve restoration treatment objectives;*

*installation of new, or modification of existing, fencing or water sources intended to control use or improve wildlife habitat; or*

*necessary maintenance of, repairs to, rehabilitation of, or reconstruction of an existing permanent road or construction of temporary roads to accomplish the activities described in this subparagraph.*

(HFRA, Sections 606(a)(1)(B))

A covered vegetation management activity that may be categorically excluded under this authority is a project that:

*is carried out on National Forest System land administered by the Forest Service;*

*conforms to an applicable forest plan;*

*protects, restores, or improves greater sage-grouse or mule deer habitat in a sagebrush steppe ecosystem as described in—*

*Circular 1416 of the United States Geological Survey entitled 'Restoration Handbook for Sagebrush Steppe Ecosystems with Emphasis on Greater Sage-Grouse Habitat—Part 1. Concepts for Understanding and Applying Restoration' (2015); or*

*the habitat guidelines for mule deer published by the Mule Deer Working Group of the Western Association of Fish and Wildlife Agencies;*

*will not permanently impair—*

*the natural state of the treated area;*

*outstanding opportunities for solitude;*

*outstanding opportunities for primitive, unconfined recreation;*

*economic opportunities consistent with multiple-use management; or*

*the identified values of a unit of the National Landscape Conservation System;*

*restores native vegetation following a natural disturbance; prevents the expansion     into greater sage-grouse or mule deer habitat of juniper, pinyon pine, or other associated conifers; or nonnative or invasive vegetation; reduces the risk of loss of greater sage-grouse or mule deer habitat from wildfire or any other natural disturbance; or provides emergency stabilization of soil resources after a natural disturbance; and provides for the conduct of restoration treatments that—*

*maximize the retention of old-growth and large trees, as appropriate for the forest type;*

*consider the best available scientific information to maintain or restore the ecological integrity, including maintaining or restoring structure, function, composition, and connectivity;*

*are developed and implemented through a collaborative process that—*

*includes multiple interested persons representing diverse interests; and*

*is transparent and nonexclusive; or*

*meets the requirements for a resource advisory committee under subsections (c) through (f) of section 205 of the Secure Rural Schools and Community Self-Determination Act of 2000 (16 U.S.C. 7125); and may include the implementation of a proposal that complies with the eligibility requirements of the Collaborative Forest Landscape Restoration Program under section 4003(b) of the Omnibus Public Land Management Act of 2009 (16 U.S.C. 7303(b)).*

(HFRA, Sections 606(a)(1)(A))

Covered vegetation management activities under this authority do not include:

*any activity conducted in a wilderness area or wilderness study area;*

*any activity for the construction of a permanent road or permanent trail;*

*any activity conducted on Federal land on which, by Act of Congress or Presidential proclamation, the removal of vegetation is restricted or prohibited;*

*any activity conducted in an area in which activities under subparagraph (B) would be inconsistent with the applicable land and resource management plan; or*

*any activity conducted in an inventoried roadless area.*

(HFRA, Sections 606(a)(1)(C))

This categorical exclusion shall:

*comply with the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.);*

*apply the extraordinary circumstances procedures under section 220.6 of title 36, Code of Federal Regulations (or successor regulations), in determining whether to use the categorical exclusion; and*

*consider the relative efficacy of landscape-scale habitat projects; the likelihood of continued declines in the populations of greater sage-grouse and mule deer in the absence of landscape-scale vegetation management; and the need for habitat restoration activities after wildfire or other natural disturbances.*

(HFRA, Sections 606(b))

*If the categorical exclusion…is used to implement a covered vegetative management activity in an area within the range of both greater sage-grouse and mule deer, the covered vegetative management activity shall protect, restore, or improve habitat concurrently for both greater sage-grouse and mule deer.*

(HFRA, Sections 606(c))

In regards to the disposal of vegetation material under this authority:

> *Subject to applicable local restrictions, any vegetative material resulting from a covered vegetation management activity under this authority may be used for fuel wood; or other products; or piled or burned, or both.*

(HFRA, Sections 606(e))

Any temporary road constructed in carrying out a covered vegetation management activity under this authority:

> *shall be used…for not more than 2 years; and*

> *shall be decommissioned…not later than 3 years after the earlier of the date on which—*

> *the temporary road is no longer needed; and*

> *the project is completed;*

> *shall include reestablishing native vegetative cover as soon as practicable; but not later than 10 years after the date of completion of the applicable covered vegetation management activity.*

(HFRA, Sections 606(f))

Under this authority, a temporary road means a road that is:

> *authorized by a contract, permit, lease, other written authorization; or pursuant to an emergency operation;*

> *not intended to be part of the permanent transportation system of a Federal department or agency;*

> *not necessary for long-term resource management;*

> *designed in accordance with standards appropriate for the intended use of the road, taking into consideration safety; the cost of transportation; and impacts to land and resources; and*

> *managed to minimize erosion; and the introduction or spread of invasive species.*

(HFRA, Sections 606(a)(3))

Document this category in a decision memo (FSH 1989.15, 33.2 – 33.3). The decision memo should include a description of the efforts taken by the Agency to meet the collaborative process requirements in HFRA, Section 606(a)(1)(A)(vii)(III).

