## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| THE CLINCH COALITION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES FOREST SERVICE, *et al.*, | ) | |
| | ) | |
| | ) | Case No. 2:21-cv-0003-JPJ-PMS |
| Federal Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN LOGGERS COUNCIL, *et al.* | ) | |
| | ) | |
| Intervenor Defendants. | ) | |
| | ) | |

## DECLARATION OF BEN PRATER

I, Ben Prater, declare as follows:

1.     My name is Ben Prater, and I live in Asheville, North Carolina. This declaration is based on my personal knowledge, information, and belief. I am over the age of eighteen (18) and suffer from no legal incapacity.

2.     I am the Southeast Program Director for Defenders of Wildlife ("Defenders").

3.     I graduated from Catawba College with a bachelor's degree in environmental science in 2002 and from the Nicholas School of the Environment at Duke University with a master's degree in Environmental Management in 2004.

4.     Before working for Defenders, I worked on public lands conservation issues in the Southern Appalachians with an organization called Wild South from 2004 to 2015.  I was hired by Defenders into my current role in September 2015. As the Southeast Program Director,

1

I implement Defenders' national priorities across ten southeastern states: West Virginia, Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Tennessee, and Kentucky. There are national forests in all of these states. I am the primary liaison between our headquarters office in Washington, D.C. and our field staff in the Southeast. I am also a member of Defenders.

5.      Founded in 1947, Defenders of Wildlife is a non-profit organization with nearly 2.2 million dues-paying members and supporters nationwide, including dues-paying members in all fifty states and approximately 65,500 dues-paying members in the ten southeastern states listed above. Defenders' organizational mission includes the protection of native plants and animals, natural habitats, and the communities that they support. Defenders accomplishes its goals by promoting on-the-ground conservation initiatives, funding science-based research, developing ecologically sound policy, advocating on the local, state, and national levels, and litigating when necessary.

6.      Defenders advocates for a scientifically sound approach to wildlife conservation that is geared toward restoring imperiled species and preventing others from becoming threatened or endangered. Habitat conservation plays a central role in these efforts.

7.      Defenders is particularly interested in the conservation and protection of federal lands, including, but not limited to, National Forests, National Wildlife Refuges, etc. These public lands represent a network of habitat vital to the recovery of imperiled wildlife in the Southeast and throughout the country.

8.      A core part of Defenders' efforts to preserve these areas is the public participation process long afforded by the National Environmental Policy Act ("NEPA"), which allows for oversight and collaboration in the development and implementation of federal actions. We rely

2

on the information and analysis provided through this process to evaluate agency actions, inform our members and the public, and evaluate the efficacy of projects and their impact to wildlife and their habitats. Without Environmental Impact Statements ("EIS") and Environmental Assessments ("EA") prepared under NEPA we would often be unable to offer expert opinions and would also be unable to advise our members and the public of issues affecting their public lands. Defenders routinely utilizes the NEPA process to advocate for protections for wildlife and habitat.

9.      One of the best examples is our direct involvement on the Pisgah and Nantahala National Forests in Western North Carolina. The Pisgah and Nantahala National Forests consist of 1.1 million acres of public lands that represent some of the best and most intact wildlife habitats in the Southern Appalachians. Home to countless species, these national forests are critically important to the protection and recovery of imperiled species. Specific examples include rare species like the green salamander, Eastern hellbender salamander, and cerulean warbler, and federally protected species like the Carolina northern flying squirrel, spruce-fir moss spider, Appalachian elktoe, Indiana bat, and northern long-eared bat. There are no comprehensive, up-to-date inventories of where these species occur, but they only occur in limited areas of the forests. Stated differently, forest-wide-scale analysis is insufficient to protect species like Eastern hellbender which only occur in specific areas some of which we do not know about until we look for them. As a result, analysis of local impacts, providing that analysis to the public for review by local experts, and consideration of alternatives (including location alternatives) is critical to identifying and avoiding impacts to rare species. These procedural protections happen, if at all, during the EA or EIS process under NEPA.

3

10.    In addition to providing for the protection of wildlife, these two national forests represent some of the most visited public lands in the country. Both provide a vast array of recreational opportunities. For example, these national forests support hundreds of miles of trails for hikers, mountain bikers, and equestrians. Pisgah and Nantahala also provide incredible swimming, canoeing, and whitewater-paddling opportunities along river segments federally designated as Wild and Scenic Rivers, and contain several federally designated Wilderness areas providing solitude and a backcountry experience. These forests also provide resources for wildlife enthusiasts and support activities that range from wildlife viewing and photography to hunting and angling.

11.    The U.S. Forest Service regularly proposes activities that would damage the ecological and social resources of Pisgah and Nantahala National Forests that Defenders and I cherish. For example, logging and roadbuilding projects have caused sedimentation of streams including those that provide habitat for rare species and brook trout, fragmentation of important forest habitat, introduced invasive species, lead to changes in species composition that harm wildlife in part due to the reduction in food sources, bulldozed trails or closed areas to the public during logging, and led to the removal of rare habitats like old-growth forests.

12.    In many cases, fortunately, the process of preparing an EA or EIS has enabled Defenders to successfully advocate for the protection of these sensitive resources and resulted in improved outcomes. For example, in 2018 Defenders submitted comments on a draft EA prepared for the Southside Project on the Nantahala National Forest. As proposed, that project involved adverse impacts to old-growth forests, a Forest Service-designated "exceptional ecological community," the headwaters of the Wild & Scenic Chattooga River, and a population of rare green salamanders. The process of preparing an EA provided information and opportunity

4

to discuss many of these concerns with the Forest Service. Defenders was able to review the draft analysis to identify the issues and locations that presented the greatest risk, allowing us to focus our efforts where most beneficial to rare species and habitats. Through the EA process, we were able to secure improvements to the agency's plans such as including buffers around the breeding rocks of rare green salamanders.

13.    As another example, in 2019 we submitted comments on the Buck Project, also on the Nantahala National Forest, and engaged in meetings with agency staff as they prepared the EA. Our work on this project involved numerous site visits and data collection over the course of multiple months. Our involvement led to better protections for water quality, commitments to decommission temporary roads constructed for the project, and better controls to prevent the spread of invasive species. Candidly, we are still displeased with this project but the opportunities provided through the NEPA process gave us an opportunity to mitigate some of its worst impacts.

14.    In 2022, we submitted comments on the draft EA prepared for the Crossover Project also on the Nantahala National Forest. The Forest Service scoped that project earlier in 2021. In between scoping and publication of the draft EA, we were able to conduct site visits and provide information to the Forest Service related to the project. As a result of those efforts, the Forest Service developed an alternative that would avoid logging old-growth forests and state Natural Heritage Natural Areas—two designations important for wildlife that Defenders works to protect. The Crossover Project has not been finalized but to date it has been a good example of how the process of preparing an EA should work—the agency proposes an action, the public provides important information in response to solicitations for public comment, and the agency changes its proposed action to avoid significant impacts. This type of improvement simply does

not happen when the agency relies on categorical exclusions ("CE") instead of EAs or EISs. Because CEs are supposedly "categorically" insignificant, there is no requirement or incentive to consider the local impacts to resources like old growth or rare salamanders.

15.    Preparation of EAs and EISs is additionally important because they require the Forest Service to consider the cumulative effect of their actions. All three of the examples above are from the Nantahala National Forest. The Forest Service is required to consider the cumulative effect of these projects when issuing project approvals. That does not happen with CE projects.

16.    Consideration of cumulative effects is critical for wildlife. Project effects can add up over time to have very detrimental effects to wildlife at multiple scales. At a broad scale, it's important to consider repeat impacts from projects that may seem more minor when viewed in a silo in order to prevent the "death by a thousand cuts" scenario for species. At a finer scale, it's important to consider repeat impacts to a particular area—a small watershed, for example—that is home to rare species. Again—a siloed analysis may indicate that the species can withstand the impacts from a single project while consideration of cumulative effects may show that additional impacts would impose significant harm on a species.  The final project may be the "straw that broke the camel's back" in a sense.

17.    Consideration of cumulative effects under NEPA also ensures the Forest Service is factoring in effects from non-Forest Service projects when making logging and roadbuilding decisions. This too is important since species often move between public and private lands.

18.     Another safeguard provided by the EA process is the opportunity to file an administrative objection to the Forest Service's draft EA and Finding of No Significant Impact. Before the Forest Service makes a final decision, anyone who commented on the EA has the

6

opportunity to object informally and try to explain why further improvements are still needed. Like the EA comment process, the objection process is critical to protecting species, important habitats, and ensuring potential objectors and the Forest Service are not misunderstanding each other's concerns and objectives. We were able to secure improvements to the Southside and Buck projects mentioned above through the EA process but we also had to file administrative objections to attempt to avoid and/or minimize adverse impacts to important natural resources.

19. In addition to the projects listed above, Defenders has recently been involved in EA projects on the Chattahoochee National Forest in Georgia. Specifically, we signed on to comments submitted in 2020 that called out fundamental problems in the Foothills Project's EA.

20. I am concerned that under the Final Rule, opportunities to comment on proposed timber projects across the country and in the Southern Appalachians—and thus opportunities to improve said projects—will largely vanish. I am particularly concerned about CE 25 which authorizes logging projects up to 2,800 acres so long as the project has "restoration" as its stated purpose and was developed involving collaboration to some undefined extent. All of the timber projects mentioned above, and all of the timber projects I believe I have ever worked on in the Southern Appalachians were under 2,800 acres. I'm aware of no reason why this would significantly change in the future. I believe a variety of factors—agency funding trends, ecological and cultural complexity in the Southern Appalachians, staff shortages, local mill limitations, etc.—will result in the Forest Service continuing to pursue projects under 2,800 acres in the future. As a result, these projects will be proposed as CE 25 projects rather than as EA-level projects.

21. CE projects do not have the same opportunities for improvement as those developed under EAs. When a CE is used, the public has only one thirty-day period to review the

7

proposal—without the benefit of the agency's analysis as a starting point. Therefore, Defenders would have only thirty days to determine whether proposed projects are within the CE authority, consistent with the Pisgah and Nantahala Forest Plan, and consistent with other laws, and whether these projects comprise an unacceptable threat to rare species and habitats. And if any concerns raised by Defenders are not addressed by the U.S. Forest Service, Defenders would have no opportunity to file an informal objection (which are not available for CEs). CEs also do not require consideration of alternatives or cumulative effects. I am certain we would not have been able to secure the improvements discussed above for the Southside, Buck, and Crossover Projects had the Forest Service proposed to complete those projects using CEs. That would have led to significant on-the-ground impacts and additional harm to Defenders' interests.

22.     Without the information that is typically provided in EAs, Defenders can't evaluate if the Forest Service is overlooking important issues or categories of information that we could provide to help prevent the agency from making mistakes. This requires us to use more resources on as many projects as possible because we cannot focus in on only the most problematic projects—the ones where we know there is a legitimate risk to species based on information provided in an EA. It also requires us to more frequently develop our own evaluations and expert opinions to give to the Forest Service—just in case they are overlooking an issue—which is time consuming and expensive. We don't have the staff or resource specialist capacity the Forest Service does and simply cannot cover as much ground as they can. When problematic projects slip through the cracks, our interests are harmed.

23.     Spending our resources on forest projects because the Forest Service failed to provide information to help us understand a project that would typically be provided in an EA

8

also takes away from our ability to do other work involving private lands, habitat restoration and connectivity, and a host of other issues.

24.    CE 25 includes two requirements that the Forest Service appears to believe will prevent significant environmental impacts—projects must have a "restoration" focus and must be developed, to some vague, undefined degree, via "collaboration."  Neither of these will prevent significant impacts.

25.    Almost every Forest Service timber project I've ever worked on in the past decade has had a purported "restoration" focus yet many of these have caused or risked significant impacts. Many "restoration" projects I've worked on that were authorized with an EA only avoided significant impacts because of the scientific analysis and public involvement in preparing the EA—a safeguard that is lost with CEs. The term "restoration" is also not defined in CE 25. In the Southeast, the Forest Service often seeks to "restore" early successional habitat which means logging regularly to ensure that there are many acres of forests zero years old or just a little older. Defenders does not oppose creating early successional habitat. But where you create that habitat matters. Creating early successional habitat anywhere—just because it appears to be lacking at a crude landscape-scale—is not restoration even though the Forest Service claims it is. For example, the Forest Service is harvesting old-growth forests to create early successional habitat as part of the Southside Project mentioned above. The agency claims that this is "restoration" but it is not—sacrificing rare old growth for early successional habitat that could be created practically anywhere just by cutting trees down is not restoration. Part of this is a matter of scale—what is restorative at the landscape-level is not always restorative at the site-specific level and vice-versa. That is precisely why the EA process is so important for site-specific projects, to ensure that the Forest Service fully considers what is truly restorative and

9

what is not, and for the public to offer alternatives that could meet the early-successional goals without causing so much harm. Defenders and the Forest Service itself will not be able to reach defensible conclusions about whether something is restorative by relying on CEs.

26.    In my experience, the stated purposes of a project—"restoration" or otherwise—is not determinative of whether the project risks significant impacts. Usually, what risks significant impacts is *where* the Forest Service proposes logging or other activities rather than *why*. Even for a project that is actually restorative—not just using "restoration" as a label—we often have to ask the Forest Service to avoid sensitive habitat, not put a road in a specific area, etc. We are only able to make those requests—which are necessary to avoid significant impacts—once we see what the agency is proposing in some detail and what it already knows about the site-specific impacts, which is almost always through an EA. Making sure to avoid these impacts is critical because once conservation values are lost in a specific place, they are often lost forever. There is no bringing back a population of rare salamanders if we accidentally, unknowingly, or purposefully destroy their only habitat. This is a real risk in the Southern Appalachians where populations of rare species are often limited to very confined areas.

27.    The "collaboration" requirement will also not prevent significant impacts. In my experience, collaboration seems to be defined by the Forest Service as inviting people into a room to talk—that's it. True collaboration involves vetting opportunities or ideas with others and giving those people some influence over the outcome of the project-development process. Otherwise, what is the point? How will just talking avoid significant impacts if the Forest Service ignores what we have to say?

28.    I participated in lengthy collaborative discussions related to the recent revision of the Pisgah-Nantahala Forest Plan. This took a tremendous amount of time, energy, and

10

resources. Ultimately though, when any stakeholder objected to something the rest of the collaborators agreed on, the Forest Service threw the baby out with the bathwater and rejected the collaborators' recommendations. This was a total waste of time that had little to no impact on the agency's final decision.  It was a box to check. It was incredibly disheartening, exhausting, and undermined the collaborators' relationships with the Forest Service and each other. It did far more harm than good. These types of processes will do nothing to prevent significant impacts in CE development.

29.    Candidly, I also feel like the Forest Service has preferred partners in collaboration. It gets certain groups to endorse what the Forest Service already wants to do and calls that collaboration. The rest of us are supposed to just fall in line. This turns collaboration into a charade. I worry this type of collaboration will be most common under CE 25 because it is the fastest and least difficult type of collaboration—it's just finding someone who already supports what you want to do, talking to them, and claiming that as "collaboration." That is currently happening in a portion of the Pisgah National Forest known as the "Cradle of Forestry" and containing the famous "Pink Beds," known for its remarkable rhododendron population. Unbeknownst to conservation groups including Defenders, the Forest Service was recently "collaborating" with pro-logging groups to come up with an aggressive logging action plan they intend to implement through future projects. I fully expect that those future projects will proceed under CE 25 if the Forest Service allows the Pisgah National Forest to use that authority. If so, the "collaborative" process will not have included Defenders' views in any way.

30.    To be sure, the Forest Service sometimes successfully collaborates with different groups. One example of this is the Twelve Mile Project in North Carolina. There, we collaborated on ways to provide elk forage habitat and on road wildlife crossings. But there's

11

nothing in CE 25 that requires the Forest Service to engage in this meaningful type of collaboration as opposed to check-the-box collaboration.

31.     In fact, in reviewing other projects moving forward under CE 25, I have become aware that the Forest Service is saying that the collaborative requirement is met simply by taking comments on the initial proposal—something it is required to do in the scoping process anyway. A good example of this is the Moskee Burn project, finalized late last year.

32.     An additional problem with trying to authorize 2,800-acre timber projects with a CE is that CEs often come with a limited public comment windows—often just 30 days. We cannot inspect areas, collect information, inform the public, engage outside experts, and prepare sufficient comments for such large projects in such a small window of time. Typically, we rely on the period of time in between scoping and a draft EA to collect much of this information and then submit it to the Forest Service with our EA comments. Using CEs eliminates this opportunity and will result in the Forest Service having less information before it when it approves a project.

33.     I can't overstate how important the EA process is to avoiding significant impacts from Forest Service projects—particularly logging, roadbuilding, and special uses like pipelines. The comments we are able to prepare and submit at the EA stage, as opposed to scoping, are far more technical, site-specific, and comprehensive. These comments are key to helping the Forest Service avoid significant impacts even with projects it approves under EAs. This will not happen for CE projects; there absolutely will be significant impacts when the Forest Service attempts to authorize a 2,800-acre timber sale with a CE.

34.     Defenders is also concerned about the use of CE 24 which allows the construction of up to 2 miles of roads. Constructing two miles of roads can be incredibly harmful in the

12

Southern Appalachians which are steep, erodible, and receive a lot of rainfall. Forest Service data explains that roads are the top source of sedimentation on Southern Appalachian national forests. Building additional roads will make that worse. If we're going to build more roads, it is critical that the agency prepare detailed site-specific analysis in an EA or EIS to make sure it doesn't go through highly erosive soils or areas with landslide risks, accidentally harm populations of rare species like salamanders, cause leaching from acid-producing rock which can kill species for miles downstream, or cross streams in locations where culverts will cause harm. Building culverts across streams also risks significant impacts because failure to do so properly—such as when a culvert is "perched"—can divide a population of rare aquatic species. When this happens, the population cannot exchange genetic material which risks extirpation. To put it mildly, it is absolutely false to say that two miles of road construction in the Southern Appalachians will not have significant impacts no matter where it occurs, which is what a CE means.

35.     Defenders is also concerned about CE 3 which authorizes special uses under 20 acres. These "special uses" are often harmless, including things like permission for a guiding service to take people birdwatching. But it can also include much more serious things like natural gas pipelines which can severely impact national forests and dependent species. Defenders has been very involved in advocacy related to construction of the Atlantic Coast and Mountain Valley pipelines across national forests in Virginia and West Virginia. Both of these projects occupied more than 20 acres of national forest land—and therefore would not have been eligible for CE 3—but they might not have been if they had crossed at different locations. And 20-acre sections of these pipelines still risked significant impacts to species. Restated, the projects would still have risk significant harm to species and been inappropriate for approval with a CE even if

13

they had impacted under 20 acres of national forest lands. These projects were both approved with EISs but the agencies involved took so many shortcuts in their NEPA analyses that the projects posed serious risks for species and other national forest resources. If the Forest Service tries to authorize future rights-of-way using CE 3, those risks and impacts will be even higher. CE 3 projects therefore risk significant harm to Defenders' interests.

36.    Because of our concerns about CEs 3, 24, and 25, we have invested time and resources trying to explain to the Forest Service during the rulemaking process why these CEs are not consistent with NEPA, why they risk significant impacts, and why they will result in harm and a breakdown in trust amongst stakeholders on the ground. In 2019, Defenders signed on to comments submitted by The Wilderness Society, the Western Environmental Law Center, and the Southern Environmental Law Center, attached to which was a comprehensive analysis of Forest Service projects completed between 2009 and 2019 in the Southern Appalachian national forests. This analysis showed the environmental benefits of the NEPA process under the previous Forest Service rules. Overall, for projects for which an EA was completed, the NEPA process resulted in roughly 5,000 acres of commercial timber harvests being dropped from final decisions on the Cherokee, Pisgah, Nantahala, Chattahoochee, George Washington, and Jefferson National Forests—forests where Defenders routinely works. Many of the projects highlighted in this analysis were projects that were improved at least partly because of Defenders comments during their EA processes. This analysis shows the real, on-the-ground benefits that result from the EA process. Those acres were dropped because of the risk of significant impacts or because closer inspection showed that the original proposed management action was inappropriate or unnecessary in a specific area. The EA process both protected important habitat and prevented the Forest Service from investing further in developing portions of projects they

14

may have been forced to abandon in the end anyway. This was a win-win enabled by the EA process.

37.     The Forest Service's Final Rule will also impact me personally. I grew up hiking and camping in the Pisgah and Nantahala National Forests and have explored hundreds of miles of trails and streams and thousands of acres of forests. I have enjoyed hiking, fishing, camping, and wildlife viewing in these forests on numerous occasions and plan to do so in the future. I enjoy visiting parts of the forests with my family and travel to places in each season to enjoy the plants and animals that live in these magnificent places. I am particularly fond of searching for salamanders and flowering plants in the Spring. I also lead hikes for Scouts and enjoy passing on my knowledge of these places to the next generation. Because I live within 10 miles of these forests, I visit them on my own, with my family, or as part of an organized group dozens of times a year and will continue to do so as long as I am able.

38.     Some specific national forest areas I frequently visit include the Pisgah, Nantahala and Cherokee National Forests. I enjoy hiking on the Art Loeb Trail the Mountains to Sea Trail and exploring trails along the Blue Ridge Parkway within places like the Cradle of Forestry, the Pink Beds and the Black Balsams. As an example, just this year, I lead a 50-mile backpacking expedition with my Scout Troop along the Appalachian Trail within the Cherokee and Pisgah National Forest. In addition to hiking, I also spend time fishing, and wildlife viewing along the Davidson River in the Pisgah and the Tuckasegee in the Nantahala. I also enjoy paddling with frequent trips to enjoy the Nolichucky River within the Cherokee National Forest. In the Spring I visit specific locations in the Pisgah to enjoy bird watching including Big Ivy, Shope Creek and areas along the Blue Ridge Parkway.

39.     I particularly enjoy searching for and observing the elusive eastern hellbender. In fact, I regularly assist the NC Wildlife Resources Commission with survey activities in the summer months. Though rare, this salamander species is not listed under the Endangered Species Act in part because it maintains populations on protected public lands including the Cherokee, Pisgah, and Nantahala National Forests. As a result, the NEPA process—specifically the EA and EIS processes—provide one of the only meaningful avenues to prevent harm to this rare species. Hellbenders are habitat specialists that only persist in highly oxygenated, cold, and fast-moving waters containing large rocks that provide shelter and space for breeding. Within North Carolina, the hellbender is known to occur in only five river basins: the New, Watauga, French Broad, Little Tennessee, and Hiawassee basins. I am interested in seeing the hellbender species restored to its full range throughout these five basins. I also intend to visit the Davidson River in Pisgah National Forest to find and observe hellbenders in their natural habitat for my own personal enjoyment. Because hellbenders are particularly sensitive to sedimentation from logging, road building, and other anthropogenic disturbances, my interests are threatened by the Final Rule, which will increase the risk of poorly planned logging and road-building projects—and thus increased sedimentation—within the Cherokee, Pisgah, and Nantahala National Forests. Because the majority of populations of Hellbenders occur on National Forests, management activities in these watersheds have outsized impacts on the health and resilience of the most significant populations of hellbenders. Logging on the national forests within these watersheds will affect my personal enjoyment of these streams.

40.     I also enjoy searching for and observing the endangered green salamander. Several important populations of green salamanders are found on the Nantahala National Forest, where they use rock crevices and connected forest-canopy habitat throughout their life cycle.

Because the green salamander is an arboreal species that spends part of its life cycle dispersing through the tree canopy, logging and road building—which fragment that canopy—are serious threats to the species' existence. I have personally observed green salamanders in numerous areas along the Blue Ridge Escarpment near places like Highlands and Cashiers, NC, and plan to return to these places to continue to monitor local populations of this rare species. I am concerned that the Final Rule will increase the risk of green salamander extirpation in those locations because CE projects lack the more-thorough analysis contained in an EA. Without this NEPA-generated information, salamanders will likely be impacted with no one being the wiser, limiting my ability to observe and enjoy this species in the future.

41.    For example, through the NEPA process we documented the presence of green salamanders in the Southside Project area mentioned above. The Forest Service then agreed to add requirements to that project to protect those salamanders. I think the Forest Service should have gone further than it did, but the EA process at least led to some benefits for the species.

42.    I am also concerned that under the Final Rule, I will not be able to use the public participation process as a mechanism to express my personal values and professional opinions as they relate to federal actions. For two decades, I have been directly involved in the public review process guided by NEPA to provide meaningful input on the direction of U.S. Forest Service projects and other agency decisions. To date, I have personally written or participated in dozens of NEPA comment periods since 2004 on national forests across the Southeast. Participating in this way has allowed me to have direct input on the stewardship and management of public resources. It has allowed me to lend my expertise as a wildlife advocate to ensure that projects are designed and carried out in a manner that supports the maintenance of biodiversity. I intend to continue participating in NEPA reviews in the future, both personally and professionally.

17

43.     I am concerned that the Final Rule will weaken my ability to weigh in on future projects because I will not have the same access to information that I had under the previous rules that required EAs for most projects and my opportunities to participate will be reduced. I also worry that the impacts of projects will not be adequately considered, leading to less informed decision-making and environmental harm—harm to places that I care deeply about. Although the public process through NEPA is not a guarantee this kind of damage won't occur, it at least provides an opportunity for these potential impacts to be considered in full public view and promotes a robust decision-making process and accountability for federal agencies.

44.     In sum, both my personal interests and Defenders' interests will be harmed if the Final Rule is allowed to stand and the Forest Service ceases to use EAs or EISs to inform the public about the environmental effects of its actions, to consider alternatives suggested by the public, and to gather information about informed public preferences.

