UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| THE CLINCH COALITION, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| THE UNITED STATES FOREST SERVICE, *et al.*, | ) |
| Federal Defendants, | ) Case No. 2:21-cv-0003-JPJ-PMS |
| and | ) |
| AMERICAN FOREST RESOURCES COUNCIL, *et al.*, | ) |
| Intervenors-Defendants. | ) |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT

Contrary to the Supreme Court's, the Fourth Circuit's, and this Court's own precedents, the December 3, 2025 judgment dismissing Plaintiffs' claims, Dkt. 164, puts Plaintiffs in a bind in which they must wait until harm is irreparable before they can bring their claims seeking to prevent that harm. This result is clearly erroneous and a manifest injustice, warranting relief under Fed. R. Civ. P. 59. Accordingly, for the reasons further explained below, Plaintiffs ask the Court to alter or amend its judgment.

I. **BACKGROUND**

In 2021, Plaintiffs filed suit in this Court challenging a rule promulgated by Defendant United States Forest Service (the "Rule"), which immediately authorized the Forest Service to categorically exclude logging projects up to 2,800 acres, roadbuilding up to 2 miles, and "special

1

uses" up to 20 acres (the "CEs") from public participation and analysis requirements that otherwise would have applied to those actions under the National Environmental Policy Act ("NEPA").

These CEs posed a serious and immediate threat to Plaintiffs' members' interests in Southern Appalachian national forests. Plaintiffs pointed to specific places where they have concrete interests and where the Forest Service was developing projects that would be eligible for the CEs. *See* Dkt. 138-12 ¶¶ 41-48; Dkt. 138-9 ¶¶ 26-28; Dkt. 138-11 ¶¶ 45-49. In addition, Plaintiffs showed that no matter precisely where the Forest Service used these CEs, its members would certainly be harmed. Specifically, Plaintiffs showed:

- That virtually all timber projects in the Southern Appalachians, including projects under development at the time Plaintiffs filed suit, are under the threshold necessary to use the CEs, AR 086740-43;

- That the Forest Service will continue to propose and implement projects in this region as it has in the past, Dkt. 1 ¶ 183; Dkt. 31 ¶ 183;

- That the United States Department of Agriculture ("USDA") had instructed the Forest Service to use CEs for all eligible projects, Dkt. 1-2 at 3-4, 7 (directing the Forest Service to use only those NEPA procedures "required by law and regulation"); and

- That Plaintiffs' members will be injured by projects proceeding under the CEs no matter where precisely they occur in the Southern Appalachians. Dkt. 138-6 ¶¶ 5-9; Dkt. 138-12 ¶ 33; Dkt. 138-16 ¶¶ 12, 49; Dkt. 138-9 ¶ 24.

The CEs also posed an existential threat to Plaintiffs' core missions, which include learning about, organizing around, and weighing in on Forest Service management proposals, primarily through the NEPA process, to improve projects. *See* Dkt. 138-17 ¶¶ 4 5-6; Dkt. 138-19

¶ 7. Without advance notice, the opportunity to review and comment on draft analysis documents, and the opportunity to administratively object to projects, Plaintiffs cannot effectively fulfill that mission. *See* Dkt. 138-18 ¶ 8; Dkt. 138-6 ¶ 12; Dkt. 138-16 ¶¶ 23, 27; Dkt. 138-19 ¶ 15; Dkt. 138-10 ¶ 17; Dkt. 138-12 ¶¶ 25, 70, 76; Dkt. 138-11 ¶¶ 31, 34; Dkt. 138-19 ¶ 14; Dkt. 138-20 ¶ 19. In the face of the immediate threat to their missions, Plaintiffs diverted substantial resources to submit, review, and litigate Freedom of Information Act requests to make up for information they would no longer receive through the NEPA process. Dkt. 138-12 ¶ 48; Dkt. 138-7 ¶¶ 46-52.

