# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| The Clinch Coalition, *et al.*, | ) | Case No. 2:21-cv-0003-JPJ-PMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **DEFENDANT-INTERVENORS'** |
| v. | ) | **OPPOSITION TO PLAINTIFFS'** |
| | ) | **MOTION TO ALTER OR AMEND** |
| The United States Forest Service, *et al.*, | ) | **THE JUDGMENT (ECF No. 166)** |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| American Forest Resource Council, *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

## I. INTRODUCTION

Plaintiffs' motion to alter or amend the Court's judgment in this case seeks an "extraordinary remedy" for ordinary reasons. No doubt Plaintiffs disagree with the dismissal of their claims on ripeness and standing grounds. But they can get de novo review of that dismissal on appeal. Delaying their appeal to rehash already-briefed arguments just wastes time and judicial resources. Intervenors thus ask the Court to deny Plaintiffs' motion posthaste.

## II. ARGUMENT

The point of Rule 59(e) is to let the Court "reconsider a just-issued judgment." *Banister v. Daivs*, 590 U.S. 504, 507 (2020). The rule "gives a district court the chance to rectify its own mistakes"; it is not for "address[ing] new issues or arguments that the moving party could have raised before the decision issued." *Id.* at 508 (internal quotation marks omitted). Nor does "mere disagreement" about how the district court applied the law justify a Rule 59(e) motion. *Hutchinson v. Staton*, 994 F.2d 1076, 1081–82 (4th Cir. 1993). Rather, as the Fourth Circuit has repeatedly emphasized, Rule 59(e) represents "an extraordinary remedy that should be applied sparingly." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). Plaintiffs' arguments fall far short of that high bar.

### A. Plaintiffs' claims are not ripe.

Plaintiffs admit that the Court's "ruling on ripeness was largely based on a comparison with an earlier case, *Wild Virginia* [*v. Council on Environmental Quality*, 56 F.4th 281 (4th Cir. 2022)]." ECF 166-1, Pls.' Rule 59 Mem. at 6. In *Wild Virginia*, the Fourth Circuit found ripeness lacking because "there [were] many steps to occur between" the rule and the feared "environmental harm" 56 F.4th at 297. So too here, as the government pointed out in its summary judgment briefing and at oral argument. *See* ECF 144, Fed. Defs.' MSJ at 10–12; *see also* ECF 147, Intvs.' MSJ at 3 (Intervenors expressly adopting the government's jurisdictional arguments in their opening memorandum).

The Court took the government's view of how *Wild Virginia* applies here: "I agree with

the defendants that the CEs at issue are merely one step closer to the site-specific actions courts have found to be ripe for review." ECF 163, Opinion and Order at 7. Plaintiffs take the opposite view in their Rule 59 motion, as they did in their summary judgment brief. They think that "there are no remaining steps" before they are harmed. ECF 166-1, Pls.' Rule 59 Mem. at 7; *see* ECF 148 Pls.' SJ Reply at 6 ("[N]o steps remain between the challenged actions and Conservations Groups' harms.").

That the Court agreed with the government on a carefully briefed point is no reason to grant Plaintiffs' motion. *Hutchinson*, 994 F.2d at 1018–82. There is nothing "extraordinary," *Mayfield*, 674 F.3d at 378, about an adverse decision that warrants relief under Rule 59. Beyond that, the Court was right to see that many steps remain between the promulgation of a categorical exclusion and the application of that exclusion to a specific project, and that harm to individuals can flow only from a specific project. *See* ECF 163, Opinion and Order at 6–7. An abstract category of agency actions that *may* qualify for exclusion from detailed environmental review means next-to-nothing until the agency decides that a specific project will *actually* be excluded. Because no such decision is here at stake, Plaintiffs' claims are not ripe.

### B.  Even if their claims were ripe, Plaintiffs would lack standing.

The absence of a specific, agency-approved project similarly precludes Plaintiffs from proving that they have standing, as the Court also held. *See* ECF 163, Opinion and Order at 7–8. Here again, the Court explicitly adopted the government's view that under *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), Plaintiffs could not prove standing without linking their alleged injuries "to any site-specific application that would affect their interests." ECF 163, Opinion and Order at 8; *see* ECF 144, Fed. Defs.' MSJ at 18–25 (explaining why Plaintiffs' lack standing under *Summers*). Indeed, as the Court pointed out, *Summers* involved a challenge to Forest Service categorical exclusions, just as this case does. ECF 163, Opinion and Order at 7; *see Summers*, 555 U.S. at 490–91. It was hardly a stretch for the Court to conclude that the same standing principles barred Plaintiffs' claims.