Cite this authority as Section 606 of HFRA (16 U.S.C. 6591e)

11. **Fuel Breaks**. Section 40806 of the Infrastructure Investment and Jobs Act of 2021 (Pub. L. 117-58) establishes a categorical exclusion for the creation of linear fuel breaks.

> (a) *DEFINITION OF SECRETARY CONCERNED.—In this section, the term "Secretary concerned" means—*
> > (1) *the Secretary of Agriculture, with respect to National Forest System land; and*
> > (2) *the Secretary of the Interior, with respect to public lands (as defined in section 103 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1702)) administered by the Bureau of Land Management.*
> (b) *CATEGORICAL EXCLUSION ESTABLISHED.—Forest management activities described in subsection (c) are a category of actions designated as being categorically excluded from the preparation of an environmental assessment or an environmental impact statement under the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) if the categorical exclusion is documented through a supporting record and decision memorandum.*
> (c) *FOREST MANAGEMENT ACTIVITIES DESIGNATED FOR CATEGORICAL EXCLUSION.—*
> > (1) *IN GENERAL.—The category of forest management activities designated under subsection (b) for a categorical exclusion are forest management activities described in paragraph (2) that are carried out by the Secretary concerned on public lands (as defined in section 103 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. 1702)) administered by the Bureau of Land Management or National Forest System land the primary purpose of which is to establish and maintain linear fuel breaks that are—*
> > > (A) *up to 1,000 feet in width contiguous with or incorporating existing linear features, such as roads, water infrastructure, transmission and distribution lines, and pipelines of any length on Federal land; and*
> > > (B) *intended to reduce the risk of uncharacteristic wildfire on Federal land or catastrophic wildfire for an adjacent at-risk community.*
> > (2) *ACTIVITIES.—Subject to paragraph (3), the forest management activities that may be carried out pursuant to the categorical exclusion established under subsection (b) are—*
> > > (A) *mowing or masticating;*
> > > (B) *thinning by manual and mechanical cutting;*
> > > (C) *piling, yarding, and removal of slash or hazardous fuels;*
> > > (D) *selling of vegetation products, including timber, firewood, biomass, slash, and fenceposts;*
> > > (E) *targeted grazing;*

(F) application of—
  (i) pesticide;
  (ii) biopesticide; or
  (iii) herbicide;
(G) seeding of native species;
(H) controlled burns and broadcast burning; and
(I) burning of piles, including jackpot piles.
(3) EXCLUDED ACTIVITIES.—A forest management activity described in paragraph (2) may not be carried out pursuant to the categorical exclusion established under subsection (b) if the activity is conducted—
(A) in a component of the National Wilderness Preservation System;
(B) on Federal land on which the removal of vegetation is prohibited or restricted by Act of Congress, Presidential proclamation (including the applicable implementation plan), or regulation;
(C) in a wilderness study area; or
(D) in an area in which carrying out the activity would be inconsistent with the applicable land management plan or resource management plan.
(4) EXTRAORDINARY CIRCUMSTANCES.—The Secretary concerned shall apply the extraordinary circumstances procedures under section 220.6 of title 36, Code of Federal Regulations (or a successor regulation), in determining whether to use a categorical exclusion under subsection (b).
 (d) ACREAGE AND LOCATION LIMITATIONS.—Treatments of vegetation in linear fuel breaks covered by the categorical exclusion established under subsection (b)—
  (1) may not contain treatment units in excess of 3,000 acres;
  (2) shall be located primarily in—
(A) the wildland-urban interface or a public drinking water source area;
(B) if located outside the wildland-urban interface or a public drinking water source area, an area within Condition Class 2 or 3 in Fire Regime Group I, II, or III that contains very high wildfire hazard potential; or
(C) an insect or disease area designated by the Secretary concerned as of the date of enactment of this Act; and
  (3) shall consider the best available scientific information.
 (e) ROADS.—
  (1) PERMANENT ROADS.—A project under this section shall not include the establishment of permanent roads.