45.     Even before trees are cut, roads are built, and private commercial "special uses" start taking place, Defenders is already being harmed by the new CEs. In order to understand the impacts of projects under CEs 25, 24, and 3, comment effectively, and ensure the Forest Service has considered the impacts and alternatives, Defenders is and will continue to be forced to divert considerable organizational resources to gather data, perform our own analyses, hire outside experts, and file records requests for information that previously would have been provided in an EA.

46.     Not having the guarantee of an EA process for large logging projects puts Defenders in a bind. We will do our best to understand the likely adverse impacts of logging, road, and special use proposals, including field work, research, and analysis. But if we wait until projects are proposed under a CE, we will not have the time to do the analysis ourselves that the

Forest Service should have done. And if we want to get ahead of scoping proposals, we have to

do that through FOIA requests, which can be very time consuming itself. For example, around

the time the Final Rule was finished, through counsel we used FOIA to ask the Nantahala-Pisgah

National Forests for information about where new projects were being developed.

47.     Gathering information about upcoming projects is not a one-time thing; it's an

ongoing drain on Defenders' resources. In 2022 Defenders sent another Freedom of Information

Act ("FOIA") request seeking all records created since December 2020 related to the agency's

use of three of its new CEs—CE 3, 24, and 25.

48.     Our 2022 FOIA request explained that we were sending the request "in an effort

to learn about projects the Forest Service is considering approving with these new Categorical

Exclusions. Typically, some of the information we seek would be developed and disclosed

through the EA or EIS processes. Since those processes will no longer be available for these

projects we are forced to resort to FOIA."  The FOIA request also explained that we were

seeking to "identify projects that may use [CEs 3, 24, and 25], in part, so [Defenders] can

allocate our resources as needed to engage in project development at times when we are most

likely to be able to change projects to avoid significant impacts to rare species."

49.     The Forest Service asked Defenders to "identify the name of the individual

project that you seek further records for that are not available" on the Forest Service's online

Schedule of Proposed Actions. This was frustrating because it was an impossible request. As we

explained, by the time CE projects are listed in the Schedule of Proposed Actions, the

opportunities for public engagement have often passed. We provided several examples showing

this to be the case.

50.     Nevertheless, the Forest Service just stopped responding to us. Defenders was forced to sue to get the Forest Service to respond to our FOIA request. *See Defenders of Wildlife v. U.S. Forest Service*, No. 3:22-cv-00034 (W.D. Va. 2022).  We would not have had to send this FOIA request or litigate the Forest Service's failure to respond but for the agency's promulgation of CEs 3, 24, and 25.

51.     Even after we took the agency to court, it took over a year for the agency to produce the responsive information. Some of this information would have been included in EAs completed for the relevant projects. This delay shows that FOIA is no substitute for obtaining information about CE projects that would typically be provided in EAs. Despite the shortcomings with FOIA, reliance on the new CEs will force us to file additional FOIA requests in the future because it's one of the few options we have to obtain information that would have been produced in an EA.

52.     I have personally reviewed the records that the Forest Service produced in response to our FOIA request and lawsuit. Building out from the FOIA documents, I have also reviewed and/or coordinated with others inside and outside of Defenders to review Forest Service Schedules of Proposed Action ("SOPAs"), Forest Service project webpages, and associated documents about projects proceeding under the new CEs (including documents published by Defendant-Intervenor AFRC). I have monitored a list of projects that may proceed under these CEs and have coordinated with colleagues about them. And I have coordinated with other organizations and reviewed documents obtained through other FOIA requests related to the projects identified in the Defenders' FOIA request. My goal in reviewing all these documents has been to understand how and where the Forest Service is using the new CEs, and where and why it isn't using them. All of this has taken substantial time, in competition with my other

20

duties to protect and conserve rare species and their habitats, such as my work to improve wildlife passage across Interstate 40 through the Pisgah and Cherokee National Forests.

53.     Defenders was surprised to find that the Forest Service had not immediately started to use the new CEs, particularly CEs 25, 24, and 3. This was a surprise to me because I was aware that the Forest Service had previously instructed its field offices to use CEs whenever they were available, and so many projects are eligible for the CEs, especially in the Southern Appalachians.

54.     Digging deeper into those FOIA records, I learned that the Forest Service was deliberately holding its field offices back from using the new CEs because of the lawsuit Defenders had filed in this Court. Specifically, I learned that the Forest Service has prohibited the use of CEs 24 and 25 in Region 8 because of our litigation. I have also learned that the Forest Service is still very eager to use the new CEs, but it is holding back as part of a strategy that it thinks will help it avoid losing the CEs in this lawsuit. This review confirmed to me that the Forest Service will begin immediately and aggressively using the CEs here if the agency prevails in this lawsuit.

55.     Attached to this declaration are true and correct copies of records described above. These documents have shown me that this lawsuit is the only thing standing in the way of all the on-the-ground harms that the CEs will certainly cause. And, as discussed above, Defenders has already been harmed by promulgation of the CEs in other ways, such as having to spend our time and resources fighting for information about how the CEs are being used and where.

21

56.    I support Defenders of Wildlife filing this lawsuit against the U.S. Forest Service

and the Council on Environmental Quality. An order from this Court vacating the Final Rule will

redress my injuries. Defenders of Wildlife represents my interests in this proceeding.

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. §
1746, that the foregoing is true and correct.

Executed this __20th__ day of November 2024.

Ben Prater

# Attachment 1



**Forest Service**                    Washington Office                    1400 Independence Avenue, SW
                                                                          Washington, D.C. 20250

---

**File Code:**   1950                              **Date:**   April 25, 2022
**Route To:**

**Subject:**   Use of New and Existing National Environmental Policy Act (NEPA) Authorities
              to Confront the Wildfire Crisis

**To:**   Regional Foresters, Station Directors, Deputy Chiefs, and WO Directors

We face an unprecedented wildfire crisis in the United States.  This crisis stems from, and is
amplified by, the profound effects of more than a century of fire suppression, the vast expansion
of built infrastructure in the wildland-urban interface, and most significantly, our warming
climate.  We must take strong, affirmative actions at an accelerated speed and scale to restore
and maintain healthy forest conditions and return fire to its more balanced role in our
ecosystems.  Our strategy—built in close coordination with Federal, State, and Tribal
governments and non-governmental partners, communities, and stakeholders—is focused on
work in the highest priority locations to protect communities.  Details on the *Confronting the
Wildfire Crisis* strategy are available at https://www.fs.usda.gov/managing-land/wildfire-crisis.

The Bipartisan Infrastructure Law (BIL) provides the Agency with extensive resources and new
authorities in support of this strategy.  The BIL includes a new agency Categorical Exclusion
(CE): Establishment of Fuel Breaks in Forests and Other Wildland Vegetation. The new CE can
be used for fuel breaks up to 1,000 feet in width but cannot establish more than 3,000 acres of
treatments.  The CE can be used immediately, and information and training is available from our
national and regional NEPA and planning staffs.

The BIL also included a new authority entitled *Emergency Actions*. This section authorizes the
Secretary to determine that an emergency exists on National Forest System lands and allows
vegetation and other treatments to be carried out pursuant to the Secretary's emergency
determination.  Guidance on use of the Emergency Actions authority will be forthcoming from
USDA.  It is imperative that you work closely with your line officers to ensure these authorities
are understood and applied in an expedited and appropriate manner.

In addition to the new authorities in the BIL, Congress has previously provided us other
authorities including Healthy Forest Restoration Act (HRFA) expedited EA/EIS processes, the
HFRA Section 603 Insect & Disease CE, and the HFRA Section 605 Wildfire Resilience CE.
Our recent updates to agency NEPA regulations provide us a new restoration CE (36 CFR
220.6(e)(25)) and the Determination of NEPA Adequacy (DNA) process (36 CFR 220.4(j)).  We
have many years of success employing thoughtful and creative NEPA analysis approaches and
using CEs where appropriate to accomplish necessary work to restore, maintain, and enhance
resource conditions.  Finally, there are various emergency procedure authorities at 36 CFR
220.4(b) and 36 CFR 218.21, which can responsibly streamline the process to reach a decision
and allow us to begin important emergency prevention and recovery work.





Regional Foresters, Station Directors, Deputy Chiefs, and WO Directors                    2

For units receiving funds from the BIL, disaster relief, or fuels projects implementing agency's *Confronting the Wildfire Crisis* strategy, it is my expectation that you conduct project planning and environmental analysis using the most responsibly expedient process available, with the engagement of the public and coordination with Federal, State, local and Tribal governments as appropriate, and consistent with laws, regulations, and policies.  This means defaulting to HFRA authorities first, where applicable; using CEs wherever appropriate, consistent with rigorous extraordinary circumstances analyses; and using post-disturbance event tools such as the Emergency Situation Determination at 36 CFR 218.21.  As soon as available, I also expect use of the BIL Section 40807 Emergency Actions authority to proactively treat emergency conditions before the consequences of those conditions manifest into catastrophic and unacceptable loss of resource values, property, economic activity, and human life.

We face a growing wildfire crisis in the United States.  We must posture ourselves in full recognition of the nature of this emergency and adjust our thinking and our actions accordingly. I know you and the dedicated resource stewards and public servants on Forests and Districts across the country are up to this challenge.

For questions regarding the options for environmental analysis, please contact Julia Riber, Acting Director, Ecosystem Management Coordination, at julia.riber@usda.gov.

Thank you for all you do in stewardship and restoration of America's National Forests and Grasslands.



X RANDY MOORE    Digitally signed by RANDY MOORE
Date: 2022.04.25 18:36:47 -04'00'

RANDY MOORE
Chief

# Attachment 2

| | |
|---|---|
| **From:** | Shaw, Adam - FS |
| **To:** | Smalls, James -FS; Marshall, Amy -FS; Gaugush, Samuel - FS |
| **Subject:** | RE: Using Updated CE 220.6(e)(3) |
| **Date:** | Wednesday, December 2, 2020 4:08:09 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

OK, I'll send you an invite for 3:30 ET/1:30 MT.

Thanks Jim!

Adam

**Adam Shaw**
**Regional Environmental Coordinator**

**Intermountain Region (R4)**
**US Forest Service**

c: (b) (6)
ashaw@fs.fed.us
324 25th Street
Ogden, UT 84401

www.fs.fed.us

☐ ☐ ☐ ☐

**Caring for the land and serving people**

R4 PAOL SharePoint

**From:** Smalls, James -FS <james.smalls@usda.gov>
**Sent:** Wednesday, December 2, 2020 2:04 PM
**To:** Shaw, Adam - FS <adam.shaw@usda.gov>; Barker, Amy C -FS <amy.c.barker@usda.gov>;
Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>
**Subject:** RE: Using Updated CE 220.6(e)(3)

I am not available until after 3:30 Eastern.

**From:** Shaw, Adam - FS <adam.shaw@usda.gov>
**Sent:** Wednesday, December 2, 2020 4:01 PM
**To:** Smalls, James -FS <james.smalls@usda.gov>; Barker, Amy C -FS <amy.c.barker@usda.gov>;
Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>
**Subject:** RE: Using Updated CE 220.6(e)(3)

Hi Jim and Sam- In a similar vein, I'd like to ask you some questions regarding a project that a unit is proposing to use a DNA on. Can we chat about it tomorrow? Would sometime between 900-1100 work for you?

Thanks-

Adam

**Adam Shaw**
**Regional Environmental Coordinator**

**Intermountain Region (R4)**
**US Forest Service**

c: (b) (6)
ashaw@fs.fed.us
324 25th Street
Ogden, UT 84401

www.fs.fed.us

04035-00082

☐☐☐

**Caring for the land and serving people**

R4 PAOL SharePoint

**From:** Smalls, James -FS <james.smalls@usda.gov>
**Sent:** Wednesday, December 2, 2020 1:41 PM
**To:** Barker, Amy C -FS <amy.c.barker@usda.gov>; Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>
**Cc:** Shaw, Adam - FS <adam.shaw@usda.gov>
**Subject:** RE: Using Updated CE 220.6(e)(3)

Thanks for the call Amy. This projects looks pretty good and the forest should continue moving forward. Let's plan on touching base after the first of the year to make sure we're still on track. Thanks again.

**From:** Barker, Amy C -FS <amy.c.barker@usda.gov>
**Sent:** Tuesday, December 1, 2020 6:41 PM
**To:** Smalls, James -FS <james.smalls@usda.gov>; Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>
**Cc:** Shaw, Adam - FS <adam.shaw@usda.gov>
**Subject:** RE: Using Updated CE 220.6(e)(3)

Hi Jim,

We received some updated information. I was wondering if you could give me a call tomorrow 801-718-7651? The Brundage Comm Site that we discussed last week went out for scoping on 11/25 (see attached).

Thanks,

 **Amy C. Barker**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coordinator**

**Forest Service**
**Intermountain Region (R4)**

**Phone: 801-718-7651**
**amy.c.barker@usda.gov**

324 25th Street
Ogden, UT 84401
www.fs.fed.us
☐☐☐

**Caring for the land and serving people**

**R4 PAOL SharePoint**

**From:** Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>
**Sent:** Tuesday, November 24, 2020 7:35 AM
**To:** Barker, Amy C -FS <amy.c.barker@usda.gov>; Dingman, Sandra J -FS <sandra.dingman@usda.gov>; Goessel, Kathryn M -FS <kathryn.goessel@usda.gov>
**Cc:** Smalls, James -FS <james.smalls@usda.gov>; Ebbers, Anne (Annie) - FS <Anne.Ebbers@usda.gov>; Shaw, Adam - FS <adam.shaw@usda.gov>

2                                                                              04035-00083

**Subject:** RE: Using Updated CE 220.6(e)(3)

Amy – Agreed. Thanks for keeping us in the loop.

Sam

---

**From:** Barker, Amy C -FS <amy.c.barker@usda.gov>
**Sent:** Monday, November 23, 2020 6:31 PM
**To:** Dingman, Sandra J -FS <sandra.dingman@usda.gov>; Goessel, Kathryn M -FS <kathryn.goessel@usda.gov>
**Cc:** Smalls, James -FS <james.smalls@usda.gov>; Gaugush, Samuel F - FS <samuel.gaugush@usda.gov>; Ebbers, Anne (Annie) - FS <Anne.Ebbers@usda.gov>; Shaw, Adam - FS <adam.shaw@usda.gov>
**Subject:** Using Updated CE 220.6(e)(3)

Hi Piper,

I would go ahead use the updated CE 220.6(e)(3) Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands.

**Jim/Sam/Annie** – This is a relatively straightforward use of the CE (see attached scoping document) to upgrade existing communication site/facility. I am copying you as a courtesy, since you asked us to keep you in the loop last week. I don't think we need any WO review as the project is relatively straight-forward. Let us know if you have any issues with this, otherwise, they plan to publish next week.

Thanks,



**Amy C. Barker**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coordinator**

**Forest Service**
**Intermountain Region (R4)**

**Phone: 801-718-7651**
**amy.c.barker@usda.gov**

324 25th Street
Ogden, UT 84401
www.fs.fed.us

**Caring for the land and serving people**

**R4 PAOL SharePoint**

---

**From:** Goessel, Kathryn M -FS <kathryn.goessel@usda.gov>
**Sent:** Saturday, November 21, 2020 11:32 AM
**To:** Barker, Amy C -FS <amy.c.barker@usda.gov>
**Cc:** Dingman, Sandra J -FS <sandra.dingman@usda.gov>; Goessel, Kathryn M -FS <kathryn.goessel@usda.gov>
**Subject:** New NEPA regs?

Hi Amy. I have a communication site improvement project that has been on the SOPA "In Development" for one quarter, listed as the old CE (e)(6). Getting ready to scope/update to "In Progress." Wondering if there's any reason no to go ahead and use the new definition of the special uses category (as attached)? Thanks!

3

04035-00084



**Piper Goessel**
**Physical Scientist**

**Forest Service**
**Payette National Forest**

**p: 208-634-0760**
**f: 208-634-0744**
kathryn.goessel@usda.gov

500 N Mission St, Bldg 2
McCall, ID 83638
www.fs.fed.us

**Caring for the land and serving people**

4

04035-00085

| | |
|---|---|
| **From:** | Smalls, James -FS |
| **To:** | Schaefers, Julie -FS |
| **Subject:** | RE: new CE cats |
| **Date:** | Thursday, January 21, 2021 8:51:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

I'm assuming the project fits the SU CE and there are no extraordinary circumstances that would prevent them from using the CE. So, from what I can tell it seems like one of those projects that can move forward. You know it might be just as easy to do a focus EA and possibly avoid anything the lawsuit may throw at us later.

**From:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Sent:** Wednesday, January 20, 2021 10:26 AM
**To:** Smalls, James -FS <james.smalls@usda.gov>
**Subject:** FW: new CE cats

And … please see below – this is what I was trying to ask you about via voice mail last week.
If you can provide thoughts/assistance – much appreciate.



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

**p: 406-329-3453**
**c: (b) (6)** ▉▉▉ **(telework number)**
**julie.schaefers@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

| | | | |
|---|---|---|---|

**Caring for the land and serving people**

**From:** Sweatland, Brian A -FS <brian.sweatland@usda.gov>
**Sent:** Wednesday, January 20, 2021 8:10 AM
**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Subject:** FW: new CE cats

Julie: Any word on using this new CE cat for the water pipeline at that CG airport proposal?



**Brian Sweatland**
**Regional NEPA**
**Coordinator**

**Forest Service**
**Northern Region -**
**Regional Office**

**p: 406-329-3121**
**Covid cell: (b) (6)** ▉▉▉
**brian.sweatland@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

| | | | |
|---|---|---|---|

04035-00097

**Caring for the land and serving people**

**From:** Sweatland, Brian A -FS
**Sent:** Thursday, January 14, 2021 10:14 AM
**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Subject:** RE: new CE cats

Decision is May. But if they can't use the category they're hosed b/c they'd have to do an EA? So it's a joint project with FAA. FAA is doing an EA for their part. Our part is only the SUP for the waterline. So FAA I should say plans on having their EA done my May. So the forest is stuck trying to decide the easy CE or start a dumb EA for a waterline.



**Brian Sweatland**
**Regional NEPA Coordinator**
**Forest Service**
**Northern Region - Regional Office**
p: 406-329-3121
Covid cell: (b) (6)
brian.sweatland@usda.gov
26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

**From:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Sent:** Thursday, January 14, 2021 10:13 AM
**To:** Sweatland, Brian A -FS <brian.sweatland@usda.gov>
**Subject:** RE: new CE cats

What is the timeline? If it needs to start up right away … we'll need to brief the RF about using it. But if they want to start working on it now and put a decision out in a few months – then no problem… we can start working on that using the category.

The pause is just pushing a decision out that used a new category during this transition time … thru mid February maybe.

Does that help?

*of course, with the recent lawsuit on the new regs … I'm not sure what that will do to our ability to use the categories – but hopefully keep going (until told otherwise).



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**
**Forest Service**
**Northern Region - Regional Office**
p: 406-329-3453
c: (b) (6)    (telework number)
julie.schaefers@usda.gov
26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

04035-00098

**Caring for the land and serving people**

---

**From:** Sweatland, Brian A -FS <brian.sweatland@usda.gov>
**Sent:** Thursday, January 14, 2021 10:01 AM
**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Subject:** new CE cats

On use of the new categories, did they give us someone specifically to ask about potential projects? I have a perfect project for the 20 ac SUP – a sewer line ROW from an airport that crosses a bit of FS lands, but also mostly follows an existing road. It's the perfect use of the category.



**Brian Sweatland**
**Regional NEPA Coordinator**
**Forest Service**
**Northern Region - Regional Office**

p: 406-329-3121
Covid cell: (b) (6)
brian.sweatland@usda.gov

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

7

04035-00099

| | |
|---|---|
| **From:** | Sloan, Jenna - FS |
| **To:** | Neely, David -FS; Smalls, James -FS |
| **Cc:** | Lander, Bart -FS |
| **Subject:** | FW: Hold on New 220 Regulations CEs and DNAs |
| **Date:** | Friday, February 5, 2021 2:19:04 PM |
| **Attachments:** | image004.png |
| | image005.png |
| | image006.png |
| | image007.png |

Dave and Jim, can we proceed with this non-controversial use of permit CE?

Let me know if you have questions,

Jenna

**From:** Chadwick, Kara -FS <kara.chadwick@usda.gov>

**Sent:** Friday, February 5, 2021 11:05 AM

**To:** Lander, Truman -FS <truman.lander@usda.gov>

**Cc:** Sidon, Joshua - FS <Joshua.Sidon@usda.gov>; Sloan, Jenna - FS <jenna.sloan@usda.gov>; Simino, James -FS <james.simino@usda.gov>

**Subject:** FW: Hold on New 220 Regulations CEs and DNAs

Hi Bart,

We have a project on the Columbine RD on the San Juan that we would like to request authority to use one of the new CEs. We have an existing permit for gas infrastructure. BP sold out to another company Simcoe. We need to transfer the permit over to Simcoe. The new CE category would allow us to accomplish that but we aren't able to use that yet and the old CE has been removed so we are in limbo on that one right now. The concern is that technically Simcoe doesn't have a permit right now and if something happens we are hanging out there a little bit. Also this is an extremely high dollar permit too. There are 4 permits to be re-issued for a road

Additional info:

Just to clarify a bit, there are 4 permits in total to be re-issued… 1. Sauls Creek Roads, 2. Sauls Creek Pipelines, 3. Spring Creek Roads, 4. Spring Creek Pipelines. There is nothing proposed to change from the previous permits issued to BP other than the name on the permit and the expiration date. We were hoping to use the new "no documentation" category for re-issuing SUPs, since we no longer have the old ones available to us.

Could you please push this up to the WO for possible exception to use the new category?

Thank you! Kara



**Kara L. Chadwick**
**Forest Supervisor**

**Forest Service**
**San Juan National Forest**

**p: 970-385-1290**
**c: (b) (6)**
**kara.chadwick@usda.gov**

15 Burnett Court
Durango, CO 81301
www.fs.fed.us

**Caring for the land and serving people**

8                                                                    04035-00113

**From:** Sidon, Joshua - FS <Joshua.Sidon@usda.gov>
**Sent:** Friday, February 5, 2021 9:47 AM
**To:** FS-pdl r2 leadership team <pdl_r2_leadership_team@usda.gov>; FS-pdl r2 all district rangers <pdl_r2_all_district_rangers@usda.gov>; FS-pdl r2 planners & nepa <pdl_r2_planners_&_nepa@usda.gov>
**Cc:** Lander, Truman -FS <truman.lander@usda.gov>; Sloan, Jenna - FS <jenna.sloan@usda.gov>
**Subject:** RE: Hold on New 220 Regulations CEs and DNAs

Hello all,

I think word is getting around, but we wanted to make sure that folks knew that the Washington Office has asked us to continue to hold on use of the new CEs and DNAs. We were told that the process of releasing these CEs and DNAs is moving in the right direction but were not given a new timeline.

If you have a relatively small project (special use) that has the potential to turn into a big deal if we don't move forward then reach out to Bart Lander and he can connect with the WO on a possible exception to the hold.

Thanks!

Josh



**Josh Sidon**
**Deputy Director**
**Strategic Planning**

**Forest Service**
**Rocky Mountain Region**

p: ~~303-275-5152~~
c: (b) (6)
joshua.sidon@usda.gov

1617 Cole Blvd., Bldg. 17
Lakewood, CO 80401
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Sloan, Jenna - FS <jenna.sloan@usda.gov>
**Sent:** Wednesday, January 6, 2021 10:09 AM
**To:** FS-pdl r2 leadership team <pdl_r2_leadership_team@usda.gov>; FS-pdl r2 all district rangers <pdl_r2_all_district_rangers@usda.gov>; FS-pdl r2 planners & nepa <pdl_r2_planners_&_nepa@usda.gov>
**Cc:** Lander, Truman B -FS <truman.lander@usda.gov>
**Subject:** Hold on New 220 Regulations CEs and DNAs

All,

I just wanted to remind folks that we are on hold until we get more direction from the Washington Office on use of the new CEs and DNAs. The direction hasn't changed from what was communicated previously in early December. **We should all be on hold on applying the new CEs or DNAs until February 2.** Exceptions were being considered for some of the CEs, however **none of the exceptions submitted were approved so we should plan to wait on use until February 2**.

The attached one pager describes the status of the new and amended CEs.

04035-00114

If anything changes, I will let everyone know!

**Jenna Sloan**
**Director, Strategic Planning**

**Forest Service**
**Rocky Mountain Region**

**c:** (b) (6)
jenna.sloan@usda.gov

1617 Cole Blvd
Lakewood, CO 80401
www.fs.fed.us

**Caring for the land and serving people**

04035-00115

| | |
|---|---|
| **From:** | Schaefers, Julie -FS |
| **To:** | Neely, David -FS |
| **Cc:** | Lannom, Keith -FS |
| **Subject:** | Request from Region 1 - CEs |
| **Date:** | Friday, February 5, 2021 12:49:43 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Dave – request from Region 1, Lolo NF to use CEs. Please let us know if these are acceptable at this time. Thanks

220.6(d) (11) for reissuance of existing permits. Very low risk.

- Lolo has been re-issuing permits under a different CE in the "d" category using a letter to file and referencing another CE per RO direction and the 2016 Chiefs letter for modernizing special uses from several years. We can continue to do this, but the new CE fits better.
- would like to start using the new (d) (11) category for reissuance of numerous expired/expiring special use permits across the forest, or permits where ownership has changed.
- This request is not for a specific project, but instead numerous water transmission line SUP renewals, FLPMA road access renewals, communication site lease renewals, and/or other small uses, as well as new permits being issued due to change in ownership of land/improvements, etc. For 2021 alone, estimate 20-30 authorizations being re-issued.