Curiously, and contrary to USDA's instructions to use the minimum NEPA procedures required by law, the Forest Service did not immediately begin using the CEs for eligible projects. One of Plaintiffs' FOIA requests revealed why. In the agency's own words, it established a "hold" on the use of the CEs while this lawsuit was pending, particularly in the Forest Service's Southern Region (Region 8): The Forest Service wanted to ensure that no site-specific uses of the CEs would "show[] up" in this case—a strategy that was meant to remain secret. Dkt. 138-7 Attch. 2 at 1, 5, 25, 42, 56, 88. Before this Court, the government argued that this hold was not a "conspiracy," but rather a deliberate effort to refine its recently adopted policy. Dkt 162 at 101; Dkt 144 at 24.

Over the next five years, spanning two changes in administration, the Forest Service did not make any changes to its policy or otherwise show that it did not intend to use the CEs. Rather, the agency officially added the CEs to its Handbook without qualification, Dkt. 138-5, and codified existing instructions to use CEs whenever available. 7 C.F.R. § 1b.2(f)(2)(iv) (directing the preparation of an environmental assessment only when the agency "cannot apply a categorical exclusion").

3

After the parties' dispositive motions were fully briefed, USDA replaced its NEPA regulations, removing any and all requirements for public notice and participation associated with the use of CEs. 7 C.F.R. § 1b.3. In particular, the previous requirements to publish upcoming CEs in a "Schedule of Proposed Actions," to solicit "scoping" comments, and to publish notice of the decision to use a CE—all requirements that the Forest Service relied on heavily in its briefs, Dkt. 144 at 11-12, 149 at 4-6—were rescinded. To be clear, under the new regulations, use of the CEs will not be preceded by any form of advance notice, opportunity to comment, administrative objection, or even publication of a final decision.

The Court heard argument on August 11, 2025, and issued an order and judgment on December 3, 2025, denying Plaintiffs' motion for summary judgment, granting Defendants' cross motion, and dismissing the case without prejudice. Dkt. 163, 164. Without reaching the merits, the Court found that Plaintiffs' claims were not ripe and that they lacked standing. *Id.*

## II.     LEGAL BACKGROUND

Upon motion, a court may "amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59. A Rule 59 motion is thus "a means by which the district court can correct its own mistakes, thereby 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Patterson v. Kaine,* No. 3:08CV490, 2010 WL 2232410, at *1 (E.D. Va. June 1, 2010) (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998)).

A district court may grant a Rule 59(e) motion to alter or amend a judgment "to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). "Clear error or manifest injustice occurs where a court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties,

4

or has made an error not of reasoning but of apprehension.'" *Wagner v. Warden*, No. CV ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (quoting *King v. McFadden*, 2015 WL 4937292 *2 (D.S.C. August 18, 2015)). "'In the context of a motion to reconsider, manifest injustice is defined as an error by the court that is direct, obvious, and observable.'" *Id.* (quoting *Saunders v. Riverside Regional Jail*, No. 3:10CV258-HEH, 2012 WL 2192262 (E.D. Va. June 14, 2012)).

Though a court is ordinarily not obligated to address every contention raised by the parties in a motion, *Malbon v. Pennsylvania Millers Mut. Ins. Co.,* 636 F.2d 936, 939 n. 8 (4th Cir.1980), a court commits clear error when it fails to engage with or "explain its analysis" of "crucial matters upon which [a plaintiff's] claim is based." *In re Steve A. Harris, Inc. v. Kenyon Oil Co.*, 63 F. App'x 668, 670 (4th Cir. 2003). Further, when an opinion is silent with respect to a party's argument(s), "it [i]s incumbent on [that party] to take some step to clarify any possible ambiguity as to whether the decision was rendered in light of [those arguments]" before seeking appellate review. *Malbon*, 636 F.2d at 939 n.8; *see also Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

### III.   ARGUMENT

This Court, the Fourth Circuit, the Supreme Court, and even the Defendants all agree on one key point: A plaintiff need not wait until trees are being cut down before a federal court has jurisdiction to determine whether the agency has acted unlawfully. Dkt. 144 at 20; *Wild Virginia v. CEQ*, 544 F. Supp. 3d 620, 635 (W.D. Va. 2021) (explaining that plaintiffs "need not wait until the project is underway and actively causing damage"); *Wild Virginia v. CEQ*, 56 F.4th 281, 302 (4th Cir. 2022) (holding that plaintiffs do not "have to wait until they have actually suffered an environmental injury before they may sue"); *Babbitt v. United Farm Workers Nat'l Union,* 442

5

U.S. 289, 298 (1979) (holding that a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief"). Yet that is precisely the effect of this Court's decision. Under current NEPA regulations, the Forest Service may now implement the CEs in places where they will certainly injure Plaintiffs' concrete interests without any prior public notice, opportunity to comment, opportunity to object, or even publication of a decision memorandum that Plaintiffs could challenge in court. Accordingly, the Court clearly erred in holding that it lacked jurisdiction, and that holding will result in manifest injustice.