Defendant-Intervenors' Opposition to Motion to Alter or Amend Judgment - 2

Yet Plaintiffs argue that the Court was not just wrong, but that it failed "to apprehend or to address" certain "critical arguments." ECF 166-1, Pls.' Rule 59 Mem. at 13. They think it was enough for them to flag "projects that were under development and would be eligible for coverage under the CEs," even if those projects "did not ultimately move forward." *Id.* at 12–13. Going a step further, they also say that standing can be based on the mere "prospect of injurious logging under the CEs," so long as "their members have concrete interests throughout the landscapes were the CEs will be used." *Id.* at 14–15. But none of these arguments can be reconciled with the Supreme Court's holding in *Summers* that Plaintiffs must be injured by a "concrete application" of a categorical exclusion "that threatens immediate harm to [their] interests." 555 U.S. at 494. On this score, Plaintiffs cannot surmount Rule 59(e)'s high bar because they cannot show that the Court erred at all.

Finally, Plaintiffs complain that the Court did not expressly address their argument that the Forest Service's categorical exclusions create standing by directly harming their organizations. *See* ECF 166-1, Pls.' Rule 59 Mem. at 10–11. And while it may be true that the Court did not explicitly reject this organizational standing argument, the Supreme Court has recently made clear that such arguments require more than what Plaintiffs allege. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

Plaintiffs claim to be injured because the Forest Service's actions have forced them to "divert resources" into Freedom of Information Act requests. ECF 166-1, Pls.' Rule 59 Mem. at 10. But that is precisely the kind of injury—"expending money to *gather information*"—that the Supreme Court has ruled out. *All. for Hippocratic Med.*, 602 U.S. at 394 (emphasis added). As the Court explained, organizational standing requires that agency action "directly affected and interfered with" a plaintiff's "core business activities." *Id.* at 395. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the "unusual case" that the Supreme Court has been "careful not

Defendant-Intervenors' Opposition to Motion to Alter or Amend Judgment - 3

to extend," that interference involved agency action thwarting a plaintiff's "ability to provide counseling and referral services." *Id.* at 395–96. In the Fourth Circuit case on which Plaintiffs rely, it involved agency actions preventing the plaintiff from "counseling interested voters and volunteers on election participation," among other things. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024). No such direct injuries are claimed here. Plaintiffs argue only that they have spent money to "gather information" that the Forest Service no longer provides voluntarily. Under *Alliance for Hippocratic Medicine*, that is not the kind of direct injury that supports organizational standing. Thus, the Court was right to (implicitly) reject Plaintiffs' claim.

*    *    *

In the end, absent the kind of egregious mistake that Plaintiffs do not even allege here, a Rule 59(e) motion makes little sense when a Court dismisses a case on ripeness or standing grounds. Such jurisdictional dismissals are reviewed de novo in the court of appeals. *See Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022). Since both this Court's legal reasoning and its application to the record will get a fresh look, Plaintiffs face no risk from any "possible ambiguity" in the Court's decision. *See* ECF 166-1, Pls.' Rule 59 Mem. at 5 (citing *Malbon v. Penn. Millers Mut. Ins. Co.*, 636 F.2d 936, 939 n.8 (4th Cir. 1980)). And if in the meantime the Forest Service uses its categorical exclusions to approve a project that could harm Plaintiffs, they can bring a new suit. In this suit, the Court can deny Plaintiffs' motion in short order.

### III.    CONCLUSION

Plaintiffs' motion to alter or amend under Rule 59(e) should be denied.

Respectfully submitted on this 13th day of January 2026.

*By: /s/ Jay C. Johnson*
Jay C. Johnson, VA Bar No. 47009
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
jcjohnson@Venable.com
202.344.4000
202.344.8300 (fax)

*/s/ Sara Ghafouri*
Sara Ghafouri, *Pro hac vice*
AMERICAN FOREST RESOURCE COUNCIL
700 N.E. Multnomah St., Ste. 320
Portland, OR 97232
sghafouri@amforest.org
503.222.9505
503.222.3255 (fax)

Defendant-Intervenors' Opposition to Motion to Alter or Amend Judgment - 5