> (2) EXISTING ROADS.—*The Secretary concerned may carry out necessary maintenance and repairs on existing permanent roads for the purposes of this section.*
>
> (3) TEMPORARY ROADS.—*The Secretary concerned shall decommission any temporary road constructed under a project under this section not later than 3 years after the date on which the project is completed.*
>
> (f) PUBLIC COLLABORATION.—*To encourage meaningful public participation during the preparation of a project under this section, the Secretary concerned shall facilitate, during the preparation of each project—*
>
>> (1) *collaboration among State and local governments and Indian Tribes; and*
>>
>> (2) *participation of interested persons.*

Cite this authority as Public Law 117-58, section 40806.

**33 – Documentation**

**33.1 – Decision Memo Not Required**
If a proposed action has been categorically excluded from documentation in an EIS or an EA under USDA categories (7 CFR 1b.3) or the categories listed in section 32.12, a decision memo is not required; however, any interested and affected persons shall be informed in an appropriate manner of the decision to proceed with the proposed action (section 11.7).

The responsible official may choose to prepare a decision memo and create a record supporting the use of a CE. Examples where additional documentation may be beneficial are:

1.  Where reasonable questions regarding the existence of extraordinary circumstances may arise (section 31.4),

2.  Where findings are required by other laws such as, but not limited to National Forest Management Act (consistency with forest land and resource management plan), Endangered Species Act, and the National Historic Preservation Act, or

3.  Where it was determined that public interest on the proposed action was high.

**33.2 – Decision Memo Required**
If the proposed action has been categorically excluded from documentation in an EIS or an EA under the categories listed in section 32.2, document the decision to proceed with the proposed action in a decision memo. Section 33.3 sets forth the format and content of a decision memo. Ensure that the administrative record supports findings made in a decision memo.

When the Chief or the Secretary of Agriculture is the responsible official, the appropriate field unit prepares the decision memo with assistance from the Washington Office Ecosystem Management Coordination staff. The Washington Office Director of Ecosystem Management Coordination coordinates the review and signing of the decision memo, involving the appropriate staff(s), Deputy Chiefs, Chief, or Secretary, as necessary. The signed original is filed in the Ecosystem Management Coordination staff office files. The Director of Ecosystem Management Coordination forwards a copy to the appropriate field unit or Washington Office staff for necessary distribution.

> *If the proposed action is approval of a land management plan, plan amendment, or plan revision, the plan approval document required by 36 CFR 219 satisfies the decision memo requirements of this section.*

(36 CFR 220.6(e))

**33.3 – Format and Content of a Decision Memo**

> *While sections may be combined or rearranged in the interest of clarity and brevity, decision memos must include the following content:*
>
> (1) *A heading, which must identify:*
>     (i)   *Title of document: Decision Memo;*
>     (ii)  *Agency and administrative unit;*
>     (iii) *Title of the proposed action; and*
>     (iv)  *Location of the proposed action, including administrative unit, county, and State.*
> (2) *Decision to be implemented and the reasons for categorically excluding the proposed action, including:*
>     (i)   *The category of the proposed action;*
>     (ii)  *The rationale for using the category and, if more than one category could have been used, why the specific category was chosen; and*
>     (iii) *A finding that no extraordinary circumstances exist.*
> (3) *Any interested and affected agencies, organizations, and persons contacted;*
> (4) *Findings required by other laws such as, but not limited to findings of consistency with the forest land and resource management plan as required by the National Forest Management Act or a public interest determination (36 CFR 254.3(c));*
> (5) *The date when the responsible official intends to implement the decision and any conditions related to implementation;*
> (6) *Whether the decision is subject to review or appeal, the applicable regulations, and when and where to file a request for review or appeal;*

    **(7)** *Name, address, and phone number of a contact person who can supply further information about the decision; and*

    **(8)** *The responsible official's signature and date when the decision is made.*

(36 CFR 220.6(f))

If comments are received on a proposed action, briefly explain in the decision memo how those comments were considered.

## 34 – Notice and Distribution Of Decision Memo

*The responsible official shall notify interested or affected parties of the availability of the decision memo as soon as practical after signing.*

(36 CFR 220.6(f))

Distribute a decision memo or notice thereof to agencies, organizations, and persons interested in or affected by the proposed action.

1. Provide other forms of notice appropriate to the importance of the decision.

2. Enter the date of the decision memo into the PALS database (section 06). In addition to the decision itself, the ability of the decision to be implemented is also tracked in the PALS. The voluntary withdrawal of a decision, the reversal of a decision in appeal, or a court case directing constraint of a decision all require notation (action) in PALS.

3. When required by Executive Order 12372, Intergovernmental Review of Federal Programs, send copies to the State single point of contact or, in cases where a State has elected not to establish a single point of contact, the State official(s) involved.