For use of 220.6 (e ) (3) – Small livestock area SUP DM drafted and ready to be signed. Will be used for several access requests that include use of existing roads for access to private land and construction of driveways to access private lands. Nothing "new" or out of the ordinary from what we were using the same CE for when it was limited to 5 acres.

- Update of an existing CE: Understanding is that Forests must use the new language/CE. Therefore, approval to use this CE is more pressing to forest business.



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

**p: 406-329-3453**
**c:** (b) (6)    **(telework number)**
**julie.schaefers@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

04035-00117

**Issue: Outfitter Guide and Concession Industry Dialogues – Talking Points for G. Basso**
**Agency: Forest Service**
**Date:  February - 2021**

**Reflections on value of concession industry partnerships and intent for the program**

- o    This year has highlighted, more than any other, the value that public lands provide to Americans. In the midst of the pandemic, Americans looked to public lands as a safe place to escape from confinement, recreate and connect.
- o    The value of the concession community was particularly important in 2020, as many of you provided services so that the American public could enjoy public lands.
- o    I want to talk about three major items today:
    1. Working together through COVID and wildfires
    2. Improving service to those who have served (updates to the veterans' pass)
    3. Upcoming directive updates that have specific relevance to this community

**Updates from 2020 – a year of challenges and some opportunities**

- o    During the 2020 summer season the Agency experienced unprecedented levels of use as Americans looked to their public lands for recreation and restoration.
- o    While wonderful to see so many people enjoying these lands, it put a tremendous strain on the Agency's capacity to manage recreational experiences and mitigate their impacts.
- o    The Agency set up an incident management structure to help coordinate the care and recovery efforts, both internally and externally, related to the COVID-19 pandemic, the 2020 Wildfire Season, and the 2020 Hurricane Season.
- o    Each region is also working on these efforts, with a focus in Washington, Oregon, and California
- o    The Agency continues to monitor the current pandemic and will continue to rely on state and local public health guidance for any restrictions or closures.
- o    As of October 1st, the Agency has resumed its billing procedures for recreation special use permits.
- o    The Forest Service has partnered with internal and external groups to help form the Recreate Responsibly Coalition. This group has worked together to promote safe recreational practices during the COVID-19 pandemic.
- o    As many of you are aware, we have had several conversations with NFRA and concessions permit holders around the challenges associated with wildfire insurance – including lack of availability and expense. We are aware of these challenges and the challenges that an unstable insurance market poses.
- o    Additionally, concession permit holders raised concerns about how property insurance is being applied at the forest level including forests listing all assets in policies and using blanket coverage without listing specific assets.
- o    In response to these wildfire related concerns at a high level:
- o    Authorized Officers have the discretion to require property insurance. The Agency believes that maintaining wildfire protection in property insurance is beneficial to the permit holder and secures the financial viability of the authorized concession if the property were to be destroyed by wildfire. We understand the challenges posed by the 2020 fire season and are committed to continuing conversation and exploring shared solutions
- o    We support and are planning to provide further training and guidance on when property insurance should be required and how to determine the requisite amount of property insurance. We have informally discussed these issues with the field and are committed to addressing them formally in training for permit administrators and line officers.

1

04035-00121

**Issue: Outfitter Guide and Concession Industry Dialogues – Talking Points for G. Basso**
**Agency: Forest Service**
**Date:  February - 2021**

- o   The Agency is committed to working with NFRA and recreation special use permit holders to recover from impacts of the 2020 fire season and COVID-19 pandemic.
- o   The Forest Service continues to work with external partners, agencies, and permittees as we prepare for the upcoming winter season and summer 2021.

**Bottomline:** The pandemic of 2020 showcased the value of public lands to Americans and the importance of our concession industry partners. The Agency experienced unprecedented challenges as did our partners. We are committed to continuing to work together and support each other through both the challenges and opportunities presented by this past year.

**NEPA Updates**
- o   There are three major new NEPA Categorical Exclusions affecting the Recreation Special Use community
- o   These CEs were developed over the past year. They are not released yet but we expect them to be out and able to be used by the Spring (?)
- o   The first I'd like to highlight pertains to SU permit renewal
  - ▪ Previously there were two SU permit renewal categorical exclusions. One type required a document of the decision and one type did not
  - ▪ In the new rule these two CEs are streamlined into one CE and no decision documentation is required
  - ▪ This CE applied to renewals that replace existing or expired SU permits, when there are only administrative changes, and where there are no changes to the authorized facilities or increases in the scope of the authorized activity. Examples of where this CE would apply include converting an O/G permit from transitional priority use to priority use, a change in ownership or expiration of a current authorization.
- o   The next CE pertains to issuing a new authorization or amending an existing authorization for Rec SU that occur on existing roads, trails, facilities or rec sites or in areas where these activities are allowed.
  - ▪ For example, issuing a mtn biking permit in areas where trails are open to MT biking, issuing an O/G permit for back country skiing, issuing a compound concession permit for an existing campground that has been previously operated by USFS.
  - ▪ A decision document is no longer needed.
  - ▪ In effect this CE streamlines the process for obtaining permits in areas of existing activity (either by the public or other permit holders)
- o   The third CE pertaining to recreation special uses applies to construction or improvements at recreation sites, for example campground upgrades or replacing a ski lift chair.
  - ▪ Previously these activities would have been subject to an Environmental assessment and in some cases a full Envi impact statement- depending on the nature of the upgrade.
  - ▪ (This CE falls in the categories that require a decision document)
- o   All of these CEs were determined by a USFS NEPA Specialist Team. This team reviewed a number of NEPA determinations associated with past projects. CEs were developed in cases where collectively, looking at the body of projects, there were no significant impacts where rare.

**Commented [SS-F1]:** I d avoid using this term Georgia.  It sort of inflates the point of a CE, which is the lowest level of NEPA compliance.

**Commented [SS-F2]:** Developed over the last few years but based on many more years of NEPA experience.

**Commented [SS-F3]:** They are part of our new regulations, released November 19, 2020.  "Use of the new CEs has been temporarily paused during the transition to the new administration."  I d avoid any questions related to the pause, it s due to administrative transition.  I think most people will understand.  Still no idea on when it may be lifted.

**Commented [SFG4R3]:** Agreed. If there are questions, the purpose of the pause is to allow the Agency the opportunity to educate the new Administration about the CEs and how they are intended to be used.

**Commented [SFG5]:** I suggest "combined." We did this to eliminate confusion over which to apply.

**Commented [BG-F6]:** But once expired- aren t they done? Is there a clause for renewal option?

**Commented [SS-F7R6]:** That seems to be a non-NEPA question, more related to processing of permits.  A NEPA decision "approves" an action or activity to take place, where a special use authorization "authorizes" a specific entity to conduct a stated action/activity in a specific location on the landscape. When considering a particular activity remember to separate the administrative action of "authorizing a use" from the decision to "approve a use."

**Commented [SFG8]:** This is an expansion of an existing CE from 5- to 20-acres.

2

04035-00122

**Issue: Outfitter Guide and Concession Industry Dialogues – Talking Points for G. Basso**
**Agency: Forest Service**
**Date:  February - 2021**

- o   and determined that they   Agency recognizes the need to update key components of our directive system to modernize or program. In FY20/Fy21 the Agency has been drafting policy updates for our concession campground, recreation events and outfitter/guide programs.

- You may consider adding this talking point:  Agency proposed actions that rely on these CEs  like all of the agency's proposed actions subject to NEPA, must be consistent with the land management plan and all other laws, regulations, and policies. This includes compliance with the Endangered Species Act, Clean Water Act, and National Historic Preservation Act.

**Special Uses Directive Updates**

- o   The Agency recognizes the need to update key components of our directive system to modernize or program. In FY20/Fy21 the Agency has been drafting policy updates for our concession campground, recreation events and outfitter/guide programs.
- o   Specific to concessions current Forest Service Policy allows for two different term lengths tied to Granger-Thye/concessionaire permits. The traditional 5+5-year term, as well as, a 10 + 5-year term, if certain provisions are agreed upon at the beginning of a permit term.
- o   The Granger-Thye Act allows for up to a 30-year permit term; however, our current Forest Service policy allows for two permit terms – 5 and 10-year terms with the option to extend either term an additional 5 years based on satisfactory performance.
- o   The "10+5" term option is intended to be based on facility reconstruction or improvement costs that exceed $250,000 and when a consolidated fee payment of more than 5 years is needed to finance the project.
- o   Our agency realizes the reduction of deferred maintenance within our government-owned campgrounds remains a critical need; and as an agency we are looking to concessionaires to be our partners in helping to address these needs.
- o   Considering that, we also understand that in order to address some of the larger deferred maintenance issues that exists; there is a desire for an option for a longer-term permit than our agency is currently able to offer.
- o   Our agency is actively working on updating our directives and looking at opportunities to update some of our policies to help address these issues and to better support the ability to finance higher-cost renovations.
- o   Recreation Staff have been working on drafting policy that will allow for a wider range of permit issuance, up to 30 years. Before this policy can be utilized it will need to be finalized using the Agency's new notice and comment process for Forest Service Handbook and Manual direction. We are hoping for these updates to be published for notice and comment in Winter 2021

**Bottomline:** We can do more together. Concession industry partners help us as an agency address critical DM needs and the option for longer permit terms can help us to achieve joint goals.

3

Formatted: Font: (Default) Times New Roman, 11 pt, Font color: Text 1

Formatted: Font: (Default) Times New Roman

Formatted: List Paragraph,Bullet Paragraphs,Bulleted List,Dot pt,F5 List Paragraph,List Paragraph Char Char Char,Indicator Text,Numbered Para 1,Bullet 1,Bullet Points,List Paragraph2,MAIN CONTENT,Normal numbered,List Paragraph1,Colorful List - Accent 11,3,Bullet, Space After:  0 pt, Bulleted + Level: 1 + Aligned at:  0 25" + Indent at:  0.5", Don't adjust space between Latin and Asian text, Don't adjust space between Asian text and numbers

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman

Formatted: Font: (Default) Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman

Formatted: Font: Not Bold

04035-00123

| From: | Hernandez, Tasha -FS |
|---|---|
| To: | Stadelman, Steven - FS; Gaugush, Samuel - FS |
| Subject: | RE: New NEPA CE categories |
| Date: | Thursday, February 11, 2021 9:51:30 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Thank you Steve!



**Tasha Hernandez**
**Environmental Coordinator**

**Forest Service**
**Eastern Region, Regional Office**

**p: 414-297-3607**
tasha.hernandez**@usda.gov**

626 E. Wisconsin Ave. Suite 700
Milwaukee, WI 53202
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Thursday, February 11, 2021 6:04 AM
**To:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>; Gaugush, Samuel - FS
<samuel.gaugush@usda.gov>
**Subject:** RE: New NEPA CE categories

Looks like we need a little rumor control.  Thanks for making me aware of this Tasha.  Any infrastructure project still has to be examined on a case by case basis just like before.  Some critical infrastructure projects have been getting a green light (mostly communication) but not all.  Mark Chandler and Steve Stadelman are not the people to reach out to, it's the REC or RPD.

I'll talk to Mark and bring it up on the Lands call next week.

Thanks.  S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
steven.stadelman**@usda.gov**

1400 Independence Ave., SW

15

04035-00139

Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Sent:** Wednesday, February 10, 2021 5:30 PM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Subject:** FW: New NEPA CE categories

FYI perhaps as a result of our recent emails? Please let me know when we can chat so I am not caught in the middle of something surprisingly ☺ Thanks!



**Tasha Hernandez**
**Environmental Coordinator**
**Forest Service**
**Eastern Region, Regional Office**

**p: 414-297-3607**
tasha.hernandez**@usda.gov**

626 E. Wisconsin Ave. Suite 700
Milwaukee, WI 53202
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Worthington, Christopher - FS <Christopher.Worthington@usda.gov>
**Sent:** Wednesday, February 10, 2021 2:50 PM
**To:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Subject:** FW: New NEPA CE categories

FYI…this just gets better and better….

---

**From:** Turecek, Patti- FS <Patricia.Turecek@usda.gov>
**Sent:** Wednesday, February 10, 2021 12:50 PM
**To:** Worthington, Christopher - FS <Christopher.Worthington@usda.gov>
**Cc:** Putt, Douglas - FS <Douglas.Putt@usda.gov>
**Subject:** FW: New NEPA CE categories

Hi Chris, I thought I'd share this news, maybe you will hear through other channels.  The People's Telephone fiber optic install falls into this category, thanks, Patti

16

04035-00140

**From:** Brown, Christine -FS <christine.m.brown@usda.gov>
**Sent:** Wednesday, February 10, 2021 10:29 AM
**To:** Alexander, Elaine -FS <elaine.alexander@usda.gov>; Digiacco, Nicholas -FS <nicholas.digiacco@usda.gov>; Hoggan, Heidi -FS <heidi.hoggan@usda.gov>; Jackson, Hillarie -FS <hillarie.jackson@usda.gov>; Kahler, Kristin -FS <kristin.kahler@usda.gov>; Scott, Heidi -FS <heidi.scott@usda.gov>; Selin, Jason -FS <jason.selin@usda.gov>; Sutton, Amy -FS <amy.sutton@usda.gov>; Turecek, Patti- FS <Patricia.Turecek@usda.gov>; Walker, Amanda -FS <amanda.walker@usda.gov>; King, Laura - FS <Laura.King@usda.gov>; Wenzel, Brandee -FS <brandee.wenzel@usda.gov>; Waver, Christina - FS <Christina.Waver@usda.gov>; Watke, David -FS <david.watke@usda.gov>; Stanger, Rachel - FS <rachel.stanger@usda.gov>
**Subject:** RE: New NEPA CE categories

Happy Wednesday!

I just got off the phone with Mark Chandler from the WO.  The WO is directing that any infrastructure related projects (utilities, comm sites, etc) should NOT be paused and the new CE rules can be used.  If anyone pushes back on you, send them to Mark Chandler or Steve Stadelman (WO NEPA coordinator).  This is a topic at the next WO Lands SUP call next Wednesday where I hope to learn more about the process (ie: is there a need run it through the RO before a decision is signed).

Stay tuned.



**Christine M. Brown**
**Lands, Minerals, and Special Uses Supervisor**

**Forest Service**
WO Business Operations
Enterprise Program

**218-214-0889**
**christine.m.brown@usda.gov**

mail c/o CNF
200 Ash Ave NW
Cass Lake, MN  56633
**www.fs.fed.us**

**Caring for the land and serving people**

**From:** Brown, Christine -FS
**Sent:** Thursday, February 4, 2021 8:02 AM
**To:** Alexander, Elaine -FS <elaine.alexander@usda.gov>; Digiacco, Nicholas -FS <nicholas.digiacco@usda.gov>; Hoggan, Heidi -FS <heidi.hoggan@usda.gov>; Jackson, Hillarie -FS

04035-00141

<hillarie.jackson@usda.gov>; Kahler, Kristin -FS <kristin.kahler@usda.gov>; Scott, Heidi -FS <heidi.scott@usda.gov>; Selin, Jason -FS <jason.selin@usda.gov>; Sutton, Amy -FS <amy.sutton@usda.gov>; Turecek, Patricia -FS <Patricia.Turecek@usda.gov>; Walker, Amanda -FS <amanda.walker@usda.gov>; King, Laura - FS <Laura.King@usda.gov>; Wenzel, Brandee -FS <brandee.wenzel@usda.gov>; Waver, Christina - FS <Christina.Waver@usda.gov>; Watke, David -FS <david.watke@usda.gov>; Stanger, Rachel - FS <rachel.stanger@usda.gov>

**Subject:** FW: New NEPA CE categories

A little rabble rousing this morning!

---

**From:** Brown, Christine -FS
**Sent:** Thursday, February 4, 2021 7:57 AM
**To:** Chandler, Mark - FS <mark.chandler@usda.gov>; Denson, Elrand -FS <elrand.denson@usda.gov>; Woodruff, Reginal -FS <reginal.woodruff@usda.gov>
**Subject:** New NEPA CE categories

Good morning!

I'm wondering if there has been any recent direction regarding use of the new CE categories for special uses. In Enterprise, we are not seeing a consistent approach. We've seen a few Forests using the old CE regs while we are waiting for more direction but the majority are doing nothing. And recently we've had Forests recommend EA's in lieu of the CE categories, to be on the safe side. This is creating much longer permit processing, including not meeting the timelines outlined in the new regulations. It's also causing all sorts of confusion for my team as they work on different projects throughout the agency.

At this time we are following each Forest's direction, albeit inconsistent. Thank you for any information you can provide.

-Christine



**Christine M. Brown**
**Lands, Minerals, and Special Uses Supervisor**

**Forest Service**
**WO Business Operations**
**Enterprise Program**

**218-214-0889**
**christine.m.brown@usda.gov**

mail c/o CNF
200 Ash Ave NW
Cass Lake, MN  56633
**www.fs.fed.us**

**Caring for the land and serving people**

18

| | |
|---|---|
| **From:** | Adamson, Joseph - FS |
| **To:** | Gaugush, Samuel - FS |
| **Subject:** | FW: Projects for New CE Regulations |
| **Date:** | Friday, February 19, 2021 10:23:36 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

This is what the forest is hearing (see below). This is the guidance that I will follow until I hear otherwise from the Region.

Sorry to have bothered you Sam.

Joe

**From:** Crowe, Teresea -FS <teresea.crowe@usda.gov>
**Sent:** Friday, February 19, 2021 10:21 AM
**To:** Sherman, Edward -FS <edward.sherman@usda.gov>; Kaminski, LeAnn- FS <Jennifer.Kaminski@usda.gov>; Holland, Keith -FS <keith.holland@usda.gov>; Gordon, Becky -FS <becky.gordon@usda.gov>; Macon, Robert -FS <robert.f.macon@usda.gov>; Hall, Tray -FS <tray.hall@usda.gov>; Woods, Christopher -FS <christopher.woods@usda.gov>; Rein, Darla -FS <darla.rein@usda.gov>
**Cc:** Saylors, Thomas -FS <thomas.saylors@usda.gov>; Ewing, Rebecca -FS <rebecca.ewing@usda.gov>; Yamnik, Patrick -FS <patrick.yamnik@usda.gov>; Dillon, Matthew -FS <matthew.dillon@usda.gov>; Adamson, Joseph - FS <joseph.adamson@usda.gov>; Bittle, Kimberly - FS <kimberly.bittle@usda.gov>; Lunsford, Cody - FS <cody.lunsford@usda.gov>; Whitworth, Paul -FS <paul.whitworth@usda.gov>
**Subject:** RE: Projects for New CE Regulations

If you are using a CE category that did not change in the new regulations you can go on with your projects.  If you are using a CE category that changed with the new regulations you have to wait until we receive approval from the RO or the pause is lifted.

*Teresea*

**From:** Sherman, Edward -FS <edward.sherman@usda.gov>
**Sent:** Friday, February 19, 2021 8:51 AM
**To:** Crowe, Teresea -FS <teresea.crowe@usda.gov>; Kaminski, LeAnn- FS <Jennifer.Kaminski@usda.gov>; Holland, Keith -FS <keith.holland@usda.gov>; Gordon, Becky -FS <becky.gordon@usda.gov>; Macon, Robert -FS <robert.f.macon@usda.gov>; Hall, Tray -FS <tray.hall@usda.gov>; Woods, Christopher -FS <christopher.woods@usda.gov>; Rein, Darla -FS <darla.rein@usda.gov>
**Cc:** Saylors, Thomas -FS <thomas.saylors@usda.gov>; Ewing, Rebecca -FS <rebecca.ewing@usda.gov>; Yamnik, Patrick -FS <patrick.yamnik@usda.gov>; Dillon, Matthew -FS <matthew.dillon@usda.gov>; Adamson, Joseph - FS <joseph.adamson@usda.gov>; Bittle, Kimberly - FS <kimberly.bittle@usda.gov>; Lunsford, Cody - FS <cody.lunsford@usda.gov>; Whitworth, Paul -FS

19                                                            04035-00164

<paul.whitworth@usda.gov>

**Subject:** RE: Projects for New CE Regulations

I am only replying to all because someone may have the same question.
Can I use the previous CE regulations and carry on with my work?



**Ed Sherman**
**Zone Recreation Manager**

**Forest Service**
**Mark Twain National Forest**
**Eleven Point and Poplar Bluff Ranger Districts**

**p:573-996-2153**
**c:(b) (6)**
**f: 573-996-7745**
edward.sherman@usda.gov

#4 Confederate Ridge Road
Doniphan, MO 63935
http://www.fs.usda.gov/mtnf

**Caring for the land and serving people**

**From:** Crowe, Teresea -FS <teresea.crowe@usda.gov>
**Sent:** Friday, February 19, 2021 8:30 AM
**To:** Kaminski, LeAnn- FS <Jennifer.Kaminski@usda.gov>; Holland, Keith -FS <keith.holland@usda.gov>; Gordon, Becky -FS <becky.gordon@usda.gov>; Macon, Robert -FS <robert.f.macon@usda.gov>; Hall, Tray -FS <tray.hall@usda.gov>; Sherman, Edward -FS <edward.sherman@usda.gov>; Woods, Christopher -FS <christopher.woods@usda.gov>; Rein, Darla -FS <darla.rein@usda.gov>
**Cc:** Saylors, Thomas -FS <thomas.saylors@usda.gov>; Ewing, Rebecca -FS <rebecca.ewing@usda.gov>; Yamnik, Patrick -FS <patrick.yamnik@usda.gov>; Dillon, Matthew -FS <matthew.dillon@usda.gov>; Adamson, Joseph - FS <joseph.adamson@usda.gov>; Bittle, Kimberly - FS <kimberly.bittle@usda.gov>; Lunsford, Cody - FS <cody.lunsford@usda.gov>; Whitworth, Paul -FS <paul.whitworth@usda.gov>
**Subject:** Projects for New CE Regulations

Good morning everyone!  First let me apologize for the quick turnaround on this request, but we have to have our response to the region ASAP today.  We have been asked to reduce our submission of projects to immediate needs (under 10 projects).  I would like each zone realty specialist to work with the rec staff and district rangers to come up with the 2 top priorities on the zone for immediate review.  Please take into consideration those projects that have paid Cost Recovery and rec events that will be happening in the next 30 days.  I have attached a list of the submitted projects for your

04035-00165

reference.

I need your response **NLT 10 am this morning** if possible.  If I haven't heard from you by that time I will make the call on priorities.  Thanks a ton for your quick response!!!



**Teresea Crowe**
**Lands and Special Uses Program Manager**
**Forest Service**
**Mark Twain National Forest**
p: 417-967-4194 x3106
c: (b) (6)
f: 417-967-2524
teresea.crowe@usda.gov
108 S. Sam Houston Blvd.
Houston, MO 65483
www.fs.fed.us

**Caring for the land and serving people**

21

04035-00166

| | |
|---|---|
| **From:** | Gaugush, Samuel - FS |
| **To:** | Mcglothlin, Deborah -FS |
| **Cc:** | Smalls, James -FS |
| **Subject:** | RE: Q from R10 on WO CE review |
| **Date:** | Friday, March 12, 2021 12:42:19 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

For the most part we've just been having impromptu phone calls with either the REC or the RPD to talk through the project and any related urgency or controversy. If Lauren wants to batch projects or has other ideas, I think we can be flexible.

**From:** Mcglothlin, Deborah -FS <deborah.mcglothlin@usda.gov>

**Sent:** Thursday, March 11, 2021 11:26 AM

**To:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>

**Cc:** Smalls, James -FS <james.smalls@usda.gov>

**Subject:** Q from R10 on WO CE review

I got this question from Lauren McChesney in R10:

Quick question: if we want to propose CEs for WO review, is there a preferred method to do so? I worked with Annie Ebbers on one, but we're trying to be more comprehensive this time and want to make sure it's the best format for everyone involved. Your thoughts would be much appreciated. Thoughts?

 **Deborah McGlothlin, PMP, CAL**
**Adaptive Management Program Coordinator**

**Forest Service**
**Washington Office - Ecosystem Management Coordination**

p: (b) (6)
c: (b) (6)
**deborah.mcglothlin@usda.gov**

1824 S Thompson St
Flagstaff, AZ 86001
www.fs.fed.us



**Caring for the land and serving people**

04035-00344

**From:** Barker  Amy -FS
**To:** Stadelman  Steven - FS; Shaw  Adam - FS
**Subject:** RE: Request rev ew of CEs to move ahead / OK
**Date:** Thursday  March 18  2021 11:21:45 AM
**Attachments:** mage001.png
mage002.png
mage003_ng
mage004.png

Thanks!



**Amy C  Marshall**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coord nator**
**Forest Service**
**Intermounta n Region (R4)**
**Phone: 801 718 7651**
**amy c barker@usda gov**
32  25th Street
Ogden, UT 8  01
www.s.fed.us

**Caring for the land and serving people**

**R  PAOL ShareP  int**

**From:** Stadelman  Steven - FS <steven.stadelman@usda.gov>
**Sent:** Thursday  March 18  2021 9:16 AM
**To:** Shaw  Adam - FS <adam.shaw@usda.gov>
**Cc:** Barker  Amy -FS <amy.c.barker@usda.gov>
**Subject:** RE: Request review of CEs to move ahead / OK

FYI  these new CEs have been unlocked in PALS.  S



**Steve Stadelman  CF**
**NEPA Spec alist**
**Forest Service**
**Ecosystem Management Coordination**
**p: 202 205 1521**
**c (b) (6)**
**steven stadelman@usda.gov**
1  00 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

**From:** Stadelman  Steven - FS
**Sent:** Thursday  March 18  2021 10:23 AM
**To:** Shaw  Adam - FS <adam.shaw@usda.gov>
**Cc:** Barker  Amy -FS <amy.c.barker@usda.gov>
**Subject:** RE: Request review of CEs to move ahead / OK

Adam – all these four requests are excepted  they can move forward.  Thanks for providing the key information to help me understand them – and the associated urgency.  S



**Steve Stadelman  CF**
**NEPA Spec alist**
**Forest Service**
**Ecosystem Management Coordination**
**p: 202 205 1521**
**c (b) (6)**
**st  en stadelman@usda g  v**
1  00 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

**From:** Shaw  Adam - FS <adam.shaw@usda.gov>
**Sent:** Tuesday  March 16  2021 2:29 PM
**To:** Stadelman  Steven - FS <steven.stadelman@usda.gov>
**Cc:** Barker  Amy -FS <amy.c.barker@usda.gov>
**Subject:** Request review of CEs to move ahead

Hi Steve: The Uinta-Wasatch-Cache NF (projects 1 and 2) and the Bridger-Teton NF (projects 3 and 4) have a couple of CEs that need to move forward. Both are ready for scoping now  with decisions pursued in April. Here are the specifics.