1. **The Court clearly erred in holding that Plaintiffs' claims are not ripe, and relief from that decision is necessary to prevent manifest injustice.**

This Court's ruling on ripeness was largely based on a comparison with an earlier case, *Wild Virginia*, in which the Fourth Circuit affirmed that plaintiffs' claims were not ripe because "there are many steps to occur between the promulgation of the [rule at issue] and any such ultimate environmental harm, including, most importantly, that other agencies will need to actually engage in NEPA reviews (or decline to do so) as to particular projects." Dkt. 163 at 6 (citing *Wild Virginia*, 56 F.4th at 287, 297). This Court's opinion concludes that the CEs at issue here are merely "one step closer" to a site-specific decision than the Rule at issue in *Wild Virginia* and still insufficient to make the case ripe. *Id.* This is clear error because there are no additional steps remaining—aside from purely internal agency processes—before the CEs result in on-the-ground harm, not to mention the organizational harm they are already causing Plaintiffs.

As the Court acknowledges, ripeness is determined by balancing "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Dkt. 163 at 5 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967). A Plaintiff experiences hardship, and their claim is ripe for review, when the plaintiff will not have another chance to

6

prevent the harm associated with it. *National Association for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 370 (2019) ("[W]hether delayed review will impose a hardship on Plaintiffs depends on whether the alleged injury that Plaintiffs expect to suffer could be remedied in a later lawsuit."); *see also Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 81-82 (1978) (holding that plaintiffs who lived near planned nuclear power facilities could challenge provisions of a statute limiting liability for nuclear accidents, although "no nuclear accident ha[d] yet occurred," because "delayed resolution of [the] issues would foreclose any relief" from the plaintiffs' present injuries).

This is Plaintiffs' last chance to bring their claims and prevent harm. Without resolution of the issues presented here, Plaintiffs are forced to continue spending their limited resources to avert harm from the CEs and protect their core missions. *E.g.*, Dkt. 138-17 ¶ 34; Dkt. 138-12 ¶ 69; Dkt. 138-16 ¶ 16. Further, there are no remaining steps that provide these Plaintiffs an opportunity to challenge the application of the CEs in finalized site-specific projects down the road. To begin, each and every one of the procedural steps relied on in Defendants' briefs have been wiped off the books. Dkt. 144 at 11-12 (citing requirements of 40 C.F.R. Part 1501 and 36 C.F.R. Part 220); 90 Fed. Reg. 10,610, 10,611 (rescinding 40 C.F.R. Part 1501); 90 Fed. Reg. 29,632, 29,674 (rescinding 36 C.F.R. Part 220). These requirements therefore no longer have any bearing on ripeness. *See Wild Virginia*, 56 F.4th at 293 (explaining that ripeness depends on the facts at the time of the district court's judgment).

At oral argument, nevertheless, Defendants' counsel maintained that "multiple steps" still remain before potential projects are authorized, including review for "extraordinary circumstances," consistency with the relevant forest plan, and compliance with other environmental laws. Dkt. 162 at 52, 58. The existence of any additional "steps" are relevant to