1. We would like to move forward with using the new CE for a project to update the Forest MVUM. This is a project designed to block and rehabilitate a dead-end road spur that leads to a site that is experiencing resource damage from unauthorized motor use (unauthorized motorized use from end of road spur into an area that is wet and gets illegally used as a mud bog).

| 202005_OG06_MVUM_Update_Road_015_Trail_620 | Rehabilitate road 015 by scarifying the road surface and removing any improvements in the roadway.  Trail 620 will be signed as open to 60 inch wide vehicles or less and barriers currently in place will be set at 60 inches and new 60 inch barriers will be placed on the west end of the trail near Devils Gate | 36 CFR 220.6(e)(20) - Activities that restore  rehabilitate  or stabilize lands occupied by roads and tra ls  including unauthorized roads and trails and National Forest System roads and National Forest System trails to a more natural condition that may include removing  replacing  or modifying drainage structures and ditches  reestablishing vegetation  reshaping natural contours and slopes  reestablishing drainage-ways  or other activities that would restore site productivity and reduce environmental impacts. | Scoping pending RO approval | |
|---|---|---|---|---|

2. The Union Telephone project is a fiber optic project that will help provide high-speed internet connections to rural communities. Total disturbed area is 12.4 acres

| 202101_EV04_UnionTelephone_MirrorLakeHwy | Request from Union Telephone Company to install buried conduit for telecommunication cables (fiber optic) connecting existing infrastructure in Summit County Utah. | 36 CFR 220.6(e)(3) - Approval  modification  or continuation of minor special uses of NFS lands that require less than 20 contiguous acres of land. | Scoping pending RO approval | |
|---|---|---|---|---|

3. Sagebrush Cowboy Cabin Restoration Project  need to be scoped now to sign a decision by June  in order to accept volunteers for the project in the snow-free months.

| Sagebrush Cowboy Cabin Restoration Project | (e)(21) and (22) | Rec | New | 1 acre | | Blackrock Ranger District on the Bridger-Teton is requesting permission to publicly scope this project in March. The project will include fixing up an old admin cabin—new roof  new floor joists and flooring  new window and door frames  new porch; change existing outhouse to a vaulted tank toilet. It effects only an acre of land  but would use the new categories 261.6e(21) and (22). While no outside funders exist  the ranger would like to sign a decision by June  in order to accept volunteers for the project in the snow-free months. Restoring this cabin to a condition suitable for public rental would provide a greater range of public recreation opportunity—this would be the only rental cabin in the entire north zone of the Forest. |
|---|---|---|---|---|---|---|

23

04035-00345

| | | | | | Note this one is for *scoping* approval  not decision approval. |
|---|---|---|---|---|---|

4.  Jackson Hole Mountain Resort (JHMR) - Summit Infrastructure Improvements. All are part of the same DM  using same CE category. All need to be scoped now for decision when construction season starts.

| 36 CFR 220.6(e)(3) | SUP (Ski Area) | | <5 acres | N | Bridger-Teton NF. None anticipated |
|---|---|---|---|---|---|
| | Ski Patrol Station | | <0.1 acre | New building and walkway | |
| | Kids Play Zone | | 0.6 acre | | |
| | Bike Play Park | | 0.2 acre | | |
| | Summit Viewing Areas | | 0.1 acre | 3 new  1 improved; plus self-guided tour posts | |

Please let me know if you need more information on these projects.

Thanks-
Adam

**Adam Shaw**
**Regional Environmental Coordinator**
**Intermountain Region (R4)**
**US Forest Service**
c (b) (6)
a_haw@fs.fed.us
32  25th Street
Ogden, UT 8  01

www.fs.fed.us
**Caring for the land and serving people**

R4 PAOL SharePoint

24

04035-00346

| | |
|---|---|
| **From:** | Smalls, James -FS |
| **To:** | Stadelman, Steven - FS; Neely, David -FS; Gaugush, Samuel - FS |
| **Subject:** | RE: Upper Kachess River Restoration |
| **Date:** | Friday, April 23, 2021 1:07:26 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Did the region check to make sure the NEPA is not already done? This seems like it might fit under their regionwide aquatics EA. How about using the following category:

(7) Modification or maintenance of stream or lake aquatic habitat improvement structures using native materials or normal practices. Examples include, but are not limited to:
(i) Reconstructing a gabion with stone from a nearby source;
(ii) Adding brush to lake fish beds; and
(iii) Cleaning and resurfacing a fish ladder at a hydroelectric dam.

Otherwise, I'm ok with moving forward.  But that opens the door for the rest of the projects that have been waiting.   Fingers crossed there's nothing out there with DNA or CE25 that shows up in lawsuit.  Also, I'm loosing steam on this whole "pause" thing.  Hundred twenty days into a 60 day thing.

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Friday, April 23, 2021 12:41 PM
**To:** Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Subject:** RE: Upper Kachess River Restoration

Looks like a good one to test the waters on.  It's restoration, disturbance looks to be within the CE sideboards and there is adequate justification to move forward now vs. waiting.  Is there any need for temporary roads to access the small trees in the Snoqualmie Pass Adaptive Management area?  If so, has that been accounted for in the projected 2.3 miles of temporary roads?  The sideboard on that one is 2.5 miles.

Fingers crossed on *the thing* lifting Monday!!

S

**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**

25

04035-00365

**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
**www.fs.fed.us**

**Caring for the land and serving people**

---

**From:** Neely, David -FS <david.neely2@usda.gov>
**Sent:** Friday, April 23, 2021 12:16 PM
**To:** Smalls, James -FS <james.smalls@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Subject:** FW: Upper Kachess River Restoration

Hey – take a look at this. I mentioned to CD we might explore saying yea to a white-hat project for use of CE25 right out of the gate and she was open to it. Any thoughts on this – and have y'all had any others of this ilk come your way?

Also, Mary and I got invited to a meeting with NRE Monday to hopefully get some updated guidance from French on use of the rule provisions going forward.



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

**c:** (b) (6)
**david.neely2@usda.gov**

201 14th St. SW - 2 Central
Washington, DC 20024
**www.fs.fed.us**

**Caring for the land and serving people**

---

**From:** Lambert, Mark -FS <mark.b.lambert@usda.gov>
**Sent:** Friday, April 23, 2021 10:27 AM
**To:** Neely, David -FS <david.neely2@usda.gov>
**Cc:** Riber, Julia -FS <julia.riber@usda.gov>

26

**Subject:** Upper Kachess River Restoration

Dave – here are a few details about the restoration project we talked about earlier this week.  Let me know if you need more info.  Today is last day of my detail so you'll want to go through Julia if it's next week.  And Mike Goldstein will start in my position on Monday. Thanks!

**Okanogan-Wenatchee National Forest – Upper Kachess River Restoration**

Proposal description: The Upper Kachess River Restoration Project on the Cle Elum District of the Okanogan-Wenatchee NF is designed to improve habitat for federally listed bull trout. The population is at risk of extirpation and is under stress from impaired habitat including unstable and shallow water levels, loss of large wood, and pulses of sediment released from Forest Service Road (FSR) 4600 which provides recreational access to the Mineral Creek Trailhead.

Activities proposed under this project total 155 acres. The proposed action would restore 1.7 miles of stream habitat by installing large wood structures and roughness bars, reconnect 5 acres of floodplain, and contribute to 0.3 miles of downstream connectivity by establishing a 0.2 mile high flow side channel and correcting 23 feet of historic grading. Smaller trees for large wood projects would be sourced from within 74.6 acres of adjacent overstocked stands, using selective thinning as provided in the Snoqualmie Pass Adaptive Management area. Large diameter trees would be sourced by partners from outside of National Forest System lands and brought to the project area.

The project would correct sediment release from an eroding portion of FSR 4600 by relocating the Mineral Creek Trailhead upslope, outside the riparian reserve, to the site of a former log landing and decommissioning the unneeded segment of FSR 4600 (0.75 miles). The access to the new trailhead will improve the former access to the log landing (0.27 miles). A trail reroute (0.1 miles) and new foot bridge would connect the new trailhead to the existing non-motorized trail, and the old trail would be decommissioned (0.1 miles). The new trailhead would be more scenic than the current trailhead, and the new foot bridge will provide a safer stream crossing for hikers.

Associated actions would include four staging areas for equipment and large wood and 2.3 miles of new temporary access routes.  All temporary access routes would be decommissioned within 3 years of project completion. An additional 0.3 miles of maintenance level 1 road within the project area would not be used but would be decommissioned.

Identification of the expected category(ies) which would be used: 36 CFR 220.6(e)(25) - Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience.

Explanation for why the need to proceed with the project is time sensitive: Timely completion is essential for Kittitas Conservation Trust to be competitive in seeking the further funds needed to implement all phases of this multi-year project. Kittitas Conservation Trust is currently requesting funding from several granting sources, which expect completed NEPA analysis and a signed decision when considering applications. In addition, the project's current granting sources require all authorizations to be complete by December 31, 2021.

To date, Kittitas Conservation Trust has been extremely successful in obtaining financial support from multiple partners. They have received $465,834 for project design, analysis, and permitting and an initial $150,000 to begin implementation.

Expected level of controversy with implementation of the project: The Upper Kachess River Restoration project is not expected to be controversial based on public input received for other projects similar in scope and scale on the Cle Elum District. While the proposed action involves changes to a system road and trail, recreational access will be maintained or improved while restoring habitat conditions for a federally listed species. No public comments were received during scoping.

Collaborative process: The project has been proposed under the Initial Development Phase of the Yakima Basin Integrated Plan and is supported by area partners. Kittitas Conservation Trust, a local land trust organization whose mission is to protect and enhance fish and wildlife habitat,

27

04035-00367

open space and recreational assets in the upper Yakima River basin developed the proposed action with a technical work group with specialized knowledge representing a breadth of interests. Members included representatives from Central Washington University, Franklin Conservation District, Kittitas County, Mid-Columbia Fisheries Enhancement Group, National Marine Fisheries Service, US Bureau of Reclamation, US Geological Survey, US Fish and Wildlife Service, USDA Forest Service, Washington Department of Fish and Wildlife, Washington Department of Ecology, Washington Recreation and Conservation Office, Yakama Nation Fisheries, Yakima Basin Fish and Wildlife Recovery Board, and Yakima County.



**Mark B. Lambert**
**Acting Assistant Director**
**Resource Planning and Monitoring**

**U.S. Forest Service**
**Pacific Northwest Region**

mobile: (b) (6)
mark.b.lambert@usda.gov

www.fs.fed.us

**Caring for the land and serving people**

28

04035-00368

| | |
|---|---|
| **From:** | Gaugush, Samuel - FS |
| **To:** | Lyte, Latasha -FS; Stadelman, Steven - FS; Neely, David -FS; Smalls, James -FS |
| **Subject:** | RE: NEPA CE Options |
| **Date:** | Friday, April 30, 2021 2:48:24 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Okay, Dave, I made the additional edits we discussed.

**From:** Gaugush, Samuel - FS

**Sent:** Friday, April 30, 2021 1:43 PM

**To:** Lyte, Latasha -FS <latasha.lyte@usda.gov>; Stadelman, Steven - FS <steven.stadelman@usda.gov>; Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>

**Subject:** RE: NEPA CE Options

I made some edits in track changes. Dave – I'll ping you to discuss these along with another matter once your light is green.

**From:** Lyte, Latasha -FS <latasha.lyte@usda.gov>

**Sent:** Friday, April 30, 2021 11:34 AM

**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>; Neely, David -FS <david.neely2@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>

**Subject:** RE: NEPA CE Options

I agree with Steve.



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**C:** (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

FRN Tracking Spreadsheet

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>

**Sent:** Friday, April 30, 2021 11:19 AM

**To:** Neely, David -FS <david.neely2@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>

**Subject:** RE: NEPA CE Options

I like that one David.

Oh and the edits look great too  Thank you.

S

**Steve Stadelman, CF**

04035-00374



**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

p: 202-205-1521
c: <span style="color:red">(b) (6)</span> ███
steven.stadelman@usda.gov

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us



**Caring for the land and serving people**

---

**From:** Neely, David -FS <david.neely2@usda.gov>
**Sent:** Friday, April 30, 2021 11:01 AM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** RE: NEPA CE Options

Check out my attempt. 2nd page.

Feels like a conversation is warranted. I've got to run an errand till about 1200 but back after that.

Tho it's a beautiful day outside in DC/Maryland/VA so let's remember that!



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

c: <span style="color:red">(b) (6)</span> ███
david.neely2@usda.gov

201 14th St. SW - 2 Central
Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Friday, April 30, 2021 7:00 AM
**To:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** RE: NEPA CE Options

Looks good Sam. I think #1 is too restrictive and #2 is to permissive. I added a different way to phrase it with different permissions - just for consideration. S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

p: 202-205-1521

04035-00375



**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Sent:** Wednesday, April 28, 2021 12:32 PM
**To:** Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Stadelman, Steven - FS <steven.stadelman@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** NEPA CE Options

All – I drafted the options we discussed yesterday in Box here:

https://usfs.box.com/s/q6isqmy6ax1jnddh3wuemmmd0mlve44l (Box\NEPA_Program Support\36 CFR 220\36 CFR 220 Revision (2018-2020)\Implementation)

Rather than trading emails, please save your edits in track changes in Box. I'm in TIWWA training the rest of the day but can look at this again at 4:00 or tomorrow. I feel like it still needs some additional context to back up the options. I'm also not sure if we landed on 1 or 2. Maybe another meeting would be worthwhile once everyone has taken a look.



**Sam Gaugush**
**National Environmental Policy Act Specialist**

**Forest Service**
**Ecosystem Management Coordination Staff**

**p:** (b) (6)
**sam_____h@usda.gov**

1400 Independence Ave SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

31

04035-00376

| From: | Lyte, Latasha -FS |
|---|---|
| To: | Stadelman, Steven - FS; Neely, David -FS; Gaugush, Samuel - FS; Smalls, James -FS |
| Subject: | RE: NEPA CE Options |
| Date: | Friday, April 30, 2021 11:34:23 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

I agree with Steve.

 **Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**C:** (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

FRN Tracking Spreadsheet

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Friday, April 30, 2021 11:19 AM
**To:** Neely, David -FS <david.neely2@usda.gov>; Gaugush, Samuel - FS <samuel.gaugush@usda.gov>;
Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** RE: NEPA CE Options
I like that one David.
Oh and the edits look great too  Thank you.
S

 **Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

**From:** Neely, David -FS <david.neely2@usda.gov>
**Sent:** Friday, April 30, 2021 11:01 AM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>; Gaugush, Samuel - FS
<samuel.gaugush@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS
<latasha.lyte@usda.gov>

04035-00377

**Subject:** RE: NEPA CE Options

Check out my attempt. 2nd page.

Feels like a conversation is warranted. I've got to run an errand till about 1200 but back after that.

Tho it's a beautiful day outside in DC/Maryland/VA so let's remember that!



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

c: (b) (6)
david.neely2@usda.gov

201 14th St. SW - 2 Central
Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Friday, April 30, 2021 7:00 AM
**To:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Neely, David -FS <david.neely2@usda.gov>;
Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** RE: NEPA CE Options

Looks good Sam. I think #1 is too restrictive and #2 is to permissive. I added a different way to
phrase it with different permissions - just for consideration. S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

p: 202-205-1521
c: (b) (6)
steven.stadelman@usda.gov

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Sent:** Wednesday, April 28, 2021 12:32 PM
**To:** Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>;
Stadelman, Steven - FS <steven.stadelman@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** NEPA CE Options

All – I drafted the options we discussed yesterday in Box here:

https://usfs.box.com/s/q6isqmy6ax1jnddh3wuemmmd0mlve44l (Box\NEPA_Program Support\36
CFR 220\36 CFR 220 Revision (2018-2020)\Implementation)

Rather than trading emails, please save your edits in track changes in Box. I'm in TIWWA training the

04035-00378

rest of the day but can look at this again at 4:00 or tomorrow. I feel like it still needs some additional context to back up the options. I'm also not sure if we landed on 1 or 2. Maybe another meeting would be worthwhile once everyone has taken a look.



**Sam Gaugush**
**National Environmental Policy Act Specialist**

**Forest Service**
**Ecosystem Management Coordination Staff**

p: (b) (6)
sam       h@usda.gov

1400 Independence Ave SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

34

04035-00379

**From:**      Stadelman, Steven - FS
**To:**        Neely, David -FS; Gaugush, Samuel - FS; Smalls, James -FS; Lyte, Latasha -FS
**Subject:**   RE: NEPA CE Options
**Date:**      Friday, April 30, 2021 11:19:27 AM
**Attachments:**   image001.png
               image002.png
               image003.png
               image004.png

I like that one David.

Oh and the edits look great too  Thank you.

S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
**www.fs.fed.us**

**Caring for the land and serving people**

**From:** Neely, David -FS <david.neely2@usda.gov>
**Sent:** Friday, April 30, 2021 11:01 AM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>; Gaugush, Samuel - FS
<samuel.gaugush@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS
<latasha.lyte@usda.gov>
**Subject:** RE: NEPA CE Options

Check out my attempt. 2nd page.

Feels like a conversation is warranted. I've got to run an errand till about 1200 but back after that.

Tho it's a beautiful day outside in DC/Maryland/VA so let's remember that!



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

**c:** (b) (6)
**david.neely2@usda.gov**

201 14th St. SW - 2 Central
Washington, DC 20024
**www.fs.fed.us**

**Caring for the land and serving people**

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Friday, April 30, 2021 7:00 AM

35                                                         04035-00380

**To:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>; Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>

**Subject:** RE: NEPA CE Options

Looks good Sam. I think #1 is too restrictive and #2 is to permissive. I added a different way to phrase it with different permissions - just for consideration. S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c: (b) (6)**
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Sent:** Wednesday, April 28, 2021 12:32 PM
**To:** Neely, David -FS <david.neely2@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>; Stadelman, Steven - FS <steven.stadelman@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** NEPA CE Options

All – I drafted the options we discussed yesterday in Box here:

https://usfs.box.com/s/q6isqmy6ax1jnddh3wuemmmd0mlve44l (Box\NEPA_Program Support\36 CFR 220\36 CFR 220 Revision (2018-2020)\Implementation)

Rather than trading emails, please save your edits in track changes in Box. I'm in TIWWA training the rest of the day but can look at this again at 4:00 or tomorrow. I feel like it still needs some additional context to back up the options. I'm also not sure if we landed on 1 or 2. Maybe another meeting would be worthwhile once everyone has taken a look.



**Sam Gaugush**
**National Environmental Policy Act Specialist**
**Forest Service**
**Ecosystem Management Coordination Staff**
**p: (b) (6)**
**sam          h@usda.gov**

1400 Independence Ave SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

36

04035-00381

| | |
|---|---|
| **From:** | Neely, David -FS |
| **To:** | Schaefers, Julie -FS; Sloan, Jenna - FS; Sidon, Joshua - FS; Haskins, Wendy -FS; Ruyle, Jennifer -FS; Moyer, Christopher - FS; Olson, Alan -FS; Shahani, Priya -FS; Riber, Julia -FS; Goldstein, Michael -FS; Madson, Stephanie - FS; Moody, Kevin - FS; Windsor, Michele -FS |
| **Cc:** | Alexander, Mara - FS; Allen, Anastasia -FS; Anderes, Stefan - FS; Barbour, Jamie - FS; Brownson, Katherine - FS; Eichman, Henry -FS; Erickson, Mary -FS; Dillon, Madelyn - FS; Hall, Sarah - FS; Meeks, Joshua - FS; Silvas, Daniel -FS; Burson, Dawnee -FS; Fox, Amy -FS; Little, Tera -FS; Suing, Judy -FS; Welsh, Pichi -FS; Zmek, Carol - FS; Adamson, Joseph - FS; Andrews, Carla - FS; Bedell-Loucks, Andrea- FS; Deloney, Floyd -FS; Diprofio, Nicholas - FS; Doyle-capitman, Catherine - FS; Ebbers, Anne - FS; Hammett, Janae - FS; Helwig, Jennifer -FS; Kinder, Bradley -FS; Kramer, Jonathan - FS; Lyte, Latasha -FS; Mcgee, Deidra -FS; Mcglothlin, Deborah -FS; Merica, Crystal -FS; Milos, Christina - FS; Napier, Jasmine -FS; Rupe, John -FS; Smalls, James -FS; Stadelman, Steven - FS; Sutton, Jody- FS; Tamez, Michelle - FS; Timko, Sharon - FS; Welsh, Pichi -FS; Zirngibl, Wendy -FS; Gaugush, Samuel - FS; Hayward, Greg- FS; Marsolais, Jennifer - FS; Mcglothlin, Deborah -FS; Miller, Chris- FS; Ng, Kawa - FS; O"Brien, Shannon- FS; Pence, Sitka - FS; Purvine, Jennifer -FS; Rust, Stephani -FS; Tu, Kenneth - FS; Underwood, Cindy -FS; Wiener, Sarah - FS |
| **Subject:** | Use of new CEs and DNA |
| **Date:** | Monday, May 24, 2021 9:56:13 AM |
| **Attachments:** | 20210521Use of Categorical Exclusions and Determination of National Environmental Policy Act _NEPA Adequacy Informal Letter 1 Signature (eSign).pdf
image001.png
image002.png
image003.png
image004.png |

Hello RPDs and EMC!
Attached is a letter from Tina Terrell to Regional Foresters that went out this morning providing updated information on the use of categorical exclusions and determination of NEPA adequacy in our NEPA regulations.

I think you'll find it pretty straightforward - in essence, we are only requesting units continue to engage with the Regions and WO EMC staff when proposing to use: CE (e)(3) for special uses that require greater than 5 acres, use of CE (e)(24) for road construction, use of the restoration CE (e)(25), or use of DNA (220.4(j)).  Unless there is some unusual circumstance we don't need to engage on use of the other authorities in the 36 CFR 220 regs.  For those authorities we still want to discuss please engage with us during initial proposal development and prior to scoping.

If anyone has questions please reach out to me, Mary, Jim, or folks on the EMC NEPA staff.

Take care!



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

c: (b) (6)
david.neely2@usda.gov

201 14th St. SW - 2 Central
Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

37

04035-00382



**Forest Service**          Washington Office          1400 Independence Avenue, SW
Washington, D.C. 20250

---

**File Code:**   1950                                **Date:**   May 21, 2021
**Route To:**

   **Subject:**   Use of Categorical Exclusions and Determination of National Environmental
                  Policy Act (NEPA) Adequacy

   **To:**        Regional Foresters

In November 2020, the Forest Service finalized updates to National Environmental Policy Act
(NEPA) implementing regulations at 36 CFR 220.  This included nine new or amended
categorical exclusions (CEs) and a process for a Determination of NEPA Adequacy (DNA).

To date, we have requested that responsible officials engage with Regional and Washington
Office NEPA staff when considering use of these new or amended authorities as part of an
intentionally deliberative approach.

To provide additional clarity while continuing to support shared learning, responsible officials
should proceed with implementing the following authorities without needing further engagement
with the Washington Office.  You should continue to follow normal Regional communication
practices related to NEPA projects and decision-making.

- Proceed with use of CE (d)(11), (d)(12), and (e)(20) through (e)(23).
- Proceed with use of CE (e)(3) for special uses that require less than 5 acres.
- Proceed with use of CE (e)(24) for realignment up to 2 miles of existing National Forest
  System roads and associated parking areas.

For proposed use of CE (e)(3) for special uses that require greater than 5 acres, use of CE (e)(24)
for road construction, use of CE (e)(25), or DNA (220.4(j)), engage with Regional and
Washington Office NEPA staff during initial proposal development prior to scoping.

Sound development of the purpose and need for action is of fundamental importance for all
proposed actions under NEPA.  This is true whether the action is within a category that may be
excluded from documentation in Environmental Assessment or Environmental Impact Statement,
or whether the potential for significant effects warrants those more comprehensive analyses.
When using a CE to comply with NEPA, the responsible official must ensure the proposed action
is within one or more of the Agency's CEs, evaluate the proposed action for extraordinary
circumstance as outlined at 36 CFR 220.6(b), and make findings required by other laws such as
consistency with the land management plan.





Regional Foresters                                                                                           2

Our shared expectation is that responsible officials are rigorous and thorough in ensuring that actions are analyzed in the NEPA process based on objective, science-informed considerations with appropriate public involvement.

Thank you for your ongoing efforts in responsible stewardship of our National Forests and Grasslands.  If you have questions, please contact Mary Erickson, Acting Director, Ecosystem Management Coordination, at mary.erickson@usda.gov.