7

ripeness, however, only insofar as they show that the plaintiff will "'have ample opportunity later'" to bring a legal challenge and prevent the injury. *Wild Virginia*, 56 F.4th at 296 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734, (1998)). These steps referenced by Defendants at argument are purely internal processes, and Defendants provide no legal citation or factual support for the proposition that any of them creates an opportunity for Plaintiffs to learn about, influence, or challenge future projects to prevent injury. Defendants' argument therefore hinges on their assertion that the Forest Service will prepare a "final decision notice or decision memorandum" that Plaintiffs can challenge at the site-specific level. Dkt. 162 at 52, 58 (characterizing this as the "[m]ost critical[]" remaining step). Under current regulations, however, the Forest Service will *not* prepare a decision notice or memorandum for CEs. *Compare* 36 C.F.R. § 220.6(e), (f) (rescinded requirement that the Forest Service prepare a decision memorandum and share it with interested members of the public) *with* 7 C.F.R. § 1b.3(j) (current regulation allowing implementation of a CE after an internal "finding" that the CE is available). Unlike decisions for environmental assessments or environmental impact statements, there is no requirement that this internal "finding" be provided to the public before actions are implemented under a CE. *Compare* 7 C.F.R. §§ 1b.6(d) & 1b.8(c) (requiring publication of a decision document for an environmental assessment or impact statement), *with id.* § 1b.3 (no such requirement for CEs).

  To be clear, therefore, Defendants are not required to issue any form of public notification whatsoever before proceeding with logging, roadbuilding, and other special uses covered by the contested CEs. There are no further steps that Defendants must take which would alert the public, including Plaintiffs, that actions covered by the CEs will take place. Accordingly, regardless of how close or distant from project-level application the court has found

8

promulgation of CEs to be—and in critical contrast to the facts in *Wild Virginia*—there are no remaining steps between the actions challenged here and irreparable harm that Plaintiffs may avail themselves of to prevent that harm. With this challenge dismissed, Plaintiffs lack any viable opportunity to challenge the CEs before they cause harm on the ground, which, due to the nature of environmental injury, would be irreparable. *Amoco Prod. Co. v. City of Gambell*, 480 U.S. 531, 545 (1987) (explaining that "[e]nvironmental injury, by its nature, . . . is often permanent or at least of long duration, i.e., irreparable"); *accord Sierra Club v. United States Army Corps of Engineers*, 981 F.3d 251, 264 (4th Cir. 2020). It is manifestly unjust to subject Plaintiffs to irreparable harm for their claims to be ripe.

In failing to recognize the hardship imposed on Plaintiffs of delaying review, and in concluding that the case at issue here was merely "one step closer" to a challengeable decision, the Court appears to have credited Defendants' representations that Plaintiffs would have a further opportunity to bring their claims before harm occurs. Accordingly, the Court clearly erred by either misapprehending the Plaintiffs' arguments and evidentiary showing (viz., that there would be no future opportunity to prevent the harm), or, at the very least, improperly resolved an issue of fact against the Plaintiffs. Either way, the Court has made a "direct, obvious, and observable" error, leaving Plaintiffs in the lurch with no viable means to prevent on-the-ground harm. *See Register v. Cameron & Barkley Co.*, 481 F.Supp.2d 479, 480 n.1 (D.S.C.2007). Such an outcome is clearly contrary to binding precedent and creates a manifest injustice, warranting relief under Rule 59(e).

2. **The Court clearly erred in holding that Plaintiffs lack standing.**

Citing *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), the Court also held that Plaintiffs lacked standing because "they fail to tie the contested CEs to any site-specific

9

application that would affect their interests." Dkt. 163 at 8. The Court erred, however, because it overlooked imminent site-specific injuries, other imminent on-the-ground injuries, and *actual* injuries to Plaintiffs' core missions.

      a.  <u>The Court did not consider Plaintiffs' *present* injury to their core missions.</u>

First, the Court's opinion does not recognize binding precedent in *Republican National Committee v. North Carolina State Elections Board ("RNC")*, which maps closely onto the facts at issue in this case. 120 F.4th 390 (4th Cir. 2024). In *RNC*, the Fourth Circuit held that an organization's diversion of resources to mitigate harm to its "core mission" is a distinct, present injury-in-fact, not dependent on proof of future harm. *Id.* at 395-97. Such an injury is not the kind of self-inflicted harm that might be rejected, in other contexts, as an impermissible attempt for an organization to "'spend its way into standing.'" *Id.* at 396 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 394 (1982)).