X _____

Signed by: TINA TERRELL
TINA J. TERRELL
Acting Deputy Chief, National Forest System


Cc: Mary Erickson

39                                                                                04035-00384

| | |
|---|---|
| **From:** | <u>Stadelman, Steven - FS</u> |
| **To:** | <u>Dixon, Sue- FS</u> |
| **Cc:** | <u>Goldstein, Michael -FS</u>; <u>Wadsworth, Elizabeth - FS</u> |
| **Subject:** | RE: Use of new CEs and DNA |
| **Date:** | Thursday, June 3, 2021 4:13:00 PM |
| **Attachments:** | <u>image001.png</u> |
| | <u>image002.png</u> |
| | <u>image003.png</u> |
| | <u>image004.png</u> |

Good question Sue.  We are taking a very cautious approach to **(b) (5) Atty. Client Communication** ███████████████████.  Let's talk this one over.  S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c: (b) (6)** █████
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

**From:** Dixon, Sue- FS <Susan.Dixon@usda.gov>
**Sent:** Thursday, June 3, 2021 2:11 PM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Cc:** Goldstein, Michael -FS <michael.goldstein@usda.gov>; Wadsworth, Elizabeth - FS <elizabeth.wadsworth@usda.gov>
**Subject:** FW: Use of new CEs and DNA

Hi Steve – can you let me know what the clearance process for use of a DNA would look like from the WO's perspective. We have one proposal where it may make sense to use a DNA. Another option for the project could be the use of category (e)(25). Is one approach –  CE or DNA - more likely meet WO clearance criteria than the other?  Thank you for any insights.   Sue



**Susan Dixon**
**Regional Environmental Coordinator**

**Forest Service**
**Pacific Northwest Region**

**p: 503-808-2276**
Susan.Dixon**@usda.gov**

1220 SW 3rd Avenue
Portland, OR 97204
www.fs.fed.us

04035-00412

**Caring for the land and serving people**

---

**From:** Riber, Julia -FS <julia.riber@usda.gov>
**Sent:** Monday, May 24, 2021 5:06 PM
**To:** FS-pdl R6 RO RFO rlt <pdl_r6_rf_rlt@usda.gov>; FS-pdl R6 NFS district rangers
<pdl_r6_district_rangers@usda.gov>; FS-pdl R6 RO RPM environmental coordinators
<pdl_r6_environmental_coordinators@usda.gov>
**Cc:** Dixon, Sue- FS <Susan.Dixon@usda.gov>; Goldstein, Michael -FS <michael.goldstein@usda.gov>
**Subject:** Use of new CEs and DNA

Hello Forest Supervisors, RO Directors, Rangers, and Environmental Coordinators.
Attached is a letter from Acting Deputy Chief, Tina Terrell to Regional Foresters that went out this
morning providing updated information on the use of categorical exclusions and determination of
NEPA adequacy in our NEPA regulations.

I think you'll find it pretty straightforward - in essence, the Deputy Chief is requesting units continue
to engage with the Regions and WO when proposing to use:

- CE (e)(3) for special uses that require **greater than 5 acres**,
- CE (e)(24) for road **construction**,
- CE (e)(25) the **restoration CE**
- or use of Determination of NEPA Adequacy **(DNA)** (220.4(j)).

1. If you have a project where you'd like to use one of the 3 CEs as described in the letter or the
   DNA provision, RO and WO review is required **during proposal development and prior to
   scoping**. The good news is unless there is some unusual circumstance, the WO doesn't need
   to engage on use of the other authorities in the 36 CFR 220 regs. More direction will be
   forthcoming on how to submit for Regional and WO review. In the meantime notify Regional
   Environmental Coordinator, Sue Dixon if you anticipate proposing or are working on a project
   that meets the review criteria. Forest Supervisors, please contact me, Glenn, Lisa, or Debbie if
   you have concerns/questions/suggestions on this letter or the review process.



**Julia Riber**
**Director, Resource Planning & Monitoring**

**Forest Service**
**Regional Office, Pacific Northwest**

p: 503-808-2266
c: (b) (6)
julia.riber@usda.gov

1220 Southwest 3rd Avenue
Portland, OR 97204
www.fs.fed.us

**Caring for the land and serving people**

41

04035-00413

| | |
|---|---|
| **From:** | Medlin, Stephanie -FS |
| **To:** | Felton, Andrea - FS |
| **Cc:** | Madson, Stephanie - FS; Lyte, Latasha -FS |
| **Subject:** | RE: Curt Pond Wooded Grassland Restoration Project |
| **Date:** | Thursday, June 24, 2021 11:14:27 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Good Morning Andrea,

I had a discussion Tuesday at the Region, Wednesday and Thursday with WO regarding this project. At this time due to current litigation and consistency across the region, it is in the best interest to do a focused EA.

Also, as you move forward with the project, my recommendation is to clarify the following statements in your proposed action:

Temporary road construction (if any) would not exceed 2.5 miles and would be decommissioned in less than 3 years after the date "the project" is completed. "The project" being any timber sale activities that require a temporary road, as once the desired condition is established, it would be maintained indefinitely.



**Stephanie Medlin**
**Regional Environmental Coordinator**
**Forest Service**
**Southern Region**

p: 423-476-9740
c: (b) (6)
stephanie.medlin@usda.gov

2800 N. Ocoee Street
Cleveland, TN 37312
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Felton, Andrea - FS <andrea.felton@usda.gov>
**Sent:** Wednesday, June 23, 2021 3:47 PM
**To:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Cc:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>
**Subject:** FW: Curt Pond Wooded Grassland Restoration Project

Hi, Stephanie,

I'm just following up on this to see if you've had a chance to review yet?

---

42                                                                04035-00431

**From:** Felton, Andrea - FS <andrea.felton@usda.gov>
**Sent:** Wednesday, June 16, 2021 3:02 PM
**To:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Cc:** Hull, John -FS <john.hull@usda.gov>; Metzmeier, Frank -FS <frank.metzmeier@usda.gov>;
Felton, Andrea - FS <andrea.felton@usda.gov>
**Subject:** FW: Curt Pond Wooded Grassland Restoration Project

Good afternoon, Stephanie,

Per the guidance in the letter from the WO concerning the use of the new CE categories, we are
sending you a new project on the Stearns Ranger District. They would like to use e(25) and have
provided rationale in the trailing emails below.  In speaking with them, I agree that e(25) would be
the perfect category.

John Hull (District Silv) and Joe Metzmeier (District Biologist) have teamed up develop this project.
They have attached the scoping letter (pdf and Word) and risk assessments for the proposed
herbicides.

This project was developed with the collaboration of Kentucky Heartwood, the Office of Kentucky
Natural Resources, TNC, the Fire Learning Network, and some others—some requests going back
decades for special status plant species projects in this area. It came up most recently through the
Greenwood Project collaboration, and this proposal is in response to that collaboration.  However,
this proposal nor the area were analyzed under the Greenwood EA, so new NEPA is needed.

Joe Metzmeier has created a Pinyon folder for this project.  Would you prefer access to his pinyon
folder, or simply work with the documents attached here? He is going to make me a co-author, so I
can give you access if you wish, or if you think the WO would want access.

Let me know if you need anything else as yet.  We are just at the project development/ scoping
stage now.   If you would rather us draft a DM before you elevate this to the WO. We just didn't
want to scope it under this category until we got buy-in from you and the WO.

Thanks for your help with this.
Andrea

P.S. see emails below for more background.

---

**From:** Hull, John -FS <john.hull@usda.gov>
**Sent:** Friday, June 11, 2021 3:50 PM
**To:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>; Felton, Andrea - FS
<andrea.felton@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

For the risk assessments the plan is to incorporate the SERA risk assessments by reference since they
cover pretty much all application methods allowable by the label. As of the 2016 risk assessment

04035-00432

handbook update, there's no longer a requirement to do project level risk assessments.

There is no pinyon folder for this project that I'm aware of.

Also, I reference the wrong CE. I've corrected that in the attached version. It's 36 CFR 220.6(e)(25) not 36 CFR 220.6(e)(20). I also attached a word version of the text that I meant to earlier. Sorry about that.

<u>Regarding rationale:</u>

The category states:

(25) Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience. Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres.

(i) Activities to meet restoration and resilience objectives may include, but are not limited to:

(A) Stream restoration, aquatic organism passage rehabilitation, or erosion control;

(B) Invasive species control and reestablishment of native species;

(C) Prescribed burning;

(D) Reforestation;

(E) Road and/or trail decommissioning (system and non-system);

(F) Pruning;

(G) Vegetation thinning; and

(H) Timber harvesting.

(ii) The following requirements or limitations apply to this category:

(A) Projects shall be developed or refined through a collaborative process that includes multiple interested persons representing diverse interests;

(B) Vegetation thinning or timber harvesting activities shall be designed to achieve ecological restoration objectives, but shall not include salvage harvesting as defined in Agency policy; and

(C) Construction and reconstruction of permanent roads is limited to 0.5 miles. Construction of temporary roads is limited to 2.5 miles, and all temporary roads shall be decommissioned no later than 3 years after the date the project is completed. Projects may include repair and maintenance of NFS roads and trails to prevent or address resource impacts; repair and maintenance of NFS roads and trails is not subject to the above mileage limits.

<u>How the project fits the category</u>: the project is designed to restore a very specific type of habitat desired by the plant species mentioned in the purpose and need. Examining the

04035-00433

category, we believe this project to be a forest management activity with a primary purpose of meeting restoration objectives. Activities will not exceed 2,800 acres. This project was developed and refined through a collaborative process that included multiple interested persons representing a variety of interests. Any vegetation thinning or timber harvesting activities associated with the project would be designed to achieve ecological restoration objectives. No salvage harvesting would occur under this project. No permanent roads would be constructed. Temporary road construction (if any) would not exceed 2.5 miles and would be decommissioned in less than 3 years after the date "the project" is completed. "The project" being any timber sale activities that require a temporary road, as once the desired condition is established, it would be maintained indefinitely.

If we need more rational just let me know and I'll write something up next week.

Thanks,



**John Hull**
**District Silviculturist**

**Forest Service**
**Daniel Boone National Forest**
**Stearns Ranger District**

**p: 606-376-5323 x105**
**f: 606-376-3734**
**john.hull@usda.gov**

3320 Highway 27 North
Whitley City, KY 42653
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>
**Sent:** Friday, June 11, 2021 2:42 PM
**To:** Felton, Andrea - FS <andrea.felton@usda.gov>; Hull, John -FS <john.hull@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

I have some emails coordinating field trips with cooperators (OKNP, KH, TNC) but no real exchange of information.

There will be a BA/BE. I recently got the official  species from FWS this week for the project. I'm going to go ahead and start working on it.

Melisa is working on the heritage. Because of the size of the project, she figured it would be best to just do it all. (Its really not that big)

Not sure if we have a risk assessment for Imazapyr. Other forest use this chemical so I'm sure one exists.

45

04035-00434

This project largely gained momentum from the Greenwood IRMS.  KH and OKNP commented throughout the project to do something for rare plants and to do it there. The area was identified in the 1988 CO-OP inventory as a unique area p.85 and a prairie remainiant



**Joe Metzmeier**
**Wildlife Biologist**

**Forest Service**
**Daniel Boone National**
**Forest, Stearns Ranger**
**District**

**p: 606-376-5323 x106**
**f: 606-376-3734**
**frank.metzmeier@usda.gov**

3320 Hwy 27 N
Whitley City, KY 42633
www.fs.fed.us

**Caring for the land and**
**serving people**

---

**From:** Felton, Andrea - FS <andrea.felton@usda.gov>
**Sent:** Friday, June 11, 2021 1:27 PM
**To:** Hull, John -FS <john.hull@usda.gov>
**Cc:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

I'm sorry—I missed that.  I was struggling with reviewing it as a pdf.  (I'm a die-hard fan of track changes).

I can forward the final draft to Stephanie Medlin for her opinion.  I think she might want to see the risk assessments of the three herbicides you're planning to use.  She and/or the WO may also like to see anything that you and Joe might have regarding documentation with USFWS, TNC, OKNP, KH. Will there be a BA/BE? If so, state that. Plus any arch that has been done, or deferred till later. If you are counting on the programmatic deferred arch PA, I would attach that with an email from Melissa stating that fact.

Basically just think about what's in your project record and consider what to put in the "package" to the RO/WO. Ie, rationale for the purpose and need, and rationale for the CE category you are choosing.

Hope this helped. I'm happy to help you put that "package" together. Just give me the link to the pinyon folder, and we can work on it together, no problem.

---

**From:** Hull, John -FS <john.hull@usda.gov>

46

04035-00435

**Sent:** Friday, June 11, 2021 12:46 PM
**To:** Felton, Andrea - FS <andrea.felton@usda.gov>; Metzmeier, Frank -FS
<frank.metzmeier@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

Hey Andrea,

Good deal. I added the category on the one I sent a little while ago, 36 CFR 220(e)(20). It's

mentioned on the 3rd page. Yes, we would like to send it on up for review to see if we can move
forward with that category. Other than the scoping document and the information contained
therein, is there any other additional information we need to provide for the RO review?

Thanks,



**John Hull**
**District Silviculturist**

**Forest Service**
**Daniel Boone National Forest**
**Stearns Ranger District**

**p: 606-376-5323 x105**
**f: 606-376-3734**
**john.hull@usda.gov**

3320 Highway 27 North
Whitley City, KY 42653
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Felton, Andrea - FS <andrea.felton@usda.gov>
**Sent:** Friday, June 11, 2021 12:28 PM
**To:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>
**Cc:** Hull, John -FS <john.hull@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

Joe,

Here are my edits.  I made them on the document that John sent.  But because it's a pdf, the edits
aren't showing up. I made a few minor changes, and put others in red font.  One of those items in
red is the Covid statement.  Is your office open all the time now?  If not, go ahead and leave the
covid statement in there (about hand deliveries).  If so, then you'll need to remove that sentence
and provide the office hours instead.

Also, just some food for thought, you may want to state which CE category you intend to use.  I can
understand why you haven't put that in there, but I would bet that it will come up in scoping

**47**

04035-00436

comments. The folks interested in this project are familiar with our CEs and may question it. And if you are planning to use the new category, we will have to send this up through the RO and WO, and they are going to want to know which category you're using.

Anyway, the rest of it looks great.

---

**From:** Hull, John -FS <john.hull@usda.gov>
**Sent:** Friday, June 11, 2021 11:39 AM
**To:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>; Felton, Andrea - FS <andrea.felton@usda.gov>
**Subject:** RE: Curt Pond Wooded Grassland Restoration Project

Here it is with those updates and a word version where I was able to remove the highlight.



**John Hull**
**District Silviculturist**

**Forest Service**
**Daniel Boone National Forest**
**Stearns Ranger District**

**p: 606-376-5323 x105**
**f: 606-376-3734**
**john.hull@usda.gov**

3320 Highway 27 North
Whitley City, KY 42653
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Metzmeier, Frank -FS <frank.metzmeier@usda.gov>
**Sent:** Thursday, June 3, 2021 3:30 PM
**To:** Felton, Andrea - FS <andrea.felton@usda.gov>; Hull, John -FS <john.hull@usda.gov>
**Subject:** Curt Pond Wooded Grassland Restoration Project

Folks,
Here is the scoping for this project. I tried to address most of the comments from the first draft. Let me know your thoughts.   I know the reference to the FSH and category are not correct but I have no clue which one to choose. I'll need some help here.  Also, I turned the response date yellow and have no Blanking idea how to get it back.  Thanks for your help. Feel free to call me if needed for any discussion

Joe

**Joe Metzmeier**
**Wildlife Biologist**

04035-00437



**Forest Service**
**Daniel Boone National Forest, Stearns Ranger District**

**p: 606-376-5323 x106**
**f: 606-376-3734**
frank.metzmeier@usda.gov

3320 Hwy 27 N
Whitley City, KY 42633
www.fs.fed.us



**Caring for the land and serving people**

49

04035-00438

| | |
|---|---|
| **From:** | Schaefers, Julie -FS |
| **To:** | Neely, David -FS; Smalls, James -FS |
| **Subject:** | RE: Possibility of Using CE #25 for Restoration and Resilience Project on BDNF |
| **Date:** | Wednesday, November 24, 2021 10:22:31 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

I'll work on an invite – is there anyone else from EMC I should include?



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

**p: 406-329-3453**
**c: (b) (6)** (telework number)
**julie.schaefers@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Neely, David -FS <david.neely2@usda.gov>

**Sent:** Tuesday, November 23, 2021 2:46 PM

**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>; Smalls, James -FS <james.smalls@usda.gov>

**Subject:** RE: Possibility of Using CE #25 for Restoration and Resilience Project on BDNF

Hi - would be good to have a call to talk it through. Perhaps next week sometime?



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

**c: (b) (6)**
**david.neely2@usda.gov**

201 14th St. SW - 2 Central
Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Schaefers, Julie -FS <julie.schaefers@usda.gov>

**Sent:** Tuesday, November 23, 2021 1:22 PM

**To:** Smalls, James -FS <james.smalls@usda.gov>; Neely, David -FS <david.neely2@usda.gov>

**Subject:** FW: Possibility of Using CE #25 for Restoration and Resilience Project on BDNF

Sending this to both of you in case you are out this week …

See below – we have a unit that would like to use the Cat 25 for a project.

1 – we were wondering the process to gain approval

2- clarification on 'no commercial element' to be associated with this category. This project has very

04035-00533

little product of value – but they still want the mill to pick up as much material as they can to meet the fuel reduction needs. so using the mill as a tool to get work done – but the mill is not driving the purpose and need for this project.

Any information would be appreciated.

If easier – happy to set up a call with us and you to discuss the project specifics.

Thanks – and Happy Thanksgiving!



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

p: 406-329-3453
c: (b) (6)    (telework number)
julie.schaefers@usda.gov

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Mullowney, Megan -FS <megan.mullowney@usda.gov>
**Sent:** Tuesday, November 16, 2021 1:00 PM
**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Cc:** Lahey, Timothy -FS <timothy.lahey@usda.gov>; Dunn, Alex- FS <Alexander.Dunn@usda.gov>; Herrmann, Elizabeth - FS <elizabeth.herrmann@usda.gov>
**Subject:** Possibility of Using CE #25 for Restoration and Resilience Project on BDNF

Hi Julie,

We are considering undertaking a stand-alone, non-fire salvage project to address Doug fir beetle treatments on approx. 1,800 acres. My District Ranger and I are wondering what the process is to request approval to use the new CE category,

*(25) Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience. Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres. (i) Activities to meet restoration and resilience objectives may include, but are not limited to:*

> *(A) Stream restoration, aquatic organism passage rehabilitation, or erosion control;*
> *(B) Invasive species control and reestablishment of native species;*
> *(C) Prescribed burning;*
> *(D) Reforestation;*
> *(E) Road and/or trail decommissioning (system and non-system);*
> *(F) Pruning;*
> *(G) Vegetation thinning; and*
> *(H) Timber harvesting.*

Again, this would not be part of fire salvage efforts but rather a stand-alone project to address restoration and resilience objectives in areas adjacent to the Hay Stack and State Creek fire perimeters.

Any advice or guidance you can lend is much appreciated. I am cc'ing our EC, Alex Dunn, and Planning and Resources Staff, Betsy Herrmann, as we have been discussing the merits of use of that

51

04035-00534

category for the proposed activities/purpose and need we are considering.

Cheers,

Megan



**Megan Mullowney**
**North Zone NEPA Planner**

**Forest Service**
**Beaverhead-Deerlodge National Forest**
**Butte Ranger District**

P: (406) 494-0258
megan.mullowney@usda.gov

1820 Meadowlark Lane
Butte, MT 59701
www.fs.fed.us

**Caring for the land and serving people**

while the nerve-racking stress of the court and
breathe instead the pure air of freedom."
Excerpt from The Dialogue of the Exchequer,
circa 13th century England.

52

04035-00535

**From:** Schaefers_Jul e -FS
**To:** Sma ls_James -FS; Neely_Dav d -FS; Dunn_A ex- FS; Mu lowney_Megan -FS; Herrmann_Elizabeth - FS; Lahey_Timothy -FS
**Subject:** Use of Cat 25 on the Beaverhead-Deerlodge

Checking calendars this ½ hour appears open for most of us.

Discussion with he WO EMC and B-D about use of the new Cat 25 for a CE.

This project looks l ke a g eat use of this Ca egory - but need to make su e we are meeting the intent of 'no commercial' components.

Meghan – please prepare a briefing paper for this meeting w th the information about he project.

Send it to me and I w ll a tach to this n i e.

Thanks

_____

Microsoft Teams meeting

Join on your computer or mobile app

Cl ck here o join the meeting <ht ps //gccf02.safelinks.protection outlook.com/ap 1-5958 e83/?u 1=ht ps%3A%2F%2Fteams.microsoft.com%2Fl%2Fmeetup- o n%2F19%253ameet ng_OTc5OTI3ZThY2E3MC00NGEzL Tg2YjktNWQxMDc0NThkZGRk%25 0thread. 2%2F0%3Fcontex %3D%257b%2522Tid%2522%253a%2522ed5b36e7-01ee- ebc-867e-e03cfa0d 697%2522%252c%25220id%2522%253a%2522c 1dd78b-56 6- ae -adee-30e0896 51e0%2522%2257d&da a=0 %7C01%7C%7C8ed c20ea330 ec1f0f108d9af5f712d%7Ced5b36e701ee ebc867ee03cfa0d 697%7C0%7C0%7C6377336 672 661151%7CUnknown%7CTWFpbGZob3d8eyJWI o MC wLjAwMDAiLCJQIjoiV2luMzIiLCJBTi0ilk1haWwiLCJXVCI6Mn0%3D%7C3000&sda a=ozuN0l3kRxMNndlMQg fu0t%2F SkUuTEscsq jsOSc-YS8%3D&reser ed=0>

Or call in (audio only)

1 202 650-0123 2297591170 <tel 12026500123 2297591170> Uni ed States Washington DC

Phone Conference ID: <span style="background:red">███████</span>

F nd a local number <h tps //gccf02.safel nks.protection.ou look.com/?url=ht ps%3A%2F%2Fdialin. eams m crosoft com%2F51 6 f95-f77 - ee-8bbc-6dd 20ce7951%3F d%3D229759117&data=0 %7C01%7C%7C8ed c20ea330 ec1f0f108d9af5f712d%7Ced5b36e701ee ebc867ee03cfa0d 697%7C0%7C0%7C6377336 672 671111%7CUnknown%7CTWFpbGZob3d8eyJWI o MC wLjAwMDAiLCJQIjoiV2luMzIiLCJBT I6Ik1haWwiLCJXVCI6Mn0%3D%7C3000&sdata=d%2BSz9CyVce9kSVympyxxBq1VLTlzpGlz mZ1Aj9R%2Fig%3D&reser ed=0> | Reset PIN <ht ps //gccf02.safelinks.protection outlook.com/? url=ht ps%3A%2F%2Fmysc tings.lync com%2Fpstnconferenc ng&data=0 %7C01%7C%7C8ed c20ea330 ec1f0f108d9af5f712d%7Ced5b36e701ee ebc867ee03cfa0d 697%7C0%7C0%7C6377336 672 671111%7CUnknown%7CTWFpbGZob3d8eyJWI o MC wLjAwMDAiLCJQIjoiV2luMzIiLCJBT I6Ik1haWwiLCJXVCI6Mn0%3D%7C3000&sdata=H%2BFpL82G8J5OBl6stlngkHZCY5lnNOi1CZMexjoXeF3%3D&reser ed=0>

Learn Mo e <https //gccf02.safelinks.pro ec ion outlook.com ? url=ht ps%3A%2F%2Faka ms%2Fo nTeamsMeeting&data=0 %7C01%7C%7C8ed c20ea330 ec1f0f108d9af5f712d%7Ced5b36e701ee ebc867ee03cfa0d 697%7C0%7C0%7C6377336 672 681078%7CUnknown%7CTWFpbGZob3d8eyJWIjoiMC wLjAwMDA LCJQIjoiV2luMzIiLCJBTiI6Ik1haWw LCJXVCI6Mn0%3D%7C3000&sdata=tTJeQJ1WeNHpHVpbqL8KeYyB3IEKR2alLcs Rs DRgCE%3D&reser ed=0> | Mee ing op ions <https / gccf02.safelinks p otect on.outlook com/?url=https%3A%2F%2F eams microsoft com%2FmeetingOptions%2F%3Forganizerld%3Dc 1dd78b-56 6- ae -adee-30e0896 51e0%26tenantld%3Ded5b36e7 01ee- ebc-867e-e03cfa0d 697%26threadId%3D19 meeting_OTc5OTI3ZTI Y2E3MC00NGEzLTg2YjktNWQxMDc0NThkZGRk% 0thread. 2%26messageId%3D0%26language%3Den-USd&data=0 %7C01%7C%7C8ed c20ea330 ec1 0f108d9af5f712d%7Ced5b36e701ee ebc867ee03cfa0d 697%7C0%7C0%7C6377336 672 681078%7CUnknown%7CTWFpbGZob3d8eyJWIjoiMC wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWw LCJXVCI6Mn0%3D%7C3000&sdata=ABmJyi%2BalnYdp%2BPLlDmuCEUO3s38CZZT2J%2FTQu 1oLo%3D&reser ed=0>

_____

04035-00536

| | |
|---|---|
| **From:** | Lander, Bart -FS |
| **To:** | Gaugush, Samuel - FS |
| **Subject:** | RE: Add 30 minutes to our half-hour call on Friday? |
| **Date:** | Tuesday, December 7, 2021 4:55:11 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Much appreciated. I'm fine with a meeting with Jim, Dave, and Al. However, reading the draft of their decision memo, I see some more fundamental issues that I would like to run by you:

The unit did an EA and issued a decision for some fuels work a while back. Four acres in that decision have proven "very difficult" to implement under the existing EA decision. Furthermore, they recently decided to add 31 acres of fuels treatment immediately adjacent to those four acres. Instead of a SIR and possible supplementation, they are analyzing those 35 acres as a separate CE (using #25). That sounds like segmentation to me but would like your opinion.