Here, the Court briefly mentioned Plaintiffs' argument that "they must now divert their own scarce resources to mitigate the Rule's harm to their core missions." Dkt. 163 at 7. However, the Court did not address this argument in its analysis. Instead, the Court reasoned that standing was lacking solely because of a failure to identify a specific future application of the CEs. *Id.* at 8. In other words, the Court did not apprehend the possibility that Plaintiffs could be *presently* injured for purposes of standing because of the Rule's impact on their core missions, irrespective of future on-the-ground injuries.

As in *RNC*, Plaintiffs here established that the Forest Service's Rule "forced them to divert significantly more of their resources" into FOIA requests necessary to perform their core missions. *See RNC*, 120 F.4th at 397. For example, Defenders of Wildlife staff have spent significant time and resources submitting, litigating, and reviewing documents from a FOIA

10

request they submitted to understand where the new CEs were being used—information they would otherwise have been guaranteed through the NEPA process. Dkt. 138-7 ¶ 52. Similarly, MountainTrue staff have invested substantial time submitting, negotiating, and reviewing responses to FOIA requests "for information they would normally obtain through the NEPA process." Dkt. 138-12 ¶¶ 48-49. As described in the declarations, these resource drains have been substantial and at the very least "perceptibly impair[ Plaintiffs'] ability to carry out [their] mission[s]." *See RNC*, 120 F.4th at 395. The Court clearly erred by failing to address this crucial matter on which Plaintiffs' argument was based.

b. <u>The Court did not address Plaintiffs' imminent future injuries.</u>

Second, the Court did not consider Plaintiffs' distinct theories of standing based on future injury—namely, that at the time of filing, the use of the CEs was imminent in both identified and as-yet unidentified locations where Plaintiffs' members have concrete interests.

To establish standing, a plaintiff must show that injury is either actual or imminent. Imminence does not mean immediacy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 572 n.7 (1992) (explaining that the requirement of immediacy is relaxed for procedural claims, even if on-the-ground harm is "many years" away). It means, rather, that the prospect of injury is not "too speculative." *Wild Virginia*, 56 F.4th at 293 n.4; *accord Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000) ("If the plaintiff can show that his claim to relief is free from excessive abstraction, undue attenuation, and unbridled speculation, the Constitution places no further barriers between the plaintiff and an adjudication of his rights."). Standing is a question of fact, and there is no prescriptive legal formulation that a plaintiff must follow in all cases. See *Lujan*, 504 U.S. at 561 (confirming that standing turns on the facts of the particular case).

11

i. *Plaintiffs pointed to specific projects that threatened imminent and concrete injury at the time they filed suit.*

A plaintiff may establish standing by "point[ing] to a specific project" where the complained-of harm will occur. *Wild Virginia*, 56 F.4th at 299. To make this showing, there is no requirement that a plaintiff actually be *suing* over a site-specific project. *Salix v. U.S. Forest Service*, 944 F. Supp. 2d 984, 989 (D. Mont. 2013) (holding that the plaintiffs' "decision not to challenge a specific project . . . does not undermine their standing"); *see also Summers*, 555 U.S. at 508-10 (assuming that declarations showing injury via other projects not being challenged, if they had been before the Court, would have been material to standing).

Here, Plaintiffs did point to specific projects where injury was likely. When Plaintiffs filed their case, USDA had instructed the Forest Service to use only those NEPA procedures required by law—i.e., to use CEs wherever available. Dkt. 1-2 at 4, 7. Taking the government at its word, Plaintiffs identified site-specific projects that were under development and would be eligible for coverage under the CEs, in places where their members had concrete interests. *E.g.*, Dkt. 138-12 ¶¶ 41-48 (West Flatwoods, Northside, and Lickstone projects); Dkt. 138-9 ¶¶ 26-27 (Foothills project); Dkt. 138-11 ¶¶ 45-46 (Foothills project). Identification of those projects was sufficient, by itself, to show that injury was imminent.