**T. Barton "Bart" Lander, PhD**
**Regional Environmental Compliance Program Lead**

**Forest Service**
**Rocky Mountain Region**

**p: 303-908-7114**
**conference:** (b) (6)
**truman.lander@usda.gov**

1617 Cole Avenue, Bldg. 17
Lakewood, CO 80401*
*When social distancing: Bigfork, MT
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Sent:** Tuesday, December 7, 2021 2:30 PM
**To:** Lander, Bart -FS <truman.lander@usda.gov>
**Subject:** RE: Add 30 minutes to our half-hour call on Friday?

Hi Bart – That's fine. Though re: #2, if R2 wants to check the box for the WO consultation for this project I suggest scheduling a separate meeting that would include Jim/Dave and maybe Al. But fine to include in the agenda for Friday if it's something less than that.

---

**From:** Lander, Bart -FS <truman.lander@usda.gov>
**Sent:** Tuesday, December 7, 2021 4:24 PM
**To:** Gaugush, Samuel - FS <samuel.gaugush@usda.gov>
**Subject:** Add 30 minutes to our half-hour call on Friday?

Hi Sam,

04035-00544

A couple of more questions have come up.

1. Forest Service hires engineering consultant to do NEPA analysis for a gold exploration project which includes a "conflict of interest disclosure statement" (attached). Project proponent likes engineering consultant's work and wants to hire them to handle the permitting process for the same gold exploration project. Conflict of interest?
2. Proposed use of CE at 36 CFR 220.6(e)(25).

Would you be able to give us an extra half-hour on Friday?
Thanks.



**T. Barton "Bart" Lander, PhD**
**Regional Environmental Compliance Program Lead**

**Forest Service**
**Rocky Mountain Region**

**p: 303-908-7114**
**conference:** (b) (6)
**truman.lander@usda.gov**

1617 Cole Avenue, Bldg. 17
Lakewood, CO 80401*
*When social distancing: Bigfork, MT
www.fs.fed.us

**Caring for the land and serving people**

55

04035-00545

| | |
|---|---|
| **From:** | Neely, David -FS |
| **To:** | Schaefers, Julie -FS |
| **Subject:** | RE: DPG CE Project- Request for review for use of new CE category |
| **Date:** | Friday, January 7, 2022 8:46:00 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Yeppers. We support her choice here also.

And no apologies needed, either. I'm sure they can only deal with what they have in front of them at the time. Plus we created this ask!

(As an aside, if you do hear any grumbling as to why we're still doing it just whisper "the strategy seems to be working so far – we still have the CEs")

Take care!



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

c: (b) (6)
david.neely2@usda.gov

201 14th St. SW - 2 Central
Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Sent:** Thursday, January 6, 2022 5:20 PM
**To:** Neely, David -FS <david.neely2@usda.gov>
**Subject:** FW: DPG CE Project- Request for review for use of new CE category

Another project for your review looks pretty straightforward

and Kate says sorry we didn't bundle these



**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

p: 406-329-3453
c: (b) (6)        (telework number)
julie.schaefers@usda.gov

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Kenninger, Kate - FS <Kate.Kenninger@usda.gov>
**Sent:** Thursday, January 6, 2022 3:03 PM

04035-00560

**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>

**Cc:** Gaither, Aaron - FS <aaron.gaither@usda.gov>; Staton, Kurt -FS <kurt.staton@usda.gov>; Herrera, Macario -FS <macario.herrera@usda.gov>; South, Bennie - FS <bennie.south@usda.gov>

**Subject:** DPG CE Project- Request for review for use of new CE category

Hi Julie-

Another request from the DPG. Apologies we weren't able to send with the last request!

The DPG requests review of the following project for use of 36 CFR 220.6(e)(3), "Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands."

Dakota Valley Electric Cooperative proposes to replace overhead telephone lines with 3 contiguous buried telephone lines 5305 feet, 2634 feet, and 8729 feet across NFS lands within a 15 foot right-of-way, disturbing approximately 5.5 acres. The project on NFS land is part of a larger project area for Dakota Valley Electric. The proposal would amend an existing special use permit to Dakota Valley Electric Cooperate. An application has been received for this project and it is ready to scope to the public.

Scoping would take place in February 2022 (or earlier) and construction proposed to take place in the summer or fall of 2022 (if approved). No negative comments are expected.

Thank you, Kate



**Kate Kenninger**
**Environmental Coordinator**

**Forest Service**
**Dakota Prairie Grasslands**

**p: 701-989-7308**
**c: (b) (6)**
**kate.kenninger@usda.gov**

2000 Miriam Circle
Bismarck, ND 58501
www.fs.fed.us

**Caring for the land and serving people**

04035-00561

| | |
|---|---|
| **From:** | Lyte, Latasha -FS |
| **To:** | Olson, Alan -FS; Neely, David -FS; Smalls, James -FS |
| **Subject:** | FW: Projects Proposing to Utilize CE25 |
| **Date:** | Friday, January 21, 2022 10:52:16 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | LP_RoseValley_Photo_Map.pdf |
| | LosPadres_RoseValleyRestoration_R5_CE25_012022.docx |
| | Tahoe_BeaverDamAnalogs_LogStructure.pdf |
| | Tahoe_MeadowRestoration_R5_CE25_012022.docx |

Good morning,

Region 5 is requesting to use CE 25. Attached are project descriptions and maps from the **Los Padres National Forest** and **Tahoe National Forest** for review.

Please let me know if you have any questions.

Thank you.



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**C:** (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW
Washington, DC 20250
**www.fs.fed.us**

**Caring for the land and serving people**

FRN Tracking Spreadsheet

**From:** Marsolais, Jennifer - FS, VALLEJO, CA <jennifer.marsolais@usda.gov>

**Sent:** Thursday, January 20, 2022 12:09 PM

**To:** Lyte, Latasha -FS <latasha.lyte@usda.gov>

**Cc:** Hierholzer, Laura -FS <laura.hierholzer@usda.gov>

**Subject:** Projects Proposing to Utilize CE25

Hi Latasha,

We have two projects that we would like to put forward as good candidates to utilize CE25. Please see attached project descriptions and maps and graphics. Neither of these projects have gone out formally for public scoping. Each is being developed through external partnerships.

Please let me know if you have any questions. Thanks, Jennifer



**Jennifer Marsolais**
**Administrative Review Coordinator**

**Forest Service**
**Pacific Southwest Region**
**Ecosystem Planning**

**p:** (b) (6) (cell)
**jennifer.marsolais@usda.gov**

100 Forni Road
Placerville, CA 95667
**www.fs.fed.us**

58

**Caring for the land and serving people**

---

**From:** Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Sent:** Thursday, January 6, 2022 6:26 AM
**To:** Marsolais, Jennifer - FS <jennifer.marsolais@usda.gov>
**Subject:** RE: Coordinating on use of CE 25

Hi Jennifer,

Yes coordination is still needed with the WO. I will set up a call to discuss the projects with you.



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

C: (b) (6)
latasha.lyte@usda.gov

201 14th St, SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

FRN Tracking Spreadsheet

**From:** Marsolais, Jennifer - FS <jennifer.marsolais@usda.gov>
**Sent:** Wednesday, January 5, 2022 8:26 PM
**To:** Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** Coordinating on use of CE 25

Hi Latasha,

I am starting to get contacted by several forests to coordinate on the use of CE (e)(25) (consistent with the 5/21/21 letter). Are there particular project activities we should engage with the WO on, or should we be continuing to coordinate on any project considering the use of this category? In summary, I have two projects that are proposing stream or meadow restoration type of work.

**Rose Valley Creek Restoration Project – Los Padres National Forest**

- The project proposes to re-engineer the Rose Creek stream channel that was dammed and ponded over 50 years ago. The dams would be removed, and the stream would be re-engineered back to the natural stream course.
- Project purpose = Improve habitat for federally listed species, restore the natural channel and floodplain, reduce or eliminate aquatic invasive species, and improve native aquatic organism passage and habitat.
- Total Project area is 185 acres
- Low controversy. The public has raised concerns with loss of recreation opportunities (i.e., fishing the ponds, camping at CG) and concern for loss of water source for community wildfire protection. In regards to recreation opportunities, no existing campsites will be removed. Regarding community wildfire protection, this concern was noted but there are alternative sources of water that have been used and will continue to be used.

**Restoration of five meadows – Tahoe National Forest**

- Proposal is to construct beaver dam analogs (BDAs) of post-assisted log structures (PALS) in

59

04035-00568

incised channel segments in these meadows. Numerous structures would be built (using non-merchantable trees), spaced out as needed along the length of the incised channels in the meadow.

- The objective of the project is to raise the water table in the incised stream channels with the structures, reconnecting flows to the meadow floodplain and trapping sediment behind the structures, which will raise the stream channel bed elevation over time.
- Been working with partners to develop the proposal. Low controversy.

If we do need to engage with the WO on these projects, let me know the process and what additional background information may be needed. Thanks, Jennifer



**Jennifer Marsolais**
**Administrative Review Coordinator**

**Forest Service**
**Pacific Southwest Region**
**Ecosystem Planning**

p: (b) (6)         (cell)
jennifer.marsolais@usda.gov

100 Forni Road
Placerville, CA 95667
www.fs.fed.us

**Caring for the land and serving people**

60

04035-00569

| | |
|---|---|
| **From:** | Lyte, Latasha -FS |
| **To:** | Marsolais, Jennifer - FS, VALLEJO, CA |
| **Cc:** | Hierholzer, Laura -FS |
| **Subject:** | RE: Projects Proposing to Utilize CE25 |
| **Date:** | Friday, January 28, 2022 1:05:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Hi Jennifer,

Both projects may proceed with using CE25.

Thank you and have a wonderful weekend.



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**C:** (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

FRN Tracking Spreadsheet

---

**From:** Lyte, Latasha -FS
**Sent:** Thursday, January 20, 2022 3:52 PM
**To:** Marsolais, Jennifer - FS, VALLEJO, CA <jennifer.marsolais@usda.gov>
**Cc:** Hierholzer, Laura -FS <laura.hierholzer@usda.gov>
**Subject:** RE: Projects Proposing to Utilize CE25

Hi Jennifer,

Thank you, will do.



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**C:** (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW

04035-00615

Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

FRN Tracking Spreadsheet

---

**From:** Marsolais, Jennifer - FS, VALLEJO, CA <jennifer.marsolais@usda.gov>
**Sent:** Thursday, January 20, 2022 12:09 PM
**To:** Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Cc:** Hierholzer, Laura -FS <laura.hierholzer@usda.gov>
**Subject:** Projects Proposing to Utilize CE25

Hi Latasha,

We have two projects that we would like to put forward as good candidates to utilize CE25. Please see attached project descriptions and maps and graphics. Neither of these projects have gone out formally for public scoping. Each is being developed through external partnerships.

Please let me know if you have any questions. Thanks, Jennifer


**Jennifer Marsolais**
**Administrative Review Coordinator**

**Forest Service**
**Pacific Southwest Region**
**Ecosystem Planning**

p (b) (6)          (cell)
jennifer.marsolais@usda.gov
100 Forni Road
Placerville, CA 95667
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Sent:** Thursday, January 6, 2022 6:26 AM
**To:** Marsolais, Jennifer - FS <jennifer.marsolais@usda.gov>
**Subject:** RE: Coordinating on use of CE 25

Hi Jennifer,

Yes coordination is still needed with the WO. I will set up a call to discuss the projects with you.

04035-00616



**Latasha Lyte, MS, MBA**
**Environmental Protection Specialist**

**Forest Service**
**Ecosystem Management Coordination**

C: (b) (6)
**latasha.lyte@usda.gov**

201 14th St, SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

FRN Tracking Spreadsheet

**From:** Marsolais, Jennifer - FS <jennifer.marsolais@usda.gov>
**Sent:** Wednesday, January 5, 2022 8:26 PM
**To:** Lyte, Latasha -FS <latasha.lyte@usda.gov>
**Subject:** Coordinating on use of CE 25

Hi Latasha,

I am starting to get contacted by several forests to coordinate on the use of CE (e)(25) (consistent with the 5/21/21 letter). Are there particular project activities we should engage with the WO on, or should we be continuing to coordinate on any project considering the use of this category?  In summary, I have two projects that are proposing stream or meadow restoration type of work.

**Rose Valley Creek Restoration Project – Los Padres National Forest**
- The project proposes to re-engineer the Rose Creek stream channel that was dammed and ponded over 50 years ago. The dams would be removed, and the stream would be re-engineered back to the natural stream course.
- Project purpose = Improve habitat for federally listed species, restore the natural channel and floodplain, reduce or eliminate aquatic invasive species, and improve native aquatic organism passage and habitat.
- Total Project area is 185 acres
- Low controversy. The public has raised concerns with loss of recreation opportunities (i.e., fishing the ponds, camping at CG) and concern for loss of water source for community wildfire protection. In regards to recreation opportunities, no existing campsites will be removed. Regarding community wildfire protection, this concern was noted but there are alternative sources of water that have been used and will continue to be used.

**Restoration of five meadows – Tahoe National Forest**
- Proposal is to construct beaver dam analogs (BDAs) of post-assisted log structures (PALS) in incised channel segments in these meadows. Numerous structures would be built (using non-merchantable trees), spaced out as needed along the length of the incised channels in the meadow.
- The objective of the project is to raise the water table in the incised stream channels with the structures, reconnecting flows to the meadow floodplain and trapping sediment behind the

04035-00617

structures, which will raise the stream channel bed elevation over time.

- Been working with partners to develop the proposal. Low controversy.

If we do need to engage with the WO on these projects, let me know the process and what additional background information may be needed. Thanks, Jennifer



**Jennifer Marsolais**
**Administrative Review Coordinator**

**Forest Service**
**Pacific Southwest Region**
**Ecosystem Planning**

p **(b) (6)**      **(cell)**
**jennifer.marsolais@usda.gov**

100 Forni Road
Placerville, CA 95667
www.fs.fed.us

**Caring for the land and serving people**

64

04035-00618

| | |
|---|---|
| **From:** | Stadelman, Steven - FS |
| **To:** | Stadelman, Steven - FS |
| **Subject:** | CE25 for review / R6 |
| **Date:** | Friday, February 4, 2022 3:55:19 PM |
| **Attachments:** | Cathill Thin Project Description .docx |
| | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Steve - here is the project description for the Cathill Thin Project on the Rogue River Siskiyou NF which the Forest would like to cover using CE e25. They thought they had to reach out to me after scoping once they heard from the public. Apologies for the after-the-fact coordination.



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c: (b) (6)** █████
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

65

04035-00630

**Cathill Thin CE Use Request**

**Proposal Description**

The High Cascades Ranger District of the Rogue River Siskiyou National Forest is proposing the Cathill Thin project, which is designed to improve forest health on approximately 400 acres by thinning overstocked trees, reducing ladder fuels, performing prescribed fire, and removing off-site pine. These treatments will reduce the potential loss of stands in the event of a wildfire; and improve habitat conditions for some wildlife species.

The timber stands included in the Cathill Thin project are commercial size plantations that were established approximately 60 years ago. The plantations were wind rowed, burned, and subsequently planted with predominately Douglas-fir seedlings and some off-site ponderosa pine. White fire and other conifer species were also included in the planted species composition as part of an ongoing restoration effort of the Cathill wildfire that occurred in 1910 and burned approximately 12,000 acres.

Currently the plantations are considered overly dense with 200 or more trees per acre, with canopy cover exceeding 70 percent, and have limited diversity of size, age, and structure. Natural regeneration has also occurred adding to the density of the planted trees. These stands are considered at risk to various forest pathogens and high severity wildfire. The mixed conifer plantations have dense canopy cover that has shaded out most of the understory brush and conifer species.

The plantations will be reduced to approximately 40 percent canopy cover with a thin from below treatment retaining the largest most vigorous trees of desired species at variable densities. Previously, the stands were treated via prescription clear-cut about 60 years ago

This project involves the Oregon Department of Forestry (ODF) and the Forest Service working within the Good Neighbor Authority. Stands will be treated with emphasis on improving and restoring vegetation through commercial and non-commercial thinning, which will accelerate tree growth by removing intraspecific competition via ground-based harvest systems. This will limit future fire ignitions and improving the health of the retained trees left after thinning. To obtain these objectives, prescriptions will focus on removal of overstocked Douglas fir and complete removal of trees encroaching on desired healthy Douglas firs. There will be a complete removal of off-site pine, along with reduction of the mixed conifer to promote the long-term vigor of the Douglas fir. The removals would result in an approximate retention of 40% canopy cover and basal area retention of 100 to 120.

After timber treatment is complete, there will be an emphasis on prescribed burns in the area to treat fuels. In addition, there will be an intentional focus on removal of ladder fuels. Typical road maintenance would be utilized on system roads, such as blading, and brushing. Previous skid trails will be used to minimize the amount of new skid trails needed.

The High Cascades Ranger District will collaborate with partners such as SOFRC (Southern Oregon Forest Restoration Collaborative) on this project.

**CE Category:**

The Forest would like to consider this project under 36 CFR 220.6(e)(25) "Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience. Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres."

66                                                                                      04035-00631

**Timeline for Project:**

Scoping began on February 2nd, 2022 and will close on March 4th, 2022. We are not anticipating a high level of public concern. We are hoping to have a signed decision by the end of March early April. This is important for ODF to complete the work needed to offer sale in late July early August of 2023.

04035-00632

| | |
|---|---|
| **From:** | Schaefers, Julie -FS |
| **To:** | Neely, David -FS |
| **Subject:** | RE: Req. for approval of 6(e)(3) - Range Telephone fiber installation |
| **Date:** | Friday, April 8, 2022 12:10:43 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

**(b) (6)**

Thanks for the clearance … we will keep you posted if anything gets wacky

**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

**p: 406-329-3453**
**c: (b) (6)    (telework number)**
**julie.schaefers@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**



**From:** Neely, David -FS <david.neely2@usda.gov>

**Sent:** Friday, April 8, 2022 5:41 AM

**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>

**Subject:** RE: Req. for approval of 6(e)(3) - Range Telephone fiber installation

Hi –

We support the line officer's choice to use the category here, trusting that the section of new ROW doesn't go through anything complicating. As usual, we ask them to be considerate of anything that comes up through public engagement and have a discussion if needed.

**(b) (6)**



**Dave Neely**
**Deputy Director**
**Ecosystem Management Coordination**

**Forest Service**
**Washington Office**

**c: (b) (6)**
**david.neely2@usda.gov**

201 14th St. SW - 2 Central

04035-00775

Washington, DC 20024
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Sent:** Thursday, April 7, 2022 2:43 PM
**To:** Neely, David -FS <david.neely2@usda.gov>
**Subject:** FW: Req. for approval of 6(e)(3) - Range Telephone fiber installation

HEY – I haven't got to send you one of these in a while!

Hope all is well. Sunny and chilly here – rafting season is just around the corner.

Anyway – let us know thumbs up or down on this use of the new CE 6 (e)(3) … just over 5 acres.

Or let me know if you'd like more information

THANKS

**Julie Schaefers**
**Director of Ecosystem Assessment and Planning**

**Forest Service**
**Northern Region - Regional Office**

**p: 406-329-3453**
**c: (b) (6)** **(telework number)**
**julie.schaefers@usda.gov**

26 Fort Missoula Road
Missoula, MT 59804
www.fs.fed.us

**Caring for the land and serving people**



---

**From:** Mcclory, Adam -FS <adam.mcclory@usda.gov>
**Sent:** Thursday, April 7, 2022 12:38 PM
**To:** Schaefers, Julie -FS <julie.schaefers@usda.gov>
**Cc:** Puchlerz, Molly -FS <molly.puchlerz@usda.gov>; Smith, Brandon -FS
<brandon.c.smith@usda.gov>; Mcclory, Adam -FS <adam.mcclory@usda.gov>
**Subject:** Req. for approval of 6(e)(3) - Range Telephone fiber installation

Good afternoon,

Say, Molly informed me that we should continue to work with the RO when looking to use category 6(e)(3) when the requested use is over 5 acres. I'm getting back to things on this project and don't believe I've sent you this information already…

Range Telephone is requesting to bury fiber optic cable both in their existing authorized ROW as well as new sections of ROW totaling approximately 5.94 acres on the Ashland Ranger District of the Custer Gallatin National Forest. The line will be buried 36" deep using a vibratory plow and project area will be re-seeded with native seed mix and treated for noxious wees on an annual basis. Range Telephone would like to begin this work in May 2022. The Forest does not expect negative comments related to the project as it will benefit local residents.

04035-00776

Let me know if you need any additional information on this and look forward to hearing back,
thanks.
Adam



**Adam McClory**
**Realty Specialist, Land Uses Program Manager**

**Custer Gallatin National Forest**

c:

adam.mcclory@usda.gov

10 East Babcock
Bozeman, MT 59715
www.fs.fed.us

**Caring for the land and serving people**

70

04035-00777

**From:**       Stadelman, Steven - FS
**To:**         Smalls, James -FS
**Subject:**    FW: CE #25 Projects in R4 / follow-up
**Date:**       Friday, April 22, 2022 8:21:22 AM
**Attachments:** PCVT_Summary.docx
                image001.png
                image002.png
                image003.png
                image004.png

Jim – request to use CE #25 for a variety of restoration treatment in support of Aspen sites. Looks to be within the bounds of the CE, 1,391 acres. Look ok to you? We can discuss later today during our 30-minute call. S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c: (b) (6)**
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Marshall, Amy -FS <Amy.Marshall@usda.gov>
**Sent:** Wednesday, April 20, 2022 1:26 PM
**To:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Subject:** FW: CE #25 Projects in R4 / follow-up
Hi Steve,
Here is the project on the B-T NF that plans on using CE #25. See attached, the forest wanted me to forward so they can move forward in June. Let me know if you have any questions.
Thanks,



**Amy C. Marshall**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coordinator**

**Forest Service**
**Intermountain Region (R4)**

**Phone: (b) (6)**
**amy.c.barker@usda.gov**

324 25th Street
Ogden, UT 84401
www.fs.fed.us

**Caring for the land and serving people**

R4 PAOL SharePoint

04035-00782

**From:** Woods, Sidney -FS <sidney.woods2@usda.gov>

**Sent:** Friday, March 25, 2022 10:17 AM

**To:** Marshall, Amy -FS <Amy.Marshall@usda.gov>

**Subject:** RE: CE #25 Projects in R4 / follow-up

I haven't heard yet what particular sensitivities get alerted on this, but I do have lots more info in the folder. Specific questions I can help answer?



**sidney woods**

*(she/her) why pronouns matter*

**Forest Environmental Coordinator**

**Forest Service**

**Bridger-Teton National Forest**

**sidney.woods2@usda.gov**

671 N. Washington
Afton, WY 83110
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Marshall, Amy -FS <Amy.Marshall@usda.gov>

**Sent:** Friday, March 25, 2022 9:25 AM

**To:** Woods, Sidney -FS <sidney.woods2@usda.gov>; Delong, Anita -FS <anita.delong@usda.gov>

**Cc:** Blackwell, Catherine - FS <Mary.Blackwell@usda.gov>

**Subject:** FW: CE #25 Projects in R4 / follow-up

Good Morning,

I received a message from the WO about the periodical review of CE #25. Steve was asking about Porcupine Creek. It shows in PALS as initiated, but has not been scoped yet. I let him know that. I am following up with a reminder when you have a draft purpose and need or more information, send it to me and we can check-in with the WO.

Thanks,



**Amy C. Marshall**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coordinator**

**Forest Service**
**Intermountain Region (R4)**

**Phone:** (b) (6) ███
**amy.c.barker@usda.gov**

324 25th Street
Ogden, UT 84401
www.fs.fed.us

**Caring for the land and serving people**

**R4 PAOL SharePoint**

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>

72

04035-00783

**Sent:** Friday, March 25, 2022 8:23 AM
**To:** Marshall, Amy -FS <Amy.Marshall@usda.gov>
**Subject:** RE: CE #25 Projects in R4 / follow-up

Cool, thanks for the follow up Amy. S



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

**Caring for the land and serving people**

**From:** Marshall, Amy -FS <Amy.Marshall@usda.gov>
**Sent:** Thursday, March 24, 2022 10:29 AM
**To:** Shaw, Adam - FS <adam.shaw@usda.gov>; Blackwell, Catherine - FS <Mary.Blackwell@usda.gov>
**Cc:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Subject:** RE: CE #25 Projects in R4 / follow-up

Steve,

Porcupine Creek on the B-T is in PALS as initiated, but it has not been scoped yet. It looks like it will go out in June. I will contact the forest and see what is going on with it.

It looks like the US Highway 6 Fencing is on the H-T with a decision 8/5/2021. It is fencing to create an exclosure along the highway. Adam didn't recall the project or checking with the WO. It looks like the district ranger entered it in PALS, so maybe it got past the forest ECs.

Thanks,



**Amy C. Marshall**
**Regional Environmental Coordinator**
**R1 and R4 Idaho Roadless Coordinator**

**Forest Service**
**Intermountain Region (R4)**

**Phone:** (b) (6)
**amy.c.barker@usda.gov**

324 25th Street
Ogden, UT 84401
www.fs.fed.us

**Caring for the land and serving people**

R4 PAOL SharePoint

**From:** Shaw, Adam - FS <adam.shaw@usda.gov>
**Sent:** Thursday, March 24, 2022 8:15 AM

**73**

04035-00784

**To:** Marshall, Amy -FS <Amy.Marshall@usda.gov>; Blackwell, Catherine - FS <Mary.Blackwell@usda.gov>

**Subject:** RE: CE #25 Projects in R4 / follow-up

Hi Amy and Catherine- Neither of these ring a bell for me as far as projects that were discussed with Unit/RO to coordinate use of the new CE 25. Let me know if you need info from me on these.