This Court has previously recognized on analogous facts that these kinds of upcoming projects can suffice to support standing. *Wild Virginia*, 544 F. Supp. 3d at 638. In *Wild Virginia*, for example, the declarants identified several upcoming site-specific proposals affecting their concrete interests, including "various specified [Forest Service] projects in the coming years." *Id.* at 628-29. This Court held that, "[u]nlike [the declarations] in *Summers*," the declarants in *Wild Virginia* had adequately "point[ed] to specific project proposals that they contend will affect the

12

recreational, aesthetic, and other interests of their members." *Id.* at 638.[1] The Court's contrary conclusion here—that Plaintiffs did not "tie the contested CEs to any site-specific application"—therefore shows a failure to apprehend or to address one of Plaintiffs' critical arguments. Overlooking the identification of upcoming site-specific projects in this case was clear error.

To be sure, the site-specific projects pointed to by Plaintiffs in this case did not ultimately move forward under the challenged CEs. However, this was a post-filing development. While the government disputes Plaintiffs' characterization of the "hold" on the use of the CEs, even the Forest Service admits that the "slower rollout" reflected a post-filing decision. Dkt. 162 at 54 (citing Dkt. 144-1, dated May 21, 2021). To the extent that the Court's analysis of standing was influenced by these post-filing developments, its decision was clearly erroneous because standing turns exclusively on the facts at the time of filing. *Wild Virginia*, 56 F.4th at 293. The facts at the time of filing were undisputed: CEs were to be used for eligible projects, these projects would be eligible, and Plaintiffs members' had concrete interests in the locations where they would occur.

The fate of these site-specific projects was therefore relevant, if at all, only to whether Plaintiffs' claims later became moot. Defendants did not argue that the claims were moot, nor could they have carried their "heavy burden" to show that it is "'*absolutely clear*'" that the CEs will not be used in other, similar projects in the Southern Appalachians. *See Deal v. Mercer County Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (emphasis in original) (quoting *Friends of*

---

[1] What was missing in *Wild Virginia* was a further showing of how the challenged regulations would have applied to those upcoming projects. *Id.* Here, however, there was no such gap. Plaintiffs showed that following the Secretary of Agriculture's instructions to use the minimum NEPA procedures required by law for these projects would limit Plaintiffs' ability to improve the projects and achieve better outcomes on the ground. *See* Dkt. 138-15 ¶¶ 40, 43-45; Dkt. 138-12 ¶¶ 28-32, 35-36, 61-68; Dkt. 138-11 at ¶¶ 28-43, 76-77; Dkt. 10 at ¶¶ 21, 23-25.

*the Earth v. Laidlaw*, 528 U.S. 167 (2000)). Indeed, the documents before the Court, though not addressed in its opinion, showed that the Forest Service was holding back the use of its CEs while this case was pending because it did not want as-applied examples to "show[] up" in this case. Dkt. 138-7 Attch. 2 at 1, 5, 25, 42, 56, 88. These documents, at the very least, support a reasonable inference that the Forest Service would use the CEs in a manner injurious to Plaintiffs after this case was dismissed, and Defendants presented no evidence to the contrary. The Court should not have resolved this issue of fact against Plaintiffs, as would have been necessary to grant Defendants' motion for summary judgment.

> ii. *Plaintiffs alleged that logging under the CEs was imminent in the Southern Appalachian national forests, where it would cause them injury no matter where precisely it occurred.*

Additionally, while a plaintiff *may* point to site-specific project proposals to establish standing, there is no requirement that they take that approach. Plaintiffs bear the burden to show that *they* will be harmed, not to show that a specific parcel of land will be harmed. *Friends of the Earth v. Laidlaw*, 528 U.S. 167. 169 (2000) ("The relevant showing for Article III standing is not injury to the environment but injury to the plaintiff."). Thus, a plaintiff may establish standing by showing that its interests span a broad area where logging will occur. *See Ctr. for Biological Diversity v. Env't Prot.* Agency, 56 F.4th 55, 68 (D.C. Cir. 2022) (finding that EPA's registration of pesticide ingredients injured the plaintiffs, whose interests in observing flora and fauna extended across California, where the pesticides would be used); *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178–79 (9th Cir. 2011) (Fisher, J., separate opinion representing the opinion of the Court on this issue) (distinguishing *Summers* and finding standing where plaintiff demonstrated "concrete interests spanning" a broad area, and logging would occur "somewhere" within the scope of those interests). Consistent with these principles, the Fourth Circuit has held that plaintiffs challenging a CE for logging projects are required to "articulate how imminent any

14

*such harvests* are," not that they are required to identify any one particular logging project. *Wild Virginia*, 56 F.4th at 302 (emphasis added). Here, Plaintiffs were required only to show that the prospect of injurious logging under the CEs was not "too speculative" when they filed the case. *Wild Virginia*, 56 F.4th at 293 n.4.