Thanks!

Adam

**Adam Shaw**
**Utah State Liaison (Acting)**
**Intermountain Region (R4)**
**US Forest Service**
**c:** (b) (6)
**adam.shaw@usda.gov**
324 25th Street
Ogden, UT 84401
www.fs.fed.us

☐ ☐ ☐

**Caring for the land and serving people**

---

**From:** Stadelman, Steven - FS <steven.stadelman@usda.gov>
**Sent:** Thursday, March 24, 2022 8:02 AM
**To:** Marshall, Amy -FS <Amy.Marshall@usda.gov>; Blackwell, Catherine - FS <Mary.Blackwell@usda.gov>; Shaw, Adam - FS <adam.shaw@usda.gov>
**Subject:** CE #25 Projects in R4 / follow-up

Hi all, good morning. EMC is doing some routine follow up on use of CE#25, these two projects surfaced for R4. Did we ever talk about these? The Porcupine Creek project sounds faintly familiar but I cannot find any e-mails related to either one. Thanks in advance for checking into it. Steve

Porcupine Creek Vegetation Treatment 61457

US Highway 6 Fence Project 59716



**Steve Stadelman, CF**
**NEPA Specialist**

**Forest Service**
**Ecosystem Management Coordination**

**p: 202-205-1521**
**c:** (b) (6)
**steven.stadelman@usda.gov**

1400 Independence Ave., SW
Washington, DC 20250
www.fs.fed.us

☐ ☐ ☐

**Caring for the land and serving people**

04035-00785

| | |
|---|---|
| **From:** | Dixon, Sue- FS |
| **To:** | Stadelman, Steven - FS |
| **Subject:** | FW: Sixes Road SUP Re-Visit (e)24 CE |
| **Date:** | Friday, May 6, 2022 3:35:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | South Fork Sixes Construction VM.pdf |
| | Sixes River Haul Permit Forest Service_2022.pdf |

Hi Steve – more information for our discussion on the use of category e24 for the project described below and in the attachments. I think the Forest has done a good job of summarizing the project. Only thing I would add is the road prism is there, it's just that so much work is required they don't feel it fits under road reconstruction – there will be enough ground disturbance that calling it construction makes more sense. Talk to you Tuesday morning.   Sue



**Susan Dixon**
**Regional Environmental Coordinator**

**Forest Service**
**Pacific Northwest Region**

**p: 503-808-2276**
Susan.Dixon**@usda.gov**

1220 SW 3rd Avenue
Portland, OR 97204
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Rood, Tabatha - FS <Tabatha.Rood@usda.gov>
**Sent:** Tuesday, May 3, 2022 4:53 PM
**To:** McNamara, Jason - FS, MEDFORD, OR <Jason.McNamara@usda.gov>; Dixon, Sue- FS <Susan.Dixon@usda.gov>
**Cc:** Waterston, Matthew -FS <matthew.waterston@usda.gov>
**Subject:** RE: Sixes Road SUP Re-Visit (e)24 CE

Dear Sue and Jason,

After discussing this with Matt W (Detailed Powers DR), he would like to pursue the 36 CFR §220.6 (e)(24) category, with the e(23) category as a back-up if necessary or advised by the region. I realize this requires outreach to the WO, but we would appreciate any timeline estimate you have.  I think you needed the following information at a minimum to begin the conversation:

- **What** – 1.6 miles of road re-construction and multiple culvert replacements on the 5201-080 road within NSO, MaMu, and Coho habitat in the Sixes River watershed. Facilitation of landowner access, use, and maintenance of the 5201 and 5201-080 roads on the Powers

04035-00791

Ranger District. Construction activities would occur from August 6th 2022 through October 31 2022 based on the PDCs, and the road use permit would be issued from 2022- 2027 for maintenance and use while conducting harvest activities on adjacent lands.

- **Where** – 5201 and 5201-080 roads on the Powers Ranger District, 5201-080 is an ML1 road
- **When** – Summer 2022, outside of seasonal restrictions for Mamu, NSO and Coho
- **Why** – best fit e(24) due to improvements to resources in the area (current road is delivering sediment, new culverts would improve drainage etc.) and increased capacity due to the purpose and need for reconstruction to allow access, and to create conditions needed for harvest activities completed on adjacent private lands by the permittee and other interested landowners (BLM, other private, etc)

Scoping was completed in February 2022 to Tribes and members of the public. Only a few comments were received, none of which had particular issue with the proposed activities, other than pointing out the fisheries resources and wanting to ensure the benefit or lack of negative impacts to the fishery. Scoping was completed citing the intent to authorize a special use permit including re-construction activities; however the decision is now to cite the (e )24 category and issue a RUP that would be renewed every 5 years.

I am currently having a map made to better reflect proposed actions and ownership; however the attached map provides a basic outline of the affected route.

Please let me know if you need more information or would like it communicated in a different fashion. As always your advice is greatly appreciated and I look forward to learning how this goes!

Sincerely,



**Tabatha M. Rood, MFR**
**Environmental Coordinator - West Zone**
**Forest Service**
**Rogue River-Siskiyou National Forest,**
**Gold Beach and Powers Ranger Districts**

**p: 541-247-3613**
**c:** (b) (6) ██████
**Tabatha.Rood@usda.gov**
29279 Ellensburg Avenue
Gold Beach, OR 97444
www.fs.fed.us

**Caring for the land and serving people**

-----Original Appointment-----
**From:** McNamara, Jason - FS, MEDFORD, OR <Jason.McNamara@usda.gov>
**Sent:** Thursday, April 28, 2022 9:04 AM
**To:** McNamara, Jason - FS, MEDFORD, OR; Dixon, Sue- FS; Rood, Tabatha - FS
**Subject:** Sixes Road SUP Re-Visit (e)24 CE
**When:** Thursday, April 28, 2022 2:00 PM-2:30 PM (UTC-08:00) Pacific Time (US & Canada).

04035-00792

**Where:** Microsoft Teams Meeting

Hi Sue. There's been some new info (to me) regarding this SUP. I'm hoping we can take a few minutes to discuss today.

_____

# Microsoft Teams meeting

**Join on your computer or mobile app**
**Click here to join the meeting**

**Or call in (audio only)**
+1 202-650-0123,,819234320#   United States, Washington DC
Phone Conference ID: **(b) (6)**
Find a local number | Reset PIN

Learn More | Meeting options

_____

**77**                                                                04035-00793

**Purpose:** Last November, the Forest Service added a suite of new categorical exclusions and a Determination of NEPA Adequacy provision to its NEPA regulations. The Agency has taken a cautious and deliberative approach to applying these new NEPA tools in part because of the change in administrations.  Once relevant USDA leadership is onboard, the Forest Service will brief them on the purpose and expected application of the new NEPA tools.

**Options for Direction on Implementing Revised Forest Service NEPA Regulations:**

1. Units should not use the Determination of NEPA Adequacy, CE (e)(25) (restoration projects), CE (e)(24) (road construction), or CE (e)(3) for special use authorizations greater than 5 acres until further notice.

2. Units should not use the Determination of NEPA Adequacy until further notice but may use the CEs that recently were added to the Agency's NEPA regulations. EMC will draft a letter for the field with education and guidance for use of the new CEs. Units proposing to use CE (e)(25) (restoration projects) shall consult with the Regional Office and EMC prior to scoping.

3. Region 8 should not use the Determination of NEPA Adequacy, CE (e)(25) (restoration projects), CE (e)(24) (road construction), or CE (e)(3) for special use authorizations greater than 5 acres until further notice. Units outside Region 8 should not use the Determination of NEPA Adequacy until further notice but may use the CEs that recently were added to the Agency's NEPA regulations. EMC will draft a letter for the field with education and guidance for use of the new CEs. Units proposing to use CE (e)(25) (restoration projects) shall consult with the Regional Office and EMC prior to scoping

Another way to phrase it (for consideration):

Units can move forward with use of CE (d)(11), (d)(12), and (e)(20) though (e)(23).  Units can also move forward with use of CE (e)(3) for special use authorizations five acres or less.

However, units shall consult with the WO when considering use of the Determination of NEPA Adequacy, CE (e)(25) (restoration projects), CE (e)(24) (road construction), or CE (e)(3) for special use authorizations greater than 5 acres until further notice.

This phased approach for implementing the new regulations during an Administration change will help ensure their future availability.

78

04035-00858



**Forest Service**          Washington Office          1400 Independence Avenue, SW
                                                        Washington, D.C. 20250

---

**File Code:**   1950                          **Date:**   April 25, 2022
**Route To:**

**Subject:**   Use of New and Existing National Environmental Policy Act (NEPA) Authorities
               to Confront the Wildfire Crisis

**To:**   Regional Foresters, Station Directors, Deputy Chiefs, and WO Directors

We face an unprecedented wildfire crisis in the United States.  This crisis stems from, and is amplified by, the profound effects of more than a century of fire suppression, the vast expansion of built infrastructure in the wildland-urban interface, and most significantly, our warming climate.  We must take strong, affirmative actions at an accelerated speed and scale to restore and maintain healthy forest conditions and return fire to its more balanced role in our ecosystems.  Our strategy—built in close coordination with Federal, State, and Tribal governments and non-governmental partners, communities, and stakeholders—is focused on work in the highest priority locations to protect communities.  Details on the *Confronting the Wildfire Crisis* strategy are available at https://www.fs.usda.gov/managing-land/wildfire-crisis.

The Bipartisan Infrastructure Law (BIL) provides the Agency with extensive resources and new authorities in support of this strategy.  The BIL includes a new agency Categorical Exclusion (CE): Establishment of Fuel Breaks in Forests and Other Wildland Vegetation. The new CE can be used for fuel breaks up to 1,000 feet in width but cannot establish more than 3,000 acres of treatments.  The CE can be used immediately, and information and training is available from our national and regional NEPA and planning staffs.

The BIL also included a new authority entitled *Emergency Actions*. This section authorizes the Secretary to determine that an emergency exists on National Forest System lands and allows vegetation and other treatments to be carried out pursuant to the Secretary's emergency determination.  Guidance on use of the Emergency Actions authority will be forthcoming from USDA.  It is imperative that you work closely with your line officers to ensure these authorities are understood and applied in an expedited and appropriate manner.

In addition to the new authorities in the BIL, Congress has previously provided us other authorities including Healthy Forest Restoration Act (HRFA) expedited EA/EIS processes, the HFRA Section 603 Insect & Disease CE, and the HFRA Section 605 Wildfire Resilience CE.  Our recent updates to agency NEPA regulations provide us a new restoration CE (36 CFR 220.6(e)(25)) and the Determination of NEPA Adequacy (DNA) process (36 CFR 220.4(j)).  We have many years of success employing thoughtful and creative NEPA analysis approaches and using CEs where appropriate to accomplish necessary work to restore, maintain, and enhance resource conditions.  Finally, there are various emergency procedure authorities at 36 CFR 220.4(b) and 36 CFR 218.21, which can responsibly streamline the process to reach a decision and allow us to begin important emergency prevention and recovery work.





Regional Foresters, Station Directors, Deputy Chiefs, and WO Directors                    2

For units receiving funds from the BIL, disaster relief, or fuels projects implementing agency's *Confronting the Wildfire Crisis* strategy, it is my expectation that you conduct project planning and environmental analysis using the most responsibly expedient process available, with the engagement of the public and coordination with Federal, State, local and Tribal governments as appropriate, and consistent with laws, regulations, and policies.  This means defaulting to HFRA authorities first, where applicable; using CEs wherever appropriate, consistent with rigorous extraordinary circumstances analyses; and using post-disturbance event tools such as the Emergency Situation Determination at 36 CFR 218.21.  As soon as available, I also expect use of the BIL Section 40807 Emergency Actions authority to proactively treat emergency conditions before the consequences of those conditions manifest into catastrophic and unacceptable loss of resource values, property, economic activity, and human life.

We face a growing wildfire crisis in the United States.  We must posture ourselves in full recognition of the nature of this emergency and adjust our thinking and our actions accordingly. I know you and the dedicated resource stewards and public servants on Forests and Districts across the country are up to this challenge.

For questions regarding the options for environmental analysis, please contact Julia Riber, Acting Director, Ecosystem Management Coordination, at julia.riber@usda.gov.

Thank you for all you do in stewardship and restoration of America's National Forests and Grasslands.


X
_____


RANDY MOORE
Chief

80                                                                        04035-00868

| Project Simple Format | | | | | |
|---|---|---|---|---|---|
| **Categorical Exclusions:** | 32.2 (25), 36 CFR 220.6(e)(25) | | | | |
| Includes project information that has not yet been accepted (by a SOPA Manager) | | | Search Date: 03/23/2022 | | |
| **Project Number** | **Project Name** | **Lead Management Unit** | **Overall NEPA Process Status** | **WO?** | **Notes** |
| 61391 | Cathill Thin | High Cascades Ranger District(11061024) | In Progress | Yes | Steve reviewed. |
| 61714 | Goldspotted Oak Borer Management Project | San Bernardino National Forest All Units(11051200) | Developing Proposal | No | REC checking in. |
| 59222 | High Alpine Seasonal Road Closure Extensions | Laramie Ranger District(11020605) | Developing Proposal | No | REC checking in. |
| 61806 | Horsethief West Vegetative Management | Fort Pierre Ranger District(11020709) | Developing Proposal | Yes | Cancelling. |
| 59737 | Pine and Aspen Restoration Project | Hell Canyon Ranger District(11020303) | Cancelled | NA | |
| 61457 | Porcupine Creek Vegetation Treatment | Kemmerer Ranger District(11040301) | Developing Proposal | ? | Steve? |
| 61838 | Rose Valley Creek Restoration Project | Santa Lucia Ranger District(11050753) | Developing Proposal | Yes | Latasha reviewed. |
| 61000 | Stephen F. Austin Experimental Forest Thinning Project | Angelina Ranger District(11081301) | Developing Proposal | No | Scoped already, REC handling and will cancel. |
| 61166 | Tongue RD Arrowhead Lodge WUI treatment☐ | Tongue Ranger District(11020206) | Cancelled | NA | |
| 56630 | Upper Kachess River Restoration | Cle Elum Ranger District(11061703) | In Progress | Yes | Steve reviewed. |
| 59716 | US Highway 6 Fence Project | Ely Ranger District(11041709) | Completed | ? | Steve? |

| | | |
|---|---|---|
| Reviewed Not yet in PALS | | |
| | Tahoe Meadow Restoration | Tahoe |

Steve
Adam Shaw and Amy Marshall R4
Sue Dixon R6

Latasha
Laura Hierholzer R5
Stephanie Medlin R8

Tasha/Sam
Bart Lander R2

04035-01883

Categorical Exclusions – New exclusions are highlighted in yellow.  Categories requiring RO approval are **bold**.

| **Requires** a Decision Memo (36 CFR 220.6(e)) | **Does Not Require** a Decision Memo |
|---|---|
| | Established by the Chief (36 CFR 220.6(d)) |
| ☐ 1 - Construction and reconstruction of trails. | ☐ 1 - Forest orders/prohibitions to provide short-term resource protection or to protect health and safety (36 CFR 261). |
| ☐ 2 - Additional construction or reconstruction of existing telephone or utility lines in a designated corridor. | ☐ 2 - Rules/Regs/Policies for servicewide administrative procedures, program processes, or instructions. |
| ☐ 3 - Approval, modification, continuation of minor special uses (less than 5 contiguous acres). | ☐ 3 - Repair and maintenance of administrative sites. |
| ☐ **3 – Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands. See Final Rule for examples.** | ☐ 4 - Repair and maintenance of roads, trails, and landline boundaries. |
| ☐ 4 – Reserved. | ☐ 5 - Repair and maintenance of recreation sites and facilities. |
| ☐ 5 - Regeneration to native tree species, including site preparation (no herbicides or type conversion). | ☐ 6 - Acquisition of land or interest in land. |
| ☐ 6 - Timber stand or wildlife habitat improvement (no herbicides and less than 1 mile of low standard road construction). | ☐ 7 - Sale or exchange of land or interest in land and resources where uses remain the same. |
| ☐ 7 - Modification or maintenance of aquatic habitat improvement structures (native materials or normal practices). | ☐ 8 - Approval, modification, or continuation of minor, short-term special uses (1 year or less). |
| ☐ 8 - Short-term (1 yr or less) mineral, energy, or geophysical investigations and their incidental support activities. | ☐ 9 - Issue a new permit to an existing ski area. |
| ☐ 9 - Implementation or modification of minor management practices to improve allotment condition or animal distribution when an allotment management plan is not yet in place. | ☐ 10 - Amend or replace an existing special use authorization with only administrative changes. |
| ☐ 10 - Hazardous fuels reduction activities. . . . | ☐ 11 – Issuance of a new special use authorization to replace an existing or expired special use authorization, when such issuance is to account only for administrative changes, such as a change in ownership of authorized improvements or expiration of the current authorization, and where there are no changes to the authorized facilities or increases in the scope or magnitude of authorized activities.  The applicant or holder must be in compliance with all the terms and conditions of the existing or expired special use authorization.  See Final Rule for examples. |
| ☐ 11 - Post-fire rehabilitation (<4,200 acres). | ☐ 12 – Issuance of a new authorization or amendment of an existing authorization for recreation special uses that occur on existing roads or trails, in existing recreation sites, or in areas where such activities are allowed.  See Final Rule for examples. |
| ☐ 12 - Harvest of live trees (<70 acres, <1/2 mile of temporary road, not for even-aged regeneration). | Established by the Secretary (7 CFR 1b.3) |
| ☐ 13 - Salvage of dead and/or dying trees less than 250 acres (<1/2 mile of temporary road). | ☐ 1 – Policy development, planning, and implementation that relate to routine activities, such as personnel, organizational changes, or similar administrative functions. |
| ☐ 14 - Commercial and non-commercial sanitation harvest to control insects or disease (<250 acres and <1/2 mile of temporary road). | ☐ 2 – Activities that deal solely with the funding of programs, such as program budget proposals, disbursements, and transfer or reprogramming of funds. |
| ☐ 15 - Issuance of a new special use authorization when the only changes are administrative. | ☐ 3 – Inventories, research activities, and studies, such as resource inventories and routine data collection when limited in context and intensity. |
| ☐ 16 – Land management plans, plan amendment, and plan revisions. | ☐ 4 – Educational and informational programs and activities. |

82

04035-01925

Categorical Exclusions – New exclusions are highlighted in yellow.  Categories requiring RO approval are **bold**.

| **Requires** a Decision Memo (36 CFR 220.6(e)) | | **Does Not Require** a Decision Memo | |
| --- | --- | --- | --- |
| | | Established by the Chief (36 CFR 220.6(d)) | |
| **Requires** a Decision Memo (36 CFR 220.6(e)) | | **Does Not Require** a Decision Memo | |
| ☐ | 17 - Approval of a Surface Use Plan of Operations for oil and gas exploration and initial development activities, associated with or adjacent to a new oil and/or gas field or area | ☐ | 5 – Civil and criminal law enforcement and investigative activities. |
| ☐ | 18 – Restoring wetland, streams, riparian areas or other water bodies by removing, replacing, or modifying water control structures.  See FSH for examples. | ☐ | 6 – Activities that are advisory and consultative to other agencies and public and private entities. |
| ☐ | 19 – Removing and/or relocating debris and sediment following disturbance events to restore uplands, wetlands, or riparian systems to pre-disturbance conditions.  See FSH for examples. | ☐ | 7 – Activities related to trade representation and market development activities abroad. |
| | | **Determination of NEPA Adequacy (DNA)  (36 CFR 220.4(j)** | |
| ☐ | 20 – Activities that restore, rehabilitate, or stabilize lands occupied by roads and trails, including unauthorized roads and trails and NFS roads and NFS trails, to a more natural condition that may include removing, replacing, or modifying drainage structures and ditches, reestablishing vegetation, reshaping natural contours and slopes, reestablishing drainage-ways, or other activities that would restore site productivity and reduce environmental impacts.  See Final Rule for examples. | | 1 – An existing environmental analysis prepared pursuant to NEPA and the CEQ regulations may be used in its entirety for a new proposed action if the Responsible Official determines that the existing NEPA analysis adequately assesses the environmental effects of the proposed action and reasonable alternatives.

The responsible official must determine and document that each of the following elements is met:

  (i)    The new proposed action is substantially the same as a previously analyzed proposed action or alternative analyzed in detail in the existing NEPA analysis. |
| ☐ | 21 – Construction, reconstruction, decommissioning, relocation, or disposal of buildings, infrastructure, or other improvements at an existing administrative site, as that term is defined in section 502(1) of Public Law 109-54 (119 Stat. 559; 16 U.S.C. 580d note).  See Final Rule for examples. | |   (ii)   The range of alternatives analyzed in the existing NEPA document(s) is appropriate with respect to the new proposed action.<br>  (iii)  Any new information or circumstances relevant to environment concerns would not substantially change the analysis in an existing NEPA document(s). |
| ☐ | 22 – Construction, reconstruction, decommissioning, or disposal of buildings, infrastructure, or improvements at an existing recreation site, including infrastructure or improvements that are adjacent or connected to an existing recreation site and provide access or utilities for that site. Recreation sites include but are not limited to campgrounds and camping areas, picnic areas, day use areas, fishing sites, interpretive sites, visitor centers, trailheads, ski areas, and observation sites.  Activities within this category are intended to apply to facilities located at recreation sites managed by the Forest Service and those managed by concessioners under a special use authorization.  See Final Rule for examples. | |   (iv)  The environmental effects that would result from implementation of the new proposed action are similar to those analyzed in the existing NEPA document(s). |
| ☐ | 23 – Road management activities on up to 8 miles of NFS roads and associated parking areas. Activities under this category cannot include construction or realignment.  See Final Rule for examples. | | 2 – A DNA for a new proposed action shall be included in the project record for the new proposed action.  Proposed actions undergoing a DNA review shall:<br>  (i)   Be included on the SOPA.<br>  (ii)  Be subject to scoping; |
| ☐ | **24 – Construction and realignment of up to 2 miles of NFS roads and associated parking areas.  See Final Rule for examples.** | |   (iii) Be subject to pre-decisional administrative review, if applicable; and |
| ☐ | 25 – Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience.  Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres.  See Final Rule for examples. | |   (iv) Include issuance of a new decision document (decision memo, decision notice, or record of decision) when approved. |

*Refer to FSH 1909.15 Chapter 32 for limitations and examples.  See Final Rule for limitations for the highlighted categories.  You must look at the limitations to make an informed decision.*

83

04035-01926

Categorical Exclusions – Categories requiring RO approval are **bold.**

| **Requires** a Decision Memo (36 CFR 220.6(e)) | **Does Not Require** a Decision Memo |
|---|---|
| | **Established by the Chief (36 CFR 220.6(d))** |
| ☐ 1 - Construction and reconstruction of trails. | ☐ 1 - Forest orders/prohibitions to provide short-term resource protection or to protect health and safety (36 CFR 261). |
| ☐ 2 - Additional construction or reconstruction of existing telephone or utility lines in a designated corridor. | ☐ 2 - Rules/Regs/Policies for servicewide administrative procedures, program processes, or instructions. |
| ☐ 3 - Approval, modification, continuation of minor special uses (less than 5 contiguous acres). | ☐ 3 - Repair and maintenance of administrative sites. |
| ☐ **3 – Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands. See Final Rule for examples.** | ☐ 4 - Repair and maintenance of roads, trails, and landline boundaries. |
| ☐ 4 – Reserved. | ☐ 5 - Repair and maintenance of recreation sites and facilities. |
| ☐ 5 - Regeneration to native tree species, including site preparation (no herbicides or type conversion). | ☐ 6 - Acquisition of land or interest in land. |
| ☐ 6 - Timber stand or wildlife habitat improvement (no herbicides and less than 1 mile of low standard road construction). | ☐ 7 - Sale or exchange of land or interest in land and resources where uses remain the same. |
| ☐ 7 - Modification or maintenance of aquatic habitat improvement structures (native materials or normal practices). | ☐ 8 - Approval, modification, or continuation of minor, short-term special uses (1 year or less). |
| ☐ 8 - Short-term (1 yr or less) mineral, energy, or geophysical investigations and their incidental support activities. | ☐ 9 - Issue a new permit to an existing ski area. |
| ☐ 9 - Implementation or modification of minor management practices to improve allotment condition or animal distribution when an allotment management plan is not yet in place. | ☐ 10 - Amend or replace an existing special use authorization with only administrative changes. |
| ☐ 10 - Hazardous fuels reduction activities. . . | ☐ 11 – Issuance of a new special use authorization to replace an existing or expired special use authorization, when such issuance is to account only for administrative changes, such as a change in ownership of authorized improvements or expiration of the current authorization, and where there are no changes to the authorized facilities or increases in the scope or magnitude of authorized activities. The applicant or holder must be in compliance with all the terms and conditions of the existing or expired special use authorization. See Final Rule for examples. |
| ☐ 11 - Post-fire rehabilitation (<4,200 acres). | ☐ 12 – Issuance of a new authorization or amendment of an existing authorization for recreation special uses that occur on existing roads or trails, in existing recreation sites, or in areas where such activities are allowed. See Final Rule for examples. |
| ☐ 12 - Harvest of live trees (<70 acres, <1/2 mile of temporary road, not for even-aged regeneration. | **Established by the Secretary (7 CFR 1b.3)** |
| ☐ 13 - Salvage of dead and/or dying trees less than 250 acres (<1/2 mile of temporary road). | ☐ 1 – Policy development, planning, and implementation that relate to routine activities, such as personnel, organizational changes, or similar administrative functions. |
| ☐ 14 - Commercial and non-commercial sanitation harvest to control insects or disease (<250 acres and <1/2 mile of temporary road). | ☐ 2 – Activities that deal solely with the funding of programs, such as program budget proposals, disbursements, and transfer or reprogramming of funds. |
| ☐ 15 - Issuance of a new special use authorization when the only changes are administrative. | ☐ 3 – Inventories, research activities, and studies, such as resource inventories and routine data collection when limited in context and intensity. |
| ☐ 16 – Land management plans, plan amendment, and plan revisions. | ☐ 4 – Educational and informational programs and activities. |