Here, Plaintiffs showed, without dispute, that their members have concrete interests throughout the landscape where the CEs will be used, such that they will be injured no matter where precisely trees are cut, Dkt. 138-6 ¶¶ 5-9; Dkt. 138-12 ¶ 33; Dkt. 138-16 ¶ 49; Dkt. 138-9 ¶ 24. In addition, Plaintiffs showed that the CEs will be used imminently in the Southern Appalachian landscape: The Forest Service will continue to implement projects in this region as it has in the past, Dkt. 1 ¶ 183; Dkt. 31 ¶ 183, 97% of timber projects in the Southern Appalachians have been under the threshold for the logging CE, AR 086740-43, and at the time of filing the Forest Service had been instructed to use the minimum NEPA process required by law, *see* Dkt. 1-2 at 3-4, 7. It was therefore undisputed that use of the CEs would imminently injure Plaintiffs' interests.[2] The Court's omission of any discussion of this alternative basis for standing—another "crucial matter" in Plaintiffs' briefs—was therefore clear error.

In sum, to the extent that the Court did not consider the undisputed facts regarding imminent site-specific harms at the time of filing, this was an omission of a "crucial matter" underlying Plaintiffs' arguments. *See In re Steve A. Harris,* 63 F. App'x at 670. And to the extent that the Court discounted those site-specific harms because of what happened after the case was filed, the Court clearly erred by locating its analysis under the doctrine of standing rather than mootness, improperly saddling Plaintiffs with the burden of proof. This error resulted in manifest

---

[2] Again, the Forest Service's "slower rollout" of the CEs after the filing of this case is relevant, if at all, only to mootness, and does not change the analysis of standing.

15

injustice because Defendants could not have prevailed on an argument that the case was moot. And, finally, it appears that the Court did not apprehend or entertain Plaintiffs' distinct argument and factual showing that their members will certainly be injured no matter where precisely the CEs are used in the Southern Appalachians—another clear error.

### IV.   CONCLUSION

Plaintiffs acknowledge that Rule 59 is an "extraordinary remedy," but it is warranted here. *See Pac. Ins. Co.*, 148 F.3d at 403. For all the reasons above, the Court clearly erred in its December 3 opinion, leading to manifest injustice. Whether the Court has overlooked Plaintiffs' arguments, misapprehended the legal significance of the evidence, or resolved issues of fact prematurely, the end result is the same: Plaintiffs will now "have to await the consummation of threatened injury to obtain preventative relief." *See Babbitt,* 442 U.S. at 298.

Plaintiffs accordingly request this Court alter or amend its judgment under Rule 59. If the Court believes its December 3 opinion was not in error, we ask that the Court clarify the ambiguities identified in this motion, which will promote judicial economy by enabling Plaintiffs to understand whether their arguments were properly considered before determining whether to seek appellate review. *See Malbon*, 636 F.2d at 939 n.8; *Pac. Ins. Co.*, 148 F.3d at 403.

Respectfully submitted, December 31, 2025.

SOUTHERN ENVIRONMENTAL LAW CENTER

/s/ Sam Evans
N.C. Bar No. 44992
sevans@selc.org

/s/ Abigail M. Hunt
N.C. Bar No. 62453
ahunt@selc.org

48 Patton Ave
Suite 304

16

Asheville, NC 28801-3321
828-258-2023

/s/ Kristin Davis
VA. Bar No. 85076
201 West Main St.
Suite 14
Charlottesville, VA 22902-5065
kdavis@selc.org
434-977-4090

Case 2:21-cv-00003-JPJ-PMS Document 166-1 Filed 12/31/25 Page 17 of 18
Pageid#: 3476

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2025, I electronically filed the foregoing Brief with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Sam Evans
Sam Evans
Southern Environmental Law Center