84

04035-01927

Categorical Exclusions – Categories requiring RO approval are **bold**.

| Requires a Decision Memo (36 CFR 220.6(e)) | Does Not Require a Decision Memo |
|---|---|
| | Established by the Chief (36 CFR 220.6(d)) |
| **Requires a Decision Memo (36 CFR 220.6(e))** | **Does Not Require a Decision Memo** |
| ☐ 17 - Approval of a Surface Use Plan of Operations for oil and gas exploration and initial development activities, associated with or adjacent to a new oil and/or gas field or area | ☐ 5 – Civil and criminal law enforcement and investigative activities. |
| ☐ 18 – Restoring wetland, streams, riparian areas or other water bodies by removing, replacing, or modifying water control structures. See FSH for examples. | ☐ 6 – Activities that are advisory and consultative to other agencies and public and private entities. |
| ☐ 19 – Removing and/or relocating debris and sediment following disturbance events to restore uplands, wetlands, or riparian systems to pre-disturbance conditions. See FSH for examples. | ☐ 7 – Activities related to trade representation and market development activities abroad. |
| | **Determination of NEPA Adequacy (DNA) (36 CFR 220.4(j)** |
| ☐ 20 – Activities that restore, rehabilitate, or stabilize lands occupied by roads and trails, including unauthorized roads and trails and NFS roads and NFS trails, to a more natural condition that may include removing, replacing, or modifying drainage structures and ditches, reestablishing vegetation, reshaping natural contours and slopes, reestablishing drainage-ways, or other activities that would restore site productivity and reduce environmental impacts. See Final Rule for examples. | 1 – An existing environmental analysis prepared pursuant to NEPA and the CEQ regulations may be used in its entirety for a new proposed action if the Responsible Official determines that the existing NEPA analysis adequately assesses the environmental effects of the proposed action and reasonable alternatives.<br><br>The responsible official must determine and document that each of the following elements is met: |
| ☐ 21 – Construction, reconstruction, decommissioning, relocation, or disposal of buildings, infrastructure, or other improvements at an existing administrative site, as that term is defined in section 502(1) of Public Law 109-54 (119 Stat. 559; 16 U.S.C. 580d note). See Final Rule for examples. | (i)  The new proposed action is substantially the same as a previously analyzed proposed action or alternative analyzed in detail in the existing NEPA analysis. |
| ☐ 22 – Construction, reconstruction, decommissioning, or disposal of buildings, infrastructure, or improvements at an existing recreation site, including infrastructure or improvements that are adjacent or connected to an existing recreation site and provide access or utilities for that site. Recreation sites include but are not limited to campgrounds and camping areas, picnic areas, day use areas, fishing sites, interpretive sites, visitor centers, trailheads, ski areas, and observation sites. Activities within this category are intended to apply to facilities located at recreation sites managed by the Forest Service and those managed by concessioners under a special use authorization. See Final Rule for examples. | (ii)  The range of alternatives analyzed in the existing NEPA document(s) is appropriate with respect to the new proposed action.<br>(iii)  Any new information or circumstances relevant to environment concerns would not substantially change the analysis in an existing NEPA document(s).<br>(iv)  The environmental effects that would result from implementation of the new proposed action are similar to those analyzed in the existing NEPA document(s). |
| ☐ 23 – Road management activities on up to 8 miles of NFS roads and associated parking areas. Activities under this category cannot include construction or realignment. See Final Rule for examples. | 2 – A DNA for a new proposed action shall be included in the project record for the new proposed action. Proposed actions undergoing a DNA review shall:<br>(i)  Be included on the SOPA. |
| ☐ **24 – Construction and realignment of up to 2 miles of NFS roads and associated parking areas. See Final Rule for examples.** | (ii)  Be subject to scoping;<br>(iii)  Be subject to pre-decisional administrative review, if applicable; and |
| ☐ **25 – Forest and grassland management activities with a primary purpose of meeting restoration objectives or increasing resilience. Activities to improve ecosystem health, resilience, and other watershed and habitat conditions may not exceed 2,800 acres. See Final Rule for examples.** | (iv)  Include issuance of a new decision document (decision memo, decision notice, or record of decision) when approved. |

*Refer to FSH 1909.15 Chapter 32 for limitations and examples. See Final Rule for limitations for new categories. You must look at the limitations to make an informed decision.*

04035-01928

WO AMENDMENT: 1909.15-2020-1
EFFECTIVE DATE: 03/16/2020
DURATION:  This amendment is effective until superseded or removed.

1909.15_30
Page 32 of 44

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER 30 - CATEGORICAL EXCLUSION FROM DOCUMENTATION**

| **Forest** | **Washington** | **1400 Independence Avenue, SW** |
| **Service** | **Office** | **Washington, DC 20250** |

**File Code:**  1950                                **Date:**  September 1, 2011

**Route To:**  (2820)

**Subject:**  Energy Policy Action of 2005, Adjusted Use of Section 390 Categorical Exclusions
for Oil and Gas due to Western Energy Alliance v. Salazar

**To:**  Regional Foresters

On August 12, 2011, the Federal District Court for the District of Wyoming issued a memorandum opinion and order in *Western Energy Alliance v. Salazar*, 10-CV-237F (D. Wyo.) concerning guidance issued by this office on June 9, 2010, (enclosed) and a BLM Instruction No. 2010-118 concerning use of Section 390 Categorical Exclusions for Oil and Gas. The court determined that the guidance constituted legislative rules that required notice and comment.

The court gave the following specific instruction:

> … **the Court VACATES and ENJOINS** the May 17, 2010, BLM Instruction Memorandum No 2010-118 and **the June 9, 2010, Forest Service letter to the extent that they address and limit the use of Section 390 CXs by: (1) establishing a screening process to consider extraordinary circumstances when using any Section 390 CE;** (2) interjecting a new condition within Section 390 CX2 to limit its use only if the specific location and/or well pad site for the proposed drilling was adequately analyzed in an existing activity-level or project specific NEPA document; and (3) eliminating BLM's ability to use Section 390 CX3 for actions based solely on a NEPA document associated with a land use plan. The court takes this action nationwide, on the basis that the 2010 Instructions, as specifically noted above, constitute legislative rules adopted contrary to public notice and comment procedures required by law. The Court declines to address the substantive claims advanced by WEA (Emphasis added).

Effective immediately, the agency is prohibited from considering extraordinary circumstances in accordance with FSH 1901.15, Chapter 30 when evaluating use of any Section 390 CE. The remaining portions of the June 9, 2010, guidance remain in effect. Please note that while Items 2 and 3 of the Court's Order are directed to BLM-specific instructions and do not appear in the Forest Service's guidance, Forest Service employees should not seek to impose such restrictions.

We will continue to coordinate with the Department of the Interior, Department of Justice and the Office of the General Counsel concerning these matters and will keep you apprised of further developments.

If you have any questions, please contact Assistant Director for Minerals Barry Burkhardt at (303) 275-5147.


*/s/ Faye L. Krueger (for):*
JOEL D. HOLTROP
Deputy Chief, National Forest System

04035-02167

**From:** Zamora, Jeremiah -FS
**Sent:** Friday, July 9, 2021 7:26 AM
**To:** Yamnik, Patrick -FS; Gaskins, Alton -FS
**Cc:** Stewart, Christina - FS; Clark, Jestin - FS
**Subject:** RE: Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

Oh ok that is interesting. I think this was the other CE cat we were contemplating. That's why we reach out. Tripp looks like we just need a folder with Christy's letter and Jestin's BA and we should be good to go. That will give us plenty of time before award and we won't have to develop a DM.



**Jeremiah Zamora**
**District Ranger**

**Forest Service**
**Francis Marion & Sumter National Forests, Francis Marion Ranger District**

**p: 843-336-2201**
**c (b) (6)**
**jeremiah.zamora@usda.gov**

2967 Steed Creek Rd
Huger, SC 29450
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Sent:** Thursday, July 8, 2021 6:00 PM
**To:** Zamora, Jeremiah -FS <jeremiah.zamora@usda.gov>; Gaskins, Alton -FS <alton.gaskins@usda.gov>
**Subject:** FW: Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

Tripp and Jeremiah,

Here's the response from the RO/WO regarding CE for Twin Ponds/Willow Hall Road Paving.

They suggest not using the new CE at this time and doing it under (d)(4) instead at this time. (d)(4) is the repair and maintenance of roads CE which does not technically require a DM or project record, but of course it is at the discretion of the responsible official.

Typically, we have not put projects using a CE category that doesn't require a DM into PALS, but we can, even if we don't prepare a DM. Just let us know what you think on how you want to proceed based on this recommendation from the RO/WO.

Thanks!



**Patrick Yamnik**
**Environmental Coordinator**

**Forest Service**
**Francis Marion and Sumter National Forests**

**p: 803-561-4078**
**f: 803-561-4004**
**patrick.yamnik@usda.gov**
4931 Broad River Road
Columbia, SC 29212
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Sent:** Tuesday, July 6, 2021 5:37 PM
**To:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Cc:** Madson, Stephanie - FS <Stephanie.Madson@usda.gov>; Lyte, Latasha -FS <latasha.lyte@usda.gov>; Nathanson, Amy -FS <amy.nathanson@usda.gov>
**Subject:** RE: Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

I had a discussion with WO regarding this project. At this time due to current litigation and consistency across the region, it is in the best interest not to use CE(e)(24) but CE(d)(4 for this project.



**Stephanie Medlin**
**Regional Environmental Coordinator**
**Forest Service**
**Southern Region**
**p: 423-476-9740**
**c:** (b) (6)
**stephanie.medlin@usda.gov**
2800 N. Ocoee Street
Cleveland, TN 37312
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Sent:** Thursday, July 1, 2021 1:58 PM
**To:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Subject:** RE: Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

We've probably done this sort of project under that one in the past. Our discussion was that with the new CE category having as an example "(iii) Improving or upgrading the surface of an NFS road to expand its capacity." That we should probably go with the new category as it seems the best fit because of the example. I was also looking at 220.6(e)(23) For the road management activities on up to 8 miles, but it really is the presence of that example that had us going in the direction of 24.



**Patrick Yamnik**
**Environmental Coordinator**
**Forest Service**
**Francis Marion and Sumter National Forests**

2

p: 803-561-4078
f: 803-561-4004
patrick.yamnik@usda.gov

4931 Broad River Road
Columbia, SC 29212
www.fs.fed.us



**Caring for the land and serving people**

---

**From:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Sent:** Thursday, July 1, 2021 1:51 PM
**To:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Subject:** RE: Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

Afternoon Patrick,

Did the district consider d(4) for this project?



**Stephanie Medlin**
**Regional Environmental Coordinator**
**Forest Service**
**Southern Region**
p: 423-476-9740
c: (b) (6)
stephanie.medlin@usda.gov

2800 N. Ocoee Street
Cleveland, TN 37312
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Sent:** Thursday, July 1, 2021 1:40 PM
**To:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Cc:** Zamora, Jeremiah -FS <jeremiah.zamora@usda.gov>
**Subject:** Francis Marion Willow Hall Road Paving Project for RO/WO CE 220.6(e)(24) Approval

Hi Stephanie,

Please find attached a briefing paper providing information for RO and WO approval before using the categorical exclusion at 36 CFR 220.6(e)(24) in accordance with the direction outlined in the memo dated May 21, 2021. The direction was that the CE category could be used for realignments but we would need WO coordination for construction projects under this category. Our proposed action isn't strictly construction or realignment, as we're only resurfacing (paving) an existing road and parking area, so the project is less impactful than realigning or new construction. However, the action matches one of the provided examples for this CE.

Please let me know if you require any additional information for your consideration of our use of this CE category for this project.

3
89

Thank you,



**Patrick Yamnik**
**Environmental Coordinator**

**Forest Service**
**Francis Marion and Sumter National Forests**

**p: 803-561-4078**
**f: 803-561-4004**
**patrick.yamnik@usda.gov**

4931 Broad River Road
Columbia, SC 29212
www.fs.fed.us

**Caring for the land and serving people**

| | |
|---|---|
| **From:** | Yamnik, Patrick -FS |
| **To:** | Medlin, Stephanie -FS |
| **Subject:** | RE: Bridge Replacement Projects on the Enoree and Francis Marion Ranger Districts |
| **Date:** | Monday, November 1, 2021 3:00:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image007.png |

Hi Stephanie,

- Yes, there is no legend, but I could see about getting revised maps. Is there anything in particular you would like to see more information or clarity on through a legend? I know the maps are especially helpful other than to show the locations of the bridges in question.
- At this point all engineering has said is that any realignments would be slight variations. The bridge designs are still being developed by engineering so we don't know what they'll look like or even which bridges might need them. So, at this point they aren't depicted on the maps. I'm not sure on the timeframe for a design that will give us an idea of that, but I think it's not too far off for some of the bridges.
- I think the main reason we're looking at the new CE categories is to use the most appropriate category for the action and with WO authorizing the use of the CEs in question, we wanted to go that route if appropriate. The rangers may be comfortable using category 4 for road repair and maintenance (it may depend a little on extent of realignments needed). I think they would feel more comfortable with that category with a nudge that direction from the RO/WO if that is the preference to continue to avoid using these particular categories for now.
- Adding something new for consideration- if no realignments were needed, would that affect the opinion at all on using the new CE category 23?

Thanks for your support on this Stephanie.



**Patrick Yamnik**
**Environmental Coordinator**

**Forest Service**
**Francis Marion and Sumter National Forests**

**p: 803-561-4078**
**f: 803-561-4004**
**patrick.yamnik@usda.gov**

4931 Broad River Road
Columbia, SC 29212
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>
**Sent:** Monday, November 1, 2021 2:36 PM
**To:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>
**Subject:** RE: Bridge Replacement Projects on the Enoree and Francis Marion Ranger Districts

Hey Patrick,

Just had a conversation with the WO. Additional thoughts and comments:

- Where is the legend on the map
- What does "limited road realignment" mean, where is it located on the map, what is the

91

length of each realignment?

- Why is CE 4 not being used?



**Stephanie Medlin**
**R8 Environmental Coordinator**

**Forest Service**
**Southern Region**

**p: 423-790-2817**
stephanie.medlin@usda.gov

2800 N. Ocoee Street
Cleveland, TN 37312
www.fs.fed.us

**Caring for the land and serving
people**

---

**From:** Yamnik, Patrick -FS <patrick.yamnik@usda.gov>

**Sent:** Thursday, October 28, 2021 3:39 PM

**To:** Medlin, Stephanie -FS <stephanie.medlin@usda.gov>

**Cc:** Miller, Carrie -FS <carrie.m.miller@usda.gov>

**Subject:** Bridge Replacement Projects on the Enoree and Francis Marion Ranger Districts

Hi Stephanie,

I've attached a briefing paper and maps for your review of our proposal to use the new CE category (e)(23) potentially combined with (e)(24) for realignment, if needed depending on final design for the new bridges.

The bridges on the Francis Marion were selected for GAOA funding, so they are a high priority for us to be able to move forward on. We haven't formally initiated these projects with scoping or putting into PALS yet.

We would potentially do all of the bridges under one project and decision or separate and do two projects, one for the Enoree and one for the Francis Marion.

Let me know if you need any additional information for your review.

Thanks!



**Patrick Yamnik**
**Environmental Coordinator**

**Forest Service**
**Francis Marion and Sumter National Forests**

**p: 803-561-4078**
**f: 803-561-4004**
**patrick.yamnik@usda.gov**

4931 Broad River Road
Columbia, SC 29212
www.fs.fed.us

**Caring for the land and serving people**

92

| | |
|---|---|
| **From:** | Hernandez, Tasha -FS |
| **To:** | Reed, Rachel - FS |
| **Subject:** | RE: Question on new roads categories |
| **Date:** | Tuesday, February 8, 2022 1:30:57 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Yes that is correct for the WO review of only construction, but your initial email mentioned construction so I assumed it was a possibility. If there is any question please do let me know as I just want to be sure we interpret construction consistently 😊



**Tasha Hernandez**
**Environmental Coordinator**

**Forest Service**
**Eastern Region, Regional Office**

**p: 414-297-3607**
tasha.hernandez**@usda.gov**

626 E. Wisconsin Ave. Suite 700
Milwaukee, WI 53202
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Reed, Rachel - FS <Rachel.Reed@usda.gov>
**Sent:** Tuesday, February 8, 2022 9:29 AM
**To:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Subject:** RE: Question on new roads categories

Hi Tasha –

I don't think we're ready to talk specifics regarding a WO review just yet. It may end up being totally within the road management category – I haven't been out there and I don't think we've had an in depth engineering review either. Would you mind just clarifying with the WO on what needs reviewed in CE 24?  The FAQs you sent out last week were specific to new road construction under CE 24, excluding realignment from needing review.

Thanks!



**Rachel O. Reed**
**Forest Environmental Coordinator**

**Forest Service**
**Wayne National Forest,**
**Supervisor's Office**

**p: 740-753-0101 (main office)**
Rachel.Reed@usda.gov

13700 US Hwy 33
Nelsonville, OH 45764
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Sent:** Tuesday, February 8, 2022 10:05 AM
**To:** Reed, Rachel - FS <Rachel.Reed@usda.gov>
**Subject:** RE: Question on new roads categories

HI Rachel!! Yes definitely, feel free to send me a calendar invite. Mine is always up to date ☺

I have a call with the WO today so was thinking if you were ready to propose to them and go thru their process, I was going to give them a heads up it was coming BUT if you need more time, that can wait. I usually give them a week or so heads up when something is coming, with some general info on the project proposed action and any potential issues that could come up, that way their turnaround is hopefully shortened. In the past, the RF has wanted WO support before reviewing the project, so it can take several weeks to get full approval. Just let me know when you are ready to discuss and propose to the WO ☺



**Tasha Hernandez**
**Environmental Coordinator**
**Forest Service**
**Eastern Region, Regional Office**

**p: 414-297-3607**
tasha.hernandez**@usda.gov**

626 E. Wisconsin Ave. Suite 700
Milwaukee, WI 53202
www.fs.fed.us

**Caring for the land and serving people**

---

**From:** Reed, Rachel - FS <Rachel.Reed@usda.gov>
**Sent:** Tuesday, February 1, 2022 4:21 PM
**To:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Subject:** RE: Question on new roads categories

Thanks for the info!!! I knew I probably wasn't thinking with current information... In fact I had initially been thinking maintenance for all of the road work, and am still not sure I understand the full scale/scope of what may be needed based on the info I have now from the engineering tech.

94

We should probably talk when you have a chance within the next couple of weeks?



**Rachel O. Reed**
**Forest Environmental Coordinator**

**Forest Service**
**Wayne National Forest,**
**Supervisor's Office**

**p: 740-753-0101 (main office)**
Rachel.Reed@usda.gov

13700 US Hwy 33
Nelsonville, OH 45764
www.fs.fed.us

**Caring for the land and serving**
**people**

---

**From:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Sent:** Tuesday, February 1, 2022 4:02 PM
**To:** Reed, Rachel - FS <Rachel.Reed@usda.gov>
**Subject:** Re: Question on new roads categories

Hi Rachel!

What CEs are you proposing to use? Sounds like both 23 and 24? Per our most recent update to the review process, we are in alignment with the WO review process for the following:

- *CE (e)(3) above 5 acres;*
- *CE (e)(24) for road construction;*
- *CE (e)(25); and*
- *the DNA provision at 220.4(j).*

For any of these authorities, the RO and WO will need to review. This just means asking the questions we have gone thru before... Why now, why can't it wait, what is the risk, what if any alternative options are there? etc.

For any others, there is no review. But it sounds like yours might have realignment... if so we should start on that review process ahead of time as it can take some time to get on schedules, and is supposed to occur before scoping.

95

Let me know if you want to chat

Tasha

---

**From:** Reed, Rachel - FS <Rachel.Reed@usda.gov>
**Sent:** Tuesday, February 1, 2022 11:29 AM
**To:** Hernandez, Tasha -FS <tasha.hernandez@usda.gov>
**Subject:** Question on new roads categories

Hi Tasha!

Is there any hesitation or coordination needed on Forest's using the new roads categories – road management activities on up to 8 miles and construction/realignment on up to 2 miles? We have 3 roads that are funded for repairs under ERFO due to slips. It sounds like various spots needing repairs would fit into road management activities and at least one may be realignment.  Some may be maintenance, too, of course. I'd like to bundle all of this into one project, using both categories. Just checking to see what coordination with your office is needed? I believe it's just the SUP and restoration categories that are still in need of review, right?



**Rachel O. Reed**
**Forest Environmental Coordinator**
**Forest Service**
**Wayne National Forest,**
**Supervisor's Office**
**p: 740-753-0101 (main office)**
**Rachel.Reed@usda.gov**
13700 US Hwy 33
Nelsonville, OH 45764
www.fs.fed.us

**Caring for the land and serving people**

96

Attachment 3

PINE AND ASPEN RESTORATION PROJECT

IDT MEETING NOTES

April 15, 2021

Attendees:  Lou Conroy (NEPA), Kris Hennings (wildlife), Ken Marchand (GIS), Cissie Englebert (botany), Katherine Sanchez Meador (IDTL and NEPA), Stacey Weems (soils), Glen Lewis (fire and fuels), Jeff Underhill (silviculture), Jake Jackson (CO), Kara Dunlap (Forester), and Jon Word (natural resources staff officer)

Action items are in **bold**.

## Welcome, Introductions, and Objectives

Jeff welcomed everyone in and shared this is a kickoff meeting to make initial connections.  The project has been scoped (deadline is April 30th). We will have a light overview of the things for the project. We will set up follow-up meetings after today.

Start mapping out a plan for the project.

Discuss timelines and documents for the project.

**Set up time to visit with Tracy (district ranger) (Katherine, Jeff, and Jon)**

Will need engineering support for the roads package in the summer (local forest).

Need to fine tune some stand data this summer.

## Proposal Overview

Jeff shared an overview of the scoping package touching on the key points.

He clarified some of the info for the focus in white spruce stands that have pine in them along with some work in aspen stands.

Working in spruce can be challenging especially with snail and marten habitat. Considering metrics to work within and mitigating effects to these species.  Will probably get comments on these species.

## Project NEPA Authority & Restoration CE Status

Lou shared information on the CE category.  Considered a HFRA CE, and decided on one of the new CEs which is on hold for right now.  The plan is to complete the analysis for the CE and once we have the go ahead on the CE authority it will be signed.

The forest supervisor will request an exemption from the RO to use the new category.  Current regional process is the ask for an exemption to use the CE, and the risk is tied to the litigation on the new NEPA regs actually making the categories unavailable.  Once we have the scoping comments the team will draft a summary of the comments and submit to the RO for approval to move forward with the CE.  The CE category is not enjoined.

1

## Specialist Work

### Report Scope & Format

**Katherine will share a template for the specialists to use for the analysis.**

Lou sent a template to Katherine for the DM they would like us to use. (thank you)

### Design Criteria

Working in the spruce cover type will require additional design criteria to include for the project.

Kris indicated he has changes to the design criteria and ask Jeff to wait to send this out to the IDT.

## Scoping Responses to date

Lou shared we have received one comment through CARA and Jeff received a call from a local landowner and has a call back to the landowner.

**Lou will get KSM access to the CARA files.**

## Data Needs

Jeff will be the point of contact for data needs.

Glen needs more time to review and does not know at this point in time. Recognizes there may not be a lot of date for the spruce veg type.

Cissie has what she needs including latest survey data and polygons for the project.

Stacey would like to location for the soil data.  Cissie indicated there is data for the project area connected to another project. The area has been analyzed for past projects and the data should have data available.  Stacey may reach out to Jessica, local hydro, for some of the data.

If the forest folks need something they can reach out to Jeff.

Kris needs layers that show current canopy cover for the stands. Jeff indicated they have the FSveg layer. Does it include information from the last beetle kill?  Will have to adjust for the multiple points of data.

**There is common stand exam data and Jeff will provide in a format the IDT can use.**

Need to look at everything that has been done and planned in the project area in the past.  There are still many acres planned for KV activity and Jeff will provide to the team.

**Jeff will provide the forest plan to the IDT as well.**

The project is located in one management area (5.1), and has a resource production emphasis. Spruce is the dominant cover type followed by pine then aspen

**Please send data needs to Jeff as soon as possible.**

**Jeff will add all IDT members to the Pinyon folder and the GIS location.**

2

## Project Timeline

Scoping ends April 30th. Will have to see how many comments we receive.  Need to move as quickly as possible based on local need for the project to be completed.

The plan is to move forward with the new CE and get approval in May from the RO.  The target data for a DM is the end of May. Then finish recon and prep with an eye on offering a contract in FY21.

There are still field activities that need to be completed by Kris and Jeff and fine tune the stand data.  The current layer has about 1k acres more than what they will ultimately treat.  This means prioritizing stands, and breaking up stands based on spruce or a mix of spruce and pine. They have not cruised or marked anything.

Katherine expressed concerns on the timeline and recommended a visit with Jeff, Jon, and Tracey on these. **Katherine will send an invite for this visit.**

Cristine MaCuck will fill in for Lou as he is focused on LMP revision.

## Next Steps

**Katherine will send a doodle poll out for the next meeting date**

**Jeff and Lou will provide scoping comments to the IDT as they come in.**

KSM asked for someone to take notes during the next call.  She likes to rotate note taking among team members.  If no one volunteers she will start at the top of the list of the team members (alphabetically).